**WHITE AND WILLIAMS LLP**
Heidi J. Sorvino, Esq.
James C. Vandermark, Esq.
Andrew E. Arthur, Esq.
7 Times Square, Suite 2900
New York, NY 10036
(212) 244-9500
sorvinoh@whiteandwilliams.com
vandermarkj@whiteandwilliams.com
arthura@whiteandwilliams.com

*Proposed Counsel for Debtor and Debtor-in-Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>JAR 259 FOOD CORP.,<br><br>Debtor. | Chapter 11<br><br>Case Nos. 22-40304 |

**DECLARATION OF AMANDEEP SINGH PURSUANT TO
RULE 1007-4 OF THE E.D.N.Y. LOCAL BANKRUPTCY RULES
AND IN SUPPORT OF THE DEBTOR'S PETITION**

I, Amandeep Singh, hereby declare under penalty of perjury:

1. On February 18, 2022 (the **"Petition Date"**), Jar 259 Food Corp. (the "**Debtor**") commenced this case under the provisions of Chapter 11 of Title 11 of the United States Code (the **"Bankruptcy Code"**) in this Court.

2. As of the Petition Date, I am the Vice President of the Debtor. As such, I am familiar with the Debtor's books, records, loan documents, and financial statements and have personal knowledge of the information contained herein. Pursuant to Rule 1007-4 of the E.D.N.Y. Local Bankruptcy Rules (the "**Local Rules**"), I submit this declaration to assist the Court and parties in interest in understanding the circumstances compelling the commencement of this

Chapter 11 case and in support of the Debtor's Chapter 11 petition and certain motions and applications filed today.

3. Except as otherwise indicated, all facts in this declaration are based upon my personal knowledge, my discussions with the Debtor's management team and advisors, my review of relevant documents and information concerning the Debtor's operations, financial affairs, or my opinions based upon my experience and knowledge. I am over the age of eighteen and authorized to submit this declaration on behalf of the Debtor. If called upon to testify, I could and would testify competently to the facts set forth in this declaration.

## PRELIMINARY STATEMENT

4. Since 2015, the Debtor has owned a grocery and food retail store located at 259-11 Union Turnpike, Glen Oaks, New York 11004 (the "**Debtor's Store**"). Until recently, the Debtor employed approximately 46 individuals at the Debtor's Store to maintain and operate the store. This includes certain employees represented by Local 338 RWDSU/UFCW (the "**Union**").

5. For several years, the Debtor has faced significant financial difficulties due to rising costs of produce and labor. Since March 2020, the Debtor's primary supplier, Key Food Stores Co-Operative, Inc. ("**Key Food**") took over the operations of the Debtor's Store. On February 14, 2022, Key Food advised the Debtor that, as of February 19, 2022, it would no longer operate the Debtor's Store.

6. The Debtor commenced this Chapter 11 case to preserve and maximize the Debtor's remaining assets and business value for the benefit of its stakeholders. In the face of impending liquidity shortfall and significant industry headwinds caused, in part, by the adverse impacts of the COVID-19 pandemic, the Debtor decided to cease operating the Debtor's Store and intends to pursue certain claims, causes of action, and to liquidate its assets.

7. As of the Petition Date, the Debtor continues to manage its affairs as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner in this Chapter 11 case and no committees have been appointed or designated at this time.

8. Concurrent herewith, the Debtor is filing a motion to retain and employ the law firm of White and Williams LLP ("**W&W**") to represent the Debtor in these Chapter 11 proceedings.

## BACKGROUND AND EVENTS LEADING TO CHAPTER 11 FILINGS

### I. THE DEBTOR'S BUSINESS

### A. The Debtors' Operations

9. I have been involved in the grocery and food retail sector for over 10 years. In addition to the Debtor's Store, I have an interest in and operate other grocery stores in Long Island, New York. Specifically, I have an interest in the store owned by 3350 Kaur Farms Inc. ("**Kaur Farms**") and located at 3350 Hillside Avenue, New Hyde Park, New York 11040 (the "**Kaur Farms Store**") as well as the store owned by OM Vegetables Inc. ("**OM Vegetables**" and together with Kaur Farms, collectively, the "**Non-Debtor Affiliates**") 520 South Broadway, Hicksville, New York (the "**OM Vegetables Store**" and together with the Kaur Farms Store, collectively, the "**Non-Debtor Stores**").

10. Kuljit Kaur and I founded the Debtor and opened the Debtor's Store in 2015. Since its beginning, the Debtor's Store has been a vibrant neighborhood market emphasizing an extensive selection of fresh, naturel, and organic products, prepared foods, and hard-to-find specialty and gourmet offerings, along with a full assortment of conventional groceries.

11. The Debtor leases the premises for the Debtor's Store from 255 Mall LLC (the "**Landlord**") and pays approximately $79,000.00 per month in rent to the Landlord on its leased real property. The foregoing rent includes, base rent, common area maintenance expenses, and monthly real estate tax estimates. As of the Petition Date, the Debtor is current with respect to paying the full rent and other charges to the Landlord.

12. In the 52 weeks ending December 1, 2021, the Debtor's records reflect approximately $10 million in sales, which was down from calendar year 2020 when the Debtor had over $11.6 million in sales. During 2021, the Debtor lost approximately $2 million as a result of, among other things, interest expenses and other operating costs.

B. **Capital Structure**

   *i.   Long Term Debt*

13. On or about February 15, 2018, the Debtor entered into a loan agreement with NewBank (the **"NewBank Loan Agreement"**). The principal amount of the NewBank Loan was for $1,000,000.00. Pursuant to the NewBank Loan Agreement, the Debtor was required to pay monthly installments on the 15th day of each calendar month. As of the Petition Date, NewBank asserts that approximately $1,859,888.46 is outstanding on the NewBank Loan.

14. On or about January 16, 2020, the Debtor entered into promissory note (the **"Key Food Note"**) with Key Food Stores Co-op Inc (**"Key Food"**). The principal amount of the Key Food Note was for $2,060,052.26, which was to bear interest at the rate of five percent (5%) per annum.

15. Pursuant to the Key Food Loans, the Debtor was required to pay weekly installments of $5,036.11 commencing on June 30, 2020, and on the same day of each week thereafter through maturity of the Key Food Note, at which time the remaining balance was to be

paid. As of the Petition Date, Key Food asserts that approximately $1,919,708.19 is outstanding on the Key Food Loans.

### ii. *MCA Debts*

16. Within the year before the Petition Date, the Debtor entered into certain agreements (the "**MCA Agreements**") with parties (the "**MCA Companies**" and together with NewBank and Key Food, collectively, the "**Lenders**") purportedly offering merchant cash advances for the Debtor's future receivables. At the time, the Debtor considered the advances provided by the MCA Companies as necessary to continue to operate the Debtor's Store; however, it eventually became clear that the fixed automatic withdrawals required by the MCA Companies would further decimate the Debtor's financial condition.

17. As Bloomberg News has reported, the merchant cash advance industry is "essentially payday lending for businesses," and "interest rates can exceed 500 percent a year, or 50 to 100 times higher than a bank's."[1] This industry is a breeding ground for "brokers convicted of stock scams, insider trading, embezzlement, gambling, and dealing ecstasy."[2] As one of these brokers admitted, the "industry is absolutely crazy. … There's lots of people who've been banned from brokerage. There's no license you need to file for. It's pretty much unregulated."[3]

18. Many merchant cash advance companies prey upon cash-strapped businesses that cannot readily obtain financing from banks and other traditional lenders. Although they purport to represent the sale/purchase of a business's future revenue, the MCA Companies market,

---

[1] Zeke Faux and Dune Lawrence, *Is OnDeck Capital the Next Generation of Lender or Boiler Room?*, BLOOMBERG (Nov. 13, 2014, 6:07 AM), https://www.bloomberg.com/news/articles/2014-11-13/ondeck-ipo-shady-brokers-add-risk-in-high-interest-loans.
[2] *Id.*
[3] *Id.*

-5-

28463087v.3

underwrite and collect upon the transactions as loans, with interest rates far above those permissible under state law.

19. In a state of desperation, the Debtor entered into numerous MCA Agreements – often entering into new agreements to pay off debts under older MCA Agreements. As of the Petition Date, the Debtor has 37 MCA Agreements which purport to purchase at least $9 million of the Debtor's receivables. The Debtor and the MCA Companies dispute the nature of the MCA Agreements and corresponding debt. While the MCA Companies have asserted they purchased future receivables, the Debtor contends that they are truly loans subject to interest rates exceeding the amount permitted under state law. It is anticipated that the Debtor will bring claims against the MCA Companies in these proceedings to, amongst other things, address these disputes. As such, the debts owed to the MCA Companies are disputed, contingent and unliquidated.

### C. The Debtors' Tax Liabilities

20. Based on information and belief, the Debtors do not have any outstanding tax obligations as of the Petition Date.

### D. The Debtor's Other Prepetition Indebtedness

21. Aside from the aforementioned liabilities to the Lenders, the Debtor's primary liabilities consist of debts to the Union as well as vendors and other general unsecured creditors approximating $1,100,000.00. Some of these liabilities are disputed by the Debtor.

## II. EVENTS LEADING TO CHAPTER 11

### A. Challenging Market Competition

22. Prior to Key Food's management of the Debtor's Store and the COVID-19 pandemic, the Debtor faced significant market pressures. The Debtor was confronted with increasing competition from local, regional and national supermarket grocers as well as

convenience stores and other independent and specialty food stores. In recent years, the Debtor also saw increased competition from online retail grocery giants such as Amazon, Walmart and Target.

23. In addition, the Debtor's workforce was largely unionized which resulted in increased labor costs compared to some of the Debtor's competition. As a result, the Debtor's competitors could offer lower prices to their customers which created increased pricing pressures for the Debtor and reducing overall profits.

### B. Impact of COVID-19

24. The Debtor faced further financial stress after Key Food took over management of the Debtor's Store. The COVID-19 pandemic led to increased concern with in-person shopping and challenges with labor shortages. Some employees simply decided not to return to work. The employees that did return to work would often be unable to appear for their work shifts because of positive COVID-19 test results. Continuous labor issues caused additional significant delays and disruptions for the operations of the Debtor's Store.

25. In addition, the costs of food and goods increased dramatically in 2021. This was in large part due to supply chain issues, especially for international food and goods due to import suspensions, quotas, and other government restrictions.

26. The Debtor began to face significant financial challenges in the summer and fall of 2021, which necessitated entering into many of the MCA Agreements to simply keep the business operating. Even with the funds received from the MCA Companies, the Debtor was unable to pay for operating expenses as well as the substantial payments to the other Lenders. By the winter of 2021, the Debtor was also unable to maintain the daily withdrawals taken by the MCA Companies.

This led to serious liquidity issues and concerns that the Debtor would not be able to make its payroll obligations.

27. Many of the MCA companies have filed suits asserting breaches of their respective agreements. The Debtor's primary focus going forward will be to winddown operations of the Debtor's Store and address certain claims against the MCA Companies and other creditors.

28. Despite many challenges, the Debtor is committed to maximizing the value of its assets for its stakeholders. I believe it is in the best interest of the Debtor's estate and creditors that the Chapter 11 petition be filed and that the Debtor be allowed to continue to operate under the auspices of Chapter 11.

### III. INITIAL MOTIONS

29. Concurrently herewith, the Debtor is filing the following applications, motions and proposed Orders:

#### A. Application to Retain White and Williams LLP as Debtor's Counsel

30. The Debtor has determined that it will be necessary to engage counsel with knowledge and experience in the areas of bankruptcy, litigation, corporate, and tax law. Such legal counsel will enable the Debtor to fulfill its duties in these Chapter 11 proceedings and will assist in the reorganization of the Debtor's estate. The Debtor proposes to retain the law firm of White and Williams LLP (**"W&W"**) as lead counsel in this Chapter 11 case.

31. The Debtor seeks authority to engage W&W as bankruptcy counsel because W&W and the attorneys thereof who have been assigned to this engagement have considerable experience in Chapter 11 reorganization cases and fields of debtors' and creditors' rights and litigation involving merchant cash advances. In particular, Heidi J. Sorvino, Esquire who will serve as Debtor's lead bankruptcy counsel, has considerable knowledge of the supermarket and grocery

store industry, including prior experience in supermarket bankruptcy cases. In connection with services rendered prior to the Petition Date, including preparation for the commencement of this Chapter 11 case, W&W has become familiar with the Debtor's circumstances and financial affairs.

32. W&W has the necessary background to deal effectively with the many legal issues and problems that may arise in the context of the Debtor's Chapter 11 case, and is well-qualified and uniquely able to represent the Debtor in this Chapter 11 case in an efficient and timely manner.

33. For the foregoing reasons, and as more fully set forth in the *Application Pursuant to Section 327(a) of the Bankruptcy Code for Authorization to Retain White and Williams LLP as Attorneys to the Debtor Nunc Pro Tunc to Petition Date* and the supporting Affidavit of Heidi J. Sorvino, filed with the application, the Debtor believes that the retention and employment of W&W in connection with this Chapter 11 case is in the best interests of the Debtor, its creditors, and all parties in interest, and should be approved in all respects.

## IV.  LOCAL RULE 1007-4 STATEMENTS

34. The following statements are provided pursuant to Local Rule 1007-4:

| | |
|---|---|
| L.B.R. 1007-4(a)(i): | The Debtor is a small business debtor within the meaning of Section 101(51D) of the Bankruptcy Code. |
| L.B.R. 1007-4(a)(ii): | The Debtor is not a single asset real estate debtor within the meaning of Section 101(51B) of the Bankruptcy Code. |
| L.B.R. 1007-4(a)(iii): | *See* Section I and II above. |
| L.B.R. 1007-4(a)(iv): | Not applicable. |
| L.B.R. 1007-4(a)(v): | Not applicable. |
| L.B.R. 1007-4(a)(vi): | Official Form 204 filed with the Debtor's voluntary petition for relief under Chapter 11 provides the contact information for each of the holders of the 20 largest general unsecured claims. |
| L.B.R. 1007-4(a)(vii): | Schedule D filed with the Debtor's voluntary petition for relief under Chapter 11 provides the contact information for each of the holders of the 5 largest secured claims. |
| L.B.R. 1007-4(a)(viii): | The Schedules and Statement of Financial Affairs filed with the Debtor's voluntary petition for relief under Chapter 11 provide a summary of the Debtor's assets and liabilities. |
| L.B.R. 1007-4(a)(ix): | Not applicable. |

| | |
|---|---|
| L.B.R. 1007-4(a)(x): | The Debtor's bank accounts as identified on Schedule A/B filed with the Debtor's voluntary petition for relief under Chapter 11 have been restrained. |
| L.B.R. 1007-4(a)(xi): | The Debtor leases the premises located at: 259-11 Union Turnpike, Glen Oaks, New York 11004. |
| L.B.R. 1007-4(a)(xii): | The Debtor's significant assets are located at the Debtor's Store and its books and records are located at the Debtor's Store or at the following locations:<br><br>1. MI Tax<br>320 Post Ave. #107<br>Westbury, NY 11590<br><br>The Debtor does not have any assets outside the territorial limits of the United States. |
| L.B.R. 1007-4(a)(xiii): | Part 3 of the Statement of Financial Affairs filed with the Debtor's voluntary petition for relief under Chapter 11 provides a list of pending actions against the Debtor.  Each of these actions was filed by a MCA Company to enforce purported rights under MCA Agreements except the following:<br><br>1. *Durso, et al. v. Jar 259 Food Corp.*<br>(E.D.N.Y. 21-cv-00551)<br>The relief sought by plaintiff(s) in this action is: recovery of contributions purportedly owed under the Employee Retirement and Income Security Act of 1974.<br><br>2. *Richard Ball v. Jar 259 Food Corp.*<br>(NY Sup. 909645/21)<br>The relief sought by plaintiff(s) in this action is: recovery of penalties for purported violation of the Agriculture and Markets Law.<br><br>3. *American Express Travel v. Jar 259 Food Corp.*<br>(NY Sup. 031821/34)<br>The relief sought by plaintiff(s) in this action is: collection on credit card debt.<br><br>4. *Jose Aguirre, et al., v. Jar 259 Food Corp.*<br>(E.D.N.Y. 21-cv-00191)<br>The relief sought by plaintiff(s) in this action is: recovery of purported unpaid wages and overtime premiums. |

|  | |
|---|---|
|  | 5. *Raymond Lugo v. Jar 259 Food Corp.* (NY Sup. 714942/2018) The relief sought by plaintiff(s) in this action is: recovery based on personal injury claims.<br><br>6. *American Express Travel v. Jar 259 Food Corp.* (NY Sup. 651816/2021) The relief sought by plaintiff(s) in this action is: collection on credit card debt.<br><br>7. Key Food Stores Co-Operative, Inc. v. Jar 259 Food Corp. (NY Sup. 720978/2021) The relief sought by plaintiff(s) in this action is: collection on promissory note debt |
| L.B.R. 1007-4(a)(xiv): | The Debtor's Store has been operated by Key Food since March 2020.  I intend to manage the Debtor's operations following the filing of the Debtor's voluntary petition for relief under Chapter 11. |
| L.B.R. 1007-4(a)(xv): | Not applicable. |
| L.B.R. 1007-4(a)(xvi): | The Debtor does not intend to pay officers or directors for services for the 30-day period following the filing of the Debtor's voluntary petition for relief under Chapter 11. |
| L.B.R. 1007-4(a)(xvii): | Not applicable. |
| L.B.R. 1007-4(a)(xviii): | Not applicable. |
| L.B.R. 1007-4(a)(xix): | Schedule A/B filed with the Debtor's voluntary petition for relief under Chapter 11 provides a list of the Debtor's bank accounts, which are in the Debtor's name.  The Debtor intends to close these accounts and open a single debtor-in-possession account. |

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: February 18, 2022

_____
Amandeep Singh