**WHITE AND WILLIAMS LLP**
Heidi J. Sorvino, Esq.
James C. Vandermark, Esq.
Andrew E. Arthur, Esq.
7 Times Square, Suite 2900
New York, NY 10036
(212) 244-9500
sorvinoh@whiteandwilliams.com
vandermarkj@whiteandwilliams.com
arthura@whiteandwilliams.com

*Proposed Counsel for Debtor and Debtor-in-Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| JAR 259 FOOD CORP., | Case Nos. 22-40304 (JMM) |
| Debtor. | |

### DEBTOR'S MOTION TO ENFORCE THE AUTOMATIC STAY
### PURSUANT TO SECTIONS 105 AND 362 OF THE BANKRUPTCY CODE

Jar 259 Food Corp., as debtor and debtor-in-possession in this Chapter 11 Subchapter V case, (the **"Debtor"**) hereby moves pursuant to Sections 105 and 362 of Title 11 of the United States Code (the "**Bankruptcy Code**"), for an Order enforcing the automatic stay under 362(a) of the Bankruptcy Code (the **"Automatic Stay"**). In support of this Motion, the Debtor relies upon the Declaration of Amandeep Singh (the "**Singh Declaration**") and states as follows:

### PRELIMINARY STATEMENT

1. Panthers Capital, LLC ("**Panthers**"), Benjamin Isaacov ("**Isaacov**"), and certain known and unknow affiliates and related parties (the "**Affiliates**" and together with Panthers and Isaacov, collectively, the "**Isaacov MCAs**"), in efforts to collect debts purportedly owed by the Debtor have harassed and threatened harm to the Debtor as well as the Debtor's officers and their

28602993v.2

family members. The threats by the Isaacov MCAs have occurred both before February 18, 2022 (the "**Petition Date**") as well as after the Petition Date. These threats have risen to the level where Amandeep Singh, the Debtor's Vice President, believes that the Isaacov MCAs may do serious harm to him and his family members.

2. As set forth in the Singh Declaration, the direct threats and thinly veiled insinuations by the Isaacov MCAs are terrifying. They have caused Mr. Singh and his family significant anxiety and emotional distress and are a significant impediment to the Debtor's efforts in these Chapter 11 proceedings. To avoid further harassment and the potential threatened escalation of actions by the Isaacov MCAs, the Debtor believes it is necessary to seek the immediate intervention of the Court and requests the entry of an Order to enforce the Automatic Stay, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**").

## JURISDICTION

3. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this case in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief sought in this Motion are Sections 105 and 362 of the Bankruptcy Code.

## BACKGROUND

4. The Debtor is the owner of a grocery and food retail store located at 259-11 Union Turnpike, Glen Oaks, New York 11004 (the "**Debtor's Store**"). Mr. Singh and his wife, Kuljit Kaur, founded the Debtor and began to operate the Debtor's Store in 2018. Since its beginning, the Debtor's Store has been a vibrant neighborhood market emphasizing an extensive selection of fresh, naturel, and organic products, prepared foods, and hard-to-find specialty and gourmet offerings, along with a full assortment of conventional groceries.

5.      In the year prior to the Petition Date, the Debtor faced extreme financial hardship and was unable to pay its expenses and debt obligations. This necessitated additional borrowing, including from purported merchant cash advance companies (the "**MCA Companies**").

6.      The MCA Companies are not traditional lenders. They thrive on borrowers desperate to maintain their businesses and livelihoods but unable to obtain traditional financing. MCA Companies take advantage of individuals and small businesses, such as the Debtor, by purporting to purchase a percentage of future receivables but then structuring the transaction as a loan with interest rates far beyond that permissible under state law. As Bloomberg News has reported, the merchant cash advance industry is "essentially payday lending for businesses," and "interest rates can exceed 500 percent a year, or 50 to 100 times higher than a bank's."[1]

7.      Prior to the Petition Date, the Debtor borrowed $200,000.00 from Panthers, which is an MCA Company. Based on information and belief, Isaacov is the Chief Executive Officer of Panthers and owns or holds interests in Panthers, Tiger Capital Group LLC (**"Tiger"**), and Legacy Capital 26, LLC (**"Legacy"**). Based on information and belief, Tiger and Legacy are Affiliates.

8.      Prior to the Petition Date, Isaacov came to the Debtor's Store and demanded payment of the amounts borrowed by the Debtor from Panthers and the Affiliates. Mr. Singh was unable to pay the amount demanded. As a result, Isaacov threatened to harm to Mr. Singh and his family. Isaacov stated that he was someone to fear, that he had been banned in several countries for his past actions, and that he would do what was necessary to get his money one way

---

[1] Zeke Faux and Dune Lawrence, *Is OnDeck Capital the Next Generation of Lender or Boiler Room?*, BLOOMBERG (Nov. 13, 2014, 6:07 AM), https://www.bloomberg.com/news/articles/2014-11-13/ondeck-ipo-shady-brokers-add-risk-in-high-interest-loans.

or another. Mr. Singh understood his statement to mean he would physically harm him and his family if the money owed to the Isaacov MCAs was not paid in full.

9. Isaacov has a history of threatening individuals that have borrowed from his MCA Companies – even to the point of suggesting they should be murdered if they did not pay amounts owed. This includes correspondence calling borrowers "thief's", referring to them as Ashkenazi Jews, and insinuating they will be murdered if debts were not paid.

10. After the Petition Date, Mr. Singh received several calls made on behalf of Panther demanding immediate payment of the amounts borrowed by the Debtor. As Mr. Singh is unable to pay the amounts demanded, these calls escalated to implicitly and explicitly threatening harm to Mr. Singh, his family, and the Debtor's Store, including:

   a. On March 8, 2022, Mr. Singh received an initial call (the "**First Call**") from Panthers demanding payment of the amounts borrowed by the Debtor;

   b. During the First Call, the caller threatened to harm Mr. Singh and his family if the amounts were not paid and further stated that he knew where Mr. Singh's family lived and that he would harm them there if amounts borrowed by the Debtor were not paid;

   c. Mr. Singh concluded the First Call by telling the caller that the Debtor was in bankruptcy and all matters would be dealt with by the lawyers in the bankruptcy case and then hung up on the caller;

   d. Again, on March 8, 2022, shortly after the First Call, Mr. Singh received a second call (the "**Second Call**") from the same individual representing Panthers demanding payment of the amounts that the Debtor borrowed from Panthers;

-4-

-5-

  e. During the Second Call, the caller said that his name was "Larry"; he reiterated that he represented Panthers, that he had ways to "make people pay" the amounts owed to Panthers, and insinuated that Panther or other "people" were "going to go after [Mr. Singh]";

  f. In fear, Mr. Singh concluded the Second Call by telling Larry that he would try to figure something out and call him the next day (March 9, 2022) by 1:00 pm;

  g. Mr. Singh did not call Larry back the next day;

  h. On March 9, 2022, Larry called Mr. Singh a third time (the "**Third Call**") and demanded payment of amounts borrowed by the Debtor;

  i. During the Third Call, Larry denied that he called on behalf of Panthers during the First and Second Calls;

  j. During the Third Call, Larry said that the Debtor had borrowed over $1 million dollars and was demanding payment but refusing to specifically state the names of the lenders – instead, Larry told Mr. Singh not to play stupid and that he knew the lenders; and

  k. During the Third Call, Mr. Singh again told Larry that the Debtor was in bankruptcy and that the lawyers would address the claims and Larry responded stating that he did not "give a f*** about [] lawyers" and would do things the "hard way" until he collected the amounts owed by the Debtor.

  11. Mr. Singh does not have the ability to personally pay the debts owed by the Debtor to Panthers or any of the Isaacov MCAs. He and his family are justifiably terrified by the almost unfathomable harassment and threats by the Isaacov MCAs. Mr. Singh fears the lengths

that the Isaacov MCAs may go to collect the debts allegedly owed by the Debtor. This includes actions they may take against the Debtor's Store and what they may do to his family.

## BASIS FOR RELIEF REQUESTED

12. Section 362(a) imposes a stay on "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of [the debtor's bankruptcy case]." 11 U.S.C.§ 362(a)(6).

13. The Court has ample authority pursuant to Sections 105 and 362 of the Bankruptcy Code to enforce and prevent future violations of the Automatic Stay. As the Second Circuit Court of Appeals has stated, section 105(a) should be "construed liberally to enjoin [actions] that might impede the reorganization process." *Official Comm. of Unsecured Creditors v. PSS S.S. Co. (In re Prudential Lines Inc.),* 928 F.2d 565, 574 (2d Cir. 1991) (quoting *In re Johns-Manville Corp.,* 837 F.2d at 93 (2d Cir. 1988)), cert. denied 502 U.S. 821 (1991); *see also Keene Corp. v. Acstar Ins. Co. (In re Keene Corp.),* 168 B.R. 285, 292 (Bankr. S.D.N.Y. 1994), appeal dismissed, 182 B.R. 379 (S.D.N.Y. 1995) (pursuant to section 105, a court "can enjoin an activity that threatens the reorganization process or impairs the court's jurisdiction with respect to a case before it").

14. It is well-established that a clear demand for payment of a prepetition debt accompanied by coercion in the form of threatened action or some other consequence for nonpayment, or harassment to induce payment constitute a willful, flagrant violation of the automatic stay. *In re Bell, No. 14-60510,* 2014 Bankr. LEXIS 4717, at *13 (Bankr. N.D.N.Y. Nov. 13, 2014); *Connor v. Countrywide Bank, N.A. (In re Connor),* 366 B.R. 133, 138 (Bankr. D. Haw. 2007) ("A creditor may not 'provide information' in a manner which is threatening, harassing or coercive.") (citing *Sears Roebuck & Co. v. Epperson (In re Epperson)*, 189 B.R. 195, 198-99 (E.D. Mo. 1995)).

15. Here, the Isaacov MCAs clearly and repeatedly demanded payment of the prepetition debts owed by the Debtor. With knowledge of the Debtor's bankruptcy, the Isaacov MCAs have taken extreme actions, clearly designed to coerce the payment of the loans made by the Isaacov MCAs to the Debtor. The continued harassment and threats against the Debtor, Mr. Singh, and Mr. Singh's family are egregious violations of the Automatic Stay and must stop.

## RESERVATION OF RIGHTS

16. Notwithstanding the foregoing, the Debtor expressly reserves all (and does not hereby waive any) of its (a) rights, claims, counterclaims, defenses, interests, actions and remedies related as well as unrelated to the violations of the Automatic Stay by the Isaacov MCAs, including a claim for damages under section 362(k) of the Bankruptcy Code, (b) the right to a judicial determination of the amount(s) due and owing with regard to damages caused by the Isaacov MCAs, including for violations of the Automatic Stay, (c) the right to a judicial resolution of all issues implicated by claims and/or contracts between the Debtor and the Isaacov MCAs, (d) the right to amend, modify or supplement this Motion in response to, or as a result of, any submission by any party-in-interest and (e) the right to adopt any other pleadings filed by any other party related to the Debtor's claims or this Motion (collectively, the "**Reservation of Rights**").

## NO PRIOR REQUESTS

17. Pursuant to Local Rule 9077-1(c), no previous application for the relief sought herein has been made to this or to any other court.

## NOTICE

18. Notice of the Motion will be given to the following parties, or, in lieu thereof, their counsel: (a) the Office of the U.S. Trustee for the Eastern District of New York; (b) Yann Geron,

as the Subchapter V Trustee; (c) Panthers; (d) Benjamin Isaacov; (e) Tiger, (f) Legacy, and (g) all parties requesting service through the Court's CM ECF system. The Debtor submits that, in light of the nature of the relief requested, such service shall constitute good and sufficient notice thereof, and no further notice with respect to the relief requested in the Motion shall be required.

WHEREFORE, the Debtor respectfully requests entry of the Proposed Order to (a) enforce the automatic stay and protect the Debtor as well as the Debtor's officers and their families from the improper harassments and threats by the Isaacov MCAs, (b) approve the Reservation of Rights, and (c) grant such other and further relief as this Court deems just and proper.

Dated:   March 11, 2022                                    WHITE AND WILLIAMS LLP

                                                            */s/ Heidi J. Sorvino*
                                                           Heidi J. Sorvino
                                                           James C. Vandermark
                                                           Andrew E. Arthur
                                                           7 Times Sq., Suite 2900
                                                           New York, NY 100036
                                                           sorvinoh@whiteandwilliams.com
                                                           vandermarkj@whiteandwilliams.com

                                                           *Proposed Counsel to Debtor and Debtor-in-Possession*