| | |
|---|---|
| **LaMONICA HERBST & MANISCALCO, LLP**<br>3305 Jerusalem Avenue, Suite 201<br>Wantagh, New York 11793<br>Telephone: (516) 826-6500<br>Joseph S. Maniscalco, Esq.<br>*Counsel to The LCF Group Inc.*<br>*a/k/a Last Chance Funding Group, Inc.* | Hearing Date:   June 8, 2022, at 10:00 a.m.<br>Objections Due: June 1, 2022 |

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
In re:

       JAR 259 FOOD CORP.,

             Debtor.
---------------------------------------------------------------X

Chapter 11

Case No. 22-40304 (JMM)

### NOTICE OF HEARING ON MOTION OF LAST CHANCE FUNDING FOR AN ORDER PURSUANT TO 11 U.S.C. § 1112(b) CONVERTING THE DEBTOR'S CASE TO A CASE UNDER CHAPTER 7

**PLEASE TAKE NOTICE** that, on **June 8, 2022, at 10:00 a.m.,** or as soon thereafter as counsel may be heard, a hearing ("Hearing") will be conducted before the Honorable Jil Mazer-Marino, United States Bankruptcy Judge, Eastern District of New York, on the motion ("Motion") of The LCF Group, Inc. a/k/a Last Chance Funding Group, Inc. ("Last Chance Funding"), by its undersigned counsel, seeking enter of an Order: (I) pursuant to sections 105(a) and 1112(b) of Title 11 of the United States Code ("Bankruptcy Code") and Rules 1017(f) and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), converting the Debtor's case from a case under Chapter 11 to a case under Chapter 7 of the Bankruptcy Code; and (II) granting such other and further relief as the Court deems just and proper.

**PLEASE TAKE FURTHER NOTICE,** that the Hearing will be conducted by Zoom for Government®. Any party that wishes to participate at the Hearing must register with eCourt Appearances two days in advance of the Hearing. Instructions and the link to register using eCourt Appearances may be found here: https://www.nyeb.uscourts.gov/registering-remote-

hearing-appearance-using-ecourt-appearances. See Judge Mazer-Marino's chambers page on the Court website for further information at: https://www.nyeb.uscourts.gov/content/judge-jil-mazer-marino.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion must be in writing, conform with the Bankruptcy Code and the Bankruptcy Rules, state with particularity the grounds therefor and be filed with the Bankruptcy Court no later than **June 1, 2022, at Noon** as follows: (I) through the Court's CM/ECF system, which may be accessed through the internet at the Court's website at https://www.nyeb.uscourts.gov/ and in portable document format (PDF) using Adobe Exchange Software for conversion; or (II) if a party is unavailable to file electronically, such party shall submit the objection in PDF format on portable media in an envelope with the case name, case number, type and title of document, document number to which the objection refers and the file name on the outside of the envelope. Copies of any objections should also be served upon LaMonica Herbst & Maniscalco, LLP, counsel for Last Chance Funding, 3305 Jerusalem Avenue, Wantagh, NY 11793, Attn: Joseph S. Maniscalco, Esq.

Dated: May 6, 2022
       Wantagh, New York

                                                  **LAMONICA HERBST & MANISCALCO, LLP**
                                                  Attorneys for The LCF Group, Inc.
                                                  a/k/a Last Chance Funding Group, Inc.

                                 By:    *s/ Joseph S. Maniscalco*
                                                  Joseph S. Maniscalco, Esq.
                                                  3305 Jerusalem Avenue, Suite 201
                                                  Wantagh, New York 11793
                                                  (516) 826-6500
                                                  jsm@lhmlawfirm.com

| | |
|---|---|
| **LaMONICA HERBST & MANISCALCO, LLP**<br>3305 Jerusalem Avenue, Suite 201<br>Wantagh, New York 11793<br>Telephone: (516) 826-6500<br>Joseph S. Maniscalco, Esq.<br>*Counsel to The LCF Group Inc.*<br>*a/k/a Last Chance Funding Group, Inc.* | **Hearing Date:   June 8, 2022, at 10:00 a.m.**<br>**Objections Due: June 1, 2022** |

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
In re:

   JAR 259 FOOD CORP.,

       Debtor.
---------------------------------------------------------------X

Chapter 11

Case No. 22-40304 (JMM)

### MOTION OF LAST CHANCE FUNDING FOR AN ORDER PURSUANT TO 11 U.S.C. § 1112(b) CONVERTING THE DEBTOR'S CASE TO A CASE UNDER CHAPTER 7

   The LCF Group, Inc. a/k/a Last Chance Funding Group, Inc. ("Last Chance Funding"), a party-in-interest of the bankruptcy estate of Jar 259 Food Corp. ("Debtor"), by its counsel, LaMonica Herbst & Maniscalco, LLP ("LHM"): (I) pursuant to sections 105(a) and 1112(b) of Title 11 of the United States Code ("Bankruptcy Code") and Rules 1017(f) and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), converting the Debtor's case from a case under Chapter 11 to a case under Chapter 7 of the Bankruptcy Code; and (II) granting such other and further relief as the Court deems just and proper and, in support thereof, respectfully states:

### PRELIMINARY STATEMENT

   Conversion of this case from Chapter 11 to Chapter 7 is appropriate and necessary. The Debtor has no business operations and, upon information and belief, operated for one day to obtain the benefits of the subchapter V election. That is bad-faith, and the Debtor should not be rewarded for this behavior. It is clear the Debtor is in liquidation mode, but desires to control the

flow of information to creditors, the Office of the U.S. Trustee, and other parties in interest so as not to disclose the whereabouts of hundreds of thousands of dollars and other assets.[1]

There is no dispute the Debtor is in liquidation mode. There is no dispute the Debtor seeks to commence litigations against Merchant Cash Advance Companies (collectively, the "MCA's") in a concerted effort to advance the legal theory espoused by its counsel throughout the country. It appears the Debtor's strategy is aimed more at what Debtor's counsel wants and desires than what is in the best interest of creditors. For instance, at each turn, Debtor's counsel will remind the Court and creditors that one of the partners at White & Williams LLP has testified before Congress about the merchant cash advance industry as if that statement has any relevance or meaning to this case, yet it is used over and over and even somewhat repeated in a recent "form styled" complaint filed against Last Chance Funding.[2]

There are insufficient funds to confirm a plan. In fact, Last Chance Funding has been advised that the Debtor's security agreements with Newbank prevent it from even pursuing the claims it filed against Last Chance Funding. Therefore, the exact purpose of this bankruptcy appears to be aimed at one thing – to have White & Williams LLP exhaust its retainer and continue with its personal vendetta against the merchant cash advance industry generally. In addition, the cost of continuing in subchapter V will have no material benefit to creditors and will only further diminish the assets of this estate. Conversion is in the best interests of creditors and that is the standard and test to apply. In chapter 7, a Chapter 7 trustee can complete the liquidation, conduct an investigation and, if appropriate, commence litigation for the benefit of

---

[1] The principal of the Debtor previously declared that the Debtor was a vibrant community grocery store yet had $20,000 in inventory on the Filing Date drawing a reasonable conclusion this was a concerted "bust out" move, perhaps to the Debtor's affiliates.

[2] A clear read of the complaint against Last Chance Funding reveals it is designed to be a document of salacious irrelevant hyperbole in violation of Rule 12(f) of the Federal Rules of Civil Procedure. See generally Adv. Pro. No. 22-01021, Dkt. No. 1.

creditors. For these and the reasons set forth more fully below, Last Chance Funding submits that the Court should convert the Debtor's case to Chapter 7.

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory predicates for the relief requested in the Motion include sections 105(a) and 1112(b) of the Bankruptcy Code, and Bankruptcy Rules 1017(f) and 9014.

## BACKGROUND

### A. The Bankruptcy Filing

5. On February 18, 2022 ("Filing Date"), the Debtor filed a voluntary petition ("Petition") for reorganization under Chapter 11 of the United States Code ("Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of New York ("Bankruptcy Court"). On the Filing Date, it is believed that the Debtor was not even operating.[3] According to the Debtor, it had previously entered into an agreement with Key Food Stores Co-Operative, Inc. ("Key Food") to take over its operations and effectively wind down its operations. According to the Debtor, this agreement with Key Food occurred in March, 2020, and continued until the Filing Date on February 18, 2022. The Petition was executed by Singh in his capacity as Vice President. See Dkt. No. 1.

6. From the outset, the Petition was identified as a deficient filing. See Dkt. No. 7. As of the date hereof, the Petition is still deficient, and the case has been lingering in subchapter

---

[3]    The Debtor represented at paragraph 11 of its Complaint against Last Chance Funding that, "Since March 2020….Key Food…took over operations of the Debtor's Store" See Adv. Pro. No. 22-01021, Dkt. No. 1 at ¶ 17.

V for almost three (3) months. The case is a wasting asset of fees with no real likelihood of success.

7. Debtor's counsel received a $200,000 retainer agreement and never sought to file a Chapter 11 reorganization plan, but rather a liquidation of a business with no assets. Routinely, Debtor's counsel has represented to the Court that the case was filed "to liquidate the Debtor's assets, but primarily to pursue the litigations against the MCA's". As such, the entire strategy has been disclosed. This is an improper use of subchapter V but rather a better use of Chapter 7 whereby an independent third party can review, investigate, and determine whether there are claims to pursue. Allowing the Debtor to only pursue claims against third parties, without looking inward at its own conduct and behavior is like having the "fox guard the henhouse".

8. Last Chance Funding believes the Debtor elected not to file a chapter 7 liquidation case to avoid the scrutiny that would follow from a Chapter 7 Trustee into the Debtor's finances, the financial underpinnings of the principals, the disposition of money and transfers of assets, possibly to its Affiliates. In subchapter V, the Debtor and its principals and Affiliates can better control the process while they pursue their feigned litigation attempt. This distraction technique is quite telling. And since the Filing Date, numerous parties, including Last Chance Funding, have consistently requested document, information and disclosure of financial information from the Debtor, all of which have gone ignored.

9. Equally as important, Newbank, as the secured creditor, and counsel to Key Food, have consistently reiterated on the record that the Debtor does not have authority or standing to pursue any Section V avoidance claims as those claims belong to Key Food and/or the secured creditor under its pre-petition lending agreements. Therefore, it is puzzling what this case is doing in subchapter V, and what money is being spent, or the authority for the use of that money.

10. To make matters worse, the Debtor has done nothing in the case. It has done the bare minimum necessary and **only** filed a complaint against Last Chance Funding after Last Chance Funding sought an Order of the Court under Rule 2004.[4] It has threatened to file "numerous other MCA complaints", but has yet to advance that position.

11. The Debtor elected to file this case under subchapter V of Chapter 11 of the Bankruptcy Code, the Small Business Reorganization Act. This election is suspicious, at best, as this Debtor was apparently not operating and effectively filed the case on a Friday evening and was closed the next day. That is improper.

12. Yann Geron was appointed as the Subchapter V Trustee for this Debtor ("Subchapter V Trustee").

B. **The Debtor's Deficiencies**

13. As of the Petition Date, the Debtor's case was listed as deficient. That was February 18, 2022. The Debtor has yet to comply with its basic obligations and file the necessary documents to remove the deficiencies.

14. As of today, Debtor's counsel has not been retained and there are serious questions about its retention. Debtor's counsel was paid from Affiliates of the Debtor and has not provided the Court, the U.S. Trustee, or any party in interest with the necessary documents to make an informed decision on its retention.

15. Debtor has not filed any operating reports with the Court.

16. Debtor's counsel has repeatedly indicated that it has not reviewed the Debtor's pre-petition financial documents and bank statements and cancelled checks. It that is true, one must question how the Debtor and its counsel were able to sufficiently answer all of the questions contained in the Schedules and the Statement of Financial Affairs.

---

[4] LCF will be filing a motion to dismiss the complaint filed against it.

17. Debtor's counsel has indicated that it never conducted a preference analysis as to the principals and insiders and a fraudulent conveyance analysis as to the principals and insiders.

18. Debtor does not have any ongoing operations and merely wants to pursue litigation claims against MCA companies. This is an improper use of subchapter V, and the case should be converted to Chapter 7.

## RELIEF REQUESTED AND BASIS FOR RELIEF

### I. Cause Exists To Convert This Case From Chapter 11 To Chapter 7 Pursuant To Section 1112(b)(1) Of The Bankruptcy Code

19. Section 1112(b)(1) of the Bankruptcy Code provides that "the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . . ." 11 U.S.C. § 1112(b)(1). The language of section 1112(b)(1) is mandatory such that, if cause is found, the Court must convert or dismiss the case unless unusual circumstances can be established that demonstrate the conversion or dismissal is not in the best interests of the estate. 11 U.S.C. § 1112(b)(1) and (b)(2); see In re Babayoff, 445 B.R. 64, 76 (Bankr. E.D.N.Y. 2011); In re Acme Cake Co., Inc., 495 B.R. 212, 222 (Bankr. E.D.N.Y. 2010). "Bankruptcy courts have broad discretion in determining whether cause exists for conversion or dismissal under section 1112(b)." In re Red Bull Taxi Inc., 2017 Bankr. Lexis 1209 *5 (Bankr. S.D.N.Y. May 3, 2017) (citations omitted).

20. Section 1112(b)(4) lists examples of "cause," but it is well recognized that the list contained in section 1112(b)(4) is "illustrative, not exhaustive." C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship), 113 F.3d 1304, 1311 (2d Cir. 1997); see Babayoff, 445 B.R. at 76. As the House Report accompanying the Bankruptcy Act of 1978 explained, "[t]he Court will be able to consider other factors as they arise, and to use its equitable powers to reach an

appropriate result in individual cases." H.R. REP. NO. 95-595, 95th Cong., 1st Sess. at 405–06 (1978). The statute reflects Congress' determination that a case should not be permitted to linger in Chapter 11 when there are grounds for conversion. See In re Ameribuild Const. Mgmt., Inc., 399 B.R. 129, 132 (S.D.N.Y. Bankr. 2009) (citing 7 Collier on Bankruptcy, ¶ 1112.04 (15th ed. rev. 2005)).

21. Clearly, it is in the best interest of the creditors for the case to be in Chapter 7 as the Debtor is not operating, has no ability to confirm a plan, its counsel has not yet been retained, it is pursuing litigation claims with no money, and substantial transfers presumably exist against the principals, insiders, and Affiliates. As such, cause exists to convert this case to Chapter 7 and conversion is in the best interest of the estate and its creditors.

### A. Cause Exists Under Section 1112(b)(4)(M) Of The Bankruptcy Code

22. It is widely recognized that a chapter 11 case may be converted where a confirmable plan of reorganization cannot be effectuated. See In re Babayoff, 445 B.R. at 76 ("Courts recognize that cause under Section 1112(b) may be established where the record shows that the debtor cannot effectuate a plan."); In re FRGR Managing Member, LLC, 419 B.R. 576, 582 (Bankr. S.D.N.Y. 2009). "A debtor is unable to effectuate a plan where it lacks the ability to formulate a plan or to carry one out." See In re Babayoff, 445 B.R. at 76 (internal quotation and citation omitted).

23. In this case, there is no money in the estate, no assets to liquidate and merely litigation claims to pursue. There is a secured creditor - Newbank - who is owed almost $2MM and has asserted that all of the Debtor's assets and litigation claims are secured to it under its pre-petition lending documents. There is no ability to pay the subchapter V trustee and there are no operations of this Debtor. The Affiliates have their own financial problems and concerns and no

ability to contribute to a plan. Absent full consent of the parties, it is highly unlikely this Debtor will be successful at confirming a plan.

24.     Although the bar date has not yet passed, and the full amount of priority claims is not yet known. As of the date hereof, the following claims exist as filed

| | | |
|---|---|---|
| Secured Claim of Newbank | $1,916,667 | Claim 7 |
| Priority claim NYC Dept of Finance | $   40,506 | Claim 8 |

25.     In addition to the above amounts, other priority claims may be outstanding and administrative claims have accrued on account of United States Trustee fees, subchapter V trustee fees commissions and other professional fees. In addition, there are millions of dollars in claims owed to unsecured creditors or MCA entities.

26.     Plainly, there are insufficient funds to confirm a plan and this alone is cause to convert this case to Chapter 7. See, e.g., In re FRGR Managing Member, LLC, 419 B.R. 576. With such a simple case, one would think that the Debtor would have already filed a proposed plan if it had the ability to do so. It has not. The reason is simple and straightforward – Debtor does not have the ability to confirm a plan.

### B.     Cause Exists Under Section 1112(b)(4) Of The Bankruptcy Code

27.     Cause to convert this case to Chapter 7 also exists under section 1112(b)(4)(A) because there is a continuing diminution of the estate and there is no reasonable likelihood of rehabilitation. In establishing cause under section 1112(b)(4)(A) of the Bankruptcy Code, a court must "first determine whether the estate is suffering substantial or continuing losses or diminution, before also deciding whether there is a reasonable likelihood of rehabilitation." In re 347 Linden LLC, 11-CV-1990 (KAM), 2011 U.S. Dist. LEXIS 78843, at *15 (E.D.N.Y. July 20, 2011) (internal quotations, alterations and citation omitted).

28.	To show continuing loss or diminution of assets of the estate, "[a]ll that need be found is that the estate is suffering some diminution in value." In re Kanterman, 88 B.R. 26, 29 (S.D.N.Y. 1988); see In re AdBrite Corp., 290 B.R. 209, 215 (Bankr. S.D.N.Y. 2003) ("[A] negative cash flow postpetition and an inability to pay current expenses satisfy the elements of §1112(b)(1)." (citations omitted)); In re 3868-70 White Plains Road, Inc., 28 B.R. 515, 518 (Bankr. S.D.N.Y. 1983) (highlighting fact that "debtor's cash flow is insufficient to pay its current obligation on [its] first mortgage" which debtor had failed to pay during pendency of case, as grounds to dismiss under section 1112(b) of the Bankruptcy Code).

29.	Here, Debtor has no ongoing operations and no cash flow. Yet, administrative costs accrue. Debtor has no money no assets, all of its inventory is gone, equipment had no value and there is nothing for the Debtor to use to fund a plan. Instead, Debtor appears to have taken millions of dollars within one year of the Filing Date and transferred it to Affiliates and the principals and insiders. A review of this case reveals a concerted planned bust out of the assets and money advanced to Debtor by the MCA's. Accordingly, the Trustee submits that the first prong of section 1112(b)(4)(A) of the Bankruptcy Code is met.

30.	The second prong of section 1112(b)(4)(A) of the Bankruptcy Code requires an "absence of a reasonable likelihood of rehabilitation". 11 U.S.C. § 1112(b)(4)(A). In this context, "rehabilitation" is not synonymous with "reorganization" which may include liquidation. Rather "rehabilitation means to put back in good condition and reestablish on a sound basis . . . It signifies that the debtor will be reestablished on a secured financial basis, which implies establishing a cash flow from which its current obligations can be met." In re AdBrite Corp., 209 B.R. at 216 (citations omitted).

31. Based on the record in this case and the filings before the Court and undisputed representations of counsel, there is nothing to rehabilitate and no feasible plan. Instead of a continuing diminution in value, the case should be converted to Chapter 7 now. A Chapter 7 Trustee has the same unique experience and knowledge as the Debtor and there is nothing the Debtor brings to the case that would justify it retaining the case in Chapter 11.

32. Since there is no business to rehabilitate, there is no reasonable likelihood of rehabilitation of the Debtor.

33. Accordingly, this case should be converted to Chapter 7 pursuant to section 1112(b)(1) of the Bankruptcy Code.

### C. There Are No Unusual Circumstances Establishing That Conversion is Not in the Best Interests of Creditors and the Estate

34. Under section 1112(b)(2) of the Bankruptcy Code, after the movant shows cause, the burden shifts to the debtor and other parties in interest to show that there are "unusual circumstances establishing that conversion or dismissal is not in the best interests of creditors and the estate." 11 U.S.C. § 1112(b)(2). See also Gateway Access Solutions, Inc., 374 B.R. 556 at 561 (Bankr. M.D. Pa. 2007) (after the movant shows cause, the burden shifts to the debtor to prove that there are unusual circumstances under Section 1112(b)(2)).

35. Section 1112(b)(2) provides that:

> (2) The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that
>
> > (A) there is a reasonable likelihood that a plan will be confirmed within the time frames established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and

10

> (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)--(i) for which there exists a reasonable justification for the act or omission; and (ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(2).

36. There are no unusual circumstances in this case that would establish that conversion is not in the best interests of the creditors and the estate. In fact, this case probably should never have been filed as a chapter 11 with a subchapter V election as the Debtor was not operating. And since the Debtor has continuously failed to cooperate with anyone in this case or turn over any documents, or clean up its deficient filings, the case should be converted to Chapter 7 liquidation so that a Trustee can conduct its investigation.

37. Accordingly, Last Chance Funding respectfully requests that this Court convert the Debtor's Chapter 11 case to a Chapter 7 case under section 1112(b)(1) of the Bankruptcy Code.

### D. Conversion is in the Best Interests of Creditors and the Estate

38. Under section 1112(b) of the Bankruptcy Code, the Court, in its discretion, must determine whether dismissal or conversion is in "the best interests of creditors." 11 U.S.C. § 1112(b); In re Hampton Hotel Investors, L.P., 270 B.R. 346, 359 (Bankr. S.D.N.Y. 2001). The conversion of this case is in the best interests of the Debtor's estate and its creditors. Indeed, "[c]onversion supports the Bankruptcy Code policy of vigorous maximization of the value of the economic enterprise." Id. at 82 (quotation and citation omitted). As the Babyoff court further explained,

> A trustee's ability to examine the estate as an independent fiduciary and administer it in an orderly fashion protects creditors, just as the benefits of bankruptcy protection benefitted the debtor. . . . Viewed another way, if the creditors are better served by the centralized collection and

11

> disbursement provided by the bankruptcy process, then conversion, rather than dismissal, is in the best interests of creditors and serves as the preferred remedy.

Id. (internal quotations, alterations and citations omitted).

39.    Conversion is in the best interest of the estate because the remaining work in this case (e.g., investigation, pursuit of litigation as warranted) can be done less expensively in a Chapter 7 where there will be no quarterly United States Trustee fees, no costs associated with preparing monthly operating reports and no costs associated with a plan process. And since Debtor's counsel has not even been retained, it is clear counsel will continue to slow process the case so as not to incur additional fees that may never be paid.

## NOTICE AND NO PRIOR REQUEST

40.    In accordance with Bankruptcy Rule 2002(f)(2), notice of this Motion will be served on: (a) the Debtor, through its counsel of record; (b) the United States Trustee; (c) all known creditors of the Debtor's estate; (d) any party in interest that has served a request for special notice or a notice of appearance pursuant to Bankruptcy Rule 2002; and (e) all government agencies and taxing authorities required to receive notice of proceedings under the Bankruptcy Rules.

41.    No prior application for the relief sought herein has been made by the Trustee to this or any other court.

**WHEREFORE**, for the foregoing reasons, Last Chance Funding requests that this Court convert this Chapter 11 case to a case under Chapter 7 and grant such other and further relief as this Court deems just and proper.

Dated: May 6, 2022
       Wantagh, New York

                               **LAMONICA HERBST & MANISCALCO, LLP**
                               Attorneys for The LCF Group, Inc.
                               a/k/a Last Chance Funding Group, Inc.

                   By:    *s/ Joseph S. Maniscalco*
                           Joseph S. Maniscalco, Esq.
                           3305 Jerusalem Avenue, Suite 201
                           Wantagh, New York 11793
                           (516) 826-6500
                           jsm@lhmlawfirm.com