UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>JAR 259 FOOD CORP.,<br><br>Debtor. | Chapter 7<br><br>Case No. 22-40304-jmm |

# SETTLEMENT AGREEMENT

This settlement agreement (the "Settlement Agreement") is made by and between Yann Geron (the "Trustee"), as chapter 7 trustee of the bankruptcy estate (the "Debtor's Estate") of Jar 259 Food Corp. (the "Debtor"), the above-captioned debtor, and Key Food Stores Co-Operative, Inc. ("Key Food"), and between the Trustee and NewBank (together the Trustee, Key Food and NewBank are referred to as the "Parties").

## RECITALS

A. On February 18, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court") [DE 1].

B. The Debtor elected to proceed under Subchapter V of Chapter 11. Therefore, no official committee of unsecured creditors was appointed or established in this case.

C. On February 22, 2022, the United States Trustee filed a Notice Appointing Yann Geron as the Subchapter V Trustee of the Debtor's case [DE 3].

D. The Debtor continued to operate its business and manage its property as a debtor in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108 from the Petition Date until September 29,

2022 when the Bankruptcy Court entered the Order Granting Motion to Convert Case to Chapter 7 (the "Conversion Order")[1] [DE 210].

E. On October 3, 2022, Yann Geron was appointed the Chapter 7 Trustee of the Debtor's estate [DE 211].

F. Prior to the Petition Date, the Debtor owned and operated a grocery and food retail store located at 259-11 Union Turnpike, Glen Oaks, New York, under certain agreements with Key Food, including but not limited to the following (collectively, the "Key Food Agreements"):

- A Membership Agreement dated October 5, 2015:
- A Cross-Corporate Guaranty whereby the Debtor guaranteed payment of the indebtedness of certain affiliates;
- A Guaranty dated 2020 which guaranteed the payment of a Promissory Note between Key Food and OM Vegetable Inc. in the original principal amount of $1,560,762.94;
- A Guaranty dated 2019 which guaranteed the payment of a Promissory Note between Key Food and OM Vegetable Inc. in the original principal amount of $636,000.12;
- An operating agreement dated March 1, 2020; and
- A Promissory Note dated 2021 in the original principal amount of $863,111.79.

G. Pursuant to the Key Food Agreements, the Debtor agreed to certain obligations, including, among other things, certain payments for goods and services provided by Key Food. Under the Key Food Agreements, the Debtor, as a member of the co-operative, was also entitled to certain patronage payments which Key Food calculated on an annual basis. Key Food has calculated the patronage payments owed to the Debtor to be $184,483.51 (the "Patronage Payment") and asserts an absolute right of recoupment or setoff in connection therewith.

[1] The Conversion Order granted the Motion of The LCF Group, Inc. a/k/a Last Chance Funding Group, Inc., seeking the entry of an Order: (I) pursuant to sections 105(a) and 1112(b) of Title 11 of the United States Code and Rules 1017(f) and 9014 of the Federal Rules of Bankruptcy Procedure, converting the Debtor's case from a case under Chapter 11 to a case under Chapter 7 of the Bankruptcy Code; and (II) granting such other and further relief as the Court deems just and proper [DE 81].

H. At the time that the Debtor ceased operations, it had no representative at its premises. In order to secure the funds on site, Key Food took possession of $22,873 (the "Removed Assets"). The Debtor, the Bankruptcy Court, the Trustee and all other interested parties were advised of this and that Key Food had retained control of the Removed Assets while negotiating a settlement with the Debtor and then with the Trustee.

I. Pursuant to the Key Food Agreements, the Debtor granted Key Food a first priority security interest in all of the Debtor's assets to secure all indebtedness owed by the Debtor to Key Food. Key Food perfected the security interest by filing a UCC-1 Financing Statement on October 23, 2015, and a UCC-3 Continuation Statement on August 26. 2020.

J. Prior to the Petition Date, on or about February 15, 2018, NewBank provided the Debtor with a Small Business Administration loan in the original principal amount of $2,400,000. In connection with the Loan, the Debtor executed, among other documents, the following loan documents (collectively, the "NewBank Agreements"):

- An SBA Note dated February 15, 2018;
- An SBA Business Loan Agreement dated February 15, 2018, and
- An SBA Commercial Security Agreement dated February 15, 2018.

K. Under the NewBank Agreements, the Debtor granted NewBank a security interest in all of the Debtor's assets to secure all indebtedness owed by the Debtor to NewBank. NewBank perfected the security interest by filing a UCC-1 Financing Statement on February 15, 2018, and a UCC-3 Continuation Statement on August 19, 2022.

L. Simultaneous with the NewBank loan to the Debtor, Key Food and NewBank entered into an inter-creditor agreement, dated February 15, 2018 (the "Intercreditor Agreement").

M. On March 28. 2002, NewBank filed a proof of claim (number 7) asserting a secured claim against the Debtor's Estate in the amount of $1,916,667.69 (the "NewBank Secured Claim").

N.     On May 12, 2022, Key Food filed a proof of claim (number 13) asserting a secured claim against the Debtor's Estate in the amount of $5,759,885.62 (the "Key Food Secured Claim"), which Key Food asserts consists of the following components:

- $1,898,193.03 for unpaid invoices which include charges for goods sold and delivered, advertising costs, transportation costs, and weekly membership fees;
- $187,274.30 for unpaid invoices to OM Vegetable Inc., an affiliate of the Debtor; and
- $3,674,418.29 for additional amounts owed to Key Food under the Key Food Agreements.

O.     On or about February 14, 2023, Key Food filed a proof of claim (number 36) asserting an administrative claim under Section 503(b)(9) of the Bankruptcy Code against the Debtor's Estate in the amount of $180,789.82 (the "Key Food Administrative Claim"), which relates to goods sold by Key Food to the Debtor from January 29, 2022, through the Petition Date. This amount is duplicative of amounts asserted in the Key Food Secured Claim.

P.     Under the Key Food Agreements and NewBank Agreements, the Debtor granted blanket liens on all of its assets to Key Food and NewBank, which included all funds in the Debtor's Citibank account. Upon the Trustee's appointment, the Trustee demanded the turnover, and received funds, from Citibank totaling $240,089.36, plus applicable interest (the "Collateral Deposit").

Q.     In negotiations, the Trustee objected to certain portions of the Key Food Claim, and asserted other claims against Key Food on behalf of the Debtor's estate, including claims under Section 547 of the Bankruptcy Code.

R.     Key Food provided to the Trustee numerous documents, reports, and factual and legal analyses to refute the Trustee's allegations.

S. As a result of good-faith arms' length negotiations. the Trustee and Key Food have agreed to resolve certain claims against each other on the terms and conditions set forth herein, and the Trustee and New Bank have agreed to stipulate regarding certain issues on the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the mutual promises and covenants set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged. it is stipulated and agreed by and between the Parties as follows.

## AGREEMENT

1. Incorporation of Recitals. The above recitals are incorporated herein in their entirety.

2. Bankruptcy Court Approval. This Settlement Agreement and its terms are subject to approval by the Bankruptcy Court. Promptly following execution of this Settlement Agreement, the Trustee will file a motion seeking an order by the Bankruptcy Court approving the terms of this Settlement Agreement.

3. Effective Date. This Settlement Agreement shall become fully effective upon entry of an order by the Bankruptcy Court approving this Settlement Agreement and the expiration of 15 days with no appeal therefrom being filed or upon the expiration of any extended period by which an appeal must be filed from such order (the "Effective Date").

4. Allowed Secured Claim of NewBank. The NewBank Secured Claim is allowed as a secured claim in the amount of $1.916,667.69. Notwithstanding NewBank's compromises in favor of the Debtor's Estate under this Settlement Agreement. NewBank reserves all rights and remedies against all non-debtor persons and entities, including but not limited to Amandeep Singh, OM Vegetable Inc.. 3350 Kaur Farms, Inc.. 351 VS Kaur Farms Inc.. A&S Vegetables, Inc., Kaur

Farms, Inc., OM Liquors, Inc., and Kuljit Kaur, and all such persons and entities shall remain liable for the full amounts, if any, that each owes to NewBank. NewBank's compromises in favor of the Debtor's Estate under this Settlement Agreement do not amend or affect any agreements between NewBank and any other person or entity, or relieve any such person or entity from any obligation under each such agreement.

5. <u>Allowed Secured Claim of Key Food.</u> The Key Food Secured Claim is amended and allowed as a secured claim in the reduced amount of $3,367,062.05. The reduced claim includes adjustments for the Patronage Payment and the Removed Assets, both of which Key Food is entitled to retain. Notwithstanding Key Food's compromises in favor of the Debtor's Estate under this Settlement Agreement, Key Food reserves all rights and remedies against all non-debtor persons and entities, including but not limited to Amandeep Singh, OM Vegetable Inc., 3350 Kaur Farms, Inc., 351 VS Kaur Farms Inc., A&S Vegetables, Inc., Kaur Farms, Inc., OM Liquors, Inc., and Kuljit Kaur, and all such persons and entities shall remain liable for the full amounts, if any, that each owes to Key Food. Key Food's compromises in favor of the Debtor's Estate under this Settlement Agreement do not amend or affect any agreements between Key Food and any other person or entity, or relieve any such person or entity from any obligation under each such agreement.

6. <u>Allowed Administrative Claim of Key Food.</u> The Key Food Administrative Claim is allowed as an administrative claim under Section 503(b)(9) of the Bankruptcy Code. Any payments received by Key Food on account of the Key Food Administrative Claim shall reduce the amount owed under the Key Food Secured Claim.

7. <u>Distributions from Collateral</u>. All distributions from the collateral and the proceeds of the collateral pledged to Key Food and NewBank on account of the Key Food Secured Claim,

the NewBank Secured Claim, and the replacement liens granted herein, as well as distributions on account of the super priority administrative claims granted in paragraph 8 below, shall be tendered to (a) the escrow agent to be identified in a joint written instruction from counsel for Key Food and counsel for NewBank, or (b) directly to Key Food and NewBank in the percentages identified in a written instruction from counsel for Key Food and counsel for NewBank, until the Key Food Secured Claim, the NewBank Secured Claim, the claims on account of the replacement liens granted herein, and the super priority administrative claims granted in paragraph 8 below are satisfied in full. The foregoing direction does not apply to or in any way affect or limit (i) the distributions that may be made on account of the Key Food Administrative Claim, and (ii) the distributions that may be made on account of any unsecured claims held by Key Food and NewBank, and all such distributions shall be made pari passu with all other claims of the same respective priority.

8. Release of Collateral Deposit, Replacement Lien and Carve-Out. The Key Food Secured Claim and the NewBank Secured Claim are deemed secured by an allowed and duly-perfected first priority lien against all of the Debtor's pre-petition assets, including the Collateral Deposit, and other assets or proceeds solely to the extent they are directly traceable to Key Food's and/or NewBank's collateral, including but limited to claims held by the Trustee or the Debtor's Estate arising under Sections 105, 362, 541, 542 and 549 of the Bankruptcy Code. Key Food and NewBank agree to carve out of their allowed secured claims an amount equal to the Collateral Deposit, and authorize the Trustee to use the Collateral Deposit to pay expenses of the Debtor's Estate if, as and when approved by the Bankruptcy Court. In exchange for the Trustee's use of the Collateral Deposit, Key Food and NewBank will receive duly perfected-first-priority replacement liens in the amount of the Collateral Deposit up to the amount used by the Trustee, against any

funds collected by the Trustee on account of any claims brought under Sections 105, 362, 541, 542, 544, 547, 548, and 549 of the Bankruptcy Code. In addition, and as further protection, Key Food and New Bank are granted super priority administrative claims under Section 503(b)(1) of the Bankruptcy Code in the amount of the Collateral Deposit up to the amount used by the Trustee, which shall be superior to claims under Section 503 and 507 of the Bankruptcy Code, but subordinate to all allowed administrative fees and expenses of the Trustee and his professionals. The rights granted to Key Food and NewBank under this paragraph are in addition to Key Food's rights in connection with the Key Food Secured Claim and the Key Food Administrative Claim and NewBank's rights in connection with the NewBank Secured Claim.

9. No Further Use of Cash Collateral. Except as expressly authorized herein, the Trustee is prohibited from using and shall not seek authorization to use Key Food's and NewBank's cash collateral for any purpose.

10. Release by the Trustee and the Debtor's Estate of Key Food. Upon the Effective Date, the Trustee, on behalf of the Debtor and the Debtor's Estate (collectively, the "Trustee Releasors") waive, release and forever discharge Key Food, and each of its respective affiliates, subsidiaries, officers, directors, employees, agents, attorneys, servants, heirs, executors, members, administrators, successors, and assigns (collectively, the "Key Food Releasees") from any and all claims, debts, demands, damages and causes of action whatsoever that either of the Trustee Releasors may hold or otherwise could assert against the Key Food Releasees whether known or unknown, foreseen or unforeseen, matured or unmatured, fixed or contingent, suspected or unsuspected, and which include, but expressly are not limited to, the allegations and claims asserted in any contested matter or adversary proceeding filed in or in connection with the Debtor's bankruptcy case, and all claims arising under any provision of chapter 5 of the Bankruptcy Code.

The waivers and releases provided herein do not apply to any of Key Food's obligations under the terms of this Settlement Agreement and claims for breach of this Settlement Agreement.

11. Release by the Trustee and the Debtor's Estate of NewBank. Upon the Effective Date, the Trustee on behalf of the Debtor and the bankruptcy estate (collectively, the "Trustee Releasors"). do hereby release. remise, and forever discharge NewBank and each of its respective affiliates, subsidiaries, officers. directors, employees, agents, attorneys, servants. heirs, executors. members. administrators, successors, and assigns (collectively. the "NewBank Releasees"), from and against any and all past or present causes of action. suits. debts, dues, sums of money, attorneys' fees, contracts, licenses, leases. claims, injuries, torts. breaches of duty, estimates. invoices. reckonings, bonds. bills. specialties. covenants. controversies, agreements, promises. variances, representations. trespasses. tenancies. holdovers. damages, judgments. extents. executions, or any other claims and demands whatsoever, in law. admiralty or equity, which the Trustee Releasors have, or may have, regardless of whether such claims are known or unknown, fixed or contingent or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this Release, against the NewBank Releasees. including, without limitation, any allegations and claims asserted in any contested matter or adversary proceeding filed or in connection with the Debtor's bankruptcy case, and all claims arising under any provision of chapter 5 of the Bankruptcy Code or comparable state statues; provided, however, this Release does not apply to any of the NewBank's obligations under the terms of this Settlement Agreement and claims for breach of this Settlement Agreement.

12. Release by Key Food of the Trustee and the Debtor's Estate. Upon the Effective Date, Key Food on its own behalf. and on behalf of its past and present respective affiliates, subsidiaries, officers, directors, employees. agents. attorneys, servants. heirs, executors, members,

administrators, successors, and assigns of any of the preceding (collectively, the "Key Food Releasors"), do hereby release, remise, and forever discharge the Trustee, the Debtor, the Debtor's bankruptcy estate, and each of the Trustee's employees, agents, professionals, and attorneys (collectively, the "Trustee Releasees"), from and against any and all past causes of action, suits, debts, dues, sums of money, attorneys' fees, contracts, licenses, leases, claims, injuries, torts, breaches of duty, estimates, invoices, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, representations, trespasses, tenancies, holdovers, damages, judgments, extents, executions, or any other claims and demands whatsoever, in law, admiralty or equity, which the Key Food Releasors can, shall or may have against the Trustee Releasees from the beginning of the world to the Effective Date of this Settlement Agreement, regardless of whether such claims are known or unknown, fixed or contingent or by reason of any matter, cause or thing whatsoever against the Trustee Releasees; provided, however, this Release does not apply to any of the Trustee's obligations under the terms of this Settlement Agreement and claims for breach of this Settlement Agreement or in any way affect the rights and obligations in connection the Key Food Secured Claim or the Key Food Administrative Claim or any other right granted to Key Food. Notwithstanding the foregoing, Key Food reserves all rights and remedies against all non-debtor persons and entities, including but not limited to Amandeep Singh, OM Vegetable Inc., 3350 Kaur Farms, Inc., 351 VS Kaur Farms Inc., A&S Vegetables, Inc., Kaur Farms, Inc., OM Liquors, Inc., and Kuljit Kaur, and all such persons and entities shall remain liable for the full amounts, if any, that each owes to Key Food. Key Food's compromises in favor of the Debtor under this Settlement Agreement do not amend or affect any agreements between Key Food and any such person or entity, or relieve any such person or entity from any obligation under each such agreement or under applicable law.

13. Release by NewBank of the Trustee and the Debtor's Estate. Upon the Effective Date, NewBank on its own behalf, and on behalf of its past and present respective affiliates, subsidiaries, officers, directors, employees, agents, attorneys, servants, heirs, executors, members, administrators, successors, and assigns of any of the preceding (collectively, the "NewBank Releasors"), do hereby release, remise, and forever discharge the Trustee Releasees, from and against any and all past causes of action, suits, debts, dues, sums of money, attorneys' fees, contracts, licenses, leases, claims, injuries, torts, breaches of duty, estimates, invoices, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, representations, trespasses, tenancies, holdovers, damages, judgments, extents, executions, or any other claims and demands whatsoever, in law, admiralty or equity, which the NewBank Releasors can, shall or may have against the Trustee Releasees from the beginning of the world to the Effective Date of this Settlement Agreement, regardless of whether such claims are known or unknown, fixed or contingent or by reason of any matter, cause or thing whatsoever against the Trustee Releasees; provided, however, this Release does not apply to any of the Trustee's obligations under the terms of this Settlement Agreement and claims for breach of this Settlement Agreement or in any way affect the rights and obligations in connection the NewBank Secured Claim or any other right granted to NewBank. Notwithstanding the foregoing, NewBank reserves all rights and remedies against all non-debtor persons and entities, including but not limited to Amandeep Singh, OM Vegetable Inc., 3350 Kaur Farms, Inc., 351 VS Kaur Farms Inc., A&S Vegetables, Inc., Kaur Farms, Inc., OM Liquors, Inc., and Kuljit Kaur, and all such persons and entities shall remain liable for the full amounts, if any, that each owes to NewBank. NewBank's compromises in favor of the Debtor under this Settlement Agreement do not amend or affect any

agreements between NewBank and any such person or entity, or relieve any such person or entity from any obligation under each such agreement or under applicable law.

14. Key Food and NewBank Reservations. Although Key Food and NewBank are signatories to this Settlement Agreement, this Settlement Agreement is not intended to resolve any claims, rights or obligations of either vis-a-vis the other, including but not limited to the Intercreditor Agreement, and all such claims, rights and obligations remain in their entirety.

15. Entire Agreement/No Oral Modification. This Settlement Agreement constitutes the entire agreement between the Trustee and Key Food, on the one hand, and the Trustee and NewBank, on the other hand, with respect to its subject matter and supersedes all prior agreements and undertakings between the Parties relating to the subject matter hereof. There are no other covenants, promises, agreements, conditions or understandings, either oral or written, express or implied, between the Parties, except for this Settlement Agreement with respect to its subject matter. The terms of this Settlement Agreement are contractual and not merely recitals. This Settlement Agreement may not be modified, amended, altered, changed or waived, except in writing and duly executed by all Parties (or solely by the Trustee and either Key Food or NewBank, as the case may be) and, to the extent necessary, upon Bankruptcy Court approval.

16. No Admission of Liability: This Settlement Agreement is the result of a compromised settlement of disputed claims and defenses and is not and shall not be construed as an admission or concession of responsibility, liability or any wrongdoing on the part of any Party.

17. Representation by the Parties. The Parties acknowledge that they are entering into this Settlement Agreement knowingly and voluntarily and that the consideration received by each of them is fair and adequate. The Parties represent and acknowledge that they have conferred with and are represented by or have been given the opportunity to confer with or be represented by,

independent legal counsel of their choice with respect to this Settlement Agreement and all matters covered by or related to its subject matter. The Parties declare that they fully understand all of the terms and provisions of this Settlement Agreement and regard the same to be fair and reasonable.

18. Authority of Signatories. The Parties hereby warrant and represent that the individuals signing this Settlement Agreement on their behalf are duly authorized, have the requisite authority, and have taken all actions necessary, to execute and deliver this Settlement Agreement on behalf of the respective Party.

19. Successors and Assigns/Binding Effect. All rights of each Party hereunder shall inure to the benefit of their respective successors and assigns, and all obligations of each Party hereunder shall bind the successors, assigns, heirs, administrators, executors and legal representatives and estate of each Party. For the avoidance of any doubt, in the event the appeal of the Conversion Order is granted, this Settlement Agreement shall be binding upon the chapter 11 Debtor, any chapter 11 trustee, plan administrator, liquidating trustee, any designated representative of any trust established for the benefit of the Debtor's creditors, and any other fiduciary appointed or serving in the Debtor's bankruptcy case.

20. Non-Reliance and Construction. The Parties have decided to execute this Settlement Agreement based on information developed independently and not in reliance on representations of any other Party. The Parties agree that each of them has had a full opportunity to participate in the drafting of this Settlement Agreement and, accordingly, any claimed ambiguity shall be construed neither for nor against any Party.

21. No Waiver. No failure or delay by either Party in exercising any right, power, or privilege under this Settlement Agreement or applicable law shall operate as a waiver by that Party of any such right, power or privilege.

22. Severability. The invalidity, illegality, or unenforceability of any provision of this Settlement Agreement shall not affect any other provision of this Settlement Agreement, which Settlement Agreement shall remain in full force and effect and shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

23. Counterparts. This Settlement Agreement may be executed in one or more counterparts, each of which shall constitute an original, and all of which shall constitute a single and identical agreement. It shall not be necessary, in making proof of this Settlement Agreement, to produce or account for more than one complete set of counterparts. Any signature delivered by a party via e-mail or telecopier transmission shall be deemed an original signature hereto.

24. Jurisdiction and Governing Law. **THE PARTIES AGREE THAT THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION OVER ANY DISPUTES REGARDING THE INTERPRETATION OR ENFORCEMENT OF THE TERMS OF THIS SETTLEMENT AGREEMENT. THIS SETTLEMENT AGREEMENT SHALL BE INTERPRETED UNDER THE SUBSTANTIVE LAW OF THE STATE OF NEW YORK, WITHOUT REGARD FOR THAT STATE'S CHOICE OF LAW OR CONFLICTS OF LAW PROVISIONS.**

Dated: Carle Place, New York
October 10, 2023

**BODNER LAW PLLC**
*Attorneys for Key Food Stores Co-Operative, Inc.*

By: ______________________________
Jonathan S. Bodner, Esq.
Harry Gutfleish, Esq.
55 Cherry Lane, Suite 101
Carle Place, New York 11514
(516) 444-3923
jbodner@bodnerlawpllc.com
harry@gutfleishlaw.com

Dated: New York, New York
October 11, 2023

**GERON LEGAL ADVISORS, LLC**
*Attorneys for Yann Geron, Chapter 7 Trustee*

By: ______________________________
Yann Geron, Esq.
Jeannette Litos, Esq.
Nicole N. Santucci, Esq.
370 Lexington Avenue, Suite 1101
New York, NY 10017
(646) 560-3224
ygeron@geronlegaladvisors.com
jlitos@geronlegaladvisors.com
nsantucci@geronlegaladvisors.com

Dated: New York, New York
October 10, 2023

**BOND, SCHOENECK & KING, PLLC**
*Attorneys for NewBank*

By: ______________________________
Edward J. LoBello, Esq.
600 Third Avenue, 22nd Floor
New York, New York 10016-1915
(646) 253-2396
elobello@bsk.com