**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, New York 10036
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Fred Stevens
Brendan M. Scott
Kathleen M. Aiello

*Special Litigation Counsel to Plaintiff*
  *Yann Geron, Chapter 7 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

----------------------------------------------------------x
In re                                                    :
                                                         :    Chapter 7
JAR 259 FOOD CORP.,                                      :
                                                         :    Case No. 22-40304 (JMM)
                              Debtor.                    :
----------------------------------------------------------x
YANN GERON, as Chapter 7 Trustee of                      :
Jar 259 Food Corp.,                                      :
                                                         :
                              Plaintiff,                 :
                                                         :
     -against-                                           :    Adv. Pro. No. 24-____(JMM)
                                                         :
BRICKSTONE GROUP LLC,                                    :
                                                         :
                              Defendant.                 :
----------------------------------------------------------x

## COMPLAINT OF PLAINTIFF/TRUSTEE AGAINST BRICKSTONE GROUP LLC

Yann Geron (the "Trustee" or "Plaintiff"), as the chapter 7 trustee of the estate of Jar 259 Food Corp., the above-captioned debtor (the "Debtor"), by and through his undersigned special litigation counsel, Klestadt Winters Jureller Southard & Stevens, LLP, as and for his complaint (the "Complaint") herein against Brickstone Group LLC (the "Defendant"), alleges as follows:

1

**PRELIMINARY STATEMENT**

In this adversary proceeding, the Trustee is seeking to avoid and recover numerous transfers of the Debtor to Defendant that are either intentional fraudulent transfers avoidable pursuant to 11 U.S.C. § 548(a)(1)(A), constructive fraudulent transfers avoidable pursuant to 11 U.S.C. § 548(a)(1)(B) and sections 273-275, 278, and 279 of the New York Debtor & Creditor Law, and/or preferential transfers avoidable pursuant to 11 U.S.C. § 547.

**INTRODUCTION**

1. On February 18, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Subchapter V of chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of New York (this "Court") [ECF NO. 1].

2. The Debtor elected to proceed under Subchapter V of Chapter 11. Therefore, no official committee of unsecured creditors was appointed or established in this case.

3. On February 22, 2022, the United States Trustee filed a Notice Appointing Yann Geron as the Subchapter V Trustee of the Debtor's case [ECF No. 3].

4. The Debtor continued to operate its business and manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code from the Petition Date until September 29, 2022, when this Court entered the *Order Granting Motion to Convert Case to Chapter 7* [ECF No. 210].

5. On the Petition Date, the Debtor filed its bankruptcy schedules (the "Schedules") and Statement of Financial Affairs (the "SOFA") [ECF No. 1].

6. On July 19, 2022, the Debtor filed Amended Schedules [ECF No. 120].

7. On August 18, 2022, the Debtor filed an Amended SOFA [ECF No. 136].

8. On October 3, 2022, Yann Geron was appointed as the interim Chapter 7 Trustee of the Debtor's estate [ECF No. 211].

9. On November 3, 2022, the Trustee presided over the meeting of creditors pursuant to section 341(a) of the Bankruptcy Code and became the permanent Trustee herein by virtue of section 704(d) of the Bankruptcy Code.

## BASIS FOR RELIEF

10. This adversary proceeding (the "Adversary Proceeding") is brought to recover damages on the account of: (i) avoidance and recovery of constructive and intentional fraudulent conveyances pursuant to 11 U.S.C. §§ 548 and 550 and sections 273-275, 278, and 279 of the New York Debtor & Creditor Law; (ii) avoidance and recovery of preferential transfers pursuant to 11 U.S.C. §§ 547 and 550; (iii) disallowance of any claims asserted, or that may be asserted, by Defendant pursuant to 11 U.S.C. § 502; and (iv) related relief, including the payment of attorneys' fees and costs.

## JURISDICTION

11. This Adversary Proceeding relates to the bankruptcy case of *In re Jar 259 Food Corp.,* Debtor, Case No. 22-40304 (Bankr. E.D.N.Y. Feb. 18, 2022), which is pending under chapter 7 of the Bankruptcy Code in this Court before the Honorable Jil Mazer-Marino, United States Bankruptcy Judge.

12. This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334, Administrative Order No. 264 titled "In the Matter of The Referral of Matters to the Bankruptcy Judges" of the United States District Court for the Eastern District of New York (Weinstein, C.J.), dated August 28, 1986, and Administrative Order No. 601 of the United States District Court for the Eastern District of New York (Amon, C.J.), dated December 5, 2012.

13. Plaintiff consents to entry of final orders or judgments by the Court with respect to all claims raised by this Complaint.

14. Venue of this Adversary Proceeding is proper pursuant to 28 U.S.C. §§ 1408 and 1409 because it arises in a case under the Bankruptcy Code pending in this district.

## PARTIES

15. Yann Geron is a member of the panel of private Chapter 7 trustees established by the United States Trustee pursuant to 28 U.S.C. § 586(a)(1). The Trustee is the permanent chapter 7 trustee of the Debtor and its bankruptcy estate and is empowered to bring this Adversary Proceeding. The Trustee maintains an address for the conduct of business at 370 Lexington Avenue, Suite 1101, New York, New York 10017.

16. As of the Petition Date, the Debtor was a New York corporation incorporated in the State of New York on September 11, 2015. During its operation and prior to the Petition Date, the Debtor maintained its principal place of business at 259-01 Union Turnpike, Floral Park, New York 11004 or 259-11 Union Turnpike, Glen Oaks, New York 11004. The Debtor's registered agent for service of process is listed as NHP Business Management Services, Inc. located at 229 Jericho Turnpike, New Hyde Park, New York 11040.

17. Defendant is a limited liability company organized under the laws of Delaware and maintains a registered office c/o File Right Corporate Services LLC at 17032 Minos Conaway Road, Lewes, Delaware 19958 and also maintained a business office at 5309 13th Ave, Brooklyn, New York 11219.

## FACTS COMMON TO ALL CAUSES OF ACTION

a. **The Debtor Generally**

18. The Debtor is a New York corporation which was incorporated on or around September 11, 2015.

19. Prior to the Petition Date, the Debtor owned and operated a grocery and food retail store located at 259-11 Union Turnpike, Glen Oaks, New York 11004.

20. Prior to the Petition Date, Amandeep Singh ("Singh") was the Vice President and principal of the Debtor with a 10% ownership interest therein.

21. Prior to the Petition Date, Kuljit Kaur was the President and principal of the Debtor with a 90% ownership interest therein.

22. According to Singh, during the approximately seven years of its operations, the Debtor's store was a "vibrant neighborhood market emphasizing an extensive selection of fresh, naturel [*sic*], and organic products, prepared foods, and hard-to-find specialty and gourmet offerings, along with a full assortment of conventional groceries." *See Rule 1007-4 Declaration of Amandeep Singh* (the "Singh Declaration") [Case No. 22-40304; ECF No. 2 at § 10].

b. **The Debtor's Financial History/Distress**

23. Since its incorporation in 2015, the Debtor had limited assets consisting of: (1) inventory, the value of which the Debtor estimated to be $20,000 as of the Petition Date; (2) certain pre-petition bank accounts which collectively held approximately $25,400 as of the Petition Date; (3) a Lease; and (4) utility deposits, totaling approximately $54,000 as of the Petition Date.

24. Upon information and belief, Singh purchased an ownership interest in the Debtor in 2018.

25.     Since on or around October 2015, the Debtor had a Membership Agreement with Key Food Stores Co-operative, Inc. ("Key Food"). In connection with that Membership Agreement, the Debtor executed a promissory note, upon which it later defaulted, as well as a confession of judgment in favor of Key Food. Consequently, Key Food is a secured creditor of the Debtor.

26.     According to Singh, "[f]or several years, the Debtor … faced significant financial difficulties due to rising costs of produce and labor. In or around March 2020, Key Food took over the operations of the Debtor's Store. On February 14, 2022, Key Food advised the Debtor that, as of February 19, 2022, it would no longer operate the Debtor's Store." *See* Singh Declaration at ¶ 5.

27.     According to Singh, "[p]rior to Key Food's management of the Debtor's store [pre-March 2020] and the COVID-19 pandemic, the Debtor faced significant market pressures. The Debtor was confronted with increasing competition from local, regional and national supermarket grocers as well as convenience stores and other independent and specialty food stores. In recent years, the Debtor also saw increased competition from online retail grocery giants such as Amazon, Walmart and Target." *See* Singh Declaration at ¶ 22.

28.     "In addition, the Debtor's workforce was largely unionized which resulted in increased labor costs compared to some of the Debtor's competition. As a result, the Debtor's competitors could offer lower prices to their customers which created increased pricing pressures for the Debtor and reducing overall profits." *See* Singh Declaration at ¶ 23.

29.     As the Debtor's financial condition deteriorated rapidly, during the approximately four months between mid-October 2021 and the Petition Date, the Debtor acquired an additional $14.2 million in debt by entering into at least 31 merchant cash advance agreements with at least

24 merchant cash advance entities (the "MCA Companies"), in which each of the MCA Companies purported to offer merchant cash advances in exchange for a portion of the Debtor's future receivables.

30. According to Singh, the Debtor "considered the advances provided by the MCA Companies as necessary to continue to operate the Debtor's business." *See* Singh Declaration at ¶ 16.

31. However, in several instances, the Debtor either transferred the proceeds received from the MCA Companies to its affiliates almost immediately upon receipt of such funds, or the proceeds were delivered directly to one or more of the Debtor's affiliates by the MCA Companies. In many instances, the Debtor received no benefit in exchange for entering into agreements with the MCA Companies, and instead merely obligated itself to pay in many instances hundreds of thousands of dollars that the Debtor did not use to support its own operations.

32. The MCA Companies took fixed automatic withdrawals from the Debtor's accounts, which limited the Debtor's ability to operate. *See* Singh Declaration at ¶ 16.

c. **Transfers to Defendant**

33. In the two years preceding the Petition Date, the Debtor made 2 Year Transfers to Defendant in the aggregate amount of not less than $205,416.78, as set forth in the annexed Exhibit "1".

34. Upon information and belief, at the time of the 2 Year Transfers, Defendant was not a creditor of the Debtor.

35. Upon information and belief, the Debtor did not receive any consideration from Defendant in exchange for the 2 Year Transfers.

36. Upon information and belief, the 2 Year Transfers were made by the Debtor to pay the debts of one of the Debtor's affiliates at a time when the Debtor was not obligated to pay such amounts.

37. Alternatively, to the Debtor owed an obligation to Defendant, in the ninety (90) days preceding the Petition Date, the Debtor made transfers to Defendant in the aggregate amount of not less than $187,291.77 on account of such obligation, as set forth in the annexed Exhibit "2" (collectively, the "90 Day Transfers").

**FIRST CAUSE OF ACTION**
**Avoidance of Intentionally Fraudulent Transfers – 11 U.S.C. §§ 548(a)(1)(A), 550(a) and 551**

38. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein at length.

39. The 2 Year Transfers were made by the Debtor with the actual intent to hinder, delay, or defraud the creditors of the Debtor.

40. The Debtor held an interest in the funds that comprised the 2 Year Transfers.

41. Defendant cannot satisfy its burden of establishing that it took the 2 Year Transfers for value and in good faith.

42. Therefore, Plaintiff is entitled to judgment pursuant to Bankruptcy Code §§ 548(a)(1)(A), 550(a), and 551: (a) avoiding and preserving the 2 Year Transfers, (b) directing that the 2 Year Transfers be set aside, and (c) recovering such 2 Year Transfers from the Defendant for the benefit of the estate of the Debtor.

## SECOND CAUSE OF ACTION
**(Avoidance of Constructively Fraudulent Transfers - 11 U.S.C. §§ 548(a)(1)(B), 550(a), and 551)**

43. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein at length.

44. The Debtor (a) was insolvent on the dates that the 2 Year Transfers were made or became insolvent as a result of the 2 Year Transfers, and/or (b) was engaged in businesses or transactions, or was about to engage in businesses or transactions, for which the property remaining with the Debtor's after the 2 Year Transfers were effectuated constituted unreasonably small capital, and/or (c) at the time of the 2 Year Transfers, intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as the debts matured.

45. The Debtor held an interest in the funds that comprised the 2 Year Transfers.

46. The Debtor received less than a reasonably equivalent value in exchange for the 2 Year Transfers.

47. To the extent Defendant is not an initial transferee of the 2 Year Transfers, it is an immediate or mediate transferee of the initial transferee(s) of the 2 Year Transfers, and did not take the 2 Year Transfers for value or in good faith or without knowledge of the voidability of the 2 Year Transfers.

48. Therefore, Plaintiff is entitled to judgment pursuant to Bankruptcy Code §§ 548(a)(1)(B), 550(a) and 551: (a) avoiding and preserving the 2 Year Transfers, (b) directing that the 2 Year Transfers be set aside, and (c) recovering the 2 Year Transfers from Defendant for the benefit of the Debtor's estate.

## THIRD CAUSE OF ACTION
### (Avoidance of Fraudulent Transfers - New York Law, DCL §§ 273- 275, 278, and 279)

49. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein at length.

50. Each of the 2 Year Transfers constituted a transfer of an interest of the Debtor in property.

51. At all relevant times there have been one or more creditors who have held and still hold matured or un-matured unsecured claims against the Debtor that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

52. The Debtor did not receive fair consideration for the 2 Year Transfers.

53. The Debtor was insolvent at the time the 2 Year Transfers occurred, or, in the alternative, the Debtor became insolvent as a result of the 2 Year Transfers.

54. At the time of the 2 Year Transfers, the Debtor was engaged or was about to engage in a business or transaction for which the property remaining in its hands after the 2 Year Transfers was an unreasonably small capital.

55. At the time of the 2 Year Transfers, the Debtor intended or believed that it would incur debts beyond its ability to pay as they mature.

56. At the time of the 2 Year Transfers, Defendant was aware or should have been aware that the Debtor was insolvent and did not have the ability to pay its debts as those debts became due. Thus, Defendant received the 2 Year Transfers without good faith and with the knowledge of their avoidability.

57. Therefore, Plaintiff is entitled to a judgment pursuant to sections 273-275, 278, and 279 of the New York Debtor & Creditor Laws (the "DCL"), and section 544 and 550 of the

Bankruptcy Code: (a) avoiding the 2 Year Transfers, (b) directing that the 2 Year Transfers be set aside, and (c) recovering the 2 Year Transfers from Defendant for the benefit of the Debtor's estate.

## FOURTH CAUSE OF ACTION
### (Avoidance of Preferential Transfers – 11 U.S.C. § 547)

58. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein at length.

59. In the alternative, to the extent the Debtor owed an antecedent debt to Defendant, within the ninety days prior to the Petition Date, Defendant received the 90 Day Transfers on account of such antecedent obligation.

60. The Transfers were made to or for the benefit of Defendant.

61. The Debtor held an interest in the funds that comprised the 90 Day Transfers.

62. The 90 Day Transfers were made while the Debtor was insolvent.

63. The 90 Day Transfers were for or on account of antecedent debts owed by the Debtor to Defendant before the 90 Day Transfers were made.

64. The 90 Day Transfers enabled Defendant to receive more than it would have received if (a) the Debtor's case was filed under Chapter 7 of the Bankruptcy Code, (b) the 90 Day Transfers had not been made, and (c) Defendant received payment of such debts to the extent provided by the provisions of the Bankruptcy Code.

65. Therefore, the Plaintiff is entitled to judgment pursuant to Bankruptcy Code §§ 547, 550(a) and 551: (a) avoiding and preserving the 90 Day Transfers, (b) directing that the 90 Day Transfers be set aside, and (c) recovering the 90 Day Transfers from Defendant for the benefit of the Debtor's estate.

## FIFTH CAUSE OF ACTION
### (Disallowance of Defendants Claims Pursuant to 11 U.S.C. § 502(d))

66. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein at length.

67. Defendant is an entity from which property is recoverable under section 550 of the Bankruptcy Code or is a transferee of a transfer or obligation avoidable under sections 547 and 548 of the Bankruptcy Code.

68. Defendant has not paid the amount or turned over any property transferred for which Defendant is liable under section 550 of the Bankruptcy Code.

69. Any filed claims held by Defendant must be disallowed until Defendant pays in full or returns the property for which they are liable under section 550 of the Bankruptcy Code.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff demands judgment in its favor and against Defendant as follows:

a) On Count One, a judgment against Defendant pursuant to 11 U.S.C. §§ 548(a)(1)(A) and 550 avoiding the 2 Year Transfers, directing the 2 Year Transfers be set aside, and directing Defendant to return to the Debtor's estate the amount of the 2 Year Transfers, plus interest at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action, including, without limitation, attorneys' fees;

b) On Count Two, a judgment against Defendant pursuant to 11 U.S.C. §§ 548(a)(1)(B) and 550 avoiding the 2 Year Transfers, directing the 2 Year Transfers be set aside, and directing Defendant to return to the Debtor's estate the amount of the 2 Year Transfers, plus interest at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action, including, without limitation, attorneys' fees;

c) On Count Three a judgment against Defendant pursuant to New York DCL §§ 276, 276-a, 278, 279 and 11 U.S.C. § 544 avoiding the 2 Year Transfers, directing the 2 Year Transfers be set aside, and directing Defendant to return to the Debtor's estate the amount of the 2 Year Transfers, plus interest at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action, including, without limitation, attorneys' fees;

d) On Count Four, a judgment against Defendant pursuant to 11 U.S.C. §§ 547 and 550 avoiding the 90 Day Transfers, directing the 90 Day Transfers be set aside, and directing Defendant to return to the Debtor's estate the amount of the 90 Day Transfers, plus interest

at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action, including, without limitation, attorneys' fees;

e) On Count Five, a judgment against Defendant pursuant to 11 U.S.C. § 502 disallowing any claims held or filed by the Defendant against the Debtor or the Debtor's chapter 7 estate until the Defendant pays the full amount of any judgment granted in Plaintiff's favor; and

f) Such other and further relief as this Court may deem just and proper.

Dated: New York, New York
February 15, 2024

**KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP**

By: */s/ Brendan M. Scott*

Fred Stevens
Brendan M. Scott
Kathleen M. Aiello
200 West 41st Street, 17th Floor
New York, New York 10036
Tel: (212) 972-3000
Fax: (212) 972-2245
Email: fstevens@klestadt.com
bscott@klestadt.com
kaiello@klestadt.com

*Special Litigation Counsel to Plaintiff Yann Geron, Chapter 7 Trustee*