**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, New York 10036
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Fred Stevens
Brendan M. Scott
Kathleen M. Aiello

*Special Litigation Counsel to Plaintiff Yann*
*Geron, Chapter 7 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | |
| | : | Chapter 7 |
| JAR 259 FOOD CORP., | : | |
| | : | Case No. 22-40304 (JMM) |
| Debtor. | : | |

---------------------------------------------------------x

| | | |
|---|---|---|
| YANN GERON, as Chapter 7 Trustee of | : | |
| Jar 259 Food Corp., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| -against- | : | Adv. Pro. No. 24-____(JMM) |
| | : | |
| | : | |
| 101 KAUR FARMS INC., 3350 KAUR | : | |
| FARMS INC., 22 CAPITAL INC., 225 OAK | : | |
| LLC, A & A VEGETABLES, INC., A & J | : | |
| PRODUCE CORP., A & S VEGETABLES, | : | |
| INC. d/b/a FOOD UNIVERSE | : | |
| MARKETPLACE, ADVANCE FOOD | : | |
| INTERNATIONAL INC., AMEET | : | |
| PROPERTIES LLC, AMERICAN EXPRESS | : | |
| COMPANY, ARIKUPURATHU INC., AZIZ | : | |
| SLAUGHTER HOUSE LIVE STOCK INC., | : | |
| a/k/a SLAUGHTER HOUSE, BABCO FOODS | : | |
| INTERNATIONAL LLC, BCB BANCORP., | : | |
| INC., BEST FOODS NJ, INC., BHAVANI | : | |
| FRUIT & VEGETABLE, LLC, CHETAK | : | |
| NEW YORK LLC, COBALT FUNDING | : | |
| SOLUTIONS LLC, CONSOLIDATED | : | |

EDISON COMPANY OF NEW YORK, INC.   :
A/K/A CONED, DELIGHT FOODS USA LLC, :
EVOLUTION MANAGEMENT CORP.,     :
FARMERS CHOICE LLC, HABIB       :
AMERICAN BANK a/k/a HAB BANK,    :
HOUSE OF SPICES (INDIA), INC., ITRIA  :
VENTURE LLC, JALARAM PRODUCE,   :
INC., JOHNS FAMILY FISH MARKET   :
CORP., KAUR FARMS INC., LEGACY   :
CAPITAL 26 LLC, LONG ISLAND POWER :
AUTHORITY, LOUIS MILELLA & SON   :
INC., MANHATTAN BEER DISTRIBUTORS :
OF LONG ISLAND INC., MNK         :
ENTERPRISES LLC, MR. ADVANCE LLC, :
OM VEGETABLE INC., OM LIQUORS INC., :
PARKVIEW ADVANCE LLC, PRODUCE  :
SOURCE INTERNATIONAL LLC, R BEST  :
PRODUCE INC. S. KATZMAN PRODUCE  :
INC., STALLER ASSOCIATES INC. a/k/a  :
STALLER ASSOCIATES REALTY, THE   :
MEKKATTI GROUP LLC a/k/a MEKKATTI :
GRAPHICS, THOMAS WEISS &      :
ASSOCIATES P.C., TRIBORO WHOLESALE :
INC., TRIVEDI LAW GROUP P.C., TWO  :
BROTHERS FOR WHOLESALE CHICKEN  :
INC., VLS FARMS INC., WESTMINSTER  :
MEAT PACKING INC., ZWICKER &    :
ASSOCIATES, P.C., AND JANE and JOHN :
DOES,                         :
                           :
            Defendants.    :
-------------------------------------------------------------x

**COMPLAINT OF PLAINTIFF/TRUSTEE AGAINST CERTAIN DEBTOR AFFILIATES, AND ADDITIONALLY OR ALTERNATIVELY, DIRECT OR SUBSEQUENT TRANSFEREES, SEEKING ENTRY OF ONE OR MORE JUDGMENT(S) FOR DAMAGES ARISING FROM (I) AVOIDANCE AND RECOVERY OF PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. §§ 547, 550; (II) AVOIDANCE AND RECOVERY OF CONSTRUCTIVE AND INTENTIONAL FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. §§ 548, 550 AND N.Y. D.C.L. §§ 272 - 279 ; (III) AVOIDANCE AND RECOVERY OF POST-PETITION TRANSFERS PURSUANT TO 11 U.S.C. §§ 549, 550; (IV) RECOVERY OF TRANSFERS FROM SUBSEQUENT TRANSFEREES PURSUANT TO 11 U.S.C. §§ 550 551; (V) UNJUST ENRICHMENT; AND (VI) DISALLOWANCE OF CLAIMS
PURSUANT TO 11 U.S.C. § 502**

Yann Geron (the "Trustee" or "Plaintiff"), as the chapter 7 trustee of the estate of Jar 259 Food Corp., the above-captioned debtor (the "Debtor"), by and through his undersigned special litigation counsel, Klestadt Winters Jureller Southard & Stevens, LLP, hereby files this complaint (the "Complaint") against the following defendants: (I) (1) 101 Kaur Farms Inc. ("101 Kaur Farms"); (2) 3350 Kaur Farms, Inc. ("3350 Kaur Farms"); (3) A & A Vegetables, Inc. ("A & A Vegetables"); (4) A & S Vegetables, Inc. d/b/a Food Universe Marketplace ("A & S Vegetables"); (5) Ameet Properties LLC ("Ameet Properties"); (6) Evolution Management Corp. ("Evolution"); (7) Kaur Farms Inc. ("Kaur Farms"); (8) OM Liquors Inc. ("OM Liquors"); and (9) OM Vegetable Inc. ("OM Vegetable"); and (10) VLS Farms Inc. ("VLS Farms" and together with 101 Kaur Farms, 3350 Kaur Farms, A & A Vegetables, A & S Vegetables, Ameet Properties, Evolution, Kaur Farms, OM Liquors and OM Vegetables, the "Debtor Affiliate Transferees"); (II) transferees having received transfers from both the Debtor and one or more the Debtor Affiliates, including (11) 225 Oak LLC ("225 Oak"); (12) Advance Food International Inc. ("Advance Food"); (13) Arikupurathu Inc. ("Arikupurathu"); (14) Aziz Slaughter House Live Stock Inc. a/k/a Slaughter House ("Slaughter House"); (15) Babco Foods International LLC ("Babco Foods"); (16) Best Foods NJ, Inc. ("Best Foods"); (17) Consolidated Edison Company of New York, Inc. a/k/a ConED ("ConEd"); (18) Delight Foods USA LLC ("Delight Foods"); (19) Farmers Choice Dairy a/k/a Farmers Choice LLC ("Farmers Choice"); (20) Itria Venture LLC ("Itria"); (21) John's Family Fish Market Corp. ("Johns Fish Market"); (22) Louis Milella & Son Inc. ("Louis Milella"); (23) Manhattan Beer Distributors of Long Island Inc. ("Manhattan Beer"); (24) Mr. Advance LLC ("Mr. Advance"); (25) Parkview Advance LLC ("Parkview Advance"); (26) Produce Source International LLC ("Produce Source"); (27) R Best Produce Inc. ("R. Best Produce"); (28) S. Katzman Produce Inc. ("S. Katzman Produce"); (29) The Mekkatti Group LLC a/k/a Mekkatti

Graphics ("Mekkatti"); (30) Triboro Wholesale Inc. ("Triboro"); (31) Two Brothers For Wholesale Chicken Inc. ("Two Brothers") (collectively, the "Schedule A Transferees"); and (III) additionally or in the alternative, transferees having received transfers from Debtor Affiliates, but which did not receive any direct transfers from the Debtor, including (32) 22 Capital Inc. ("22 Capital"); (33) A & J Produce Corp. ("A & J Produce"); (34) American Express Company ("AMEX"); (35) Bhavani Fruit & Vegetable LLC ("Bhavani"); (36) Chetak New York LLC ("Chetak"); (37) Cobalt Funding Solutions LLC ("Cobalt Funding"); (38) House of Spices (India), Inc. ("House of Spices"); (39) Jalaram Produce, Inc. ("Jalaram Produce"); (40) Legacy Capital 26 LLC ("Legacy Capital"); (41) Long Island Power Authority ("LIPA"); (42) MNK Enterprises LLC ("MNK"); (43) Staller Associates Inc., a/k/a Staller Associates Realty ("Staller Associates"); (44) Thomas Weiss & Associates, P.C. ("Thomas Weiss"); (45) Trivedi Law Group PC ("Trivedi Law"); (46) Westminster Meat Packing Inc. ("Westminster"); (47) Zwicker & Associates, P.C. ("Zwicker & Associates") (collectively, the "Schedule B Transferees"); and (IV) financial institution transferees having received the benefit of transfers made by the Debtor to the one or more of the Debtor Affiliates to cover the Debtor Affiliates' overdraft balance at each of (48) BCB Bancorp., Inc. ("BCB Bank"); (49) Habib American Bank a/k/a HAB Bank ("HAB Bank" and together with BCB Bank, the "Schedule C Transferees" and together with the Schedule A and Schedule B Transferees, the "Subsequent Transferees"); in addition to (50) any Jane or John Does who may be identified as new information becomes known to the Trustee (the "John Doe Defendants") (each a "Defendant" and collectively, the "Defendants"), seeking a judgment against one or more of the Defendants to: (i) avoid and recover certain transfers made during the 90 days prior to the Petition Date from the Schedule A Transferees and transfers to the Debtor Affiliates, "insiders" of the Debtor, made during the one-year period prior to the Petition Date, as applicable,

4

pursuant to 11 U.S.C. §§ 547 and 550; (ii) avoid and recover intentional and constructive fraudulent transfers from the Debtor Affiliates, or in the alternative the subsequent transferees of those transfers (*i.e.,* the Subsequent Transferees, including the Schedule A, B and C Transferees), pursuant to 11 U.S.C. §§ 544, 548 and 550 and New York Debtor and Creditor Law ("DCL") §§ 272 – 279; (iii) avoid and recover intentional and constructive fraudulent transfers from the Schedule A Transferees pursuant to 11 U.S.C. §§ 544, 548 and 550 and DCL §§ 272 – 279; (iv) avoid and recover unauthorized transfers made to certain Defendants after the Petition Date, pursuant to 11 U.S.C. §§ 549, 550; (v) compel the disgorgement of any sums by which the Defendants have been unjustly enriched; (vi) disallow any claims asserted, or that may be asserted, by Defendants against the Debtor's estate pursuant to 11 U.S.C. § 502; and (vii) related relief, including the payment of attorneys' fees and costs, alleges as follows:

## **INTRODUCTION**

1.      On February 18, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under subchapter V of chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of New York (this "Court").

2.      The Debtor elected to proceed under Subchapter V of Chapter 11.  Therefore, no official committee of unsecured creditors was appointed or established in this case.

3.      On February 22, 2022, the United States Trustee filed a *Notice Appointing Yann Geron as the Subchapter V Trustee* of the Debtor's case [ECF No. 3].

4.      The Debtor continued to operate its business and manage its property as a debtor in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108 from the Petition date until September 29,

2022, when this Court entered the *Order Granting Motion to Convert Case to Chapter 7* (the "Conversion Order")[1] [ECF No. 210].

5.      On the Petition Date, the Debtor filed its bankruptcy schedules (the "Schedules") and Statement of Financial Affairs (the "SOFA") [ECF No. 1].

6.      On July 19, 2022, the Debtor filed Amended Schedules (the "Amended Schedules") [ECF No. 120].

7.      On August 18, 2022, the Debtor filed an Amended SOFA (the "Amended SOFA") [ECF No. 136].

8.      On October 3, 2022, Yann Geron was appointed as the Chapter 7 Trustee of the Debtor's estate [ECF No. 211].

9.      On November 3, 2022, the Trustee presided over the meeting of creditors pursuant to 11 U.S.C. § 341 (the "341 Meeting") and became the permanent Trustee.

## BASIS FOR RELIEF

10.     This adversary proceeding (the "Adversary Proceeding") is brought to recover certain transfers of money or property of the Debtor (collectively, the "Transfers") in addition to damages on the account of: (i) the avoidance and recovery of transfers made by the Debtor to one or more of the Defendants during either the (a) ninety (90) day period prior to the Petition Date for non-"insider" Defendants, or November 20, 2021 to the Petition Date (the "Non-Insider Preference Period"); or (b) one year period prior to the Petition Date for "insider" Defendants as that term is defined by 11 U.S.C. § 101(31), or February 18, 2021 to the Petition Date (the "Insider Preference

---

[1] The Conversion Order granted The LCF Group, Inc.'s motion, seeking the entry of an order: (I) pursuant to sections 105(a) and 1112(b) of the Bankruptcy Code and Rules 1017(f) and 9014 of the Federal Rules of Bankruptcy Procedure, converting the Debtor's case from a case under Chapter 11 to a case under Chapter 7 of the Bankruptcy Code; and (II) granting such other and further relief as the Court deems just and proper (the "Conversion Motion") [ECF No. 81].

Period"), pursuant to 11 U.S.C. §§ 547 and 550 (collectively, the "Preference Transfers"); (ii) the avoidance and recovery of transfers made by the Debtor to one or more of the Debtor Affiliates, as the initial transferee (collectively, the "Fraudulent Transfers") in the two-year period prior to the Petition Date, or February 18, 2020 to the Petition Date (the "Two-Year Fraudulent Transfer Period") pursuant to 11 U.S.C. §§ 548 and 550 and/or in the four-year period prior to the Petition Date, or February 18, 2018 to the Petition Date (the "Four-Year Fraudulent Transfer Period") pursuant to 11 U.S.C. §§ 544 and 550 and New York Debtor and Creditor Law ("NYDCL") §§ 272 – 279 (the "Debtor Affiliate Fraudulent Transfers"), or in the alternative, recovery of the Fraudulent Transfers from one or more of the Defendants as subsequent transferees of the Fraudulent Transfers (the "Subsequent Transfers"); (iii) the avoidance and recovery of Fraudulent Transfers made by the Debtor directly to one or more of the Defendants in the Two-Year Fraudulent Transfer Period or the Four-Year Fraudulent Transfer Period; (iv) the avoidance and recovery of unauthorized transfers made by the Debtor to one or more of the Defendants after the Petition Date pursuant to 11 U.S.C. §§ 549 and 550 (the "Post-Petition Transfers"); (v) the unjust enrichment of the Defendants at the expense of the Debtor's estate and its creditors; (vi) disallowance of any claims asserted, or that may be asserted, by Defendants against the Debtor's estate pursuant to 11 U.S.C. § 502; and (vii) related relief, including the payment of attorneys' fees and costs.

## JURISDICTION

11.    This Adversary Proceeding relates to the bankruptcy case of *In re Jar 259 Food Corp.,* Debtor, Case No. 22-40304 (Bankr. E.D.N.Y. Feb. 18, 2022) (the "Bankruptcy Case"), which is pending under chapter 7 of the Bankruptcy Code in this Court before the Honorable Jil Mazer-Marino, United States Bankruptcy Judge.

12.     This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334, Administrative Order No. 264 titled "In the Matter of The Referral of Matters to the Bankruptcy Judges" of the United States District Court for the Eastern District of New York (Weinstein, C.J.), dated August 28, 1986, and Administrative Order No. 601 of the United States District Court for the Eastern District of New York (Amon, C.J.), dated December 5, 2012.

13.     Plaintiff consents to entry of final orders or judgments by the Bankruptcy Court with respect to all claims raised by this Complaint.

14.     Venue of this Adversary Proceeding is proper pursuant to 28 U.S.C. §§ 1408 and 1409 because it arises in a case under the Bankruptcy Code pending in this district.

## PARTIES

15.     Yann Geron is a member of the panel of private Chapter 7 trustees established by the United States Trustee pursuant to 28 U.S.C. § 586(a)(1).  The Trustee is the permanent Chapter 7 trustee of the Debtor and its bankruptcy estate and is empowered to bring this Adversary Proceeding.  The Trustee maintains an address for the conduct of business at 370 Lexington Avenue, Suite 1101, New York, New York 10017.

16.     As of the Petition Date and prior to the Conversion Date, the Debtor was a New York corporation which was incorporated in the State of New York on September 11, 2015. During its operation and prior to the Petition Date, the Debtor maintained its principal place of business at 259-01 Union Turnpike, Floral Park, New York 11004 or 259-11 Union Turnpike, Glen Oaks, New York 11004.  The Debtor's registered agent for service of process is listed as NHP Business Management Services, Inc. located at 229 Jericho Turnpike, New Hyde Park, New York 11040.

A. **The Debtor Affiliate Transferees**

17.     Defendant 101 Kaur Farms is a New York corporation which was incorporated in the State of New York on October 1, 2020.  Defendant 101 Kaur Farms maintains its principal place of business and/or its registered address for service of process at 320 Post Avenue, Suite 107, Westbury, New York 11590.  Defendant 101 Kaur Farms is an "insider" of the Debtor as that term is defined by 11 U.S.C. § 101(31).

18.     Defendant 3350 Kaur Farms is a New York corporation which was incorporated in the State of New York on October 13, 2020.  Defendant 3350 Kaur Farms maintains its principal place of business and/or its registered address for service of process at 3350 Hillside, New Hyde Park, New York 11040.  Defendant 3350 Kaur Farms is an "insider" of the Debtor as that term is defined by 11 U.S.C. § 101(31).

19.     Defendant A & A Vegetables is a New York corporation, which was incorporated in the State of New York on December 5, 2017.  Defendant A & A Vegetables maintains its principal place of business and/or its registered address for service of process at 3350 Hillside Avenue, New Hyde Park, New York 11040.  Defendant A & A Vegetables is an "insider" of the Debtor as that term is defined by 11 U.S.C. § 101(31).

20.     Defendant A & S Vegetables is a New York corporation which was incorporated in the State of New York on April 16, 2015.  Defendant A & S Vegetables maintains its principal place of business and/or its registered address for service of process at 1620 Hillside Avenue, New Hyde Park, New York 11040.  Defendant A & S Vegetables is an "insider" of the Debtor as that term is defined by 11 U.S.C. § 101(31).

21.     Defendant Ameet Properties is a New York limited liability company, which was formed in the State of New York on May 22, 2018.  Defendant Ameet Properties maintains its

principal place of business and/or its registered address for service of process c/o The LLC, 175 W. Old Country Road, Hicksville, New York 11801. Defendant Ameet Properties is an "insider" of the Debtor as that term is defined by 11 U.S.C. § 101(31).

22.     Defendant Evolution is a New York corporation, which was incorporated in the State of New York on July 2, 2015. Defendant Evolution maintains its principal place of business and/or its registered address for service of process c/o Kuljit Kaur, 3350 Hillside Avenue, New Hyde Park, New York 11040. Defendant Evolution is an "insider" as of the Debtor as that term is defined by 11 U.S.C. § 101(31).

23.     Defendant Kaur Farms is a New York corporation, which was incorporated in the State of New York on December 17, 2019. Defendant Kaur Farms maintains its principal place of business and/or its registered address for service of process c/o The Corporation, 46 Alling Street, Hicksville, New York 11801. Defendant Kaur Farms is an "insider" of the Debtor as that term is defined by 11 U.S.C. § 101(31).

24.     Defendant OM Liquors is a New York corporation, which was incorporated in the State of New York on December 13, 2018. Defendant OM Liquors maintains its principal place of business and/or its registered address for service of process c/o Amandeep Singh at 1620A Hillside Avenue, New Hyde Park, New York 11040. Defendant OM Liquors is an "insider" of the Debtor as that term is defined by 11 U.S.C. § 101(31).

25.     Defendant OM Vegetable is a New York corporation, which was incorporated in the State of New York on October 9, 2018. Defendant OM Vegetable maintains its principal place of business and/or its registered address for service of process at 320 Post Avenue, Suite 108, Westbury, New York 11590. Defendant OM Vegetable is an "insider" of the Debtor as that term is defined by 11 U.S.C. § 101(31).

26.     Defendant VLS Farms Inc. is a New York corporation, which was incorporated in the State of New York on February 27, 2020.  Defendant VLS Farms maintains its principal place of business and/or its registered address for service of process c/o The Corporation, 351 N Central Avenue, Valley Stream, New York 11580.  Defendant VLS Farms is an "insider" of the Debtor as that term is defined by 11 U.S.C. § 101(31).

### B.  <u>The Schedule A Transferees</u>

27.     Defendant 225 Oak is a New York limited liability company, which was formed in the State of New York on November 13, 1996.  Defendant 225 Oak maintains its principal place of business and/or its registered address for service of process at 1562 1st Avenue, Suite 249, New York, New York 10028.

28.     Defendant Advance Food is a New York corporation, which was incorporated in the State of New York on May 26, 1988.  Defendant Advance Food maintains its principal place of business and/or its registered address for service of process at 55-80 56th Street, Maspeth, New York 11378.

29.     Defendant Arikupurathu is a New York corporation, which was incorporated in the State of New York on October 6, 1998.  Defendant Arikupurathu maintains its principal place of business and its registered address for service of process c/o Shaji Varghese, CPA, 74 Bounty Lane, Jericho, New York 11753.

30.     Defendant Aziz Slaughter House Live Stock Inc. a/k/a Slaughter House is a New York corporation, which was incorporated in the State of New York on June 17, 2009.  Defendant Slaughter House maintains its principal place of business and/or its registered address for service of process at 151-24 Beaver Road, Jamaica, New York 11430.

31.     Defendant Babco Foods is a New Jersey limited liability company, which was formed in the State of New Jersey on June 3, 2003.  Defendant Babco Foods maintains its principal place of business and its registered address for service of process at 238 St. Nicholas Avenue, South Plaintiff, New Jersey 07080.

32.     Defendant Best Foods is a New Jersey corporation, which was incorporated in the State of New Jersey on January 6, 2011.  Defendant Best Foods maintains its principal place of business and its registered address for service of process at 30 Saw Mill Pond Road, Edison Township, New Jersey 08817.

33.     Defendant ConEd is a New York corporation, which was incorporated in the State of New York on November 10, 1884.  Defendant ConEd maintains its principal place of business and its registered address for service of process c/o Silvia V. Dooley, Attn: Law Dept./Room 1850-S, 4 Irving Plaza, New York, New York 10003.

34.     Defendant Delight Foods is a New Jersey limited liability company, which was formed in the State of New Jersey on January 27, 2016.  Defendant Delight Foods maintains its principal place of business and its registered address for service of process at 438 Saint Pauls Avenue, Jersey City, New Jersey 07306.

35.     Defendant Farmers Choice is a New York limited liability company, which was formed in the State of New York on December 13, 2011.  Defendant Farmers Choice maintains its principal place of business and its registered address for service of process c/o Mohammad Fabdallah, Elvis Echevarria, 64 Schmidt Lane, Circleville, New York 10919.

36.     Defendant Itria is a Delaware limited liability company, which was formed in the State of Delaware on March 6, 2014.  Defendant Itria maintains its principal place of business

and/or its registered address for service of process at 155 East 55th Street, 302A, New York, New York 10022.

37.     Defendant John's Fish Market is a New York corporation, which was incorporated in the State of New York on October 31, 2018.   Defendant John's Fist Market maintains its principal place of business and/or its registered address for service of process at 184 Avenue U, Brooklyn, New York 11223.

38.     Defendant Louis Milella is a New York corporation, which was incorporated in the State of New York on August 21, 1980.   Defendant Louis Milella maintains its principal place of business and/or its registered address for service of process at 172 Village Avenue, Elmont, New York 11003.

39.     Defendant Manhattan Beer Distributors is a New York corporation, which was incorporated in the State of New York on August 7, 1991.   Defendant Manhattan Beer Distributors maintains its principal place of business at 401 Acorn Street, Suite A, Wyandanch, New York 11798 and its registered address for service of process c/o Pesetsky, Goldfeder & Bookman, 325 Broadway, New York, New York 10007.

40.     Defendant Mr. Advance is a New York limited liability company, which was formed on September 25, 2017 in the State of New York.   Defendant Mr. Advance maintains its principal place of business and/or its registered address for service of process at 3110 37th Avenue, #202, Long Island City, New York 11101.

41.     Defendant Parkview Advance is a New York limited liability company, which was formed on November 18, 2020 in the State of New York.   Defendant Parkview Advance is also registered as a Delaware limited liability company formed on June 4, 2018.   Defendant Parkview Advance maintains its principal place of business and/or its registered address for service of

process for its New York registration at 25 Robert Pitt Drive, Suite 204, Monsey, New York 10952. Defendant Parkview Advance maintains its principal place of business and/or its registered address for service of process for its Delaware registration c/o A Registered Agent, Inc., 8 The Green, Ste. A, Dover, Delaware 19901.

42.     Defendant Produce Source is a New York limited liability company, which was formed in the State of New York on May 17, 2021.  Defendant Produce Source maintains its principal place of business and/or its registered address for service of process c/o Northwest Registered Agent LLC, 418 Broadway, Suite N, Albany, NY 12207.

43.     Defendant R. Best Produce is a New York corporation, which was incorporated in the State of New York on September 14, 1990.  Defendant R. Best Produce maintains its principal place of business and/or its registered address for service of process at 99 Seaview Blvd., Suite 100, Port Washington, New York 11050.

44.     Defendant S. Katzman Produce is a New York corporation, which was incorporated in the State of New York on February 17, 1965.  Defendant S. Katzman Produce maintains its principal place of business and/or its registered address for service of process at 213 Row B, NYC Terminal Market, New York, New York 10474.

45.     Defendant Mekkatti is a New York corporation, which was incorporated in the State of New York on March 16, 2009.  Defendant Mekkatti maintains its principal place of business and/or its registered address for service of process at 55 Harbor Drive, Port Washington, New York 11050.

46.     Defendant Triboro is a New York corporation, which was incorporated in the State of New York on January 20, 2017.  Defendant Triboro maintains its principal place of business

and/or its registered address for service of process c/o The Corporation, 56-31 56th Drive, Maspeth, New York 11378.

47.    Defendant Two Brothers is a New York corporation, which was incorporated in the State of New York on May 16, 2012.  Defendant Two Brothers maintains its principal place of business and/or its registered address for service of process c/o Mohamed Ahmed, 151-24 Beaver Road, Jamaica, New York 11433.

## C.  **The Schedule B Transferees**

48.    Defendant 22 Capital is a New York corporation, which was incorporated in the State of New York on October 27, 2020.  Defendant 22 Capital maintains its principal place of business and/or its registered address for service of process c/o HYS Tax Firm, 103 Chester Avenue, Brooklyn, New York 11218.

49.    Defendant A & J Produce is a New York corporation, which was incorporated in the State of New York on May 9, 1977.  Defendant A & J Produce maintains its principal place of business and/or its registered address for service of process c/o The Corporation, 375 North Broadway, Suite 300, NYC Terminal Market, Jericho, NY 11753.

50.    Defendant AMEX is a New York corporation, which was incorporated in the State of New York on June 10, 1965.  Defendant AMEX maintains its principal place of business and/or its registered address for service of process at 28 Liberty Street, New York, New York 10005.

51.    Defendant Bhavani is a New York limited liability company, which was formed in the State of New York on May 13, 1998.  Defendant Bhavani maintains its principal place of business and/or its registered address for service of process c/o Mukund Patel, 103 Bennet Road, Matawan, New Jersey 07747.

52.     Defendant Chetak is a New Jersey limited liability company, which was formed in the State of New Jersey on December 26, 2003.  Defendant Chetak maintains its principal place of business and/or its registered address for service of process at 351 Mill Road, Edison, New Jersey 08837.

53.     Defendant Cobalt Funding is a New York corporation, which was incorporated in the State of New York on November 18, 2020.  Defendant Cobalt Funding maintains its principal place of business and/or its registered address for service of process c/o The LLC, 99 Wall Street, 3618, New York, New York 10005.

54.     Defendant House of Spices is a New York corporation, which was incorporated in the State of New York on April 2, 1974.  Defendant House of Spices maintains its principal place of business and/or its registered address for service of process at 3000 Marcus Ave., Suite 2W10, New Hyde Park, New York 11042.

55.     Defendant Jalaram Produce is a Florida corporation, which was incorporated in the State of Florida on May 22, 2002.  Defendant Jalaram Produce maintains its principal place of business and/or its registered address for service of process at 18850 SW 360 Street, Homestead, Florida 33034.

56.     Defendant Legacy Capital is a New York limited liability company, which was formed in the State of New York on April 16, 2021.  Defendant Legacy Capital maintains its principal place of business and/or its registered address for service of process c/o Gene Rosen's Law Firm, 200 Garden City Plaza, Suite 405, Garden City, New York 11530.

57.     Defendant LIPA is a sub-division of the State of New York that was created by an Act of the New York State Legislature in 1986.  Defendant LIPA maintains its principal place of

business and/or its registered address for service of process at 333 Earle Ovington Blvd., Ste. 403, Uniondale, New York 11553-3606.

58.     Defendant MNK is a New York limited liability company, which was formed in the State of New York on September 24, 2018.  Defendant MNK maintains its principal place of business and/or its registered address for service of process c/o Gurvinder Singh, 602 Pine Aire Drive, Bay Shore, NY 11706.

59.     Defendant Staller Associates is a New York limited liability corporation, which was incorporated in the State of New York on either June 7, 1965, May 16, 2018, or December 21, 2021.  Defendant Staller Associates maintains its principal place of business and/or its registered address for service of process at 1455 Veterans Hwy., Suite 201, Islandia, New York 11749 or 60 Broadhollow Road, Melville, New York 11746.

60.     Defendant Thomas Weiss is a New York professional service corporation, which was incorporated in the State of New York on October 27, 2011.  Defendant Thomas Weiss maintains its principal place of business and/or its registered address for service of process at 1305 Franklin Ave., Suite 300, Garden City, New York 11530.

61.     Defendant Trivedi Law is a New York professional services corporation, which was incorporated in the State of New York on January 26, 2018.  Defendant Trivedi Law maintains its principal place of business and/or its registered address for service of process c/o The Corporation, 400 Jericho Turnpike, Suite 318, Jericho, New York 11753.

62.     Defendant Westminster is a Vermont corporation, which was formed in the State of Vermont on June 27, 2018.  Defendant Westminster maintains its principal place of business and/or its registered address for service of process at 52 Seafood Lane, Westminster, Vermont 05158.

63.     Defendant Zwicker & Associates is a Massachusetts professional corporation, which was incorporated in the State of Vermont on September 13, 1991.  Defendant Zwicker & Associates maintains its principal place of business at 80 Minuteman Road, Andover, Massachusetts 01810 and its registered address for service of process at c/o CT Corporation System, 155 Federal Street, Suite 700, Boston, Massachusetts 02110.

### D.  The Schedule C Transferees

64.     Defendant BCB Bank is a New Jersey corporation, which was incorporated on or around November 2000 and is the holding company parent of BCB Community Bank.  Defendant BCB Bank maintains an executive office at 104-110 Avenue C, Bayonne, New Jersey 07002.

65.     Defendant HAB Bank was incorporated in 1983 as a New York State Chartered Bank.  Defendant HAB Bank maintains its principal place of business at 99 Madison Avenue, New York, New York 10016.

### FACTS COMMON TO ALL CAUSES OF ACTION

### a.  The Debtor Generally

66.     The Debtor is a New York corporation which was incorporated on or around September 11, 2015.

67.     Prior to the Petition Date, the Debtor owned and operated a grocery and food retail store located at 259-11 Union Turnpike, Glen Oaks, New York 11004.

68.     Prior to the Petition Date, Kuljit Kaur ("Kuljit") was the President and principal of the Debtor with a 90% ownership interest therein.

69.     Prior to the Petition Date, Amandeep Singh ("Singh" and together with Kuljit, the "Principals") was the Vice President and principal of the Debtor with a 10% ownership interest therein.

70.     According to Singh, during the approximately seven years of its operations, the Debtor's store was a "vibrant neighborhood market emphasizing an extensive selection of fresh, naturel [*sic*], and organic products, prepared foods, and hard-to-find specialty and gourmet offerings, along with a full assortment of conventional groceries." *See Rule 1007-4 Declaration of Amandeep Singh* (the "First Singh Declaration") [Case No. 22-40304; ECF No. 2 at ¶ 10].

71.     Upon information and belief, the Debtor employed approximately 46 employees at its store, some of which were represented by Local 338 RWDSU/UFCW (the "Union"). *See* First Singh Declaration at ¶ 4.

72.     Singh also testified before this Court that he has ownership interests in and operates several other grocery stores throughout Long Island, New York. During the Debtor's Chapter 11 proceeding, several creditors raised serious concerns about potential intercompany transfers that might have occurred between the Debtor and certain non-Debtor Affiliates, including those owned and controlled by the Debtor's Principals.

73.     Almost instantly after the Principals gained control of the Debtor in 2018, they began initiating frequent and sizeable transfers of money and property from the Debtor to the Debtor Affiliates.

74.     The consideration received by the Debtor from the Debtor Affiliates in exchange for those transfers was not nearly commensurate with the amount of Debtor monies paid to the Debtor Affiliates.

75.     More specifically, following Singh's takeover of the Debtor and until the Petition Date, and in several instances following the Petition Date, the Debtor transferred in excess of $15.5 million to the Debtor Affiliates and other "insiders" of the Debtor, including Singh's parents, Narinder Singh Gahra and Pritam Kaur. The transfers to Singh's parents are the subject of another

complaint filed contemporaneously by the Trustee in connection with the Debtor's bankruptcy proceeding.

76.    The staggering amount of funds that left the Debtor, at the direction of the Principals, depleted the Debtor and left it unable to operate, let alone to satisfy its debts.

77.    The Principals used the Debtor as their own personal piggy bank, moving funds between the Debtor and Debtor Affiliates, their friends and family and themselves without any regard for the commitments made to their creditors and without any hope of sustaining a viable business.

78.    Importantly, the Debtor's 2020 tax return did not reflect any amounts owed to the Debtor by the Debtor Affiliates. There was no evidence of intercompany loan transactions, accounting entries or loan documentation that would suggest the Debtor, the Debtor Affiliates or the Principals observed corporate formalities, let alone acknowledged any kind of obligation to recover the monies transferred to the Debtor Affiliates for the benefit of the Debtor and its creditors.

**b. The Debtor's Financial History, Distress and Mounting Debt Precipitating the Bankruptcy Filing**

> ### *1. Economic Challenges Preceding the Petition Date*

79.    Since its incorporation in 2015, the Debtor had limited assets, consisting of: (1) inventory, the value of which the Debtor estimated to be $20,000 as of the Petition Date; (2) at least nineteen (19) known pre-petition bank accounts, only five of which were disclosed by the Debtor on its bankruptcy schedules, holding approximately $433,534.46 in the aggregate as of the Petition Date; (3) litigation claims, utility deposits, accounts receivable and other assets for which the Debtor did not ascribe a monetary value.  *See* Amended Schedules filed on July 19, 2022 [ECF No. 120].

80.     Since on or around October 2015, the Debtor had a Membership Agreement (the "Key Food Membership Agreement") with Key Food Stores Co-Operative, Inc. ("Key Food").  In connection with that Membership Agreement, the Debtor executed a promissory note, upon which it later defaulted, as well as a confession of judgment in favor of Key Food.  Consequently, Key Food is a secured creditor of the Debtor.

81.     Upon information and belief, Key Food was the sole supplier of goods to the Debtor.

82.     Yet, the Debtor's bank records show a large volume of transfers made to suppliers other than Key Food, which , upon information and belief, were payments made to the suppliers for the Debtor Affiliates.

83.     In early 2018, when the Debtor was still owned by the predecessor and before the Principals assumed management of the Debtor, Key Food, NewBank ("NewBank") and the Debtor entered into an agreement, dated February 15, 2018, whereby $2.4 million of the debt owed by the Debtor to Key Food would be converted into a loan from NewBank to the Debtor (the "Intercreditor Agreement").

84.     Upon information and belief, the Principals purchased their respective ownership interest in the Debtor in 2018.

85.     At the time the Principals acquired the Debtor's business, the Debtor was already burdened with substantial debt, including the secured debt owed to Key Food and the amounts due to NewBank pursuant to the Intercreditor Agreement, which totaled approximately $2.3 million at the time of the Principals' acquisition of the Debtor.

86.     These debts were not the Debtor's only obligations at that time.

87.     From the date the Principals purchased the Debtor until the Petition Date, the Debtor's financial obligations only continued to grow.

88.     By October 2018, the Debtor became a defendant in an action pursued by Raymond Lugo ("Lugo") for tort claims based on personal injury purportedly sustained on the Debtor's property (the "Lugo Lawsuit").  The Lugo Lawsuit continued until November 2022, after the Debtor's case was converted, when the parties stipulated to its dismissal.  Lugo remained a creditor of the Debtor during the entire length of the Lugo Lawsuit, which overlaps with the transfers the Trustee seeks to recover herein.

89.     In November 2018, Singh, on behalf of Defendant A & S Vegetables and Defendant OM Vegetable, signed their own membership agreements with Key Food (the "Key Food Debtor Affiliate Membership Agreement").

90.     As part of the Key Food Debtor Affiliate Membership Agreement, the Debtor, by and through Singh, signed a cross corporate guaranty (the "Key Food Cross-Corporate Guaranty"), providing additional security to Key Food to or for the benefit of Defendant A & S Vegetables and/or Defendant OM Vegetable.

91.     Singh signed the Key Food Cross-Corporate Guaranty as the President and Secretary for each of the Debtor, Defendant A & S Vegetables and Defendant OM Vegetable.

92.     The Key Food Debtor Affiliate Membership Agreement, increased the Debtor's obligations to Key Food, making the Debtor liable not only for its own obligations to Key Food, but also for those incurred by Defendant A & S Vegetables and Defendant OM Vegetable to Key Food.

### 2. *Mounting Financial Pressures and New Debt Commitments*

93.     "Prior to Key Food's management of the Debtor's store [pre-March 2020] and the COVID-19 pandemic, the Debtor faced significant market pressures.  The Debtor was confronted with increasing competition from local, regional and national supermarket grocers as well as convenience stores and other independent and specialty food stores.  In recent years, the Debtor also saw increased competition from online retail grocery giants such as Amazon, Walmart and Target." *See* First Singh Declaration at ¶ 22.

94.     Singh testified on or around the Petition Date that "[f]or several years, the Debtor has faced significant financial difficulties due to rising costs of produce and labor." *See* Singh Declaration at ¶ 5; [Sept. 28, 2022 Hearing Transcript at p. 72:13-15].

95.     "In addition, the Debtor's workforce was largely unionized which resulted in increased labor costs compared to some of the Debtor's competition.  As a result, the Debtor's competitors could offer lower prices to their customers which created increased pricing pressures for the Debtor and reducing overall profits." *See* First Singh Declaration at ¶ 23.

96.     In or around March 2020, the Debtor's primary supplier, Key Food, took over the operations of the Debtor's Store.

97.     Upon information and belief, from the time Key Food took over management of the Debtor's store in or around March 2020 and continuing through the COVID-19 pandemic and the Petition Date, the Debtor faced significant financial distress.

98.     In relevant part, the COVID-19 pandemic led to increased concern with in-person shopping and challenges with labor shortages, including employees deciding not to return to work and others unable to appear for shifts because of positive COVID-19 results.  *See* First Singh Declaration at ¶ 24.

99.     The cost of food and goods also dramatically increased in 2021 in large part due to supply chain issues, particularly for international food and goods involving suspensions, quotas and other governmental restrictions.  *See* First Singh Declaration at ¶ 25.

100.    Yet, despite the Debtor's admitted financial difficulties, deteriorating financial condition and mounting obligations during the four (4) years prior to the Petition Date when the Principals operated the company, the Principals, on behalf of the Debtor, made the precarious decision to incur new financial obligations in the form of new debt commitments, in addition to ones the Debtor already owed to Key Food, and other creditors.

### a.  The Merchant Cash Advances to the Debtor

101.    More specifically, between mid-October 2021 and the Petition Date, a period of approximately four (4) months, the Debtor acquired an additional $14.2 million in debt by entering into at least 31merchant cash advance agreements with at least 24 merchant cash advance entities (the "MCA Companies").

102.    According to Singh, the Debtor "considered the advances provided by the MCA Companies as necessary to continue to operate the Debtor's business." *See* First Singh Declaration at ¶ 16.

103.    The MCA Companies intended to take, and in many instances did take, fixed, automatic withdrawals from the Debtor's accounts, which limited the Debtor's ability to operate, to meet its payroll obligations and generally caused the Debtor's liquidity issues.  *See id*. at ¶¶ 16, 26.

### b.  The SBA Loan

104.    During that same period several months before the Petition Date, on November 1, 2021, the Debtor executed a note (the "Original Note") in favor of the United States Small Business

Administration (the "<u>SBA</u>") in the amount of $500,000, which was set to mature on November 4, 2051, which was an Economic Injury Disaster Loan (the "<u>SBA Loan</u>").

105.    On November 8, 2021, in connection with the Original Note, the SBA deposited $499,900.00 in the Debtor's checking account maintained at BCB Bank ending in x0243 (the "<u>First SBA Deposit</u>").  *See Declaration of Amandeep Singh in Support of the Debtor's Objection to Application for Entry of an Order Scheduling a Hearing on Shortened Notice on Why an Order Should not be Entered (I) Granting Authority to the LCF Group Inc. to Commence Actions to Recover Assets for the Benefit of the Estate, (II) Directing the Immediate Turnover of Property of the Estate, or in the Alternative (III) Converting the Debtor's Case to One Under Chapter 7, and (IV) Granting Injunctive Relief*, filed on August 22, 2022 as ECF No. 154 (the "<u>Second Singh Declaration</u>") at ¶ 38, Ex. K.

106.    On December 2, 2021, the Debtor and the SBA entered into the first modification of the Original Note (the "<u>Modified Note</u>"), increasing the amount of the SBA Loan by $1,500,000 to a total loan of $2,000,000.  The maturity date remained the same in the Modified Note.

107.    Kuljit executed the SBA Loan documents on behalf of the Debtor.

108.    On December 29, 2021, in connection with the Modified Note, the SBA deposited an additional $1,500,000.00 in the Debtor's checking account maintained at BCB Bank ending in x0243 (the "<u>Second SBA Deposit</u>" and together with the First SBA Deposit, the "<u>SBA Loan Proceeds</u>").  *See* Second Singh Declaration at ¶ 41, Ex. L.

109.    As security for the SBA Loan, the Debtor pledged certain collateral to secure payment and performance of all debts, liabilities and obligations, which included all tangible and intangible property of the Debtor, including but not limited to, inventory, equipment, instruments, including promissory notes, heath care and credit card receivables, deposit accounts, commercial

tort claims, etc., as more fully set forth in the SBA Loan agreement.  *See* Claim #32 on the Debtor's Claims Register.  In addition, Kuljit personally guaranteed the SBA Loan.

110.    In the SBA Loan agreement, the Debtor specifically pledged to "use all the proceeds of this Loan solely as working capital to alleviate economic injury caused by the disaster occurring in the month of January 31, 2020 and continuing thereafter."  *See id.*

111.    The Debtor further pledged to obtain and itemize receipts (paid receipts, paid invoices or cancelled checks) and contracts for all SBA Loan funds spent and to retain those receipts for three years from the final disbursement. *Id.*

112.    The Debtor further agreed that unless it had the prior written consent of the SBA, which upon information and belief was never obtained, it would not "make any distribution of Borrower's assets, or give any preferential treatment, make any advance, directly or indirectly, by way of loan, gift, bonus, or otherwise, to any owner or partner or any of its employees, or to any company directly or indirectly controlled or affiliated with or controlled by Borrower, or any other company."

113.    The Debtor did not disclose the SBA Loan on its Schedules filed on the Petition Date; however, it amended its schedules to include the SBA Loan *five months later,* indicating that the Debtor incurred a $2,000,000 liability on December 2, 2021.  *See* Amended Schedules at 3.37. The Debtor did not list the SBA Loan as contingent, liquidated or disputed.

### 3.    *The Debtor's Frequent Transfer of Money to Debtor Affiliates, Insiders and Parties, to Which it Had No Financial Obligation, Rendered the Debtor Insolvent and Came at the Expense of the Debtor's Creditors*

114.    As set forth above, the Principals owned several stores similar to the Debtor's store, located in the same geographic region, which they operated simultaneously with the Debtor.

115.    Throughout the entire period of the Principals' operation of the Debtor, the Debtor made frequent transfers of money or property to one or more of the Debtor Affiliates directly, or, alternatively, directly to one or more of the Debtor Affiliates' creditors, to which the Debtor had no obligation.

116.    The transfers of money from the Debtor to the Debtor Affiliates, other insiders, or creditors of the Debtor Affiliates was rampant between October 2018 and the Petition Date and resulted in the Debtor transferring millions of dollars of its own money away from its own creditors either to prop up the Debtor Affiliates for the benefit of the Principals or other "insiders" of the Debtor or to place those monies outside the reach of the Debtor's creditors.

117.    Yet, despite the frequency and amount of money transferred by the Debtor to the Debtor Affiliates and other "insiders", the Principals maintained control over nearly all the funds by and through the Debtor Affiliates, in which they had ownership interests and management positions, as well as through family and friends whom the Principals knew would facilitate the concealment of large sums of Debtor money from the Debtor's creditors.

118.    Either the Debtor failed to produce or did not maintain books and records documenting the Debtor's financial activity or recording loan obligations or intercompany transfers. The Debtor's bank records proved to be the most reliable recording of the transfers at issue in this Complaint.

119.    Although the Debtor made significant transfers to Debtor Affiliates in 2020, the Debtor's 2020 tax return did not reflect any amounts owed by the Debtor Affiliates to the Debtor.

120.    By all accounts, the Debtor, by and through the Principals, sought to conceal the transfer of millions of dollars away from the Debtor to protect those monies for the benefit of the Debtor Affiliates or the Principals and to deprive its creditors of any recovery.

121.    In fact, the Debtor continued to make transfers to Defendant A & S Vegetables even after Defendant A & S Vegetables stopped operating its store in the fourth quarter of 2020.

122.    The Debtor had no purpose for transferring its funds to a non-operating Debtor Affilitate other than to give the appearance that such transfers had a legitimate business purpose when there was none. Importantly, by transferring the funds to a Debtor Affiliate, owned and controlled by the Principals, the Principals ensured that they retained possession of the monies, but left the Debtor's creditors without recourse to recover those monies from the Debtor.

123.    Upon information and belief, as the Debtor's debts increased, so too did the Debtor's transfer of monies out of the Debtor's bank accounts to, or for the benefit of, the Debtor Affiliates, "insiders" and Principals.

124.    In fact, the Debtor and the Debtor Affiliates owned, maintained and controlled at least 70 identified bank accounts among those Defendants named in this Complaint, thus facilitating the Debtor and Principals' efforts to conceal the monies from the proper creditors.

125.    Upon information and belief, it was the Debtor's pattern to open new bank accounts to receive transfers of money from the Debtor's existing bank accounts, of which its creditors were aware, to funnel money away from known sources of funds from which creditors might seek recovery from the Debtor.

126.    Once the Debtor began engaging with the MCA Companies, who were authorized by agreement with the Debtor to debit certain of the Debtor's bank accounts, the Debtor's pattern of opening new bank accounts to evade its creditors only increased.  The Debtor began to open new accounts that were not disclosed to the MCA Companies or other creditors in order to deplete the bank accounts designated in the agreements with the MCA Companies or otherwise to transfer money from the Debtor's accounts to the Debtor Affiliates or to their creditors directly.

127.    The Debtor also transferred substantial amounts of money to the Debtor Affiliates to cover certain of their bank overdraft charges, which inured to the benefit of both the Debtor Affiliates faced with the charges, as well as to the receiving banks, who are also Defendants in this Complaint.

128.    Despite Singh's claims that the Debtor needed the funds from the MCA Companies to operate the Debtor's business and Kuljit's commitment to the SBA not to "make any distribution of Borrower's assets, or give any preferential treatment, make any advance, directly or indirectly, by way of loan, gift, bonus, or otherwise, to any owner or partner or any of its employees, or to any company directly or indirectly controlled or affiliated with or controlled by Borrower, or any other company." the Principals did exactly that.  The Debtor rapidly disbursed the monies loaned to the Debtor in the few months prior to the Petition Date.  The Debtor transferred monies either to the Debtor Affiliates, so the Principals could retain control of those monies outside the reach of the Debtor's creditors and for their own benefit, or to creditors of the Debtor Affiliates.  In so doing, the Debtor's Principals were able to satisfy the obligations of the Debtor Affiliates, in which the Principals retained a direct financial interest, to sustain their operations while the Debtor was left with an unsustainable business and nothing left to satisfy its own creditors.

129.    In fact, it is clear that for a significant period of time prior to the Petition Date, including the period of time during which the Trustee seeks to recover the transfers set forth in this Complaint, the Debtor was insolvent.

130.    Almost every dollar that came in the door went immediately out.

131.    Even before the COVID-19 pandemic and other economic stressors faced by the Debtor, the Debtor incurred substantial amounts of debt that it could not possibly repay given the level of operations maintained by the Debtor.

132.    After the distributions of cash to "insiders", the Debtor's cash flow was woefully insufficient to sustain the Debtor's operations let alone to service the overwhelming amount of debt, which the Debtor borrowed at very high interest rates.

133.    Although these were the Debtor's circumstances during the entire period of the Principals' ownership and control over the Debtor (*i.e.,* from 2018 to the Petition Date), this became crystal clear when the Debtor incurred obligations to the MCA Companies with interest rates as high as 400%.  If it was not clear before, this lead to the Debtor's demise.

134.    It became clear that the Debtor was unable to meet its obligations to Key Food, NewBank and other creditors, which ultimately resulted in Key Food assuming operational control of the Debtor.

135.    The claims set forth in this Complaint seek to recover transfers that were disbursed from the Debtor, by and through the Principals, and by the complexity of this Complaint, shows the tangled scheme the Principals undertook to evade the Debtor's creditors.

136.     Thus, the transfers sought to be recovered by the Trustee in this Complaint, are the result of the Debtor either: (1) transferring monies directly to the Debtor Affiliate as (a) an intentional or constructive fraudulent transfer; and/or (b) a preferential transfer; (2) transferring of monies originating with the Debtor, which were then transferred to the Debtor Affiliate at a time when the Debtor Affiliates' receiving bank account was funded primarily by the Debtor's monies, and later to a Subsequent transferee; (3) transferring monies directly to one or more of the Defendants who is not only a Subsequent Transferee of Debtor monies paid by a Debtor Affiliate, but also received direct transfers from the Debtor; and finally (4) transferring money to the bank account of a Debtor Affiliate, which was used to satisfy the Debtor Affiliates' bank overdraft charges and benefited the Debtor Affiliate and the banks.

### 4. *The Bankruptcy Filing*

137.    On February 14, 2022, Key Food advised the Debtor that, as of February 19, 2022, it would "…no longer operate the Debtor's Store." *See* First Singh Declaration at ¶ 5; [Sept. 28, 2022 Hearing Transcript at p. 72:13-15].

138.    On February 18, 2022, the Debtor filed the instant bankruptcy proceeding.

139.    As of the Petition Date, the Debtor's obligation to Key Food alone was $5,759,885.62. *See* Key Foods Proof of Claim, No. 13 on the Claims Register for the Debtor's bankruptcy case.

140.    Singh stated the Debtor's purpose in filing the Bankruptcy Case was "[…] to preserve and maximize the Debtor's remaining assets and business value for the benefit of its stakeholders.  In the face of impending liquidity shortfall and significant industry headwinds caused, in part, by the adverse impacts of the COVID-19 pandemic, the Debtor decided to cease operation the Debtor's Store and intends to pursue certain claims, causes of action, and to liquidate its assets." *See* First Singh Declaration at ¶ 6.

141.    Between the Petition Date and the Conversion Date, the Debtor was required to file monthly operating reports with the Court in connection with its Chapter 11 bankruptcy filing.

142.    In August 2022, the Debtor's monthly operating report failed to disclose $136,000 in withdrawals made by the Debtor.

143.    The Debtor made withdrawals in excess of $100,000 in September 2022, which the Trustee identified in the Debtor's bank records, but which the Debtor failed to disclose to the Bankruptcy Court because it never filed its monthly operating reports for September 2022 as required.  Even after the Debtor filed its bankruptcy case, the Principals still sought to conceal its fraudulent activity from the Bankruptcy Court and its creditors.

144.    Even after the Conversion Date, the Debtor failed to turnover its accounting records to the Trustee and his retained professionals, forcing the Trustee to issue subpoenas to recover bank records for more than seventy (70) Debtor and Debtor Affiliate bank accounts to recreate the Debtor's accounting – the result of which is set forth in this and other complaints filed by the Trustee.

### FIRST CAUSE OF ACTION
**Avoidance and Recovery of Intentional Fraudulent Transfers**
**(11 U.S.C. §§ 548(a)(1)(A), 550 and 551)**
**(Against Defendant 101 Kaur Farms)**

145.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 144 of this Complaint as if fully set forth at length herein.

146.    On November 30, 2021, within the Two-Year Fraudulent Transfer Period, the Debtor made one (1) transfer in the amount of $64,200 (the "101 Kaur Farms Direct Transfer") to Defendant 101 Kaur Farms, a Debtor Affiliate.  A chart reflecting the 101 Kaur Farms Direct Transfer is annexed hereto as **Exhibit A**.

147.    The Debtor made the 101 Kaur Farms Direct Transfer within the two (2) year period prior to the Petition Date.

148.    The Debtor's transfer of the 101 Kaur Farms Direct Transfer to Defendant 101 Kaur Farms, a Debtor Affiliate, was a transfer of money, property or other value from the Debtor's funds held in the Debtor's bank account.

149.    The Debtor's transfer of the 101 Kaur Farms Direct Transfer to Defendant 101 Kaur Farms, a Debtor Affiliate, constituted a transfer of an interest of the Debtor within the meaning of Section 101(54) of the Bankruptcy Code.

150.    The Debtor's transfer of the 101 Kaur Farms Direct Transfer to Defendant 101 Kaur Farms, a Debtor Affiliate, was to or for the benefit of Defendant 101 Kaur Farms.

151.    Defendant 101 Kaur Farms, the recipient of the 101 Kaur Farms Direct Transfer, is an affiliate of the Debtor, sharing common ownership, and is, therefore, an "Insider" of the Debtor.

152.    Upon information and belief, Defendant 101 Kaur Farms received a material direct or indirect benefit on account of the 101 Kaur Farms Direct Transfer.

153.    Upon information and belief, the Debtor did not have any obligation to pay Defendant 101 Kaur Farms at the time of the 101 Kaur Farms Direct Transfer.

154.    The Debtor intentionally concealed or obscured the 101 Kaur Farms Direct Transfer from the Debtor's creditors, third parties and others.

155.    Upon information and belief, the Debtor's books and records do not contain any reference to the 101 Kaur Farms Direct Transfer.

156.    The Debtor made the 101 Kaur Farms Direct Transfer without consideration, or significantly inadequate consideration, to the Debtor.

157.    The Debtor made the 101 Kaur Farms Direct Transfer at a time when the Debtor knew it owed significant monies to NewBank and Key Food and that the Lugo Lawsuit was pending, among other debts and obligations that remain unpaid.

158.    The Debtor made the 101 Kaur Farms Direct Transfer while the Debtor was insolvent or had unreasonably small capital.

159.    Singh directly or through the Debtor Affiliates in which he had an ownership interest continued to control, use, and/or enjoy the property transferred by the Debtor in the 101 Kaur Farms Direct Transfer subsequent to the transfer being made.

160.    The 101 Kaur Farms Direct Transfer was made by the Debtor, at the direction of Singh, with actual intention to hinder, delay and/or defraud the Debtor's creditors, and individuals and entities to which the Debtor was or would become obligated.

161.    The 101 Kaur Farms Direct Transfer, and the subsequent transfers directed by Singh to be made from the 101 Kaur Farms Direct Transfer to various parties, including the Defendants named in this Complaint, were made in furtherance of the Debtor's scheme to defraud lenders and other creditors from monies they continued to lend and/or invest in the Debtor, or credit they continued to extend to the Debtor.

162.    Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant 101 Kaur Farms avoiding the 101 Kaur Farms Direct Transfer in the amount of $64,200 and directing that the subject of the 101 Kaur Farms Direct Transfer or its value be returned to the Trustee, and Defendant 101 Kaur Farms be held liable for the return of the 101 Kaur Farms Direct Transfer as a direct or indirect beneficiary.

**SECOND CAUSE OF ACTION**
**Avoidance and Recovery of Constructive Fraudulent Transfer**
**(11 U.S.C. §§ 548(a)(1)(A), 550 and 551)**
**(Against Defendant 101 Kaur Farms)**

163.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 162 of this Complaint as if fully set forth at length herein.

164.    The 101 Kaur Farms Direct Transfer to Defendant 101 Kaur Farms constituted transfers of money, property, and value of the Debtor to Defendant 101 Kaur Farms.

165.    Defendant 101 Kaur Farms, the recipient of the 101 Kaur Farms Direct Transfer, was related to, and an insider of the Debtor at the time of the transfer.

166.    Upon information and belief, Defendant 101 Kaur Farms received a material direct or indirect benefit on account of the 101 Kaur Farms Direct Transfer to Defendant 101 Kaur Farms.

167.    The 101 Kaur Farms Direct Transfer to Defendant 101 Kaur Farms was intentionally obscured by Singh and the Debtor from the Debtor's creditors.

168.    The 101 Kaur Farms Direct Transfer to Defendant 101 Kaur Farms was made without fair consideration and/or reasonable equivalent value to the Debtor.

169.    At the time the Debtor made the 101 Kaur Farms Direct Transfer, the Debtor had incurred or was about to incur a liability which remains unpaid to this day including, but not limited to the claim(s) underlying the Lugo Lawsuit and the monies owed to NewBank and Key Food.

170.    At the time it made the 101 Kaur Farms Direct Transfer, the Debtor: (i) was insolvent or became insolvent as a result of the 101 Kaur Farms Direct Transfer; (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; and/or (iii) intended to incur, or believed that the Debtor would incur debts that would be beyond the Debtor's ability to pay as such debts matured.

171.    Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant 101 Kaur Farms avoiding the 101 Kaur Farms Direct Transfer and directing that the subject of the fraudulent transfer, the 101 Kaur Farms Direct Transfer to Defendant 101 Kaur Farms, or its value, be returned to the Trustee, and that Defendant 101 Kaur Farms be held liable for the return of the 101 Kaur Farms Direct Transfer as a direct or indirect beneficiary thereof.

### THIRD CAUSE OF ACTION
**Avoidance and Recovery of Preferential Transfer from an "Insider"**
**(11 U.S.C. §§ 547(b), 550)**
**(Against Defendant 101 Kaur Farms)**

172.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 171 of this Complaint as if fully set forth at length herein.

173.    On November 30, 2021, within the Insider Preference Period, the Debtor made one transfer in the amount of $64,200 to Defendant 101 Kaur Farms, a Debtor Affiliate.

174.    To the extent the 101 Kaur Farms Direct Transfer to Defendant 101 Kaur Farms does not constitute a fraudulent transfer, it is avoidable and recoverable because it was made on account of an antecedent debt owed by the Debtor.

175.    The 101 Kaur Farms Direct Transfer was made to or for the benefit of Defendant 101 Kaur Farms.

176.    Upon information and belief, Singh and/or Kuljit maintain an ownership interest in both Defendant 101 Kaur Farms and the Debtor.

177.    Defendant 101 Kaur Farms is an "insider" of the Debtor as that term is defined in Section 101(31) the Bankruptcy Code.

178.    The 101 Kaur Farms Direct Transfer was made to or for the benefit of an "Insider" of the Debtor.

179.    The 101 Kaur Farms Direct Transfer was made while the Debtor was insolvent or presumed to be insolvent.

180.    Defendant 101 Kaur Farms, as a Debtor Affiliate, had reasonable cause to believe that the Debtor was insolvent at the time of the 101 Kaur Farms Direct Transfer.

181.    The 101 Kaur Farms Direct Transfer was made within one (1) year of the Petition Date.

182.    As a result of the 101 Kaur Farms Direct Transfer, Defendant 101 Kaur Farms received more than it would receive if (i) the Debtor's case was a case under chapter 7 of the Bankruptcy Code; (ii) the 101 Kaur Farms Direct Transfer had not been made; and (iii) Defendant 101 Kaur Farms received payment on account of its claims, if any, against the Debtor to the extent provided under the Bankruptcy Code.

183.    Based on the foregoing, the Trustee is entitled to an order and judgment against Defendant 101 Kaur Farms as the transferee of the 101 Kaur Farms Direct Transfer avoiding the 101 Kaur Farms Direct Transfer and directing that the subject of the 101 Kaur Farms Direct Transfer or its value be returned to the Trustee, and that Defendant 101 Kaur Farms be held liable for the return of the 101 Kaur Farms Direct Transfer as a direct and indirect beneficiary.

**FOURTH CAUSE OF ACTION**
**Avoidance and Recovery of Intentional Fraudulent Transfers**
**(11 U.S.C. §§ 548(a)(1)(A), 550 and 551)**
**(Against Defendant 3350 Kaur Farms)**

184.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 183 of this Complaint as if fully set forth at length herein.

185.    Between December 1, 2021 and December 22, 2021, within the Two-Year Fraudulent Transfer Period, the Debtor made seven transfers totaling $109,000 (the "3350 Kaur Farms Direct Transfers") to Defendant 3350 Kaur Farms, a Debtor Affiliate.  A chart reflecting the 3350 Kaur Farms Direct Transfers is annexed hereto as **Exhibit B**.

186.    The Debtor made the 3350 Kaur Farms Direct Transfers within the two (2) year period prior to the Petition Date.

187.    The Debtor's transfers of the 3350 Kaur Farms Direct Transfers to Defendant 3350 Kaur Farms, a Debtor Affiliate, were transfers of money, property or other value from the Debtor's funds held in the Debtor's bank account.

188.    The Debtor's transfers of the 3350 Kaur Farms Direct Transfers to Defendant 3350 Kaur Farms, a Debtor Affiliate, constituted transfers of interests of the Debtor within the meaning of Section 101(54) of the Bankruptcy Code.

189.    The Debtor's transfers of the 3350 Kaur Farms Direct Transfers to Defendant 3350 Kaur Farms, a Debtor Affiliate, were to or for the benefit of Defendant 3350 Kaur Farms.

190.    Defendant 3350 Kaur Farms, the recipient of one or more of the 3350 Kaur Farms Direct Transfers, is an affiliate of the Debtor, sharing common ownership, and is, therefore, an "Insider" of the Debtor.

191.    Upon information and belief, Defendant Kaur Farms received a material direct or indirect benefit on account of the 3350 Kaur Farms Direct Transfers.

192.    Upon information and belief, the Debtor did not have any obligation to pay Defendant Kaur Farms at the time of any of the 3350 Kaur Farms Direct Transfers.

193.    The Debtor intentionally concealed or obscured the 3350 Kaur Farms Direct Transfers from the Debtor's creditors, third parties and others.

194.    Upon information and belief, the Debtor's books and records do not contain any reference to the 3350 Kaur Farms Direct Transfers.

195.    The Debtor made the 3350 Kaur Farms Direct Transfers without consideration, or significantly inadequate consideration, to the Debtor.

196.    The Debtor made the 3350 Kaur Farms Direct Transfers at a time when the Debtor knew it owed significant monies to NewBank and Key Food and that the Lugo Lawsuit was pending, among other debts and obligations that remain unpaid.

197.    The Debtor made the 3350 Kaur Farms Direct Transfers while the Debtor was insolvent or had unreasonably small capital.

198.    Singh directly or through the Debtor Affiliates in which he had an ownership interest continued to control, use, and/or enjoy the property transferred by the Debtor in the 3350 Kaur Farms Direct Transfers subsequent to each transfer being made.

199.    The 3350 Kaur Farms Direct Transfers were made by the Debtor, at the direction of Singh, with actual intention to hinder, delay and/or defraud the Debtor's creditors, and individuals and entities to which the Debtor was or would become obligated.

200.    The 3350 Kaur Farms Direct Transfers, and the subsequent transfers directed by Singh to be made from the 3350 Kaur Farms Direct Transfers to various parties, including the Defendants named in this Complaint, were made in furtherance of the Debtor's scheme to defraud lenders and other creditors from monies they continued to lend and/or invest in the Debtor, or credit they continued to extend to the Debtor.

201.    Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant 3350 Kaur Farms avoiding the 3350 Kaur Farms Direct Transfers in the total amount of $109,000 and directing that the subject of the 3350 Kaur Farms Direct Transfers or their value be returned to the Trustee, and Defendant 3350 Kaur Farms be held liable for the return of the 3350 Kaur Farms Direct Transfers as a direct or indirect beneficiary.

**FIFTH CAUSE OF ACTION**
**Avoidance and Recovery of Constructive Fraudulent Transfer**
**(11 U.S.C. §§ 548(a)(1)(A), 550 and 551)**
**(Against Defendant 3350 Kaur Farms)**

202.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 201 of this Complaint as if fully set forth at length herein.

203.    The 3350 Kaur Farms Direct Transfers to Defendant 3350 Kaur Farms constituted transfers of money, property, and value of the Debtor to Defendant 3350 Kaur Farms.

204.    Defendant 3350 Kaur Farms, the recipient of the 3350 Kaur Farms Direct Transfers, is related to and was an insider of the Debtor at the time of the transfers.

205.    Upon information and belief, Defendant 3350 Kaur Farms received a material direct or indirect benefit on account of each of the 3350 Kaur Farms Direct Transfers.

206.    The 3350 Kaur Farms Direct Transfers to Defendant 3350 Kaur Farms were intentionally obscured by Singh and the Debtor from the Debtor's creditors.

207.    Each of the 3350 Kaur Farms Direct Transfers to Defendant 3350 Kaur Farms were made without fair consideration and/or reasonable equivalent value to the Debtor.

208.    At the time the Debtor made each of the 3350 Kaur Farms Direct Transfers, the Debtor had incurred or was about to incur a liability which remains unpaid to this day including, but not limited to the claim(s) underlying the Lugo Lawsuit and the monies owed to NewBank and Key Food.

209.    At the time it made each of the 3350 Kaur Farms Direct Transfers, the Debtor: (i) was insolvent or became insolvent as a result of the 3350 Kaur Farms Direct Transfers; (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; and/or (iii) intended to incur, or believed that the Debtor would incur debts that would be beyond the Debtor's ability to pay as such debts matured.

210.    Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant 3350 Kaur Farms avoiding the 3350 Kaur Farms Direct Transfers and directing that the subject of the fraudulent transfers, the 3350 Kaur Farms Direct Transfers to Defendant 3350 Kaur Farms, or their value, be returned to the Trustee, and that Defendant 3350 Kaur Farms be held liable for the return of the 3350 Kaur Farms Direct Transfers as a direct or indirect beneficiary thereof.

**SIXTH CAUSE OF ACTION**
**Avoidance and Recovery of Preferential Transfer from an "Insider"**
**(11 U.S.C. §§ 547(b), 550)**
**(Against Defendant 3350 Kaur Farms)**

211.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 210 of this Complaint as if fully set forth at length herein.

212.    The Debtor made seven transfers to Defendant 3350 Kaur Farms, a Debtor Affiliate, between December 1, 2021 and December 22, 2021, each of which falls within the Insider Preference Period, totaling $109,000.

213.    To the extent the 3350 Kaur Farms Direct Transfers to Defendant 3350 Kaur Farms do not constitute fraudulent transfers, they are avoidable and recoverable because they were made on account of one or more antecedent debts owed by the Debtor.

214.    The 3350 Kaur Farms Direct Transfers were made to or for the benefit of Defendant 3350 Kaur Farms.

215.    Upon information and belief, Singh and/or Kuljit maintain an ownership interest in both Defendant 3350 Kaur Farms and the Debtor.

216.    Defendant 3350 Kaur Farms is an "insider" of the Debtor as that term is defined in Section 101(31) the Bankruptcy Code.

217.    The 3350 Kaur Farms Direct Transfers were made to or for the benefit of an "Insider" of the Debtor.

218.    The 3350 Kaur Farms Direct Transfers were made while the Debtor was insolvent or presumed to be insolvent.

219.    Defendant 3350 Kaur Farms, as a Debtor Affiliate, had reasonable cause to believe that the Debtor was insolvent at the time of each of the 3350 Kaur Farms Direct Transfers.

220.    The 3350 Kaur Farms Direct Transfers were made within one (1) year of the Petition Date.

221.    As a result of the 3350 Kaur Farms Direct Transfers, Defendant 3350 Kaur Farms received more than it would receive if (i) the Debtor's case was a case under chapter 7 of the Bankruptcy Code; (ii) the 3350 Kaur Farms Direct Transfers had not been made; and (iii) Defendant 3350 Kaur Farms received payment on account of its claims, if any, against the Debtor to the extent provided under the Bankruptcy Code.

222.    Based on the foregoing, the Trustee is entitled to an order and judgment against Defendant 3350 Kaur Farms as the transferee of the 3350 Kaur Farms Direct Transfers avoiding the 3350 Kaur Farms Direct Transfers and directing that the subject of the 3350 Kaur Farms Direct Transfers or their value be returned to the Trustee, and that Defendant 3350 Kaur Farms be held liable for the return of the 3350 Kaur Farms Direct Transfers as a direct and indirect beneficiary.

**SEVENTH CAUSE OF ACTION**
**Avoidance and Recovery of Intentional Fraudulent Transfers**
**(11 U.S.C. §§ 548(a)(1)(A), 550 and 551)**
**(Against Defendant A & A Vegetables)**

223.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 222 of this Complaint as if fully set forth at length herein.

224.    Between October 15, 2021 and December 27, 2021, within the Two-Year Fraudulent Transfer Period, the Debtor made seven transfers totaling $335,000 (the "A & A Vegetables Direct Transfers") to Defendant A & A Vegetables, a Debtor Affiliate.  A chart reflecting the A & A Vegetables Direct Transfers is annexed hereto as **Exhibit C**.

225.    The Debtor made the A & A Vegetables Direct Transfers within the two (2) year period prior to the Petition Date.

226.    The Debtor's transfers of the A & A Vegetables Direct Transfers to Defendant A & A Vegetables, a Debtor Affiliate, were transfers of money, property or other value from the Debtor's funds held in the Debtor's bank account.

227.    The Debtor's transfers of the A & A Vegetables Direct Transfers to Defendant A & A Vegetables, a Debtor Affiliate, constituted transfers of interests of the Debtor within the meaning of Section 101(54) of the Bankruptcy Code.

228.    The Debtor's transfers of the A & A Vegetables Direct Transfers to Defendant A & A Vegetables, a Debtor Affiliate, were to or for the benefit of Defendant A & A Vegetables.

229.    Defendant A & A Vegetables, the recipient of one or more of the A & A Vegetables Direct Transfers, is an affiliate of the Debtor, sharing common ownership, and is, therefore, an "Insider" of the Debtor.

230.    Upon information and belief, Defendant A & A Vegetables received a material direct or indirect benefit on account of the A & A Vegetables Direct Transfers.

231.    Upon information and belief, the Debtor did not have any obligation to pay Defendant A & A Vegetables at the time of any of the A & A Vegetables Direct Transfers.

232.    The Debtor intentionally concealed or obscured the A & A Vegetables Direct Transfers from the Debtor's creditors, third parties and others.

233.    Upon information and belief, the Debtor's books and records do not contain any reference to the A & A Vegetables Direct Transfers.

234.    The Debtor made the A & A Vegetables Direct Transfers without consideration, or significantly inadequate consideration, to the Debtor.

235.    The Debtor made the A & A Vegetables Direct Transfers at a time when the Debtor knew it owed significant monies to NewBank and Key Food and that the Lugo Lawsuit was pending, among other debts and obligations that remain unpaid.

236.    The Debtor made the A & A Vegetables Direct Transfers while the Debtor was insolvent or had unreasonably small capital.

237.    Singh directly or through the Debtor Affiliates in which he had an ownership interest continued to control, use, and/or enjoy the property transferred by the Debtor in the A & A Vegetables Direct Transfers subsequent to each transfer being made.

238.    The A & A Vegetables Direct Transfers was made by the Debtor, at the direction of Singh, with actual intention to hinder, delay and/or defraud the Debtor's creditors, and individuals and entities to which the Debtor was or would become obligated.

239.    The A & A Vegetables Direct Transfers, and the subsequent transfers directed by Singh to be made from the A & A Vegetables Direct Transfers to various parties, including the Defendants named in this Complaint, were made in furtherance of the Debtor's scheme to defraud lenders and other creditors from monies they continued to lend and/or invest in the Debtor, or credit they continued to extend to the Debtor.

240.    Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant A & A Vegetables avoiding the A & A Vegetables Direct Transfers in the total amount of $335,000 and directing that the subject of the A & A Vegetables Direct Transfers or their value be returned to the Trustee, and Defendant A & A Vegetables be held liable for the return of the A & A Vegetables Direct Transfers as a direct or indirect beneficiary.

### EIGHTH CAUSE OF ACTION
**Avoidance and Recovery of Constructive Fraudulent Transfer**
**(11 U.S.C. §§ 548(a)(1)(A), 550 and 551)**
**(Against Defendant A & A Vegetables)**

241.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 240 of this Complaint as if fully set forth at length herein.

242.    The A & A Vegetables Direct Transfers to A & A Vegetables constituted transfers of money, property, and value of the Debtor to Defendant A & A Vegetables.

243.    Defendant A & A Vegetables, the recipient of the A & A Vegetables Direct Transfers, is related to and was an insider of the Debtor at the time of the transfers.

244.    Upon information and belief, Defendant A & A Vegetables received a material direct or indirect benefit on account of each of the A & A Vegetables Direct Transfers.

245.    The A & A Vegetables Direct Transfers to Defendant A & A Vegetables were intentionally obscured by Singh and the Debtor from the Debtor's creditors.

246.    Each of the A & A Vegetables Direct Transfers to Defendant A & A Vegetables was made without fair consideration and/or reasonable equivalent value to the Debtor.

247.    At the time the Debtor made each of the A & A Vegetables Direct Transfers, the Debtor had incurred or was about to incur a liability which remains unpaid to this day including, but not limited to the claim(s) underlying the Lugo Lawsuit and the monies owed to NewBank and Key Food.

248.    At the time it made each of the A & A Vegetables Direct Transfers, the Debtor: (i) was insolvent or became insolvent as a result of the A & A Vegetables Direct Transfers; (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; and/or (iii) intended

to incur, or believed that the Debtor would incur debts that would be beyond the Debtor's ability to pay as such debts matured.

249.    Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant A & A Vegetables avoiding the A & A Vegetables Direct Transfers and directing that the subject of the fraudulent transfers, the A & A Vegetables Direct Transfers to Defendant A & A Vegetables, or their value, be returned to the Trustee, and that Defendant A & A Vegetables be held liable for the return of the A & A Vegetables Direct Transfers as a direct or indirect beneficiary thereof.

**NINTH CAUSE OF ACTION**
**Avoidance and Recovery of Preferential Transfer from an "Insider"**
**(11 U.S.C. §§ 547(b), 550)**
**(Against Defendant A & A Vegetables)**

250.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 249 of this Complaint as if fully set forth at length herein.

251.    The Debtor made seven transfers to Defendant A & A Vegetables, a Debtor Affiliate, between October 15, 2021 and December 27, 2021, each of which falls within the Insider Preference Period, totaling $335,000.

252.    To the extent the A & A Vegetables Direct Transfers to Defendant A & A Vegetables do not constitute fraudulent transfers, they are avoidable and recoverable because they were made on account of one or more antecedent debts owed by the Debtor.

253.    The A & A Vegetables Direct Transfers were made to or for the benefit of Defendant A & A Vegetables.

254.    Upon information and belief, Singh and/or Kuljit maintain an ownership interest in both Defendant A & A Vegetables and the Debtor.

255.    Defendant A & A Vegetables is an "insider" of the Debtor as that term is defined in Section 101(31) the Bankruptcy Code.

256.    The A & A Vegetables Direct Transfers were made to or for the benefit of an "Insider" of the Debtor.

257.    The A & A Vegetables Direct Transfers were made while the Debtor was insolvent or presumed to be insolvent.

258.    Defendant A & A Vegetables, as a Debtor Affiliate, had reasonable cause to believe that the Debtor was insolvent at the time of each of the A & A Vegetables Direct Transfers.

259.    The A & A Vegetables Direct Transfers were made within one (1) year of the Petition Date.

260.    As a result of the A & A Vegetables Direct Transfers, Defendant A & A Vegetables received more than it would receive if (i) the Debtor's case was a case under chapter 7 of the Bankruptcy Code; (ii) the A & A Vegetables Direct Transfers had not been made; and (iii) Defendant A & A Vegetables received payment on account of its claims, if any, against the Debtor to the extent provided under the Bankruptcy Code.

261.    Based on the foregoing, the Trustee is entitled to an order and judgment against Defendant A & A Vegetables as the transferee of the A & A Vegetables Direct Transfers avoiding the A & A Vegetables Direct Transfers and directing that the subject of the A & A Vegetables Direct Transfers or their value be returned to the Trustee, and that Defendant A & A Vegetables be held liable for the return of the A & A Vegetables Direct Transfers as a direct and indirect beneficiary.

**TENTH CAUSE OF ACTION**
**Avoidance and Recovery of Intentional Fraudulent Transfers**
**(11 U.S.C. §§ 544(b), 548(a)(1)(A), 550 and 551, DCL §§ 276 - 279)**
**(Against Defendant A & S Vegetables)**

262.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 261 of this Complaint as if fully set forth at length herein.

263.    Between October 24, 2018 and January 27, 2022, within the Four-Year Fraudulent Transfer Period, the Debtor made 272 transfers totaling $6,385,307.35 (the "A & S Vegetables Direct Transfers") to Defendant A & S Vegetables, a Debtor Affiliate.  A chart reflecting the A & S Vegetables Direct Transfers is annexed hereto as **Exhibit D**.

264.    The Debtor made the A & S Vegetables Direct Transfers within the four (4) year period prior to the Petition Date.

265.    The Debtor's transfers of the A & S Vegetables Direct Transfers to Defendant A & S Vegetables, a Debtor Affiliate, were transfers of money, property or other value from the Debtor's funds held in the Debtor's bank account.

266.    The Debtor's transfers of the A & S Vegetables Direct Transfers to Defendant A & S Vegetables, a Debtor Affiliate, constituted transfers of interests of the Debtor within the meaning of Section 101(54) of the Bankruptcy Code.

267.    The Debtor's transfers of the A & S Vegetables Direct Transfers to Defendant A & S Vegetables, a Debtor Affiliate, were to or for the benefit of Defendant A & S Vegetables.

268.    Defendant A & S Vegetables, the recipient of one or more of the A & S Vegetables Direct Transfers, is an affiliate of the Debtor, sharing common ownership, and is, therefore, an "Insider" of the Debtor.

269.    Upon information and belief, Defendant A & S Vegetables received a material direct or indirect benefit on account of the A & S Vegetables Direct Transfers.

270.    Upon information and belief, the Debtor did not have any obligation to pay Defendant A & S Vegetables at the time of any of the A & S Vegetables Direct Transfers.

271.    The Debtor intentionally concealed or obscured the A & S Vegetables Direct Transfers from the Debtor's creditors, third parties and others.

272.    Upon information and belief, the Debtor's books and records do not contain any reference to the A & S Vegetables Direct Transfers.

273.    The Debtor made the A & S Vegetables Direct Transfers without consideration, or significantly inadequate consideration, to the Debtor.

274.    The Debtor made the A & S Vegetables Direct Transfers at a time when the Debtor knew it owed significant monies to NewBank and Key Food and that the Lugo Lawsuit was pending, among other debts and obligations that remain unpaid.

275.    The Debtor made the A & S Vegetables Direct Transfers while the Debtor was insolvent or had unreasonably small capital.

276.    Singh directly or through the Debtor Affiliates in which he had an ownership interest continued to control, use, and/or enjoy the property transferred by the Debtor in the A & S Vegetables Direct Transfers subsequent to each transfer being made.

277.    The A & S Vegetables Direct Transfers was made by the Debtor, at the direction of Singh, with actual intention to hinder, delay and/or defraud the Debtor's creditors, and individuals and entities to which the Debtor was or would become obligated.

278.    The A & S Vegetables Direct Transfers, and the subsequent transfers directed by Singh to be made from the A & S Vegetables Direct Transfers to various parties, including the Defendants named in this Complaint, were made in furtherance of the Debtor's scheme to defraud

lenders and other creditors from monies they continued to lend and/or invest in the Debtor, or credit they continued to extend to the Debtor.

279.   Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant A & S Vegetables avoiding the A & S Vegetables Direct Transfers in the total amount of $6,385,307.35 and directing that the subject of the A & S Vegetables Direct Transfers or their value be returned to the Trustee, and Defendant A & S Vegetables be held liable for the return of the A & S Vegetables Direct Transfers as a direct or indirect beneficiary.

**ELEVENTH CAUSE OF ACTION**
**Avoidance and Recovery of Constructive Fraudulent Transfer**
**(11 U.S.C. §§ 544(b), 548(a)(1)(A), 550 and 551; DCL §§ 276 - 279)**
**(Against Defendant A & S Vegetables)**

280.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 279 of this Complaint as if fully set forth at length herein.

281.   The A & S Vegetables Direct Transfers to A & S Vegetables constituted transfers of money, property, and value of the Debtor to Defendant A & S Vegetables.

282.   Defendant A & S Vegetables, the recipient of the A & S Vegetables Direct Transfers, is related to and was an insider of the Debtor at the time of the transfers.

283.   Upon information and belief, Defendant A & S Vegetables received a material direct or indirect benefit on account of each of the A & S Vegetables Direct Transfers.

284.   The A & S Vegetables Direct Transfers to Defendant A & S Vegetables were intentionally obscured by Singh and the Debtor from the Debtor's creditors.

285.   Each of the A & S Vegetables Direct Transfers to Defendant A & S Vegetables was made without fair consideration and/or reasonable equivalent value to the Debtor.

286.   At the time the Debtor made each of the A & S Vegetables Direct Transfers, the Debtor had incurred or was about to incur a liability which remains unpaid to this day including,

but not limited to the claim(s) underlying the Lugo Lawsuit and the monies owed to NewBank and Key Food.

287.    At the time it made each of the A & S Vegetables Direct Transfers, the Debtor: (i) was insolvent or became insolvent as a result of the A & S Vegetables Direct Transfers; (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; and/or (iii) intended to incur, or believed that the Debtor would incur debts that would be beyond the Debtor's ability to pay as such debts matured.

288.    Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant A & S Vegetables avoiding the A & S Vegetables Direct Transfers and directing that the subject of the fraudulent transfers, the A & S Vegetables Direct Transfers to Defendant A & S Vegetables, or their value, be returned to the Trustee, and that Defendant A & S Vegetables be held liable for the return of the A & S Vegetables Direct Transfers as a direct or indirect beneficiary thereof.

## TWELFTH CAUSE OF ACTION
### Avoidance and Recovery of Preferential Transfer from an "Insider"
### (11 U.S.C. §§ 547(b), 550)
### (Against Defendant A & S Vegetables)

289.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 288 of this Complaint as if fully set forth at length herein.

290.    The Debtor made forty (40) transfers to Defendant A & S Vegetables, a Debtor Affiliate during the Insider Preference Period, totaling $635,997 (the "A & S Vegetables Preferential Transfers").

291.    To the extent the A & S Vegetables Direct Transfers to Defendant A & S Vegetables do not constitute fraudulent transfers and were made within the Insider Preference

Period, they are avoidable and recoverable because they were made on account of one or more antecedent debts owed by the Debtor.

292.    The A & S Vegetables Preferential Transfers were made to or for the benefit of Defendant A & S Vegetables.

293.    Upon information and belief, Singh and/or Kuljit maintain an ownership interest in both Defendant A & S Vegetables and the Debtor.

294.    Defendant A & S Vegetables is an "insider" of the Debtor as that term is defined in Section 101(31) the Bankruptcy Code.

295.    The A & S Vegetables Preferential Transfers were made to or for the benefit of an "Insider" of the Debtor.

296.    The A & S Vegetables Preferential Transfers were made while the Debtor was insolvent or presumed to be insolvent.

297.    Defendant A & S Vegetables, as a Debtor Affiliate, had reasonable cause to believe that the Debtor was insolvent at the time of each of the A & S Vegetables Preferential Transfers.

298.    The A & S Vegetables Preferential Transfers were made within one (1) year of the Petition Date.

299.    As a result of the A & S Vegetables Preferential Transfers, Defendant A & S Vegetables received more than it would receive if (i) the Debtor's case was a case under chapter 7 of the Bankruptcy Code; (ii) the A & S Vegetables Preferential Transfers had not been made; and (iii) Defendant A & S Vegetables received payment on account of its claims, if any, against the Debtor to the extent provided under the Bankruptcy Code.

300.    Based on the foregoing, the Trustee is entitled to an order and judgment against Defendant A & S Vegetables as the transferee of the A & S Vegetables Preferential Transfers

avoiding the A & S Vegetables Preferential Transfers and directing that the subject of the A & S Vegetables Preferential Transfers or their value be returned to the Trustee, and that Defendant A & S Vegetables be held liable for the return of the A & S Vegetables Preferential Transfers as a direct and indirect beneficiary.

### THIRTEENTH CAUSE OF ACTION
**Avoidance and Recovery of Intentional Fraudulent Transfers**
**(11 U.S.C. §§ 544(b), 548(a)(1)(A), 550 and 551, DCL §§ 276 - 279)**
**(Against Defendant Ameet Properties)**

301.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 300 of this Complaint as if fully set forth at length herein.

302.    Between March 19, 2019 and December 13, 2021, within the Four-Year Fraudulent Transfer Period, the Debtor made 26 transfers totaling $685,520 (the "Ameet Properties Direct Transfers") to Defendant Ameet Properties, a Debtor Affiliate.  A chart reflecting the Ameet Properties Direct Transfers is annexed hereto as **Exhibit E**.

303.    The Debtor made the Ameet Properties Direct Transfers within the four (4) year period prior to the Petition Date.

304.    The Debtor's transfers of the Ameet Properties Direct Transfers to Defendant Ameet Properties, a Debtor Affiliate, were transfers of money, property or other value from the Debtor's funds held in the Debtor's bank account.

305.    The Debtor's transfers of the Ameet Properties Direct Transfers to Defendant Ameet Properties, a Debtor Affiliate, constituted transfers of interests of the Debtor within the meaning of Section 101(54) of the Bankruptcy Code.

306.    The Debtor's transfers of the Ameet Properties Direct Transfers to Defendant Ameet Properties, a Debtor Affiliate, were to or for the benefit of Defendant Ameet Properties.

307.    Defendant Ameet Properties, the recipient of one or more of the Ameet Properties Direct Transfers, is an affiliate of the Debtor, sharing common ownership, and is, therefore, an "Insider" of the Debtor.

308.    Upon information and belief, Defendant Ameet Properties received a material direct or indirect benefit on account of the Ameet Properties Direct Transfers.

309.    Upon information and belief, the Debtor did not have any obligation to pay Defendant Ameet Properties at the time of any of the Ameet Properties Direct Transfers.

310.    The Debtor intentionally concealed or obscured the Ameet Properties Direct Transfers from the Debtor's creditors, third parties and others.

311.    Upon information and belief, the Debtor's books and records do not contain any reference to the Ameet Properties Direct Transfers.

312.    The Debtor made the Ameet Properties Direct Transfers without consideration, or significantly inadequate consideration, to the Debtor.

313.    The Debtor made the Ameet Properties Direct Transfers at a time when the Debtor knew it owed significant monies to NewBank and Key Food and that the Lugo Lawsuit was pending, among other debts and obligations that remain unpaid.

314.    The Debtor made the Ameet Properties Direct Transfers while the Debtor was insolvent or had unreasonably small capital.

315.    Singh directly or through the Debtor Affiliates in which he had an ownership interest continued to control, use, and/or enjoy the property transferred by the Debtor in the Ameet Properties Direct Transfers subsequent to each transfer being made.

316. The Ameet Properties Direct Transfers were made by the Debtor, at the direction of Singh, with actual intention to hinder, delay and/or defraud the Debtor's creditors, and individuals and entities to which the Debtor was or would become obligated.

317. The Ameet Properties Direct Transfers, and the subsequent transfers directed by Singh to be made from the Ameet Properties Direct Transfers to various parties, including the Defendants named in this Complaint, were made in furtherance of the Debtor's scheme to defraud lenders and other creditors from monies they continued to lend and/or invest in the Debtor, or credit they continued to extend to the Debtor.

318. Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Ameet Properties avoiding the Ameet Properties Direct Transfers in the total amount of $685,520 and directing that the subject of the Ameet Properties Direct Transfers or their value be returned to the Trustee, and Defendant Ameet Properties be held liable for the return of the Ameet Properties Direct Transfers as a direct or indirect beneficiary.

**FOURTEENTH CAUSE OF ACTION**
**Avoidance and Recovery of Constructive Fraudulent Transfer**
**(11 U.S.C. §§ 544(b), 548(a)(1)(A), 550 and 551; DCL §§ 272 - 275)**
**(Against Defendant Ameet Properties)**

319. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 318 of this Complaint as if fully set forth at length herein.

320. The Ameet Properties Direct Transfers to Defendant Ameet Properties constituted transfers of money, property, and value of the Debtor to Defendant Ameet Properties.

321. Defendant Ameet Properties, the recipient of the Ameet Properties Direct Transfers, is related to and was an insider of the Debtor at the time of the transfers.

322. Upon information and belief, Defendant Ameet Properties received a material direct or indirect benefit on account of each of the Ameet Properties Direct Transfers.

323.    The Ameet Properties Direct Transfers to Defendant Ameet Properties were intentionally obscured by Singh and the Debtor from the Debtor's creditors.

324.    Each of the Ameet Properties Direct Transfers to Defendant Ameet Properties was made without fair consideration and/or reasonable equivalent value to the Debtor.

325.    At the time the Debtor made each of the Ameet Properties Direct Transfers, the Debtor had incurred or was about to incur a liability which remains unpaid to this day including, but not limited to the claim(s) underlying the Lugo Lawsuit and the monies owed to NewBank and Key Food.

326.    At the time it made each of the Ameet Properties Direct Transfers, the Debtor: (i) was insolvent or became insolvent as a result of the Ameet Properties Direct Transfers; (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; and/or (iii) intended to incur, or believed that the Debtor would incur debts that would be beyond the Debtor's ability to pay as such debts matured.

327.    Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Ameet Properties avoiding the Ameet Properties Direct Transfers and directing that the subject of the fraudulent transfers, the Ameet Properties Direct Transfers to Defendant Ameet Properties, or their value, be returned to the Trustee, and that Defendant Ameet Properties be held liable for the return of the Ameet Properties Direct Transfers as a direct or indirect beneficiary thereof.

### FIFTEENTH CAUSE OF ACTION
**Avoidance and Recovery of Preferential Transfer from an "Insider"**
**(11 U.S.C. §§ 547(b), 550)**
**(Against Defendant Ameet Properties)**

328.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 327 of this Complaint as if fully set forth at length herein.

329.    The Debtor made six (6) transfers to Defendant Ameet Properties, a Debtor Affiliate during the Insider Preference Period, totaling $143,100 (the "Ameet Properties Preferential Transfers").

330.    To the extent the Ameet Properties Direct Transfers to Defendant Ameet Properties do not constitute fraudulent transfers and were made within the Insider Preference Period, they are avoidable and recoverable because they were made on account of one or more antecedent debts owed by the Debtor.

331.    The Ameet Properties Preferential Transfers were made to or for the benefit of Defendant Ameet Properties.

332.    Upon information and belief, Singh and/or Kuljit maintain an ownership interest in both Defendant Ameet Properties and the Debtor.

333.    Defendant Ameet Properties is an "insider" of the Debtor as that term is defined in Section 101(31) the Bankruptcy Code.

334.    The Ameet Properties Preferential Transfers were made to or for the benefit of an "Insider" of the Debtor.

335.    The Ameet Properties Preferential Transfers were made while the Debtor was insolvent or presumed to be insolvent.

336.    Defendant Ameet Properties, as a Debtor Affiliate, had reasonable cause to believe that the Debtor was insolvent at the time of each of the Ameet Properties Preferential Transfers.

337.    The Ameet Properties Preferential Transfers were made within one (1) year of the Petition Date.

338.    As a result of the Ameet Properties Preferential Transfers, Defendant Ameet Properties received more than it would receive if (i) the Debtor's case was a case under chapter 7 of the Bankruptcy Code; (ii) the Ameet Properties Preferential Transfers had not been made; and (iii) Defendant Ameet Properties received payment on account of its claims, if any, against the Debtor to the extent provided under the Bankruptcy Code.

339.    Based on the foregoing, the Trustee is entitled to an order and judgment against Defendant Ameet Properties as the transferee of the Ameet Properties Preferential Transfers avoiding the Ameet Properties Preferential Transfers and directing that the subject of the Ameet Properties Preferential Transfers or their value be returned to the Trustee, and that Defendant Ameet Properties be held liable for the return of the Ameet Properties Preferential Transfers as a direct and indirect beneficiary.

### SIXTEENTH CAUSE OF ACTION
**Avoidance and Recovery of Intentional Fraudulent Transfers**
**(11 U.S.C. §§ 548(a)(1)(A), 550 and 551)**
**(Against Defendant Kaur Farms)**

340.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 339 of this Complaint as if fully set forth at length herein.

341.    Between January 21, 2020 and December 31, 2021, within the Four-Year Fraudulent Transfer Period, the Debtor made 21 transfers totaling $676,975.75 (the "Kaur Farms Direct Transfers") to Defendant Kaur Farms, a Debtor Affiliate.  A chart reflecting the Kaur Farms Direct Transfers is annexed hereto as **Exhibit F**.

342.    The Debtor made the Kaur Farms Direct Transfers within the four (4) year period prior to the Petition Date.

343.    The Debtor's transfers of the Kaur Farms Direct Transfers to Defendant Kaur Farms, a Debtor Affiliate, were transfers of money, property or other value from the Debtor's funds held in the Debtor's bank account.

344.    The Debtor's transfers of the Kaur Farms Direct Transfers to Defendant Kaur Farms, a Debtor Affiliate, constituted transfers of interests of the Debtor within the meaning of Section 101(54) of the Bankruptcy Code.

345.    The Debtor's transfers of the Kaur Farms Direct Transfers to Defendant Kaur Farms, a Debtor Affiliate, were to or for the benefit of Defendant Kaur Farms.

346.    Defendant Kaur Farms, the recipient of one or more of the Kaur Farms Direct Transfers, is an affiliate of the Debtor, sharing common ownership, and is, therefore, an "Insider" of the Debtor.

347.    Upon information and belief, Defendant Kaur Farms received a material direct or indirect benefit on account of the Kaur Farms Direct Transfers.

348.    Upon information and belief, the Debtor did not have any obligation to pay Defendant Kaur Farms at the time of any of the Kaur Farms Direct Transfers.

349.    The Debtor intentionally concealed or obscured the Kaur Farms Direct Transfers from the Debtor's creditors, third parties and others.

350.    Upon information and belief, the Debtor's books and records do not contain any reference to the Kaur Farms Direct Transfers.

351.    The Debtor made the Kaur Farms Direct Transfers without consideration, or significantly inadequate consideration, to the Debtor.

352.    The Debtor made the Kaur Farms Direct Transfers at a time when the Debtor knew it owed significant monies to NewBank and Key Food and that the Lugo Lawsuit was pending, among other debts and obligations that remain unpaid.

353.    The Debtor made the Kaur Farms Direct Transfers while the Debtor was insolvent or had unreasonably small capital.

354.    Singh directly or through the Debtor Affiliates in which he had an ownership interest continued to control, use, and/or enjoy the property transferred by the Debtor in the Kaur Farms Direct Transfers subsequent to each transfer being made.

355.    The Kaur Farms Direct Transfers were made by the Debtor, at the direction of Singh, with actual intention to hinder, delay and/or defraud the Debtor's creditors, and individuals and entities to which the Debtor was or would become obligated.

356.    The Kaur Farms Direct Transfers, and the subsequent transfers directed by Singh to be made from the Kaur Farms Direct Transfers to various parties, including the Defendants named in this Complaint, were made in furtherance of the Debtor's scheme to defraud lenders and other creditors from monies they continued to lend and/or invest in the Debtor, or credit they continued to extend to the Debtor.

357.    Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Kaur Farms avoiding the Kaur Farms Direct Transfers in the total amount of $676,975.75 and directing that the subject of the Kaur Farms Direct Transfers or their value be returned to the Trustee, and Defendant Kaur Farms be held liable for the return of the Kaur Farms Direct Transfers as a direct or indirect beneficiary.

## SEVENTEENTH CAUSE OF ACTION
### Avoidance and Recovery of Constructive Fraudulent Transfer
### (11 U.S.C. §§ 548(a)(1)(A), 550 and 551)
### (Against Defendant Kaur Farms)

358.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 357 of this Complaint as if fully set forth at length herein.

359.    The Kaur Farms Direct Transfers to Defendant Kaur Farms constituted transfers of money, property, and value of the Debtor to Defendant Kaur Farms.

360.    Defendant Kaur Farms, the recipient of the Kaur Farms Direct Transfers, is related to and was an insider of the Debtor at the time of the transfers.

361.    Upon information and belief, Defendant Kaur Farms received a material direct or indirect benefit on account of each of the Kaur Farms Direct Transfers.

362.    The Kaur Farms Direct Transfers to Defendant Kaur Farms were intentionally obscured by Singh and the Debtor from the Debtor's creditors.

363.    Each of the Kaur Farms Direct Transfers to Defendant Kaur Farms was made without fair consideration and/or reasonable equivalent value to the Debtor.

364.    At the time the Debtor made each of the Kaur Farms Direct Transfers, the Debtor had incurred or was about to incur a liability which remains unpaid to this day including, but not limited to the claim(s) underlying the Lugo Lawsuit and the monies owed to NewBank and Key Food.

365.    At the time it made each of the Kaur Farms Direct Transfers, the Debtor: (i) was insolvent or became insolvent as a result of the Kaur Farms Direct Transfers; (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; and/or (iii) intended to

incur, or believed that the Debtor would incur debts that would be beyond the Debtor's ability to pay as such debts matured.

366.    Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Kaur Farms avoiding the Kaur Farms Direct Transfers and directing that the subject of the fraudulent transfers, the Kaur Farms Direct Transfers to Defendant Kaur Farms, or their value, be returned to the Trustee, and that Defendant Kaur Farms be held liable for the return of the Kaur Farms Direct Transfers as a direct or indirect beneficiary thereof.

**EIGHTEENTH CAUSE OF ACTION**
**Avoidance and Recovery of Preferential Transfer from an "Insider"**
**(11 U.S.C. §§ 547(b), 550)**
**(Against Defendant Kaur Farms)**

367.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 366 of this Complaint as if fully set forth at length herein.

368.    The Debtor made twenty (20) transfers to Defendant Kaur Farms, a Debtor Affiliate during the Insider Preference Period, totaling $576,975.75 (the "Kaur Farms Preferential Transfers").

369.    To the extent the Kaur Farms Direct Transfers to Defendant Kaur Farms do not constitute fraudulent transfers and were made within the Insider Preference Period, they are avoidable and recoverable because they were made on account of one or more antecedent debts owed by the Debtor.

370.    The Kaur Farms Preferential Transfers were made to or for the benefit of Defendant Kaur Farms.

371.    Upon information and belief, Singh and/or Kuljit, maintain an ownership interest in both Defendant Kaur Farms and the Debtor.

372.    Defendant Kaur Farms is an "insider" of the Debtor as that term is defined in Section 101(31) the Bankruptcy Code.

373.    The Kaur Farms Preferential Transfers were made to or for the benefit of an "Insider" of the Debtor.

374.    The Kaur Farms Preferential Transfers were made while the Debtor was insolvent or presumed to be insolvent.

375.    Defendant Kaur Farms, as a Debtor Affiliate, had reasonable cause to believe that the Debtor was insolvent at the time of each of the Kaur Farms Preferential Transfers.

376.    The Kaur Farms Preferential Transfers were made within one (1) year of the Petition Date.

377.    As a result of the Kaur Farms Preferential Transfers, Defendant Kaur Farms received more than it would receive if (i) the Debtor's case was a case under chapter 7 of the Bankruptcy Code; (ii) the Kaur Farms Preferential Transfers had not been made; and (iii) Defendant Kaur Farms received payment on account of its claims, if any, against the Debtor to the extent provided under the Bankruptcy Code.

378.    Based on the foregoing, the Trustee is entitled to an order and judgment against Defendant Kaur Farms as the transferee of the Kaur Farms Preferential Transfers avoiding the Kaur Farms Preferential Transfers and directing that the subject of the Kaur Farms Preferential Transfers or their value be returned to the Trustee, and that Defendant Kaur Farms be held liable for the return of the Kaur Farms Preferential Transfers as a direct and indirect beneficiary.

## NINETEENTH CAUSE OF ACTION
### Avoidance and Recovery of Intentional Fraudulent Transfers
### (11 U.S.C. §§ 548(a)(1)(A), 550 and 551)
### (Against Defendant OM Liquors)

379. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 378 of this Complaint as if fully set forth at length herein.

380. Between October 18, 2021 and December 30, 2021, within the Two-Year Fraudulent Transfer Period, the Debtor made 17 transfers totaling $1,305,090 (the "OM Liquors Direct Transfers") to Defendant OM Liquors, a Debtor Affiliate. A chart reflecting the OM Liquors Direct Transfers is annexed hereto as **Exhibit G**.

381. The Debtor made the OM Liquors Direct Transfers within the two (2) year period prior to the Petition Date.

382. The Debtor's transfers of the OM Liquors Direct Transfers to Defendant OM Liquors, a Debtor Affiliate, were transfers of money, property or other value from the Debtor's funds held in the Debtor's bank account.

383. The Debtor's transfers of the OM Liquors Direct Transfers to Defendant OM Liquors, a Debtor Affiliate, constituted transfers of interests of the Debtor within the meaning of Section 101(54) of the Bankruptcy Code.

384. The Debtor's transfers of the OM Liquors Direct Transfers to Defendant OM Liquors, a Debtor Affiliate, were to or for the benefit of Defendant OM Liquors.

385. Defendant OM Liquors, the recipient of one or more of the OM Liquors Direct Transfers, is an affiliate of the Debtor, sharing common ownership, and is, therefore, an "Insider" of the Debtor.

386. Upon information and belief, Defendant OM Liquors received a material direct or indirect benefit on account of the OM Liquors Direct Transfers.

387.    Upon information and belief, the Debtor did not have any obligation to pay Defendant OM Liquors at the time of any of the OM Liquors Direct Transfers.

388.    The Debtor intentionally concealed or obscured the OM Liquors Direct Transfers from the Debtor's creditors, third parties and others.

389.    Upon information and belief, the Debtor's books and records do not contain any reference to the OM Liquors Direct Transfers.

390.    The Debtor made the OM Liquors Direct Transfers without consideration, or significantly inadequate consideration, to the Debtor.

391.    The Debtor made the OM Liquors Direct Transfers at a time when the Debtor knew it owed significant monies to NewBank and Key Food and that the Lugo Lawsuit was pending, among other debts and obligations that remain unpaid.

392.    The Debtor made the OM Liquors Direct Transfers while the Debtor was insolvent or had unreasonably small capital.

393.    Singh directly or through the Debtor Affiliates in which he had an ownership interest continued to control, use, and/or enjoy the property transferred by the Debtor in the OM Liquors Direct Transfers subsequent to each transfer being made.

394.    The OM Liquors Direct Transfers were made by the Debtor, at the direction of Singh, with actual intention to hinder, delay and/or defraud the Debtor's creditors, and individuals and entities to which the Debtor was or would become obligated.

395.    The OM Liquors Direct Transfers, and the subsequent transfers directed by Singh to be made from the OM Liquors Direct Transfers to various parties, including the Defendants named in this Complaint, were made in furtherance of the Debtor's scheme to defraud lenders and

other creditors from monies they continued to lend and/or invest in the Debtor, or credit they continued to extend to the Debtor.

396.    Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant OM Liquors avoiding the OM Liquors Direct Transfers in the total amount of $1,305,090 and directing that the subject of the OM Liquors Direct Transfers or their value be returned to the Trustee, and Defendant OM Liquors be held liable for the return of the OM Liquors Direct Transfers as a direct or indirect beneficiary.

**TWENTIETH CAUSE OF ACTION**
**Avoidance and Recovery of Constructive Fraudulent Transfer**
**(11 U.S.C. §§ 548(a)(1)(A), 550 and 551)**
**(Against Defendant OM Liquors)**

397.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 396 of this Complaint as if fully set forth at length herein.

398.    The OM Liquors Direct Transfers to Defendant OM Liquors constituted transfers of money, property, and value of the Debtor to Defendant OM Liquors.

399.    Defendant OM Liquors, the recipient of the OM Liquors Direct Transfers, is related to and was an "insider" of the Debtor at the time of the transfers.

400.    Upon information and belief, Defendant OM Liquors received a material direct or indirect benefit on account of each of the OM Liquors Direct Transfers.

401.    The OM Liquors Direct Transfers to Defendant OM Liquors were intentionally obscured by Singh and the Debtor from the Debtor's creditors.

402.    Each of the OM Liquors Direct Transfers to Defendant OM Liquors was made without fair consideration and/or reasonable equivalent value to the Debtor.

403.    At the time the Debtor made each of the OM Liquors Direct Transfers, the Debtor had incurred or was about to incur a liability which remains unpaid to this day including, but not

limited to the claim(s) underlying the Lugo Lawsuit and the monies owed to NewBank and Key Food.

404.    At the time it made each of the OM Liquors Direct Transfers, the Debtor: (i) was insolvent or became insolvent as a result of the OM Liquors Direct Transfers; (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; and/or (iii) intended to incur, or believed that the Debtor would incur debts that would be beyond the Debtor's ability to pay as such debts matured.

405.    Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant OM Liquors avoiding the OM Liquors Direct Transfers and directing that the subject of the fraudulent transfers, the OM Liquors Direct Transfers to Defendant OM Liquors, or their value, be returned to the Trustee, and that Defendant OM Liquors be held liable for the return of the OM Liquors Direct Transfers as a direct or indirect beneficiary thereof.

### TWENTY-FIRST CAUSE OF ACTION
**Avoidance and Recovery of Preferential Transfer from an "Insider"**
**(11 U.S.C. §§ 547(b), 550)**
**(Against Defendant OM Liquors)**

406.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 405 of this Complaint as if fully set forth at length herein.

407.    The Debtor made seventeen (17) transfers to Defendant OM Liquors, a Debtor Affiliate during the Insider Preference Period, totaling $1,305,090 (the "OM Liquors Preferential Transfers").

408.    To the extent the OM Liquors Direct Transfers to Defendant OM Liquors do not constitute fraudulent transfers and were made within the Insider Preference Period, they are

avoidable and recoverable because they were made on account of one or more antecedent debts owed by the Debtor.

409.    The OM Liquors Preferential Transfers were made to or for the benefit of Defendant OM Liquors.

410.    Upon information and belief, Singh and/or Kuljit maintain an ownership interest in both Defendant OM Liquors and the Debtor.

411.    Defendant OM Liquors is an "insider" of the Debtor as that term is defined in Section 101(31) the Bankruptcy Code.

412.    The OM Liquors Preferential Transfers were made to or for the benefit of an "Insider" of the Debtor.

413.    The OM Liquors Preferential Transfers were made while the Debtor was insolvent or presumed to be insolvent.

414.    Defendant OM Liquors, as a Debtor Affiliate, had reasonable cause to believe that the Debtor was insolvent at the time of each of the OM Liquors Preferential Transfers.

415.    The OM Liquors Preferential Transfers were made within one (1) year of the Petition Date.

416.    As a result of the OM Liquors Preferential Transfers, Defendant OM Liquors received more than it would receive if (i) the Debtor's case was a case under chapter 7 of the Bankruptcy Code; (ii) the OM Liquors Preferential Transfers had not been made; and (iii) Defendant OM Liquors received payment on account of its claims, if any, against the Debtor to the extent provided under the Bankruptcy Code.

417.    Based on the foregoing, the Trustee is entitled to an order and judgment against Defendant OM Liquors as the transferee of the OM Liquors Preferential Transfers avoiding the

OM Liquors Preferential Transfers and directing that the subject of the OM Liquors Preferential

Transfers or their value be returned to the Trustee, and that Defendant OM Liquors be held liable

for the return of the OM Liquors Preferential Transfers as a direct and indirect beneficiary.

**TWENTY-SECOND CAUSE OF ACTION**
**Avoidance and Recovery of Unauthorized Post-Petition Transfer**
**(11 U.S.C. §§ 549, 550)**
**(Against Defendant OM Liquors)**

418.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1

through 417 of this Complaint as if fully set forth at length herein.

419.    On September 6, 2022, at least six months after the Petition Date, the Debtor made

one transfer to Defendant OM Liquor, a Debtor Affiliate, in the amount of $47,000 (the "OM

Liquors Post-Petition Transfer").

420.    The OM Liquors Post-Petition Transfer constituted a transfer of property by the

Debtor.

421.    The OM Liquors Post-Petition Transfer was not disclosed to the Bankruptcy Court,

the United States Trustee, the Subchapter V Trustee or any of the Debtor's creditors.

422.    The OM Liquors Post-Petition Transfer was not authorized by the Bankruptcy

Court.

423.    If effective, the OM Liquors Post-Petition Transfer resulted in the loss of value to

the Debtor's bankruptcy estate of not less than $47,000.

424.    Based upon the foregoing, the Trustee is entitled to an order and judgment against

Defendant OM Liquors, and/or any recipient of the OM Liquors Post-Petition Transfer avoiding

the OM Liquors Post-Petition Transfer and directing that the subject of the OM Liquors Post-

Petition Transfer or its value be returned to the Trustee and the Defendant OM Liquors be held

jointly and several liable for the return of the OM Liquors Post-Petition Transfer as a direct or indirect beneficiary.

### TWENTY-THIRD CAUSE OF ACTION
**Avoidance and Recovery of Intentional Fraudulent Transfers**
**(11 U.S.C. §§ 544(b), 548(a)(1)(A), 550 and 551; DCL §§ 276 - 279)**
**(Against Defendant OM Vegetable)**

425.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 424 of this Complaint as if fully set forth at length herein.

426.    Between October 15, 2018 and January 2, 2022, within the Four-Year Fraudulent Transfer Period, the Debtor made 198 transfers totaling $3,492,399 (the "OM Vegetable Direct Transfers") to Defendant OM Vegetable, a Debtor Affiliate.  A chart reflecting the OM Vegetable Direct Transfers is annexed hereto as **Exhibit H**.

427.    The Debtor made the OM Vegetable Direct Transfers within the four (4) year period prior to the Petition Date.

428.    The Debtor's transfers of the OM Vegetable Direct Transfers to Defendant OM Vegetable, a Debtor Affiliate, were transfers of money, property or other value from the Debtor's funds held in the Debtor's bank account.

429.    The Debtor's transfers of the OM Vegetable Direct Transfers to Defendant OM Vegetable, a Debtor Affiliate, constituted transfers of interests of the Debtor within the meaning of Section 101(54) of the Bankruptcy Code.

430.    The Debtor's transfers of the OM Vegetable Direct Transfers to Defendant OM Vegetable, a Debtor Affiliate, were to or for the benefit of Defendant OM Vegetable.

431.    Defendant OM Vegetable, the recipient of one or more of the OM Vegetable Direct Transfers, is an affiliate of the Debtor, sharing common ownership, and is, therefore, an "Insider" of the Debtor.

432.    Upon information and belief, Defendant OM Vegetable received a material direct or indirect benefit on account of the OM Vegetable Direct Transfers.

433.    Upon information and belief, the Debtor did not have any obligation to pay Defendant OM Vegetable at the time of any of the OM Vegetable Direct Transfers.

434.    The Debtor intentionally concealed or obscured the OM Vegetable Direct Transfers from the Debtor's creditors, third parties and others.

435.    Upon information and belief, the Debtor's books and records do not contain any reference to the OM Vegetable Direct Transfers.

436.    The Debtor made the OM Vegetable Direct Transfers without consideration, or significantly inadequate consideration, to the Debtor.

437.    The Debtor made the OM Vegetable Direct Transfers at a time when the Debtor knew it owed significant monies to NewBank and Key Food and that the Lugo Lawsuit was pending, among other debts and obligations that remain unpaid.

438.    The Debtor made the OM Vegetable Direct Transfers while the Debtor was insolvent or had unreasonably small capital.

439.    Singh directly or through the Debtor Affiliates in which he had an ownership interest continued to control, use, and/or enjoy the property transferred by the Debtor in the OM Vegetable Direct Transfers subsequent to each transfer being made.

440.    The OM Vegetable Direct Transfers were made by the Debtor, at the direction of Singh, with actual intention to hinder, delay and/or defraud the Debtor's creditors, and individuals and entities to which the Debtor was or would become obligated.

441.    The OM Vegetable Direct Transfers, and the subsequent transfers directed by Singh to be made from the OM Vegetable Direct Transfers to various parties, including the Defendants

named in this Complaint, were made in furtherance of the Debtor's scheme to defraud lenders and other creditors from monies they continued to lend and/or invest in the Debtor, or credit they continued to extend to the Debtor.

442.    Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant OM Vegetable avoiding the OM Vegetable Direct Transfers in the total amount of $3,492,399 and directing that the subject of the OM Vegetable Direct Transfers or their value be returned to the Trustee, and Defendant OM Vegetable be held liable for the return of the OM Vegetable Direct Transfers as a direct or indirect beneficiary.

**TWENTY-FOURTH CAUSE OF ACTION**
**Avoidance and Recovery of Constructive Fraudulent Transfer**
**(11 U.S.C. §§ 544(b), 548(a)(1)(A), 550 and 551; DCL §§ 272 - 275)**
**(Against Defendant OM Vegetable)**

443.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 442 of this Complaint as if fully set forth at length herein.

444.    The OM Vegetable Direct Transfers to Defendant OM Vegetable constituted transfers of money, property, and value of the Debtor to Defendant OM Vegetable.

445.    Defendant OM Vegetable, the recipient of the OM Vegetable Direct Transfers, is related to and was an "insider" of the Debtor at the time of the transfers.

446.    Upon information and belief, Defendant OM Vegetable received a material direct or indirect benefit on account of each of the OM Vegetable Direct Transfers.

447.    The OM Vegetable Direct Transfers to Defendant OM Vegetable were intentionally obscured by Singh and the Debtor from the Debtor's creditors.

448.    Each of the OM Vegetable Direct Transfers to Defendant OM Vegetable was made without fair consideration and/or reasonable equivalent value to the Debtor.

449.     At the time the Debtor made each of the OM Vegetable Direct Transfers, the Debtor had incurred or was about to incur a liability which remains unpaid to this day including, but not limited to the claim(s) underlying the Lugo Lawsuit and the monies owed to NewBank and Key Food.

450.     At the time it made each of the OM Vegetable Direct Transfers, the Debtor: (i) was insolvent or became insolvent as a result of the OM Vegetable Direct Transfers; (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; and/or (iii) intended to incur, or believed that the Debtor would incur debts that would be beyond the Debtor's ability to pay as such debts matured.

451.     Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant OM Vegetable avoiding the OM Vegetable Direct Transfers and directing that the subject of the fraudulent transfers, the OM Vegetable Direct Transfers to Defendant OM Vegetable, or their value, be returned to the Trustee, and that Defendant OM Vegetable be held liable for the return of the OM Vegetable Direct Transfers as a direct or indirect beneficiary thereof.

## TWENTY-FIFTH CAUSE OF ACTION
### Avoidance and Recovery of Preferential Transfer from an "Insider"
### (11 U.S.C. §§ 547(b), 550)
### (Against Defendant OM Vegetable)

452.     Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 451 of this Complaint as if fully set forth at length herein.

453.     The Debtor made eighty-nine (89) transfers to Defendant OM Vegetable, a Debtor Affiliate during the Insider Preference Period, totaling $2,479,285 (the "OM Vegetable Preferential Transfers").

454.    To the extent the OM Vegetable Preferential Transfers to Defendant OM Vegetable do not constitute fraudulent transfers and were made within the Insider Preference Period, they are avoidable and recoverable because they were made on account of one or more antecedent debts owed by the Debtor.

455.    The OM Vegetable Preferential Transfers were made to or for the benefit of Defendant OM Vegetable.

456.    Upon information and belief, Singh and/or Kuljit maintain an ownership interest in both Defendant OM Vegetable and the Debtor.

457.    Defendant OM Vegetable is an "insider" of the Debtor as that term is defined in Section 101(31) the Bankruptcy Code.

458.    The OM Vegetable Preferential Transfers were made to or for the benefit of an "Insider" of the Debtor.

459.    The OM Vegetable Preferential Transfers were made while the Debtor was insolvent or presumed to be insolvent.

460.    Defendant OM Vegetable, as a Debtor Affiliate, had reasonable cause to believe that the Debtor was insolvent at the time of each of the OM Vegetable Preferential Transfers.

461.    The OM Vegetable Preferential Transfers were made within one (1) year of the Petition Date.

462.    As a result of the OM Vegetable Preferential Transfers, Defendant OM Vegetable received more than it would receive if (i) the Debtor's case was a case under chapter 7 of the Bankruptcy Code; (ii) the OM Vegetable Preferential Transfers had not been made; and (iii) Defendant OM Vegetable received payment on account of its claims, if any, against the Debtor to the extent provided under the Bankruptcy Code.

463.    Based on the foregoing, the Trustee is entitled to an order and judgment against Defendant OM Vegetable as the transferee of the OM Vegetable Preferential Transfers avoiding the OM Vegetable Preferential Transfers and directing that the subject of the OM Vegetable Preferential Transfers or their value be returned to the Trustee, and that Defendant OM Vegetable be held liable for the return of the OM Vegetable Preferential Transfers as a direct and indirect beneficiary.

### TWENTY-SIXTH CAUSE OF ACTION
**Recovery of Subsequent Transfers**
**(11 U.S.C. §§ 550 and 551)**
**(Against Defendant 101 Kaur Farms)**

464.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 463 of this Complaint as if fully set forth at length herein.

465.    On the date of each of the transfers, the OM Vegetable Direct Transfers were the property of the Debtor.

466.    As set forth herein, each of the OM Vegetable Direct Transfers to Defendant OM Vegetable is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

467.    Following OM Vegetable Direct Transfers from the Debtor to Defendant OM Vegetable, between March 5, 2021 and June 11, 2021, Defendant OM Vegetable, the initial transferee of the OM Vegetable Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made twenty (20) transfers totaling $493,163.33 to Defendant 101 Kaur Farms (the "101 Kaur Farms Subsequent Transfers"), as set forth on **Exhibit A**.

468.    The 101 Kaur Farms Subsequent Transfers were made with Debtor funds and property that belonged to the Debtor.

469.     The 101 Kaur Farms Subsequent Transfers were made directly or indirectly to, or for the benefit of, Defendant 101 Kaur Farms.

470.     Upon information and belief, following each of the transfers from the Debtor to Defendant OM Vegetable to Defendant 101 Kaur Farms, Defendant 101 Kaur Farms deposited the 101 Kaur Farms Subsequent Transfers into one or more of its bank accounts.

471.     Upon information and belief, in exchange for each of the 101 Kaur Farms Subsequent Transfers, Defendant 101 Kaur Farms did not provide any value to the Debtor.

472.     Defendant 101 Kaur Farms received the 101 Kaur Farms Subsequent Transfers, totaling $493,163.33, which are recoverable pursuant to section 550(a) of the Bankruptcy Code.

473.     Defendant 101 Kaur Farms is the immediate or mediate transferee of the 101 Kaur Farms Subsequent Transfers.

474.     Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant 101 Kaur Farms, pursuant to section 550(a) and 551 of the Bankruptcy Code, recovering the 101 Kaur Farms Subsequent Transfers, or the value thereof, for the benefit of the Debtor's estate.

### TWENTY-SEVENTH CAUSE OF ACTION
**Recovery of Subsequent Transfers**
**(11 U.S.C. §§ 550 and 551)**
**(Against Defendant 3350 Kaur Farms)**

475.     Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 474 of this Complaint as if fully set forth at length herein.

476.     On the date of each of the transfers, the OM Vegetable Direct Transfers were the property of the Debtor.

477.    As set forth herein, each of the OM Vegetable Direct Transfers to Defendant OM Vegetable is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 – 279.

478.    Following OM Vegetable Direct Transfers from the Debtor to Defendant OM Vegetable, between November 17, 2021 and December 28, 2021, Defendant OM Vegetable, the initial transferee of the OM Vegetable Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made seven (7) transfers totaling $106,000 to Defendant 3350 Kaur Farms (the "3350 Kaur Farms Subsequent Transfers"), as set forth on **Exhibit B**.

479.    The 3350 Kaur Farms Subsequent Transfers were made with Debtor funds and property that belonged to the Debtor.

480.    The 3350 Kaur Farms Subsequent Transfers were made directly or indirectly to, or for the benefit of, Defendant 3350 Kaur Farms.

481.    Upon information and belief, following each of the transfers from the Debtor to Defendant OM Vegetable to Defendant 3350 Kaur Farms, Defendant 3350 Kaur Farms deposited the 3350 Kaur Farms Subsequent Transfers into one or more of its bank accounts.

482.    Upon information and belief, in exchange for each of the 3350 Kaur Farms Subsequent Transfers, Defendant 3350 Kaur Farms did not provide any value to the Debtor.

483.    Defendant 3350 Kaur Farms received the 3350 Kaur Farms Subsequent Transfers, totaling $106,000, which are recoverable pursuant to section 550(a) of the Bankruptcy Code.

484.    Defendant 3350 Kaur Farms is the immediate or mediate transferee of the 3350 Kaur Farms Subsequent Transfers.

485.    Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant 3350 Kaur Farms, pursuant to section 550(a) and 551 of the Bankruptcy Code,

recovering the 3350 Kaur Farms Subsequent Transfers, or the value thereof, for the benefit of the Debtor's estate.

## TWENTY-EIGHTH CAUSE OF ACTION
### Recovery of Subsequent Transfers
### (11 U.S.C. §§ 550 and 551)
### (Against Defendant A & A Vegetables)

486.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 485 of this Complaint as if fully set forth at length herein.

487.    On the date of each of the transfers, the OM Vegetable Direct Transfers were the property of the Debtor.

488.    As set forth herein, each of the OM Vegetable Direct Transfers to Defendant OM Vegetable is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

489.    Following OM Vegetable Direct Transfers from the Debtor to Defendant OM Vegetable, between September 10, 2021 and December 23, 2021, Defendant OM Vegetable, the initial transferee of the OM Vegetable Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made ten (10) transfers totaling $55,100 to Defendant A &A Vegetables (the "A & A Vegetables Subsequent Transfers"), as set forth on **Exhibit C**.

490.    The A & A Vegetables Subsequent Transfers were made with Debtor funds and property that belonged to the Debtor.

491.    The A & A Vegetables Subsequent Transfers were made directly or indirectly to, or for the benefit of, Defendant A & A Vegetables.

492.    Upon information and belief, following each of the transfers from the Debtor to Defendant OM Vegetable to Defendant A & A Vegetables, Defendant A & A Vegetables deposited the A & A Vegetables Subsequent Transfers into one or more of its bank accounts.

493.    Upon information and belief, in exchange for each of the A & A Vegetables Subsequent Transfers, Defendant A & A Vegetables did not provide any value to the Debtor.

494.    Defendant A & A Vegetables received the A & A Vegetables Subsequent Transfers, totaling $55,100, which are recoverable pursuant to section 550(a) of the Bankruptcy Code.

495.    Defendant A & A Vegetables is the immediate or mediate transferee of the A & A Vegetables Subsequent Transfers.

496.    Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant A & A Vegetables, pursuant to section 550(a) and 551 of the Bankruptcy Code, recovering the A & A Vegetables Subsequent Transfers, or the value thereof, for the benefit of the Debtor's estate.

### TWENTY-NINTH CAUSE OF ACTION
**Recovery of Subsequent Transfers**
**(11 U.S.C. §§ 550 and 551)**
**(Against Defendant A & S Vegetables)**

497.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 496 of this Complaint as if fully set forth at length herein.

498.    On the date of each of the transfers, the 3350 Kaur Farms Direct Transfers were the property of the Debtor.

499.    As set forth herein, each of the 3350 Kaur Farms Direct Transfers to Defendant 3350 Kaur Farms is avoidable and recoverable under sections 547 and/or 548, 550 and 551 of the Bankruptcy Code.

500.    Following the 3350 Kaur Farms Direct Transfers from the Debtor to Defendant 3350 Kaur Farms, between December 1, 2021 and December 14, 2021, Defendant 3350 Kaur Farms, the initial transferee of the 3350 Kaur Farms Direct Transfers, a Debtor Affiliate and Insider

of the Debtor, subsequently made eight (8) transfers totaling $4,400 to Defendant A & S Vegetables.

501.    On the date of each of the transfers, the Ameet Properties Direct Transfers were the property of the Debtor.

502.    As set forth herein, each of the Ameet Properties Direct Transfers to Defendant 3350 Kaur Farms is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

503.    Following the Ameet Properties Direct Transfers from the Debtor to Defendant Ameet Properties between November 16, 2021 and November 22, 2021, Defendant Ameet Properties, the initial transferee of the Ameet Properties Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made five (5) transfers totaling $44,525 to Defendant A & S Vegetables.

504.    On the date of each of the transfers, the OM Liquors Direct Transfers were the property of the Debtor.

505.    As set forth herein, each of the OM Liquors Direct Transfers to Defendant OM Liquors is avoidable and recoverable under sections 547 and/or 548, 550 and 551 of the Bankruptcy Code.

506.    Following the OM Liquors Direct Transfers from the Debtor to Defendant OM Liquors, between December 20, 2021 and December 22, 2021, Defendant OM Liquors, the initial transferee of the OM Liquors Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made three (3) transfers totaling $105,800 to Defendant A & S Vegetables

507.    On the date of each of the transfers, the OM Vegetable Direct Transfers were the property of the Debtor.

508.    As set forth herein, each of the OM Vegetable Direct Transfers to Defendant OM Vegetable is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

509.    Following OM Vegetable Direct Transfers from the Debtor to Defendant OM Vegetable between June 8, 2021 and November 26, 2021, Defendant OM Vegetable, the initial transferee of the OM Vegetable Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made two (2) transfers totaling $52,500 to Defendant A & S Vegetables.

510.    The transfers from the Debtor to Defendants 3350 Kaur Farms, Ameet Properties, and OM Liquors, which were subsequently transferred to Defendant A & S Vegetables shall collectively be referred to herein as the "A & S Vegetables Subsequent Transfers", as set forth on **Exhibit D**.

511.    The A & S Vegetables Subsequent Transfers were made with Debtor funds and property that belonged to the Debtor.

512.    The A & S Vegetables Subsequent Transfers were made directly or indirectly to, or for the benefit of, Defendant A & S Vegetables.

513.    Upon information and belief, following each of the transfers from the Debtor to Defendants 3350 Kaur Farms, Ameet Properties, OM Liquors and OM Vegetable to Defendant A & S Vegetables, Defendant A & S Vegetables deposited the A & S Vegetables Subsequent Transfers into one or more of its bank accounts.

514.    Upon information and belief, in exchange for each of the A & S Vegetables Subsequent Transfers, Defendant A & S Vegetables did not provide any value to the Debtor.

515.    Defendant A & S Vegetables received the A & S Vegetables Subsequent Transfers, totaling $207,225, which are recoverable pursuant to section 550(a) of the Bankruptcy Code.

516.    Defendant A & S Vegetables is the immediate or mediate transferee of the A & S Vegetables Subsequent Transfers.

517.    Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant A & S Vegetables, pursuant to section 550(a) and 551 of the Bankruptcy Code, recovering the A & S Vegetables Subsequent Transfers, or the value thereof, for the benefit of the Debtor's estate.

**THIRTIETH CAUSE OF ACTION**
**Recovery of Subsequent Transfers**
**(11 U.S.C. §§ 550 and 551)**
**(Against Defendant Ameet Properties)**

518.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 517 of this Complaint as if fully set forth at length herein.

519.    On the date of each of the transfers, the OM Vegetable Direct Transfers were the property of the Debtor.

520.    As set forth herein, each of the OM Vegetable Direct Transfers to Defendant OM Vegetable is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

521.    Following OM Vegetable Direct Transfers from the Debtor to Defendant OM Vegetable, on or around September 3, 2021, Defendant OM Vegetable, the initial transferee of the OM Vegetable Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made one (1) transfer in the amount of $4,500 to Defendant Ameet Properties (the "Ameet Properties Subsequent Transfer"), as set forth on **Exhibit E**.

522.    The Ameet Properties Subsequent Transfer was made with Debtor funds and property that belonged to the Debtor.

523.    The Ameet Properties Subsequent Transfer was made directly or indirectly to, or for the benefit of, Defendant Ameet Properties.

524.    Upon information and belief, following each of the transfers from the Debtor to Defendant OM Vegetable to Defendant Ameet Properties, Defendant Ameet Properties deposited the Ameet Properties Subsequent Transfer into one or more of its bank accounts.

525.    Upon information and belief, in exchange for the Ameet Properties Subsequent Transfer, Defendant Ameet Properties did not provide any value to the Debtor.

526.    Defendant Ameet Properties received the Ameet Properties Subsequent Transfer, totaling $4,500, which is recoverable pursuant to section 550(a) of the Bankruptcy Code.

527.    Defendant Ameet Properties is the immediate or mediate transferee of the Ameet Properties Subsequent Transfer.

528.    Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Ameet Properties, pursuant to section 550(a) and 551 of the Bankruptcy Code, recovering the Ameet Properties Subsequent Transfer, or the value thereof, for the benefit of the Debtor's estate.

**THIRTY-FIRST CAUSE OF ACTION**
**Recovery of Subsequent Transfers**
**(11 U.S.C. §§ 550 and 551)**
**(Against Defendant Evolution)**

529.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 528 of this Complaint as if fully set forth at length herein.

530.    On the date of each of the transfers, the OM Vegetable Direct Transfers were the property of the Debtor.

531.    As set forth herein, each of the OM Vegetable Direct Transfers to Defendant OM Vegetable is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

532.    Following OM Vegetable Direct Transfers from the Debtor to Defendant OM Vegetable, between December 16, 2021 and December 30, 2021, Defendant OM Vegetable, the initial transferee of the OM Vegetable Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made two (2) transfers totaling $72,000 to Defendant Evolution (the "Evolution Subsequent Transfers"), as set forth on **Exhibit I**.

533.    The Evolution Subsequent Transfers were made with Debtor funds and property that belonged to the Debtor.

534.    The Evolution Subsequent Transfers were made directly or indirectly to, or for the benefit of, Defendant Evolution.

535.    Upon information and belief, following each of the transfers from the Debtor to Defendant OM Vegetable to Defendant Evolution, Defendant Evolution deposited the Evolution Subsequent Transfers into one or more of its bank accounts.

536.    Upon information and belief, in exchange for each of the Evolution Subsequent Transfers, Defendant Evolution did not provide any value to the Debtor.

537.    Defendant Evolution received the Evolution Subsequent Transfers, totaling $72,000, which are recoverable pursuant to section 550(a) of the Bankruptcy Code.

538.    Defendant Evolution is the immediate or mediate transferee of the Evolution Subsequent Transfers.

539. Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Evolution, pursuant to section 550(a) and 551 of the Bankruptcy Code, recovering the Evolution Subsequent Transfers, or the value thereof, for the benefit of the Debtor's estate.

**THIRTY-SECOND CAUSE OF ACTION**
**Recovery of Subsequent Transfers**
**(11 U.S.C. §§ 550 and 551)**
**(Against Defendant Kaur Farms)**

540. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 539 of this Complaint as if fully set forth at length herein.

541. On the date of each of the transfers, the 3350 Kaur Farms Direct Transfers were the property of the Debtor.

542. As set forth herein, each of the 3350 Kaur Farms Direct Transfers to Defendant 3350 Kaur Farms is avoidable and recoverable under sections 547 and/or 548, 550 and 551 of the Bankruptcy Code.

543. Following the 3350 Kaur Farms Direct Transfers from the Debtor to Defendant 3350 Kaur Farms, on or around December 2, 2021, Defendant 3350 Kaur Farms, the initial transferee of the 3350 Kaur Farms Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made one (1) transfer in the amount of $6,424.28 to Defendant Kaur Farms.

544. On the date of each of the transfers, the A & A Vegetables Direct Transfers were the property of the Debtor.

545. As set forth herein, each of the A & A Vegetables Direct Transfers to Defendant A & A Vegetables is avoidable and recoverable under sections 547 and/or 548, 550 and 551 of the Bankruptcy Code.

546. Following the A & A Vegetables Direct Transfers from the Debtor to Defendant A & A Vegetables, on or around October 21, 2021, Defendant A & A Vegetables, the initial

transferee of the A & A Vegetables Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made one (1) transfer in the amount of $15,100 to Defendant Kaur Farms.

547.    On the date of each of the transfers, the A & S Vegetables Direct Transfers were the property of the Debtor.

548.    As set forth herein, each of the A & S Vegetables Direct Transfers to Defendant A & S Vegetables is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

549.    Following the A & S Vegetables Direct Transfers from the Debtor to Defendant A & S Vegetables, on or around November 4, 2021, Defendant A & S Vegetables, the initial transferee of the A & S Vegetables Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made one (1) transfer in the amount of $14,000 to Defendant Kaur Farms.

550.    On the date of each of the transfers, the Ameet Properties Direct Transfers were the property of the Debtor.

551.    As set forth herein, each of the Ameet Properties Direct Transfers to Defendant Ameet Properties is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

552.    Following the Ameet Properties Direct Transfers from the Debtor to Defendant Ameet Properties, between November 17, 2021 and November 29, 2021, Defendant Ameet Properties, the initial transferee of the Ameet Properties Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made four (4) transfers totaling $101,184 to Defendant Kaur Farms.

553.    On the date of each of the transfers, the OM Liquors Direct Transfers were the property of the Debtor.

554. As set forth herein, each of the OM Liquors Direct Transfers to Defendant OM Liquors is avoidable and recoverable under sections 547 and/or 548, 550 and 551 of the Bankruptcy Code.

555. Following the OM Liquors Direct Transfers from the Debtor to Defendant OM Liquors, between December 20, 2021 and January 3, 2022, Defendant OM Liquors, the initial transferee of the OM Liquors Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made five (5) transfers totaling $70,610 to Defendant Kaur Farms.

556. On the date of each of the transfers, the OM Vegetable Direct Transfers were the property of the Debtor.

557. As set forth herein, each of the OM Vegetable Direct Transfers to Defendant OM Vegetable is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

558. Following OM Vegetable Direct Transfers from the Debtor to Defendant OM Vegetable, between March 3, 2021 and December 31, 2021, Defendant OM Vegetable, the initial transferee of the OM Vegetable Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made twelve (12) transfers totaling $354,371 to Defendant Kaur Farms

559. The transfers from the Debtor to Defendants 3350 Kaur Farms, A & A Vegetables, A & S Vegetables, Ameet Properties, OM Liquors and OM Vegetable, which were subsequently transferred to Defendant Kaur Farms, shall collectively be referred to herein as the "Kaur Farms Subsequent Transfers", as set forth on **Exhibit F**.

560. The Kaur Farms Subsequent Transfers were made with Debtor funds and property that belonged to the Debtor.

561.    The Kaur Farms Subsequent Transfers were made directly or indirectly to, or for the benefit of, Defendant Kaur Farms.

562.    Upon information and belief, following each of the transfers from the Debtor to Defendants 3350 Kaur Farms, A & A Vegetables, A & S Vegetables, Ameet Properties, OM Liquors and OM Vegetable to Defendant Kaur Farms, Defendant Kaur Farms deposited the Kaur Farms Vegetables Subsequent Transfers into one or more of its bank accounts.

563.    Upon information and belief, in exchange for each of the Kaur Farms Subsequent Transfers, Defendant Kaur Farms did not provide any value to the Debtor.

564.    Defendant Kaur Farms received the Kaur Farms Subsequent Transfers, totaling $561,689.28, which are recoverable pursuant to section 550(a) of the Bankruptcy Code.

565.    Defendant Kaur Farms is the immediate or mediate transferee of the Kaur Farms Subsequent Transfers.

566.    Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Kaur Farms, pursuant to section 550(a) and 551 of the Bankruptcy Code, recovering the Kaur Farms Subsequent Transfers, or the value thereof, for the benefit of the Debtor's estate.

### THIRTY-THIRD CAUSE OF ACTION
**Recovery of Subsequent Transfers**
**(11 U.S.C. §§ 550 and 551)**
**(Against Defendant OM Liquors)**

567.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 566 of this Complaint as if fully set forth at length herein.

568.    On the date of each of the transfers, the Kaur Farms Direct Transfers were the property of the Debtor.

569.    As set forth herein, each of the Kaur Farms Direct Transfers to Defendant Kaur Farms is avoidable and recoverable under sections 547 and/or 548, 550 and 551 of the Bankruptcy Code.

570.    Following the Kaur Farms Direct Transfers from the Debtor to Defendant Kaur Farms, on or around September 27, 2021, Defendant Kaur Farms, the initial transferee of the Kaur Farms Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made one (1) transfer in the amount of $25,700 to Defendant OM Liquors.

571.    On the date of each of the transfers, the Ameet Properties Direct Transfers were the property of the Debtor.

572.    As set forth herein, each of the Ameet Properties Direct Transfers to Defendant Ameet Properties is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

573.    Following the Ameet Properties Direct Transfers from the Debtor to Defendant Ameet Properties, between November 18, 2021 and November 29, 2021, Defendant Ameet Properties, the initial transferee of the Ameet Properties Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made five (5) transfers totaling $10,515 to Defendant OM Liquors.

574.    On the date of each of the transfers, the OM Vegetable Direct Transfers were the property of the Debtor.

575.    As set forth herein, each of the OM Vegetable Direct Transfers to Defendant OM Vegetable is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

576.     Following OM Vegetable Direct Transfers from the Debtor to Defendant OM Vegetable, on or around January 4, 2022, Defendant OM Vegetable, the initial transferee of the OM Vegetable Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made one (1) transfer in the amount of $139,000 to Defendant OM Liquors.

577.     The transfers from the Debtor to Defendants Kaur Farms, Ameet Properties, and OM Vegetable, which were subsequently transferred to Defendant OM Liquors, shall collectively be referred to herein as the "OM Liquors Subsequent Transfers", as set forth on **Exhibit G**.

578.     The OM Liquors Subsequent Transfers was made with Debtor funds and property that belonged to the Debtor.

579.     The OM Liquors Subsequent Transfers was made directly or indirectly to, or for the benefit of, Defendant OM Liquors.

580.     Upon information and belief, following each of the transfers from the Debtor to Defendants Kaur Farms, Ameet Properties and OM Vegetable to Defendant OM Liquors, Defendant OM Liquors deposited the OM Liquors Vegetables Subsequent Transfers into one or more of its bank accounts.

581.     Upon information and belief, in exchange for the OM Liquors Subsequent Transfers, Defendant OM Liquors did not provide any value to the Debtor.

582.     Defendant OM Liquors received the OM Liquors Subsequent Transfers, totaling $175,215, which are recoverable pursuant to section 550(a) of the Bankruptcy Code.

583.     Defendant OM Liquors is the immediate or mediate transferee of the OM Liquors Subsequent Transfers.

584.    Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant OM Liquors, pursuant to section 550(a) and 551 of the Bankruptcy Code, recovering the OM Liquors Subsequent Transfers, or the value thereof, for the benefit of the Debtor's estate.

### THIRTY-FOURTH CAUSE OF ACTION
**Recovery of Subsequent Transfers**
**(11 U.S.C. §§ 550 and 551)**
**(Against Defendant OM Vegetable)**

585.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 584 of this Complaint as if fully set forth at length herein.

586.    On the date of each of the transfers, the Kaur Farms Direct Transfers were the property of the Debtor.

587.    As set forth herein, each of the Kaur Farms Direct Transfers to Defendant 3350 Kaur Farms is avoidable and recoverable under sections 547 and/or 548, 550 and 551 of the Bankruptcy Code.

588.    Following the Kaur Farms Direct Transfers from the Debtor to Defendant Kaur Farms, between November 2, 2021 and January 4, 2022, Defendant Kaur Farms, the initial transferee of the Kaur Farms Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made ten (10) transfers totaling $383,100 to Defendant OM Vegetable.

589.    On the date of each of the transfers, the A & A Vegetables Direct Transfers were the property of the Debtor.

590.    As set forth herein, each of the A & A Vegetables Direct Transfers to Defendant A & A Vegetables is avoidable and recoverable under sections 547 and/or 548, 550 and 551 of the Bankruptcy Code.

591.    Following the A & A Vegetables Direct Transfers from the Debtor to Defendant A & A Vegetables, on or around October 18, 2021, Defendant A & A Vegetables, the initial

transferee of the A & A Vegetables Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made one (1) transfer in the amount of $60,000 to Defendant OM Vegetable.

592.    On the date of each of the transfers, the A & S Vegetables Direct Transfers were the property of the Debtor.

593.    As set forth herein, each of the A & S Vegetables Direct Transfers to Defendant A & S Vegetables is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

594.    Following the A & S Vegetables Direct Transfers from the Debtor to Defendant A & S Vegetables, between October 29, 2021 and November 4, 2021, Defendant A & S Vegetables, the initial transferee of the A & S Vegetables Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made two (2) transfers totaling $74,900 to Defendant OM Vegetable.

595.    On the date of each of the transfers, the OM Liquors Direct Transfers were the property of the Debtor.

596.    As set forth herein, each of the OM Liquors Direct Transfers to Defendant OM Liquors is avoidable and recoverable under sections 547 and/or 548, 550 and 551 of the Bankruptcy Code.

597.    Following the OM Liquors Direct Transfers from the Debtor to Defendant OM Liquors, between November 16, 2021 and January 3, 2022, Defendant OM Liquors, the initial transferee of the OM Liquors Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made five (5) transfers totaling $562,100 to Defendant OM Vegetable.

598.    The transfers from the Debtor to Defendants Kaur Farms, A & A Vegetables, A & S Vegetables and OM Liquors, which were subsequently transferred to Defendant OM Vegetable,

shall collectively be referred to herein as the "OM Vegetable Subsequent Transfers", as set forth on **Exhibit H**.

599.   The OM Vegetable Subsequent Transfers were made with Debtor funds and property that belonged to the Debtor.

600.   The OM Vegetable Subsequent Transfers were made directly or indirectly to, or for the benefit of, Defendant Kaur Farms.

601.   Upon information and belief, following each of the transfers from the Debtor to Defendants Kaur Farms, A & A Vegetables, A & S Vegetables, and OM Liquors to Defendant OM Vegetable, Defendant OM Vegetable deposited the OM Vegetable Subsequent Transfers into one or more of its bank accounts.

602.   Upon information and belief, in exchange for each of the OM Vegetable Subsequent Transfers, Defendant OM Vegetable did not provide any value to the Debtor.

603.   Defendant OM Vegetable received the OM Vegetable Subsequent Transfers, totaling $1,080,100, which are recoverable pursuant to section 550(a) of the Bankruptcy Code.

604.   Defendant OM Vegetable is the immediate or mediate transferee of the OM Vegetable Subsequent Transfers.

605.   Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant OM Vegetable, pursuant to section 550(a) and 551 of the Bankruptcy Code, recovering the OM Vegetable Subsequent Transfers, or the value thereof, for the benefit of the Debtor's estate.

### THIRTY-FIFTH CAUSE OF ACTION
**Recovery of Subsequent Transfers**
**(11 U.S.C. §§ 550 and 551)**
**(Against Defendant VLS Farms)**

606.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 605 of this Complaint as if fully set forth at length herein.

607.    On the date of each of the transfers, the OM Liquors Direct Transfers were the property of the Debtor.

608.    As set forth herein, each of the OM Liquors Direct Transfers to Defendant OM Liquors is avoidable and recoverable under sections 547 and/or 548, 550 and 551 of the Bankruptcy Code.

609.    Following OM Liquors Direct Transfers from the Debtor to Defendant OM Liquors, on or around November 9, 2021, Defendant OM Vegetable, the initial transferee of the OM Vegetable Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made one (1) transfer in the amount of $397,500 to Defendant VLS Farms.

610.    On the date of each of the transfers, the OM Vegetable Direct Transfers were the property of the Debtor.

611.    As set forth herein, each of the OM Vegetable Direct Transfers to Defendant OM Vegetable is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

612.    Following OM Vegetable Direct Transfers from the Debtor to Defendant OM Vegetable, between December 16, 2021 and December 23, 2021, Defendant OM Vegetable, the initial transferee of the OM Vegetable Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made two (2) transfers totaling $250,000 to Defendant VLS Farms.

613.    The transfers from the Debtor to Defendants OM Liquors and OM Vegetable, which were subsequently transferred to Defendant VLS Farms, shall collectively be referred to herein as the "VLS Farms Subsequent Transfers", as set forth on **Exhibit J**.

614.    The VLS Farms Subsequent Transfers were made with Debtor funds and property that belonged to the Debtor.

615.    The VLS Farms Subsequent Transfers were made directly or indirectly to, or for the benefit of, Defendant OM Liquors.

616.    Upon information and belief, following each of the transfers from the Debtor to Defendants OM Liquors and OM Vegetable to Defendant VLS Farms, Defendant VLS Farms deposited the VLS Farms Vegetables Subsequent Transfers into one or more of its bank accounts.

617.    Upon information and belief, in exchange for the VLS Farms Subsequent Transfers, Defendant VLS Farms did not provide any value to the Debtor.

618.    Defendant VLS Farms received the VLS Farms Subsequent Transfers, totaling $647,500, which are recoverable pursuant to section 550(a) of the Bankruptcy Code.

619.    Defendant VLS Farms is the immediate or mediate transferee of the VLS Farms Subsequent Transfers.

620.    Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant VLS Farms, pursuant to section 550(a) and 551 of the Bankruptcy Code, recovering the VLS Farms Subsequent Transfers, or the value thereof, for the benefit of the Debtor's estate.

### THIRTY-SIXTH CAUSE OF ACTION
**Avoidance and Recovery of Intentional Fraudulent Transfers**
**(11 U.S.C. §§ 544(b), 548(a)(1)(A), 550 and 551; DCL §§ 276 - 279)**
**(Against Defendant 225 Oak)**

621.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 620 of this Complaint as if fully set forth at length herein.

622.    Between June 3, 2019 and June 7, 2021, within the Four-Year Fraudulent Transfer Period, the Debtor made fifteen (15) transfers totaling $40,180.18 (the "225 Oak Direct Transfers") to Defendant 225 Oak.  A chart reflecting the 225 Oak Direct Transfers is annexed hereto as **Exhibit K**.

623.    The Debtor made the 225 Oak Direct Transfers within the four (4) year period prior to the Petition Date.

624.    The Debtor's transfers of the 225 Oak Direct Transfers to Defendant 225 Oak were transfers of money, property or other value from the Debtor's funds held in the Debtor's bank account.

625.    The Debtor's transfers of the 225 Oak Direct Transfers to Defendant 225 Oak constituted transfers of interests of the Debtor within the meaning of Section 101(54) of the Bankruptcy Code.

626.    The Debtor's transfers of the 225 Oak Direct Transfers to Defendant 225 Oak were to or for the benefit of Defendant 225 Oak.

627.    Upon information and belief, Defendant 225 Oak received a material direct or indirect benefit on account of the 225 Oak Direct Transfers.

628.    Upon information and belief, the Debtor did not have any obligation to pay Defendant 225 Oak at the time of any of the 225 Oak Direct Transfers.

629.    The Debtor intentionally concealed or obscured the 225 Oak Direct Transfers from the Debtor's creditors, third parties and others.

630.    Upon information and belief, the Debtor's books and records do not contain any reference to the 225 Oak Direct Transfers.

631.    The Debtor made the 225 Oak Direct Transfers without consideration, or significantly inadequate consideration, to the Debtor.

632.    The Debtor made the 225 Oak Direct Transfers at a time when the Debtor knew it owed significant monies to NewBank and Key Food and that the Lugo Lawsuit was pending, among other debts and obligations that remain unpaid.

633.    The Debtor made the 225 Oak Direct Transfers while the Debtor was insolvent or had unreasonably small capital.

634.    The 225 Oak Direct Transfers were made by the Debtor, at the direction of Singh, with actual intention to hinder, delay and/or defraud the Debtor's creditors, and individuals and entities to which the Debtor was or would become obligated.

635.    The 225 Oak Direct Transfers were made in furtherance of the Debtor's scheme to defraud lenders and other creditors from monies they continued to lend and/or invest in the Debtor, or credit they continued to extend to the Debtor.

636.    Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant 225 Oak avoiding the 225 Oak Direct Transfers in the total amount of $40,180.18 and directing that the subject of the 225 Oak Direct Transfers or their value be returned to the Trustee, and Defendant 225 Oak be held liable for the return of the 225 Oak Direct Transfers as a direct or indirect beneficiary.

### THIRTY-SEVENTH CAUSE OF ACTION
**Avoidance and Recovery of Constructive Fraudulent Transfer**
**(11 U.S.C. §§ 544(b), 548(a)(1)(A), 550 and 551; DCL §§ 272 - 275)**
**(Against Defendant 225 Oak)**

637.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 636 of this Complaint as if fully set forth at length herein.

638.    The 225 Oak Direct Transfers to Defendant 225 Oak constituted transfers of money, property, and value of the Debtor to Defendant 225 Oak.

639.    Upon information and belief, Defendant 225 Oak received a material direct or indirect benefit on account of each of the 225 Oak Direct Transfers.

640.    The 225 Oak Direct Transfers to Defendant 225 Oak were intentionally obscured by Singh and the Debtor from the Debtor's creditors.

641.    Each of the 225 Oak Direct Transfers to Defendant 225 Oak was made without fair consideration and/or reasonable equivalent value to the Debtor.

642.    At the time the Debtor made each of the 225 Oak Direct Transfers, the Debtor had incurred or was about to incur a liability which remains unpaid to this day including, but not limited to the claim(s) underlying the Lugo Lawsuit and the monies owed to NewBank and Key Food.

643.    At the time it made each of the 225 Oak Direct Transfers, the Debtor: (i) was insolvent or became insolvent as a result of the 225 Oak Direct Transfers; (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; and/or (iii) intended to incur, or believed that the Debtor would incur debts that would be beyond the Debtor's ability to pay as such debts matured.

644.    Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant 225 Oak avoiding the 225 Oak Direct Transfers and directing that the subject of the fraudulent transfers, the 225 Oak Direct Transfers to Defendant 225 Oak, or their value, be returned to the Trustee, and that Defendant 225 Oak be held liable for the return of the 225 Oak Direct Transfers as a direct or indirect beneficiary thereof.

### THIRTY-EIGHTH CAUSE OF ACTION
**Recovery of Subsequent Transfers**
**(11 U.S.C. §§ 550 and 551)**
**(Against Defendant 225 Oak)**

645.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 644 of this Complaint as if fully set forth at length herein.

646.    On the date of each of the transfers, the A & S Vegetables Direct Transfers were the property of the Debtor.

647.    As set forth herein, each of the A & S Vegetables Direct Transfers to Defendant A & S Vegetables is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

648.    Following A & S Vegetables Direct Transfers from the Debtor to Defendant A & S Vegetables, between February 15, 2019 and August 28, 2019, Defendant A & S Vegetables, the initial transferee of the A & S Vegetables Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made two (2) transfers totaling $5,551.54 to Defendant 225 Oak (the "225 Oak Subsequent Transfers"), as set forth on **Exhibit K**.

649.    The 225 Oak Subsequent Transfers were made with Debtor funds and property that belonged to the Debtor.

650.    The 225 Oak Subsequent Transfers were made directly or indirectly to, or for the benefit of the Defendant 225 Oak.

651.    Upon information and belief, following each of the transfers from the Debtor to Defendant A & S Vegetables to Defendant 225 Oak, Defendant 225 Oak deposited the 225 Oak Subsequent Transfers into one or more of its bank accounts.

652.    Upon information and belief, in exchange for each of the 225 Oak Subsequent Transfers, Defendant 225 Oak did not provide any value to the Debtor.

653.    Defendant 225 Oak received the 225 Oak Subsequent Transfers, totaling $5,551.54, which are recoverable pursuant to section 550(a) of the Bankruptcy Code.

654.    Defendant 225 Oak is the immediate or mediate transferee of the 225 Oak Subsequent Transfers.

655.    Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant 225 Oak, pursuant to section 550(a) and 551 of the Bankruptcy Code, recovering the 225 Oak Subsequent Transfers, or the value thereof, for the benefit of the Debtor's estate.

**THIRTY-NINTH CAUSE OF ACTION**
**Avoidance and Recovery of Intentional Fraudulent Transfers**
**(11 U.S.C. §§ 548(a)(1)(A), 550 and 551)**
**(Against Defendant Advance Food)**

656.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 655 of this Complaint as if fully set forth at length herein.

657.    Between June 5, 2020 and December 6, 2021, within the Two-Year Fraudulent Transfer Period, the Debtor made eight (8) transfers totaling $11,560.99 (the "Advance Food Direct Transfers") to Defendant Advance Food.  A chart reflecting the Advance Food Direct Transfers is annexed hereto as **Exhibit L**.

658.    The Debtor made the Advance Food Direct Transfers within the two (2) year period prior to the Petition Date.

659.    The Debtor's transfers of the Advance Food Direct Transfers to Defendant Advance Food were transfers of money, property or other value from the Debtor's funds held in the Debtor's bank account.

660.    The Debtor's transfers of the Advance Food Direct Transfers to Defendant Advance Food constituted transfers of interests of the Debtor within the meaning of Section 101(54) of the Bankruptcy Code.

661.    The Debtor's transfers of the Advance Food Direct Transfers to Defendant Advance Food were to or for the benefit of Defendant Advance Food.

662.    Upon information and belief, Defendant Advance Food received a material direct or indirect benefit on account of the Advance Food Direct Transfers.

663.    Upon information and belief, the Debtor did not have any obligation to pay Advance Food at the time of any of the Advance Food Direct Transfers.

664.    The Debtor intentionally concealed or obscured the Advance Food Direct Transfers from the Debtor's creditors, third parties and others.

665.    Upon information and belief, the Debtor's books and records do not contain any reference to the Advance Food Direct Transfers.

666.    The Debtor made the Advance Food Direct Transfers without consideration, or significantly inadequate consideration, to the Debtor.

667.    The Debtor made the Advance Food Direct Transfers at a time when the Debtor knew it owed significant monies to NewBank and Key Food and that the Lugo Lawsuit was pending, among other debts and obligations that remain unpaid.

668.    The Debtor made the Advance Food Direct Transfers while the Debtor was insolvent or had unreasonably small capital.

669.    The Advance Food Direct Transfers were made by the Debtor, at the direction of Singh, with actual intention to hinder, delay and/or defraud the Debtor's creditors, and individuals and entities to which the Debtor was or would become obligated.

670.    The Advance Food Direct Transfers were made in furtherance of the Debtor's scheme to defraud lenders and other creditors from monies they continued to lend and/or invest in the Debtor, or credit they continued to extend to the Debtor.

671.    Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Advance Food avoiding the Advance Food Direct Transfers in the total amount of $11,560.99 and directing that the subject of the Advance Food Direct Transfers or their value be

returned to the Trustee, and Defendant Advance Food be held liable for the return of the Advance Food Direct Transfers as a direct or indirect beneficiary.

**FORTIETH CAUSE OF ACTION**
**Avoidance and Recovery of Constructive Fraudulent Transfer**
**(11 U.S.C. §§ 548(a)(1)(A), 550 and 551)**
**(Against Defendant Advance Food)**

672.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 671 of this Complaint as if fully set forth at length herein.

673.    The Advance Food Direct Transfers to Defendant Advance Food constituted transfers of money, property, and value of the Debtor to Defendant Advance Food.

674.    Upon information and belief, Defendant Advance Food received a material direct or indirect benefit on account of each of the Advance Food Direct Transfers.

675.    The Advance Food Direct Transfers to Defendant Advance Food were intentionally obscured by Singh and the Debtor from the Debtor's creditors.

676.    Each of the Advance Food Direct Transfers to Defendant Advance Food was made without fair consideration and/or reasonable equivalent value to the Debtor.

677.    At the time the Debtor made each of the Advance Food Direct Transfers, the Debtor had incurred or was about to incur a liability which remains unpaid to this day including, but not limited to the claim(s) underlying the Lugo Lawsuit and the monies owed to NewBank and Key Food.

678.    At the time it made each of the Advance Food Direct Transfers, the Debtor: (i) was insolvent or became insolvent as a result of the Advance Food Direct Transfers; (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; and/or (iii) intended to

incur, or believed that the Debtor would incur debts that would be beyond the Debtor's ability to pay as such debts matured.

679.    Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Advance Food avoiding the Advance Food Direct Transfers and directing that the subject of the fraudulent transfers, the Advance Food Direct Transfers to Defendant Advance Food, or their value, be returned to the Trustee, and that Defendant Advance Food be held liable for the return of the Advance Food Direct Transfers as a direct or indirect beneficiary thereof.

### FORTY-FIRST CAUSE OF ACTION
**Avoidance and Recovery of Preferential Transfer**
**(11 U.S.C. §§ 547(b), 550)**
**(Against Defendant Advance Food)**

680.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 679 of this Complaint as if fully set forth at length herein.

681.    On December 6, 2021, within the Preference Period, the Debtor made one transfer in the amount of $1,105.64 to Defendant Advance Food (the "Advance Food Preferential Transfer").

682.    To the extent the Advance Food Direct Transfer to Defendant Advance Food does not constitute a fraudulent transfer, it is avoidable and recoverable because it was made on account of an antecedent debt owed by the Debtor.

683.    The Advance Food Preferential Transfer was made to or for the benefit of Defendant Advance Food.

684.    The Advance Food Preferential Transfer was made while the Debtor was insolvent or presumed to be insolvent.

685.    The Advance Food Preferential Transfer was made within the ninety (90) days of the Petition Date.

686.    As a result of the Advance Food Preferential Transfer, Defendant Advance Food received more than it would receive if (i) the Debtor's case was a case under chapter 7 of the Bankruptcy Code; (ii) the Advance Food Preferential Transfer had not been made; and (iii) Defendant Advance Food received payment on account of its claims, if any, against the Debtor to the extent provided under the Bankruptcy Code.

687.    Based on the foregoing, the Trustee is entitled to an order and judgment against Defendant Advance Food as the transferee of the Advance Food Preferential Transfer avoiding the Advance Food Preferential Transfer and directing that the subject of the Advance Food Preferential Transfer or its value be returned to the Trustee, and that Defendant Advance Food be held liable for the return of the Advance Food Preferential Transfer as a direct and indirect beneficiary.

## FORTY-SECOND CAUSE OF ACTION
### Avoidance and Recovery of Unauthorized Post-Petition Transfer
### (11 U.S.C. §§ 549, 550)
### (Against Defendant Advance Food)

688.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 687 of this Complaint as if fully set forth at length herein.

689.    On September 12, 2022, at least six months after the Petition Date, the Debtor made one transfer to Defendant Advance Food, a Debtor Affiliate, in the amount of $6,800 (the "Advance Food Post-Petition Transfer").

690.    The Advance Food Post-Petition Transfer constituted a transfer of property by the Debtor.

691.    The Advance Food Post-Petition Transfer was not disclosed to the Bankruptcy Court, the United States Trustee, the Subchapter V Trustee or any of the Debtor's creditors.

692.    The Advance Food Post-Petition Transfer was not authorized by the Bankruptcy Court.

693.    If effective, the Advance Food Post-Petition Transfer resulted in the loss of value to the Debtor's bankruptcy estate of not less than $6,800.

694.    Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Advance Food, and/or any recipient of the Advance Food Post-Petition Transfer avoiding the Advance Food Post-Petition Transfer and directing that the subject of the Advance Food Post-Petition Transfer or its value be returned to the Trustee and the Defendant Advance Food be held jointly and several liable for the return of the Advance Food Post-Petition Transfer as a direct or indirect beneficiary.

**FORTY-THIRD CAUSE OF ACTION**
**Recovery of Subsequent Transfers**
**(11 U.S.C. §§ 550 and 551)**
**(Against Defendant Advance Food)**

695.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 694 of this Complaint as if fully set forth at length herein.

696.    On the date of each of the transfers, the A & A Vegetables Direct Transfers were the property of the Debtor.

697.    As set forth herein, each of the A & A Vegetables Direct Transfers to Defendant A & S Vegetables is avoidable and recoverable under sections 547 and/or 548, 550 and 551 of the Bankruptcy Code.

698.    Following A & A Vegetables Direct Transfers from the Debtor to Defendant A & A Vegetables, on or around October 18, 2021, Defendant A & A Vegetables, the initial transferee of the A & A Vegetables Direct Transfers, a Debtor Affiliate and "insider" of the Debtor, subsequently made one (1) transfer in the amount of $1,479.50 to Defendant Advance Food.

699.    On the date of each of the transfers, the A & S Vegetables Direct Transfers were the property of the Debtor.

700.    As set forth herein, each of the A & S Vegetables Direct Transfers to Defendant A & S Vegetables is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

701.    Following A & S Vegetables Direct Transfers from the Debtor to Defendant A & S Vegetables, between September 23, 2019 and October 17, 2019, Defendant A & S Vegetables, the initial transferee of the A & S Vegetables Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made four (4) transfers totaling $7,942.20 to Defendant Advance Food.

702.    On the date of each of the transfers, the OM Vegetable Direct Transfers were the property of the Debtor.

703.    As set forth herein, each of the OM Vegetable Direct Transfers to Defendant OM Vegetable is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

704.    Following OM Vegetable Direct Transfers from the Debtor to Defendant OM Vegetable, between March 16, 2021 and June 7, 2021, Defendant OM Vegetable, the initial transferee of the OM Vegetable Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made three (3) transfers totaling $22,000 to Defendant Advance Food.

705.    The transfers from the Debtor to Defendants A & A Vegetables, A & S Vegetables and OM Vegetable, which were subsequently transferred to Defendant Advance Food, shall collectively be referred to herein as the "Advance Food Subsequent Transfers", as set forth on **Exhibit L**.

706.    The Advance Food Subsequent Transfers were made with Debtor funds and property that belonged to the Debtor.

707.    The Advance Food Subsequent Transfers were made directly or indirectly to, or for the benefit of, Defendant Advance Food.

708.    Upon information and belief, following each of the transfers from the Debtor to Defendants A & S Vegetables and OM Vegetable to Defendant Advance Food, Defendant Advance Food deposited the Advance Food Subsequent Transfers into one or more of its bank accounts.

709.    Upon information and belief, in exchange for each of the Advance Food Subsequent Transfers, Defendant Advance Food did not provide any value to the Debtor.

710.    Defendant Advance Food received the Advance Food Subsequent Transfers, totaling $31,421.70, which are recoverable pursuant to section 550(a) of the Bankruptcy Code.

711.    Defendant Advance Food is the immediate or mediate transferee of the Advance Food Subsequent Transfers.

712.    Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Advance Food, pursuant to section 550(a) and 551 of the Bankruptcy Code, recovering the Advance Food Subsequent Transfers, or the value thereof, for the benefit of the Debtor's estate.

### FORTY-FOURTH CAUSE OF ACTION
**Avoidance and Recovery of Intentional Fraudulent Transfers**
**(11 U.S.C. §§ 544(b), 548(a)(1)(A), 550 and 551; DCL §§ 276 - 279)**
**(Against Defendant Arikupurathu)**

713.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 712 of this Complaint as if fully set forth at length herein.

714.    Between November 12, 2019 and December 5, 2019, within the Four-Year Fraudulent Transfer Period, the Debtor made three (3) transfers totaling $21,000 (the "Arikupurathu Direct Transfers") to Defendant Arikupurathu.  A chart reflecting the Arikupurathu Direct Transfers is annexed hereto as **Exhibit M**.

715.    The Debtor made the Arikupurathu Direct Transfers within the four (4) year period prior to the Petition Date.

716.    The Debtor's transfers of the Arikupurathu Direct Transfers to Defendant Arikupurathu were transfers of money, property or other value from the Debtor's funds held in the Debtor's bank account.

717.    The Debtor's transfers of the Arikupurathu Direct Transfers to Defendant Arikupurathu constituted transfers of interests of the Debtor within the meaning of Section 101(54) of the Bankruptcy Code.

718.    The Debtor's transfers of the Arikupurathu Direct Transfers to Defendant Arikupurathu were to or for the benefit of Defendant Arikupurathu.

719.    Upon information and belief, Defendant Arikupurathu received a material direct or indirect benefit on account of the Arikupurathu Direct Transfers.

720.    Upon information and belief, the Debtor did not have any obligation to pay Defendant Arikupurathu at the time of any of the Arikupurathu Direct Transfers.

721.    The Debtor intentionally concealed or obscured the Arikupurathu Direct Transfers from the Debtor's creditors, third parties and others.

722.    Upon information and belief, the Debtor's books and records do not contain any reference to the Arikupurathu Direct Transfers.

723.    The Debtor made the Arikupurathu Direct Transfers without consideration, or significantly inadequate consideration, to the Debtor.

724.    The Debtor made the Arikupurathu Direct Transfers at a time when the Debtor knew it owed significant monies to NewBank and Key Food and that the Lugo Lawsuit was pending, among other debts and obligations that remain unpaid.

725.    The Debtor made the Arikupurathu Direct Transfers while the Debtor was insolvent or had unreasonably small capital.

726.    The Arikupurathu Direct Transfers were made by the Debtor, at the direction of Singh, with actual intention to hinder, delay and/or defraud the Debtor's creditors, and individuals and entities to which the Debtor was or would become obligated.

727.    The Arikupurathu Direct Transfers were made in furtherance of the Debtor's scheme to defraud lenders and other creditors from monies they continued to lend and/or invest in the Debtor, or credit they continued to extend to the Debtor.

728.    Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Arikupurathu avoiding the Arikupurathu Direct Transfers in the total amount of $21,000 and directing that the subject of the Arikupurathu Direct Transfers or their value be returned to the Trustee, and Defendant Arikupurathu be held liable for the return of the Arikupurathu Direct Transfers as a direct or indirect beneficiary.

**FORTY-FIFTH CAUSE OF ACTION**
**Avoidance and Recovery of Constructive Fraudulent Transfer**
**(11 U.S.C. §§ 544(b), 548(a)(1)(A), 550 and 551; DCL §§ 272 - 275)**
**(Against Defendant Arikupurathu)**

729.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 728 of this Complaint as if fully set forth at length herein.

730.    The Arikupurathu Direct Transfers to Defendant Arikupurathu constituted transfers of money, property, and value of the Debtor to Defendant Arikupurathu.

731.    Upon information and belief, Defendant Arikupurathu received a material direct or indirect benefit on account of each of the Arikupurathu Direct Transfers.

732.    The Arikupurathu Direct Transfers to Defendant Arikupurathu were intentionally obscured by Singh and the Debtor from the Debtor's creditors.

733.     Each of the Arikupurathu Direct Transfers to Defendant Arikupurathu was made without fair consideration and/or reasonable equivalent value to the Debtor.

734.     At the time the Debtor made each of the Arikupurathu Direct Transfers, the Debtor had incurred or was about to incur a liability which remains unpaid to this day including, but not limited to the claim(s) underlying the Lugo Lawsuit and the monies owed to NewBank and Key Food.

735.     At the time it made each of the Arikupurathu Direct Transfers, the Debtor: (i) was insolvent or became insolvent as a result of the Arikupurathu Direct Transfers; (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; and/or (iii) intended to incur, or believed that the Debtor would incur debts that would be beyond the Debtor's ability to pay as such debts matured.

736.     Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Arikupurathu avoiding the Arikupurathu Direct Transfers and directing that the subject of the fraudulent transfers, the Arikupurathu Direct Transfers to Defendant Arikupurathu, or their value, be returned to the Trustee, and that Defendant Arikupurathu be held liable for the return of the Arikupurathu Direct Transfers as a direct or indirect beneficiary thereof.

**FORTY-SIXTH CAUSE OF ACTION**
**Recovery of Subsequent Transfers**
**(11 U.S.C. §§ 550 and 551)**
**(Against Defendant Arikupurathu)**

737.     Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 736 of this Complaint as if fully set forth at length herein.

738.     On the date of each of the transfers, the A & S Vegetables Direct Transfers were the property of the Debtor.

739.    As set forth herein, each of the A & S Vegetables Direct Transfers to Defendant A & S Vegetables is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

740.    Following A & S Vegetables Direct Transfers from the Debtor to Defendant A & S Vegetables, between February 4, 2019 and February 11, 2020, Defendant A & S Vegetables, the initial transferee of the A & S Vegetables Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made sixteen (16) transfers totaling $112,000 to Defendant Arikupurathu (the "Arikupurathu Subsequent Transfers"), as set forth on **Exhibit M**.

741.    The Arikupurathu Subsequent Transfers were made with Debtor funds and property that belonged to the Debtor.

742.    The Arikupurathu Subsequent Transfers were made directly or indirectly to, or for the benefit of, Defendant Arikupurathu.

743.    Upon information and belief, following each of the transfers from the Debtor to Defendant A & S Vegetables to Defendant Arikupurathu, Defendant Arikupurathu deposited the Arikupurathu Subsequent Transfers into one or more of its bank accounts.

744.    Upon information and belief, in exchange for each of the Arikupurathu Subsequent Transfers, Defendant Arikupurathu did not provide any value to the Debtor.

745.    Defendant Arikupurathu received the Arikupurathu Subsequent Transfers, totaling $112,000, which are recoverable pursuant to section 550(a) of the Bankruptcy Code.

746.    Defendant Arikupurathu is the immediate or mediate transferee of the Arikupurathu Subsequent Transfers.

747.    Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Arikupurathu, pursuant to section 550(a) and 551 of the Bankruptcy Code, recovering the Arikupurathu Subsequent Transfers, or the value thereof, for the benefit of the Debtor's estate.

**FORTY-SEVENTH CAUSE OF ACTION**
**Avoidance and Recovery of Intentional Fraudulent Transfers**
**(11 U.S.C. §§ 544(b), 548(a)(1)(A), 550 and 551; DCL §§ 276 - 279)**
**(Against Defendant Slaughter House)**

748.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 747 of this Complaint as if fully set forth at length herein.

749.    Between June 6, 2019 and November 8, 2019, within the Four-Year Fraudulent Transfer Period, the Debtor made four (4) transfers totaling $19,146.15 (the "Slaughter House Direct Transfers") to Defendant Slaughter House.  A chart reflecting the Slaughter House Direct Transfers is annexed hereto as **Exhibit N**.

750.    The Debtor made the Slaughter House Direct Transfers within the four (4) year period prior to the Petition Date.

751.    The Debtor's transfers of the Slaughter House Direct Transfers to Defendant Slaughter House were transfers of money, property or other value from the Debtor's funds held in the Debtor's bank account.

752.    The Debtor's transfers of the Slaughter House Direct Transfers to Defendant Slaughter House constituted transfers of interests of the Debtor within the meaning of Section 101(54) of the Bankruptcy Code.

753.    The Debtor's transfers of the Slaughter House Direct Transfers to Defendant Slaughter House were to or for the benefit of Defendant Slaughter House.

754.    Upon information and belief, Defendant Slaughter House received a material direct or indirect benefit on account of the Slaughter House Direct Transfers.

755.    Upon information and belief, the Debtor did not have any obligation to pay Defendant Slaughter House at the time of any of the Slaughter House Direct Transfers.

756.    The Debtor intentionally concealed or obscured the Slaughter House Direct Transfers from the Debtor's creditors, third parties and others.

757.    Upon information and belief, the Debtor's books and records do not contain any reference to the Slaughter House Direct Transfers.

758.    The Debtor made the Slaughter House Direct Transfers without consideration, or significantly inadequate consideration, to the Debtor.

759.    The Debtor made the Slaughter House Direct Transfers at a time when the Debtor knew it owed significant monies to NewBank and Key Food and that the Lugo Lawsuit was pending, among other debts and obligations that remain unpaid.

760.    The Debtor made the Slaughter House Direct Transfers while the Debtor was insolvent or had unreasonably small capital.

761.    The Slaughter House Direct Transfers were made by the Debtor, at the direction of Singh, with actual intention to hinder, delay and/or defraud the Debtor's creditors, and individuals and entities to which the Debtor was or would become obligated.

762.    The Slaughter House Direct Transfers were made in furtherance of the Debtor's scheme to defraud lenders and other creditors from monies they continued to lend and/or invest in the Debtor, or credit they continued to extend to the Debtor.

763.    Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Slaughter House avoiding the Slaughter House Direct Transfers in the total amount of $19,146.15 and directing that the subject of the Slaughter House Direct Transfers or their value be

returned to the Trustee, and Defendant Slaughter House be held liable for the return of the Slaughter House Direct Transfers as a direct or indirect beneficiary.

## FORTY-EIGHTH CAUSE OF ACTION
### Avoidance and Recovery of Constructive Fraudulent Transfer
### (11 U.S.C. §§ 544(b), 548(a)(1)(A), 550 and 551; DCL §§ 272 - 275)
### (Against Defendant Slaughter House)

764.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 763 of this Complaint as if fully set forth at length herein.

765.    The Slaughter House Direct Transfers to Defendant Slaughter House constituted transfers of money, property, and value of the Debtor to Defendant Slaughter House.

766.    Upon information and belief, Defendant Slaughter House received a material direct or indirect benefit on account of each of the Slaughter House Direct Transfers.

767.    The Slaughter House Direct Transfers to Defendant Slaughter House were intentionally obscured by Singh and the Debtor from the Debtor's creditors.

768.    Each of the Slaughter House Direct Transfers to Defendant Slaughter House was made without fair consideration and/or reasonable equivalent value to the Debtor.

769.    At the time the Debtor made each of the Slaughter House Direct Transfers, the Debtor had incurred or was about to incur a liability which remains unpaid to this day including, but not limited to the claim(s) underlying the Lugo Lawsuit and the monies owed to NewBank and Key Food.

770.    At the time it made each of the Slaughter House Direct Transfers, the Debtor: (i) was insolvent or became insolvent as a result of the Slaughter House Direct Transfers; (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; and/or (iii) intended

to incur, or believed that the Debtor would incur debts that would be beyond the Debtor's ability to pay as such debts matured.

771.    Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Slaughter House avoiding the Slaughter House Direct Transfers and directing that the subject of the fraudulent transfers, the Slaughter House Direct Transfers to Defendant Slaughter House, or their value, be returned to the Trustee, and that Defendant Slaughter House be held liable for the return of the Slaughter House Direct Transfers as a direct or indirect beneficiary thereof.

**FORTY-NINTH CAUSE OF ACTION**
**Recovery of Subsequent Transfers**
**(11 U.S.C. §§ 550 and 551)**
**(Against Defendant Slaughter House)**

772.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 771 of this Complaint as if fully set forth at length herein.

773.    On the date of each of the transfers, the A & S Vegetables Direct Transfers were the property of the Debtor.

774.    As set forth herein, each of the A & S Vegetables Direct Transfers to Defendant A & S Vegetables is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

775.    Following A & S Vegetables Direct Transfers from the Debtor to Defendant A & S Vegetables, between October 29, 2019 and March 18, 2021, Defendant A & S Vegetables, the initial transferee of the A & S Vegetables Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made twenty-two (22) transfers totaling $106,671.87 to Defendant Slaughter House.

776.    On the date of each of the transfers, the OM Vegetable Direct Transfers were the property of the Debtor.

777.    As set forth herein, each of the OM Vegetable Direct Transfers to Defendant OM Vegetable is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

778.    Following the OM Vegetable Direct Transfers from the Debtor to Defendant OM Vegetable, between March 3, 2021 and March 18, 2021, Defendant OM Vegetable, the initial transferee of the OM Vegetable Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made three (3) transfers totaling $20,779.31 to Defendant Slaughter House.

779.    The transfers from the Debtor to Defendants A & S Vegetables and OM Vegetable, which were subsequently transferred to Defendant Slaughter House, shall collectively be referred to herein as the "Slaughter House Subsequent Transfers", as set forth on **Exhibit N**.

780.    The Slaughter House Subsequent Transfers were made with Debtor funds and property that belonged to the Debtor.

781.    The Slaughter House Subsequent Transfers were made directly or indirectly to, or for the benefit of, Defendant Slaughter House.

782.    Upon information and belief, following each of the transfers from the Debtor to Defendants A & S Vegetables and OM Vegetable to Defendant Slaughter House, Defendant Slaughter House deposited the Slaughter House Subsequent Transfers into one or more of its bank accounts.

783.    Upon information and belief, in exchange for each of the Slaughter House Subsequent Transfers, Defendant Slaughter House did not provide any value to the Debtor.

784.    Defendant Slaughter House received the Slaughter House Subsequent Transfers, totaling $127,451.18, which are recoverable pursuant to section 550(a) of the Bankruptcy Code.

785.    Defendant Slaughter House is the immediate or mediate transferee of the Slaughter House Subsequent Transfers.

786.    Based upon  the foregoing, the Trustee is entitled to an order and judgment against Defendant Slaughter House, pursuant to section 550(a) and 551 of the Bankruptcy Code, recovering the Slaughter House Subsequent Transfers, or the value thereof, for the benefit of the Debtor's estate.

### FIFTIETH CAUSE OF ACTION
**Avoidance and Recovery of Intentional Fraudulent Transfers**
**(11 U.S.C. §§ 544(b), 548(a)(1)(A), 550 and 551; DCL §§ 276 - 279)**
**(Against Defendant Babco Foods)**

787.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 786 of this Complaint as if fully set forth at length herein.

788.    Between July 5, 2019 and September 6, 2019, within the Four-Year Fraudulent Transfer Period, the Debtor made three (3) transfers totaling $12,631.80 (the "Babco Foods Direct Transfers") to Defendant Babco Foods.  A chart reflecting the Babco Foods Direct Transfers is annexed hereto as **Exhibit O**.

789.    The Debtor made the Babco Foods Direct Transfers within the four (4) year period prior to the Petition Date.

790.    The Debtor's transfers of the Babco Foods Direct Transfers to Defendant Babco Foods were transfers of money, property or other value from the Debtor's funds held in the Debtor's bank account.

791.    The Debtor's transfers of the Babco Foods Direct Transfers to Defendant Babco Foods constituted transfers of interests of the Debtor within the meaning of Section 101(54) of the Bankruptcy Code.

792.    The Debtor's transfers of the Babco Foods Direct Transfers to Defendant Babco Foods were to or for the benefit of Defendant Babco Foods.

793.    Upon information and belief, Defendant Babco Foods received a material direct or indirect benefit on account of the Babco Foods Direct Transfers.

794.    Upon information and belief, the Debtor did not have any obligation to pay Defendant Babco Foods at the time of any of the Babco Foods Direct Transfers.

795.    The Debtor intentionally concealed or obscured the Babco Foods Direct Transfers from the Debtor's creditors, third parties and others.

796.    Upon information and belief, the Debtor's books and records do not contain any reference to the Babco Foods Direct Transfers.

797.    The Debtor made the Babco Foods Direct Transfers without consideration, or significantly inadequate consideration, to the Debtor.

798.    The Debtor made the Babco Foods Direct Transfers at a time when the Debtor knew it owed significant monies to NewBank and Key Food and that the Lugo Lawsuit was pending, among other debts and obligations that remain unpaid.

799.    The Debtor made the Babco Foods Direct Transfers while the Debtor was insolvent or had unreasonably small capital.

800.    The Babco Foods Direct Transfers were made by the Debtor, at the direction of Singh, with actual intention to hinder, delay and/or defraud the Debtor's creditors, and individuals and entities to which the Debtor was or would become obligated.

801.    The Babco Foods Direct Transfers were made in furtherance of the Debtor's scheme to defraud lenders and other creditors from monies they continued to lend and/or invest in the Debtor, or credit they continued to extend to the Debtor.

802.    Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Babco Foods avoiding the Babco Foods Direct Transfers in the total amount of $12,631.80 and directing that the subject of the Babco Foods Direct Transfers or their value be returned to the Trustee, and Defendant Babco Foods be held liable for the return of the Babco Foods Direct Transfers as a direct or indirect beneficiary.

### FIFTY-FIRST CAUSE OF ACTION
**Avoidance and Recovery of Constructive Fraudulent Transfer**
**(11 U.S.C. §§ 544(b), 548(a)(1)(A), 550 and 551; DCL §§ 272 - 275)**
**(Against Defendant Babco Foods)**

803.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 802 of this Complaint as if fully set forth at length herein.

804.    The Babco Foods Direct Transfers to Defendant Babco Foods constituted transfers of money, property, and value of the Debtor to Defendant Babco Foods.

805.    Upon information and belief, Defendant Babco Foods received a material direct or indirect benefit on account of each of the Babco Foods Direct Transfers.

806.    The Babco Foods Direct Transfers to Defendant Babco Foods were intentionally obscured by Singh and the Debtor from the Debtor's creditors.

807.    Each of the Babco Foods Direct Transfers to Defendant Babco Foods was made without fair consideration and/or reasonable equivalent value to the Debtor.

808.    At the time the Debtor made each of the Babco Foods Direct Transfers, the Debtor had incurred or was about to incur a liability which remains unpaid to this day including, but not limited to the claim(s) underlying the Lugo Lawsuit and the monies owed to NewBank and Key Food.

809.    At the time it made each of the Babco Foods Direct Transfers, the Debtor: (i) was insolvent or became insolvent as a result of the Babco Foods Direct Transfers; (ii) was engaged in

business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; and/or (iii) intended to incur, or believed that the Debtor would incur debts that would be beyond the Debtor's ability to pay as such debts matured.

810.    Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Babco Foods avoiding the Babco Foods Direct Transfers and directing that the subject of the fraudulent transfers, the Babco Foods Direct Transfers to Defendant Babco Foods, or their value, be returned to the Trustee, and that Defendant Babco Foods be held liable for the return of the Babco Foods Direct Transfers as a direct or indirect beneficiary thereof.

**FIFTY-SECOND CAUSE OF ACTION**
**Recovery of Subsequent Transfers**
**(11 U.S.C. §§ 550 and 551)**
**(Against Defendant Babco Foods)**

811.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 810 of this Complaint as if fully set forth at length herein.

812.    On the date of each of the transfers, the A & A Vegetables Direct Transfers were the property of the Debtor.

813.    As set forth herein, each of the A & A Vegetables Direct Transfers to Defendant A & A Vegetables is avoidable and recoverable under sections 547 and/or 548, 550 and 551 of the Bankruptcy Code.

814.    Following the A & A Vegetables Direct Transfers from the Debtor to Defendant A & A Vegetables, on or around October 19, 2021, Defendant A & A Vegetables, the initial transferee of the A & A Vegetables Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made one (1) transfer in the amount of $3,664.10 to Defendant Babco Foods.

815.    On the date of each of the transfers, the A & S Vegetables Direct Transfers were the property of the Debtor.

816.    As set forth herein, each of the A & S Vegetables Direct Transfers to Defendant A & S Vegetables is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

817.    Following the A & S Vegetables Direct Transfers from the Debtor to Defendant A & S Vegetables, between March 28, 2019 and July 12, 2019, Defendant A & S Vegetables, the initial transferee of the A & S Vegetables Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made three (3) transfers totaling $17,346.14 to Defendant Babco Foods.

818.    On the date of each of the transfers, the OM Vegetable Direct Transfers were the property of the Debtor.

819.    As set forth herein, each of the OM Vegetable Direct Transfers to Defendant OM Vegetable is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

820.    Following the OM Vegetable Direct Transfers from the Debtor to Defendant OM Vegetable, on or around December 16, 2021, Defendant OM Vegetables, the initial transferee of the OM Vegetable Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made one (1) transfer totaling $11,691 to Defendant Babco Foods.

821.    The transfers from the Debtor to Defendants A & A Vegetables, A & S Vegetables and OM Vegetable, which were subsequently transferred to Defendant Babco Foods, shall collectively be referred to herein as the "Babco Foods Subsequent Transfers", as set forth on **Exhibit O**.

822.    The Babco Foods Subsequent Transfers were made with Debtor funds and property that belonged to the Debtor.

823.    The Babco Foods Subsequent Transfers were made directly or indirectly to, or for the benefit of, Defendant Babco Foods.

824.    Upon information and belief, following each of the transfers from the Debtor to Defendants A & A Vegetables, A & S Vegetables and OM Vegetable to Defendant Babco Foods, Defendant Babco Foods deposited the Babco Foods Subsequent Transfers into one or more of its bank accounts.

825.    Upon information and belief, in exchange for each of the Babco Foods Subsequent Transfers, Defendant Babco Foods did not provide any value to the Debtor.

826.    Defendant Babco Foods received the Babco Foods Subsequent Transfers, totaling $32,701.24, which are recoverable pursuant to section 550(a) of the Bankruptcy Code.

827.    Defendant Babco Foods is the immediate or mediate transferee of the Babco Foods Subsequent Transfers.

828.    Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Babco Foods, pursuant to section 550(a) and 551 of the Bankruptcy Code, recovering the Babco Foods Subsequent Transfers, or the value thereof, for the benefit of the Debtor's estate.

## FIFTY-THIRD CAUSE OF ACTION
### Avoidance and Recovery of Intentional Fraudulent Transfers
### (11 U.S.C. §§ 544(b), 548(a)(1)(A), 550 and 551; DCL §§ 276 - 279)
### (Against Defendant Best Foods)

829.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 828 of this Complaint as if fully set forth at length herein.

830.    On November 13, 2019, a date which falls within the Four-Year Fraudulent Transfer Period, the Debtor made one (1) transfer in the amount of $14,562.69 (the "Best Foods

Direct Transfer") to Defendant Best Foods.  A chart reflecting the Best Foods Direct Transfer is annexed hereto as **Exhibit P**.

831.    The Debtor made the Best Foods Direct Transfer within the four (4) year period prior to the Petition Date.

832.    The Debtor's transfer of the Best Foods Direct Transfer to Defendant Best Foods was a transfer of money, property or other value from the Debtor's funds held in the Debtor's bank account.

833.    The Debtor's transfer of the Best Foods Direct Transfer to Defendant Best Foods constituted a transfer of interest of the Debtor within the meaning of Section 101(54) of the Bankruptcy Code.

834.    The Debtor's transfer of the Best Foods Direct Transfer to Defendant Best Foods was to or for the benefit of Defendant Best Foods.

835.    Upon information and belief, Defendant Best Foods received a material direct or indirect benefit on account of the Best Foods Direct Transfer.

836.    Upon information and belief, the Debtor did not have any obligation to pay Defendant Best Foods at the time of any of the Best Foods Direct Transfer.

837.    The Debtor intentionally concealed or obscured the Best Foods Direct Transfer from the Debtor's creditors, third parties and others.

838.    Upon information and belief, the Debtor's books and records do not contain any reference to the Best Foods Direct Transfer.

839.    The Debtor made the Best Foods Direct Transfer without consideration, or significantly inadequate consideration, to the Debtor.

840.    The Debtor made the Best Foods Direct Transfer at a time when the Debtor knew it owed significant monies to NewBank and Key Food and that the Lugo Lawsuit was pending, among other debts and obligations that remain unpaid.

841.    The Debtor made the Best Foods Direct Transfer while the Debtor was insolvent or had unreasonably small capital.

842.    The Best Foods Direct Transfer was made by the Debtor, at the direction of Singh, with actual intention to hinder, delay and/or defraud the Debtor's creditors, and individuals and entities to which the Debtor was or would become obligated.

843.    The Best Foods Direct Transfer was made in furtherance of the Debtor's scheme to defraud lenders and other creditors from monies they continued to lend and/or invest in the Debtor, or credit they continued to extend to the Debtor.

844.    Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Best Foods avoiding the Best Foods Direct Transfer in the total amount of $14,562.69 and directing that the subject of the Best Foods Direct Transfer or its value be returned to the Trustee, and Defendant Best Foods be held liable for the return of the Best Foods Direct Transfer as a direct or indirect beneficiary.

## FIFTY-FOURTH CAUSE OF ACTION
### Avoidance and Recovery of Constructive Fraudulent Transfer
### (11 U.S.C. §§ 544(b), 548(a)(1)(A), 550 and 551; DCL §§ 272 - 275)
### (Against Defendant Best Foods)

845.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 844 of this Complaint as if fully set forth at length herein.

846.    The Best Foods Direct Transfer to Defendant Best Foods constituted transfers of money, property, and value of the Debtor to Defendant Best Foods.

847.    Upon information and belief, Defendant Best Foods received a material direct or indirect benefit on account of each of the Best Foods Direct Transfer.

848.    The Best Foods Direct Transfer to Defendant Best Foods was intentionally obscured by Singh and the Debtor from the Debtor's creditors.

849.    Each of the Best Foods Direct Transfer to Defendant Best Foods was made without fair consideration and/or reasonable equivalent value to the Debtor.

850.    At the time the Debtor made the Best Foods Direct Transfer, the Debtor had incurred or was about to incur a liability which remains unpaid to this day including, but not limited to the claim(s) underlying the Lugo Lawsuit and the monies owed to NewBank and Key Food.

851.    At the time it made the Best Foods Direct Transfer, the Debtor: (i) was insolvent or became insolvent as a result of the Best Foods Direct Transfer; (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; and/or (iii) intended to incur, or believed that the Debtor would incur debts that would be beyond the Debtor's ability to pay as such debts matured.

852.    Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Best Foods avoiding the Best Foods Direct Transfer and directing that the subject of the fraudulent transfers, the Best Foods Direct Transfer to Defendant Best Foods, or its value, be returned to the Trustee, and that Defendant Best Foods be held liable for the return of the Best Foods Direct Transfer as a direct or indirect beneficiary thereof.

## FIFTY-FIFTH CAUSE OF ACTION
### Recovery of Subsequent Transfers
### (11 U.S.C. §§ 550 and 551)
### (Against Defendant Best Foods)

853.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 852 of this Complaint as if fully set forth at length herein.

854.    On the date of each of the transfers, the A & S Vegetables Direct Transfers were the property of the Debtor.

855.    As set forth herein, each of the A & S Vegetables Direct Transfers to Defendant A & S Vegetables is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

856.    Following the A & S Vegetables Direct Transfers from the Debtor to Defendant A & S Vegetables, between February 25, 2019 and March 4, 2020, Defendant A & S Vegetables, the initial transferee of the A & S Vegetables Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made twenty-one (21) transfers totaling $111,308.89 to Defendant Best Foods.

857.    On the date of each of the transfers, the OM Vegetable Direct Transfers were the property of the Debtor.

858.    As set forth herein, each of the OM Vegetable Direct Transfers to Defendant OM Vegetable is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

859.    Following the OM Vegetable Direct Transfers from the Debtor to Defendant OM Vegetable, between March 16, 2021 and January 4, 2022, Defendant OM Vegetable, the initial transferee of the OM Vegetable Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made seven (7) transfers totaling $110,000 to Defendant Best Foods.

860.     The transfers from the Debtor to Defendants A & S Vegetables and OM Vegetable, which were subsequently transferred to Defendant Best Foods, shall collectively be referred to herein as the "Best Foods Subsequent Transfers", as set forth on **Exhibit P**.

861.     The Best Foods Subsequent Transfers were made with Debtor funds and property that belonged to the Debtor.

862.     The Best Foods Subsequent Transfers were made directly or indirectly to, or for the benefit of, Defendant Best Foods.

863.     Upon information and belief, following each of the transfers from the Debtor to Defendants A & S Vegetables and OM Vegetable to Defendant Best Foods, Defendant Best Foods deposited the Best Foods Subsequent Transfers into one or more of its bank accounts.

864.     Upon information and belief, in exchange for each of the Best Foods Subsequent Transfers, Defendant Best Foods did not provide any value to the Debtor.

865.     Defendant Best Foods received the Best Foods Subsequent Transfers, totaling $221,308.89, which are recoverable pursuant to section 550(a) of the Bankruptcy Code.

866.     Defendant Best Foods is the immediate or mediate transferee of the Best Foods Subsequent Transfers.

867.     Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Best Foods, pursuant to section 550(a) and 551 of the Bankruptcy Code, recovering the Best Foods Subsequent Transfers, or the value thereof, for the benefit of the Debtor's estate.

### FIFTY-SIXTH CAUSE OF ACTION
**Avoidance and Recovery of Intentional Fraudulent Transfers**
**(11 U.S.C. §§ 548(a)(1)(A), 550 and 551)**
**(Against Defendant ConEd)**

868.     Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 867 of this Complaint as if fully set forth at length herein.

869.    Between April 9, 2020 and January 4, 2022, within the Two-Year Fraudulent Transfer Period, the Debtor made thirteen (13) transfers totaling $318,653.68 (the "ConEd Direct Transfers") to Defendant ConEd..  A chart reflecting the ConEd Direct Transfers is annexed hereto as **<u>Exhibit Q</u>**.

870.    The Debtor made the ConEd Direct Transfers within the two (2) year period prior to the Petition Date.

871.    The Debtor's transfers of the ConEd Direct Transfers to Defendant ConEd were transfers of money, property or other value from the Debtor's funds held in the Debtor's bank account.

872.    The Debtor's transfers of the ConEd Direct Transfers to Defendant ConEd constituted transfers of an interest of the Debtor within the meaning of Section 101(54) of the Bankruptcy Code.

873.    The Debtor's transfers of the ConEd Direct Transfers to Defendant ConEd were to or for the benefit of Defendant ConEd.

874.    Upon information and belief, Defendant ConEd received a material direct or indirect benefit on account of the ConEd Direct Transfers.

875.    Upon information and belief, the Debtor did not have any obligation to pay Defendant ConEd s at the time of any of the ConEd Direct Transfers.

876.    In the alternative, the Debtor did not have an obligation to pay Defendant ConEd the amount of the ConEd Direct Transfers during this period.

877.    The amounts of the ConEd Direct Transfers during this period were approximately two to three times the amounts the Debtor had been paying to Defendant ConEd prior to this period.

878.    Upon information and belief, the Debtor was paying Defendant ConEd for the benefit of one or more of the Debtor Affiliates.

879.    The Debtor intentionally concealed or obscured the ConEd Direct Transfers from the Debtor's creditors, third parties and others.

880.    Upon information and belief, the Debtor's books and records do not contain any reference to the ConEd Direct Transfers.

881.    The Debtor made the ConEd Direct Transfers without consideration, or significantly inadequate consideration, to the Debtor.

882.    The Debtor made the ConEd Direct Transfers at a time when the Debtor knew it owed significant monies to NewBank and Key Food and that the Lugo Lawsuit was pending, among other debts and obligations that remain unpaid.

883.    The Debtor made the ConEd Direct Transfers while the Debtor was insolvent or had unreasonably small capital.

884.    The ConEd Direct Transfers were made by the Debtor, at the direction of Singh, with actual intention to hinder, delay and/or defraud the Debtor's creditors, and individuals and entities to which the Debtor was or would become obligated.

885.    The ConEd Direct Transfers were made in furtherance of the Debtor's scheme to defraud lenders and other creditors from monies they continued to lend and/or invest in the Debtor, or credit they continued to extend to the Debtor.

886.    Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant ConEd avoiding the ConEd Direct Transfers in the total amount of $318,653.68 and directing that the subject of the ConEd Direct Transfers or their value be returned to the Trustee,

and Defendant ConEd be held liable for the return of the ConEd Direct Transfers as a direct or indirect beneficiary.

## FIFTY-SEVENTH CAUSE OF ACTION
### Avoidance and Recovery of Constructive Fraudulent Transfer
### (11 U.S.C. §§ 548(a)(1)(A), 550 and 551)
### (Against Defendant ConEd)

887.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 886 of this Complaint as if fully set forth at length herein.

888.    The ConEd Direct Transfers to Defendant ConEd constituted transfers of money, property, and value of the Debtor to Defendant ConEd.

889.    Upon information and belief, Defendant ConEd received a material direct or indirect benefit on account of each of the ConEd Direct Transfers.

890.    The ConEd Direct Transfers to Defendant ConEd were intentionally obscured by Singh and the Debtor from the Debtor's creditors.

891.    Each of the ConEd Direct Transfers to Defendant ConEd was made without fair consideration and/or reasonable equivalent value to the Debtor.

892.    At the time the Debtor made the ConEd Direct Transfers, the Debtor had incurred or was about to incur a liability which remains unpaid to this day including, but not limited to the claim(s) underlying the Lugo Lawsuit and the monies owed to NewBank and Key Food.

893.    The amounts of the ConEd Direct Transfers during this period were approximately two to three times the amounts the Debtor had been paying to Defendant ConEd prior to this period.

894.    Upon information and belief, the Debtor was paying Defendant ConEd for the benefit of one or more of the Debtor Affiliates or did not receive the value for the amount of the ConEd Direct Transfers paid to Defendant ConEd.

895. At the time it made the ConEd Direct Transfers, the Debtor: (i) was insolvent or became insolvent as a result of the ConEd Direct Transfers; (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; and/or (iii) intended to incur, or believed that the Debtor would incur debts that would be beyond the Debtor's ability to pay as such debts matured.

896. Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Best Foods avoiding the ConEd Direct Transfers and directing that the subject of the fraudulent transfers, the ConEd Direct Transfers to Defendant ConEd, or its value, be returned to the Trustee, and that Defendant ConEd be held liable for the return of the ConEd Direct Transfers as a direct or indirect beneficiary thereof.

**FIFTY-EIGHTH CAUSE OF ACTION**
**Recovery of Subsequent Transfers**
**(11 U.S.C. §§ 550 and 551)**
**(Against Defendant ConEd)**

897. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 896 of this Complaint as if fully set forth at length herein.

898. On the date of each of the transfers, the A & S Vegetables Direct Transfers were the property of the Debtor.

899. As set forth herein, each of the A & S Vegetables Direct Transfers to Defendant A & S Vegetables is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

900. Following the A & S Vegetables Direct Transfers from the Debtor to Defendant A & S Vegetables, between October 10, 2019 and February 3, 2020, Defendant A & S Vegetables, the initial transferee of the A & S Vegetables Direct Transfers, a Debtor Affiliate and Insider of

the Debtor, subsequently made six (6) transfers totaling $89,835 to Defendant ConEd (the "ConEd Subsequent Transfers"), as set forth on **Exhibit Q**.

901.    The ConEd Subsequent Transfers were made with Debtor funds and property that belonged to the Debtor.

902.    The ConEd Subsequent Transfers were made directly or indirectly to, or for the benefit of, Defendant ConEd.

903.    Upon information and belief, following each of the transfers from the Debtor to Defendant A & S Vegetables to Defendant ConEd, Defendant ConEd deposited the ConEd Subsequent Transfers into one or more of its bank accounts.

904.    Upon information and belief, in exchange for each of the ConEd Subsequent Transfers, Defendant ConEd did not provide any value to the Debtor.

905.    Defendant ConEd received the ConEd Subsequent Transfers, totaling $89,835, which are recoverable pursuant to section 550(a) of the Bankruptcy Code.

906.    Defendant ConEd is the immediate or mediate transferee of the ConEd Subsequent Transfers.

907.    Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant ConEd, pursuant to section 550(a) and 551 of the Bankruptcy Code, recovering the Subsequent Transfers, or the value thereof, for the benefit of the Debtor's estate.

### FIFTY-NINTH CAUSE OF ACTION
**Avoidance and Recovery of Intentional Fraudulent Transfers**
**(11 U.S.C. §§ 544(b), 548(a)(1)(A), 550 and 551; DCL §§ 276 - 279)**
**(Against Defendant Delight Foods)**

908.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 907 of this Complaint as if fully set forth at length herein.

909.    Between December 5, 2019 and August 5, 2021, within the Four-Year Fraudulent Transfer Period, the Debtor made ten (10) transfers totaling $26,620.75 (the "Delight Foods Direct Transfers") to Defendant Delight Foods.  A chart reflecting the Delight Foods Direct Transfers is annexed hereto as **Exhibit R**.

910.    The Debtor made the Delight Foods Direct Transfers within the four (4) year period prior to the Petition Date.

911.    The Debtor's transfers of the Delight Foods Direct Transfers to Defendant Delight Foods were transfers of money, property or other value from the Debtor's funds held in the Debtor's bank account.

912.    The Debtor's transfers of the Delight Foods Direct Transfers to Defendant Delight Foods constituted transfers of an interest of the Debtor within the meaning of Section 101(54) of the Bankruptcy Code.

913.    The Debtor's transfers of the Delight Foods Direct Transfers to Defendant Delight Foods were to or for the benefit of Defendant Delight Foods.

914.    Upon information and belief, Defendant Delight Foods received a material direct or indirect benefit on account of the Delight Foods Direct Transfers.

915.    Upon information and belief, the Debtor did not have any obligation to pay Defendant Delight Foods at the time of any of the Delight Foods Direct Transfers.

916.    The Debtor intentionally concealed or obscured the Delight Foods Direct Transfers from the Debtor's creditors, third parties and others.

917.    Upon information and belief, the Debtor's books and records do not contain any reference to the Delight Foods Direct Transfers.

918.    The Debtor made the Delight Foods Direct Transfers without consideration, or significantly inadequate consideration, to the Debtor.

919.    The Debtor made the Delight Foods Direct Transfers at a time when the Debtor knew it owed significant monies to NewBank and Key Food and that the Lugo Lawsuit was pending, among other debts and obligations that remain unpaid.

920.    The Debtor made the Delight Foods Direct Transfers while the Debtor was insolvent or had unreasonably small capital.

921.    The Delight Foods Direct Transfers were made by the Debtor, at the direction of Singh, with actual intention to hinder, delay and/or defraud the Debtor's creditors, and individuals and entities to which the Debtor was or would become obligated.

922.    The Delight Foods Direct Transfers were made in furtherance of the Debtor's scheme to defraud lenders and other creditors from monies they continued to lend and/or invest in the Debtor, or credit they continued to extend to the Debtor.

923.    Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Delight Foods avoiding the Delight Foods Direct Transfers in the total amount of $26,620.75 and directing that the subject of the Delight Foods Direct Transfers or their value be returned to the Trustee, and Defendant Delight Foods be held liable for the return of the Delight Foods Direct Transfers as a direct or indirect beneficiary.

### SIXTIETH CAUSE OF ACTION
**Avoidance and Recovery of Constructive Fraudulent Transfer**
**(11 U.S.C. §§ 544(b), 548(a)(1)(A), 550 and 551; DCL §§ 272 - 275)**
**(Against Defendant Delight Foods)**

924.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 923 of this Complaint as if fully set forth at length herein.

925.    The Delight Foods Direct Transfers to Defendant Delight Foods constituted transfers of money, property, and value of the Debtor to Defendant Delight Foods.

926.    Upon information and belief, Defendant Delight Foods received a material direct or indirect benefit on account of each of the Delight Foods Direct Transfers.

927.    The Delight Foods Direct Transfers to Defendant Delight Foods were intentionally obscured by Singh and the Debtor from the Debtor's creditors.

928.    Each of the Delight Foods Direct Transfers to Defendant Delight Foods was made without fair consideration and/or reasonable equivalent value to the Debtor.

929.    At the time the Debtor made the Delight Foods Direct Transfers, the Debtor had incurred or was about to incur a liability which remains unpaid to this day including, but not limited to the claim(s) underlying the Lugo Lawsuit and the monies owed to NewBank and Key Food.

930.    At the time it made the Delight Foods Direct Transfers, the Debtor: (i) was insolvent or became insolvent as a result of the Delight Foods Direct Transfers; (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; and/or (iii) intended to incur, or believed that the Debtor would incur debts that would be beyond the Debtor's ability to pay as such debts matured.

931.    Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Best Foods avoiding the Delight Foods Direct Transfers and directing that the subject of the fraudulent transfers, the Delight Foods Direct Transfers to Defendant Delight Foods, or its value, be returned to the Trustee, and that Defendant Delight Foods be held liable for the return of the Delight Foods Direct Transfers as a direct or indirect beneficiary thereof.

### SIXTY-FIRST CAUSE OF ACTION
**Recovery of Subsequent Transfers**
**(11 U.S.C. §§ 550 and 551)**
**(Against Defendant Delight Foods)**

932.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 931 of this Complaint as if fully set forth at length herein.

933.    On the date of each of the transfers, the A & S Vegetables Direct Transfers were the property of the Debtor.

934.    As set forth herein, each of the A & S Vegetables Direct Transfers to Defendant A & S Vegetables is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

935.    Following the A & S Vegetables Direct Transfers from the Debtor to Defendant A & S Vegetables, between March 4, 2019 and January 2, 2020, Defendant A & S Vegetables, the initial transferee of the A & S Vegetables Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made twelve (12) transfers totaling $40,175 to Defendant Delight Foods.

936.    On the date of each of the transfers, the OM Vegetable Direct Transfers were the property of the Debtor.

937.    As set forth herein, each of the OM Vegetable Direct Transfers to Defendant OM Vegetable are avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

938.    Following the OM Vegetable Direct Transfers from the Debtor to Defendant OM Vegetable, on or around November 17, 2021, Defendant OM Vegetable, the initial transferee of the OM Vegetable Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made one (1) transfer in the amount of $13,437.25 to Defendant Delight Foods.

939.     The transfers from the Debtor to Defendants A & S Vegetables and OM Vegetable, which were subsequently transferred to Defendant Delight Foods, shall collectively be referred to herein as the "Delight Foods Subsequent Transfers", as set forth on **Exhibit R**.

940.     The Delight Foods Subsequent Transfers were made with Debtor funds and property that belonged to the Debtor.

941.     The Delight Foods Subsequent Transfers were made directly or indirectly to, or for the benefit of, Defendant Delight Foods.

942.     Upon information and belief, following each of the transfers from the Debtor to Defendants A & S Vegetables and OM Vegetable to Defendant Delight Foods, Defendant Delight Foods deposited the Delight Foods Subsequent Transfers into one or more of its bank accounts.

943.     Upon information and belief, in exchange for each of the Delight Foods Subsequent Transfers, Defendant Delight Foods did not provide any value to the Debtor.

944.     Defendant Delight Foods received the Delight Foods Subsequent Transfers, totaling $53,612.25, which are recoverable pursuant to section 550(a) of the Bankruptcy Code.

945.     Defendant Delight Foods is the immediate or mediate transferee of the Delight Foods Subsequent Transfers.

946.     Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Delight Foods, pursuant to section 550(a) and 551 of the Bankruptcy Code, recovering the Delight Foods Subsequent Transfers, or the value thereof, for the benefit of the Debtor's estate.

### SIXTY-SECOND CAUSE OF ACTION
**Avoidance and Recovery of Intentional Fraudulent Transfers**
**(11 U.S.C. §§ 548(a)(1)(A), 550 and 551)**
**(Against Defendant Farmers Choice)**

947.     Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 946 of this Complaint as if fully set forth at length herein.

948.    Between September 1, 2021 and December 13, 2021, within the Two-Year Fraudulent Transfer Period, the Debtor made nine (9) transfers totaling $68,092.25 (the "<u>Farmers Choice Direct Transfers</u>") to Defendant Farmers Choice.  A chart reflecting the Farmers Choice Direct Transfers is annexed hereto as **<u>Exhibit S</u>**.

949.    The Debtor made the Farmers Choice Direct Transfers within the two (2) year period prior to the Petition Date.

950.    The Debtor's transfers of the Farmers Choice Direct Transfers to Defendant Farmers Choice were transfers of money, property or other value from the Debtor's funds held in the Debtor's bank account.

951.    The Debtor's transfers of the Farmers Choice Direct Transfers to Defendant Farmers Choice constituted transfers of interests of the Debtor within the meaning of Section 101(54) of the Bankruptcy Code.

952.    The Debtor's transfers of the Farmers Choice Direct Transfers to Defendant Farmers Choice were to or for the benefit of Defendant Farmers Choice.

953.    Upon information and belief, Defendant Farmers Choice received a material direct or indirect benefit on account of the Farmers Choice Direct Transfers.

954.    Upon information and belief, the Debtor did not have any obligation to pay Defendant Farmers Choice at the time of any of the Farmers Choice Direct Transfers.

955.    The Debtor intentionally concealed or obscured the Farmers Choice Direct Transfers from the Debtor's creditors, third parties and others.

956.    Upon information and belief, the Debtor's books and records do not contain any reference to the Farmers Choice Direct Transfers.

957.    The Debtor made the Farmers Choice Direct Transfers without consideration, or significantly inadequate consideration, to the Debtor.

958.    The Debtor made the Farmers Choice Direct Transfers at a time when the Debtor knew it owed significant monies to NewBank and Key Food and that the Lugo Lawsuit was pending, among other debts and obligations that remain unpaid.

959.    The Debtor made the Farmers Choice Direct Transfers while the Debtor was insolvent or had unreasonably small capital.

960.    The Farmers Choice Direct Transfers were made by the Debtor, at the direction of Singh, with actual intention to hinder, delay and/or defraud the Debtor's creditors, and individuals and entities to which the Debtor was or would become obligated.

961.    The Farmers Choice Direct Transfers were made in furtherance of the Debtor's scheme to defraud lenders and other creditors from monies they continued to lend and/or invest in the Debtor, or credit they continued to extend to the Debtor.

962.    Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Farmers Choice avoiding the Farmers Choice Direct Transfers in the total amount of $68,092.25 and directing that the subject of the Farmers Choice Direct Transfers or their value be returned to the Trustee, and Defendant Farmers Choice be held liable for the return of the Farmers Choice Direct Transfers as a direct or indirect beneficiary.

## SIXTY-THIRD CAUSE OF ACTION
### Avoidance and Recovery of Constructive Fraudulent Transfer
### (11 U.S.C. §§ 548(a)(1)(A), 550 and 551)
### (Against Defendant Farmers Choice)

963.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 962 of this Complaint as if fully set forth at length herein.

964.     The Farmers Choice Direct Transfers to Defendant Farmers Choice constituted transfers of money, property, and value of the Debtor to Defendant Farmers Choice.

965.     Upon information and belief, Defendant Farmers Choice received a material direct or indirect benefit on account of each of the Farmers Choice Direct Transfers.

966.     The Farmers Choice Direct Transfers to Defendant Farmers Choice were intentionally obscured by Singh and the Debtor from the Debtor's creditors.

967.     Each of the Farmers Choice Direct Transfers to Defendant Farmers Choice was made without fair consideration and/or reasonable equivalent value to the Debtor.

968.     At the time the Debtor made each of the Farmers Choice Direct Transfers, the Debtor had incurred or was about to incur a liability which remains unpaid to this day including, but not limited to the claim(s) underlying the Lugo Lawsuit and the monies owed to NewBank and Key Food.

969.     At the time it made each of the Farmers Choice Direct Transfers, the Debtor: (i) was insolvent or became insolvent as a result of the Farmers Choice Direct Transfers; (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; and/or (iii) intended to incur, or believed that the Debtor would incur debts that would be beyond the Debtor's ability to pay as such debts matured.

970.     Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Farmers Choice avoiding the Farmers Choice Direct Transfers and directing that the subject of the fraudulent transfers, the Farmers Choice Direct Transfers to Defendant Farmers Choice, or their value, be returned to the Trustee, and that Defendant Farmers Choice be held liable for the return of the Farmers Choice Direct Transfers as a direct or indirect beneficiary thereof.

## SIXTY-FOURTH CAUSE OF ACTION
**Avoidance and Recovery of Preferential Transfer**
**(11 U.S.C. §§ 547(b), 550)**
**(Against Defendant Farmers Choice)**

971.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 970 of this Complaint as if fully set forth at length herein.

972.    On December 13, 2021, within the Preference Period, the Debtor made one transfer in the amount of $8,907.77 to Defendant Farmers Choice (the "Farmers Choice Preferential Transfer").

973.    To the extent the Farmers Choice Direct Transfer to Defendant Farmers Choice does not constitute a fraudulent transfer, it is avoidable and recoverable because it was made on account of an antecedent debt owed by the Debtor.

974.    The Farmers Choice Preferential Transfer was made to or for the benefit of Defendant Farmers Choice.

975.    The Farmers Choice Preferential Transfer was made while the Debtor was insolvent or presumed to be insolvent.

976.    The Farmers Choice Preferential Transfer was made within the ninety (90) days of the Petition Date.

977.    As a result of the Farmers Choice Preferential Transfer, Defendant Farmers Choice received more than it would receive if (i) the Debtor's case was a case under chapter 7 of the Bankruptcy Code; (ii) the Farmers Choice Preferential Transfer had not been made; and (iii) Defendant Farmers Choice received payment on account of its claims, if any, against the Debtor to the extent provided under the Bankruptcy Code.

978.    Based on the foregoing, the Trustee is entitled to an order and judgment against Defendant Farmers Choice as the transferee of the Farmers Choice Preferential Transfer avoiding

the Farmers Choice Preferential Transfer and directing that the subject of the Farmers Choice Preferential Transfer or its value be returned to the Trustee, and that Defendant Farmers Choice be held liable for the return of the Farmers Choice Preferential Transfer as a direct and indirect beneficiary.

## SIXTY-FIFTH CAUSE OF ACTION
### Recovery of Subsequent Transfers
### (11 U.S.C. §§ 550 and 551)
### (Against Defendant Farmers Choice)

979.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 978 of this Complaint as if fully set forth at length herein.

980.    On the date of each of the transfers, the A & S Vegetables Direct Transfers were the property of the Debtor.

981.    As set forth herein, each of the A & S Vegetables Direct Transfers to Defendant A & S Vegetables is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

982.    Following A & S Vegetables Direct Transfers from the Debtor to Defendant A & S Vegetables, between May 9, 2019 and December 27, 2021, Defendant A & S Vegetables, the initial transferee of the A & S Vegetables Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made four (4) transfers totaling $22,729.50 to Defendant Farmers Choice (collectively, the "Farrmers Choice Subsequent Transfers"), as set forth on **Exhibit S**.

983.    The Farmers Choice Subsequent Transfers were made with Debtor funds and property that belonged to the Debtor.

984.    The Farmers Choice Subsequent Transfers were made directly or indirectly to, or for the benefit of, Defendant Farmers Choice.

985.    Upon information and belief, following each of the transfers from the Debtor to Defendant A & S Vegetables to Defendant Farmers Choice, Defendant Farmers Choice deposited the Farmers Choice Subsequent Transfers into one or more of its bank accounts.

986.    Upon information and belief, in exchange for each of the Farmers Choice Subsequent Transfers, Defendant Farmers Choice did not provide any value to the Debtor.

987.    Defendant Farmers Choice received the Farmers Choice Subsequent Transfers, totaling $22,729.50, which are recoverable pursuant to section 550(a) of the Bankruptcy Code.

988.    Defendant Farmers Choice is the immediate or mediate transferee of the Farmers Choice Subsequent Transfers.

989.    Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Farmers Choice, pursuant to section 550(a) and 551 of the Bankruptcy Code, recovering the Farmers Choice Subsequent Transfers, or the value thereof, for the benefit of the Debtor's estate.

### SIXTY-SIXTH CAUSE OF ACTION
**Avoidance and Recovery of Intentional Fraudulent Transfers**
**(11 U.S.C. §§ 548(a)(1)(A), 550 and 551)**
**(Against Defendant Itria)**

990.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 989 of this Complaint as if fully set forth at length herein.

991.    Between December 11, 2018 and December 13, 2019, within the Four-Year Fraudulent Transfer Period, the Debtor made eight (8) transfers totaling $49,020.83 (the "Itria Direct Transfers") to Defendant Itria.  A chart reflecting the Itria Direct Transfers is annexed hereto as **Exhibit T**.

992.    The Debtor made the Itria Direct Transfers within the four (4) year period prior to the Petition Date.

993.    The Debtor's transfers of the Itria Direct Transfers to Defendant Itria were transfers of money, property or other value from the Debtor's funds held in the Debtor's bank account.

994.    The Debtor's transfers of the Itria Direct Transfers to Defendant Itria constituted transfers of interests of the Debtor within the meaning of Section 101(54) of the Bankruptcy Code.

995.    The Debtor's transfers of the Itria Direct Transfers to Defendant Itria were to or for the benefit of Defendant Itria.

996.    Upon information and belief, Defendant Itria received a material direct or indirect benefit on account of the Itria Direct Transfers.

997.    Upon information and belief, the Debtor did not have any obligation to pay Defendant Itria at the time of any of the Itria Direct Transfers.

998.    The Debtor intentionally concealed or obscured the Itria Direct Transfers from the Debtor's creditors, third parties and others.

999.    Upon information and belief, the Debtor's books and records do not contain any reference to the Itria Direct Transfers.

1000.    The Debtor made the Itria Direct Transfers without consideration, or significantly inadequate consideration, to the Debtor.

1001.    The Debtor made the Itria Direct Transfers at a time when the Debtor knew it owed significant monies to NewBank and Key Food and that the Lugo Lawsuit was pending, among other debts and obligations that remain unpaid.

1002.    The Debtor made the Itria Direct Transfers while the Debtor was insolvent or had unreasonably small capital.

1003.   The Itria Direct Transfers were made by the Debtor, at the direction of Singh, with actual intention to hinder, delay and/or defraud the Debtor's creditors, and individuals and entities to which the Debtor was or would become obligated.

1004.   The Itria Direct Transfers were made in furtherance of the Debtor's scheme to defraud lenders and other creditors from monies they continued to lend and/or invest in the Debtor, or credit they continued to extend to the Debtor.

1005.   Based upon the foregoing, the Trustee is entitled to an order and judgment against Itria Choice avoiding the Itria Direct Transfers in the total amount of $49,020.83 and directing that the subject of the Itria Direct Transfers or their value be returned to the Trustee, and Defendant Itria be held liable for the return of the Itria Direct Transfers as a direct or indirect beneficiary.

## SIXTY-SEVENTH CAUSE OF ACTION
**Avoidance and Recovery of Constructive Fraudulent Transfer**
**(11 U.S.C. §§ 548(a)(1)(A), 550 and 551)**
**(Against Defendant Itria)**

1006.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1005 of this Complaint as if fully set forth at length herein.

1007.   The Itria Direct Transfers to Defendant Itria constituted transfers of money, property, and value of the Debtor to Defendant Itria.

1008.   Upon information and belief, Defendant Itria received a material direct or indirect benefit on account of each of the Itria Direct Transfers.

1009.   The Itria Direct Transfers to Defendant Itria were intentionally obscured by Singh and the Debtor from the Debtor's creditors.

1010.   Each of the Itria Direct Transfers to Defendant Itria was made without fair consideration and/or reasonable equivalent value to the Debtor.

1011.   At the time the Debtor made each of the Itria Direct Transfers, the Debtor had incurred or was about to incur a liability which remains unpaid to this day including, but not limited to the claim(s) underlying the Lugo Lawsuit and the monies owed to NewBank and Key Food.

1012.   At the time it made each of the Itria Direct Transfers, the Debtor: (i) was insolvent or became insolvent as a result of the Itria Direct Transfers; (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; and/or (iii) intended to incur, or believed that the Debtor would incur debts that would be beyond the Debtor's ability to pay as such debts matured.

1013.   Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Itria avoiding the Itria Direct Transfers and directing that the subject of the fraudulent transfers, the Itria Direct Transfers to Defendant Itria, or their value, be returned to the Trustee, and that Defendant Itria be held liable for the return of the Itria Direct Transfers as a direct or indirect beneficiary thereof.

### SIXTY-EIGHTH CAUSE OF ACTION
**Recovery of Subsequent Transfers**
**(11 U.S.C. §§ 550 and 551)**
**(Against Defendant Itria)**

1014.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1013 of this Complaint as if fully set forth at length herein.

1015.   On the date of each of the transfers, the A & S Vegetables Direct Transfers were the property of the Debtor.

1016.   As set forth herein, each of the A & S Vegetables Direct Transfers to Defendant A & S Vegetables is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

1017.   Following A & S Vegetables Direct Transfers from the Debtor to Defendant A & S Vegetables, between August 1, 2019 and May 7, 2020, Defendant A & S Vegetables, the initial transferee of the A & S Vegetables Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made seventy-four (74) transfers totaling $207,164.87 to Defendant Itria (collectively, the "Itria Subsequent Transfers"), as set forth on **Exhibit T**.

1018.   The Itria Subsequent Transfers were made with Debtor funds and property that belonged to the Debtor.

1019.   The Itria Subsequent Transfers were made directly or indirectly to, or for the benefit of, Defendant Itria.

1020.   Upon information and belief, following each of the transfers from the Debtor to Defendant A & S Vegetables to Defendant Itria, Defendant Itria deposited the Itria Subsequent Transfers into one or more of its bank accounts.

1021.   Upon information and belief, in exchange for each of the Itria Subsequent Transfers, Defendant Itria did not provide any value to the Debtor.

1022.   Defendant Itria received the Itria Subsequent Transfers, totaling $207,164.87, which are recoverable pursuant to section 550(a) of the Bankruptcy Code.

1023.   Defendant Itria is the immediate or mediate transferee of the Itria Subsequent Transfers.

1024.   Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Itria, pursuant to section 550(a) and 551 of the Bankruptcy Code, recovering the Itria Subsequent Transfers, or the value thereof, for the benefit of the Debtor's estate.

**SIXTY-NINTH CAUSE OF ACTION**
**Avoidance and Recovery of Intentional Fraudulent Transfers**
**(11 U.S.C. §§ 548(a)(1)(A), 550 and 551)**
**(Against Defendant Johns Fish Market)**

1025.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1024 of this Complaint as if fully set forth at length herein.

1026.   Between November 8, 2019 and December 12, 2019, within the Four-Year Fraudulent Transfer Period, the Debtor made five (5) transfers totaling $25,402 (the "Johns Fish Market Direct Transfers") to Defendant Johns Fish Market.  A chart reflecting the Johns Fish Market Direct Transfers is annexed hereto as **Exhibit U**.

1027.   The Debtor made the Johns Fish Market Direct Transfers within the four (4) year period prior to the Petition Date.

1028.   The Debtor's transfers of the Johns Fish Market Direct Transfers to Defendant Johns Fish Market were transfers of money, property or other value from the Debtor's funds held in the Debtor's bank account.

1029.   The Debtor's transfers of the Johns Fish Market Direct Transfers to Defendant Johns Fish Market constituted transfers of interests of the Debtor within the meaning of Section 101(54) of the Bankruptcy Code.

1030.   The Debtor's transfers of the Johns Fish Market Direct Transfers to Defendant Johns Fish Market were to, or for the benefit of, Defendant Johns Fish Market.

1031.   Upon information and belief, Defendant Johns Fish Market received a material direct or indirect benefit on account of the Johns Fish Market Direct Transfers.

1032.   Upon information and belief, the Debtor did not have any obligation to pay Defendant Johns Fish Market at the time of any of the Johns Fish Market Direct Transfers.

1033. The Debtor intentionally concealed or obscured the Johns Fish Market Direct Transfers from the Debtor's creditors, third parties and others.

1034. Upon information and belief, the Debtor's books and records do not contain any reference to the Johns Fish Market Direct Transfers.

1035. The Debtor made the Johns Fish Market Direct Transfers without consideration, or significantly inadequate consideration, to the Debtor.

1036. The Debtor made the Johns Fish Market Direct Transfers at a time when the Debtor knew it owed significant monies to NewBank and Key Food and that the Lugo Lawsuit was pending, among other debts and obligations that remain unpaid.

1037. The Debtor made the Johns Fish Market Direct Transfers while the Debtor was insolvent or had unreasonably small capital.

1038. The Johns Fish Market Direct Transfers were made by the Debtor, at the direction of Singh, with actual intention to hinder, delay and/or defraud the Debtor's creditors, and individuals and entities to which the Debtor was or would become obligated.

1039. The Johns Fish Market Direct Transfers were made in furtherance of the Debtor's scheme to defraud lenders and other creditors from monies they continued to lend and/or invest in the Debtor, or credit they continued to extend to the Debtor.

1040. Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Johns Fish Market avoiding the Johns Fish Market Direct Transfers in the total amount of $25,402 and directing that the subject of the Johns Fish Market Direct Transfers or their value be returned to the Trustee, and Defendant Johns Fish Market be held liable for the return of the Johns Fish Market Direct Transfers as a direct or indirect beneficiary.

### SEVENTIETH CAUSE OF ACTION
**Avoidance and Recovery of Constructive Fraudulent Transfer**
**(11 U.S.C. §§ 548(a)(1)(A), 550 and 551)**
**(Against Defendant Johns Fish Market)**

1041.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1040 of this Complaint as if fully set forth at length herein.

1042.   The Johns Fish Market Direct Transfers to Defendant Johns Fish Market constituted transfers of money, property, and value of the Debtor to Defendant Johns Fish Market.

1043.   Upon information and belief, Defendant Johns Fish Market received a material direct or indirect benefit on account of each of the Johns Fish Market Direct Transfers.

1044.   The Johns Fish Market Direct Transfers to Defendant Itria were intentionally obscured by Singh and the Debtor from the Debtor's creditors.

1045.   Each of the Johns Fish Market Direct Transfers to Defendant Johns Fish Market was made without fair consideration and/or reasonable equivalent value to the Debtor.

1046.   At the time the Debtor made each of the Johns Fish Market Direct Transfers, the Debtor had incurred or was about to incur a liability which remains unpaid to this day including, but not limited to the claim(s) underlying the Lugo Lawsuit and the monies owed to NewBank and Key Food.

1047.   At the time it made each of the Johns Fish Market Direct Transfers, the Debtor: (i) was insolvent or became insolvent as a result of the Johns Fish Market Direct Transfers; (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; and/or (iii) intended to incur, or believed that the Debtor would incur debts that would be beyond the Debtor's ability to pay as such debts matured.

1048.   Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Johns Fish Market avoiding the Johns Fish Market Direct Transfers and directing that the subject of the fraudulent transfers, the Johns Fish Market Direct Transfers to Defendant Itria, or their value, be returned to the Trustee, and that Defendant Johns Fish Market be held liable for the return of the Johns Fish Market Direct Transfers as a direct or indirect beneficiary thereof.

**SEVENTY-FIRST CAUSE OF ACTION**
**Recovery of Subsequent Transfers**
**(11 U.S.C. §§ 550 and 551)**
**(Against Defendant Johns Fish Market)**

1049.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1048 of this Complaint as if fully set forth at length herein.

1050.   On the date of each of the transfers, the A & S Vegetables Direct Transfers were the property of the Debtor.

1051.   As set forth herein, each of the A & S Vegetables Direct Transfers to Defendant A & S Vegetables is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

1052.   Following A & S Vegetables Direct Transfers from the Debtor to Defendant A & S Vegetables, between January 25, 2019 and December 16, 2020, Defendant A & S Vegetables, the initial transferee of the A & S Vegetables Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made three (3) transfers totaling $25,184.72 to Defendant Johns Fish Market (collectively, the "Johns Fish Market Subsequent Transfers"), as set forth on **Exhibit U**.

1053.   The Johns Fish Market Subsequent Transfers were made with Debtor funds and property that belonged to the Debtor.

1054.   The Johns Fish Market Subsequent Transfers were made directly or indirectly to, or for the benefit of, Defendant Johns Fish Market.

1055.   Upon information and belief, following each of the transfers from the Debtor to Defendant A & S Vegetables to Defendant Johns Fish Market, Defendant Johns Fish Market deposited the Johns Fish Market Subsequent Transfers into one or more of its bank accounts.

1056.   Upon information and belief, in exchange for each of the Johns Fish Market Subsequent Transfers, Defendant Johns Fish Market did not provide any value to the Debtor.

1057.   Defendant Johns Fish Market received the Johns Fish Market Subsequent Transfers, totaling $25,184.72, which are recoverable pursuant to section 550(a) of the Bankruptcy Code.

1058.   Defendant Johns Fish Market is the immediate or mediate transferee of the Johns Fish Market Subsequent Transfers.

1059.   Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Johns Fish Market, pursuant to section 550(a) and 551 of the Bankruptcy Code, recovering the Johns Fish Market Subsequent Transfers, or the value thereof, for the benefit of the Debtor's estate.

### SEVENTY-SECOND CAUSE OF ACTION
**Avoidance and Recovery of Intentional Fraudulent Transfers
(11 U.S.C. §§ 548(a)(1)(A), 550 and 551)
(Against Defendant Louis Milella)**

1060.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1059 of this Complaint as if fully set forth at length herein.

1061.   Between October 24, 2018 and November 8, 2021, within the Four-Year Fraudulent Transfer Period, the Debtor made sixty-four (64) transfers totaling $175,571.36 (the "Louis Milella Direct Transfers") to Defendant Louis Milella.   A chart reflecting the Louis Milella Direct Transfers is annexed hereto as **Exhibit V**.

1062.  The Debtor made the Louis Milella Direct Transfers within the four (4) year period prior to the Petition Date.

1063.  The Debtor's transfers of the Louis Milella Direct Transfers to Defendant Louis Milella were transfers of money, property or other value from the Debtor's funds held in the Debtor's bank account.

1064.  The Debtor's transfers of the Louis Milella Direct Transfers to Defendant Louis Milella constituted transfers of interests of the Debtor within the meaning of Section 101(54) of the Bankruptcy Code.

1065.  The Debtor's transfers of the Louis Milella Direct Transfers to Defendant Louis Milella were to or for the benefit of Defendant Louis Milella.

1066.  Upon information and belief, Defendant Louis Milella received a material direct or indirect benefit on account of the Louis Milella Direct Transfers.

1067.  Upon information and belief, the Debtor did not have any obligation to pay Defendant Louis Milella at the time of any of the Louis Milella Direct Transfers.

1068.  The Debtor intentionally concealed or obscured the Louis Milella Direct Transfers from the Debtor's creditors, third parties and others.

1069.  Upon information and belief, the Debtor's books and records do not contain any reference to the Louis Milella Direct Transfers.

1070.  The Debtor made the Louis Milella Direct Transfers without consideration, or significantly inadequate consideration, to the Debtor.

1071.  The Debtor made the Louis Milella Direct Transfers at a time when the Debtor knew it owed significant monies to NewBank and Key Food and that the Lugo Lawsuit was pending, among other debts and obligations that remain unpaid.

1072.   The Debtor made the Louis Milella Direct Transfers while the Debtor was insolvent or had unreasonably small capital.

1073.   The Louis Milella Direct Transfers were made by the Debtor, at the direction of Singh, with actual intention to hinder, delay and/or defraud the Debtor's creditors, and individuals and entities to which the Debtor was or would become obligated.

1074.   The Louis Milella Direct Transfers were made in furtherance of the Debtor's scheme to defraud lenders and other creditors from monies they continued to lend and/or invest in the Debtor, or credit they continued to extend to the Debtor.

1075.   Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Louis Milella avoiding the Louis Milella Direct Transfers in the total amount of $175,571.36 and directing that the subject of the Louis Milella Direct Transfers or their value be returned to the Trustee, and Defendant Louis Milella be held liable for the return of the Louis Milella Direct Transfers as a direct or indirect beneficiary.

<u>**SEVENTY-THIRD CAUSE OF ACTION**</u>
**Avoidance and Recovery of Constructive Fraudulent Transfer**
**(11 U.S.C. §§ 548(a)(1)(A), 550 and 551)**
**(Against Defendant Louis Milella)**

1076.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1075 of this Complaint as if fully set forth at length herein.

1077.   The Louis Milella Direct Transfers to Defendant Louis Milella constituted transfers of money, property, and value of the Debtor to Defendant Louis Milella.

1078.   Upon information and belief, Defendant Louis Milella received a material direct or indirect benefit on account of each of the Louis Milella Direct Transfers.

1079.   The Louis Milella Direct Transfers to Defendant Louis Milella were intentionally obscured by Singh and the Debtor from the Debtor's creditors.

1080.   Each of the Louis Milella Direct Transfers to Defendant Louis Milella was made without fair consideration and/or reasonable equivalent value to the Debtor.

1081.   At the time the Debtor made each of the Louis Milella Direct Transfers, the Debtor had incurred or was about to incur a liability which remains unpaid to this day including, but not limited to the claim(s) underlying the Lugo Lawsuit and the monies owed to NewBank and Key Food.

1082.   At the time it made each of the Louis Milella Direct Transfers, the Debtor: (i) was insolvent or became insolvent as a result of the Louis Milella Direct Transfers; (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; and/or (iii) intended to incur, or believed that the Debtor would incur debts that would be beyond the Debtor's ability to pay as such debts matured.

1083.   Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Louis Milella avoiding the Louis Milella Direct Transfers and directing that the subject of the fraudulent transfers, the Louis Milella Direct Transfers to Defendant Louis Milella, or their value, be returned to the Trustee, and that Defendant Louis Milella be held liable for the return of the Louis Milella Direct Transfers as a direct or indirect beneficiary thereof.

<u>**SEVENTY-FOURTH CAUSE OF ACTION**</u>
**Recovery of Subsequent Transfers**
**(11 U.S.C. §§ 550 and 551)**
**(Against Defendant Louis Milella)**

1084.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1083 of this Complaint as if fully set forth at length herein.

1085.   On the date of each of the transfers, the A & S Vegetables Direct Transfers were the property of the Debtor.

155

1086.   As set forth herein, each of the A & S Vegetables Direct Transfers to Defendant A & S Vegetables is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

1087.   Following A & S Vegetables Direct Transfers from the Debtor to Defendant A & S Vegetables, between February 20, 2019 and March 5, 2019, Defendant A & S Vegetables, the initial transferee of the A & S Vegetables Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made four (4) transfers totaling $10,424.28 to Defendant Louis Milella (collectively, the "Louis Milella Subsequent Transfers"), as set forth on **Exhibit V**.

1088.   The Louis Milella Subsequent Transfers were made with Debtor funds and property that belonged to the Debtor.

1089.   The Louis Milella Subsequent Transfers were made directly or indirectly to, or for the benefit of, Defendant Louis Milella.

1090.   Upon information and belief, following each of the transfers from the Debtor to Defendant A & S Vegetables to Defendant Louis Milella, Defendant Louis Milella deposited the Louis Milella Subsequent Transfers into one or more of its bank accounts.

1091.   Upon information and belief, in exchange for each of the Louis Milella Subsequent Transfers, Defendant Louis Milella did not provide any value to the Debtor.

1092.   Defendant Louis Milella received the Louis Milella Subsequent Transfers, totaling $10,424.28, which are recoverable pursuant to section 550(a) of the Bankruptcy Code.

1093.   Defendant Louis Milella is the immediate or mediate transferee of the Louis Milella Subsequent Transfers.

1094.   Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Louis Milella, pursuant to section 550(a) and 551 of the Bankruptcy Code, recovering the Louis Milella Subsequent Transfers, or the value thereof, for the benefit of the Debtor's estate.

**SEVENTY-FIFTH CAUSE OF ACTION**
**Avoidance and Recovery of Intentional Fraudulent Transfers**
**(11 U.S.C. §§ 548(a)(1)(A), 550 and 551)**
**(Against Defendant Manhattan Beer)**

1095.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1094 of this Complaint as if fully set forth at length herein.

1096.   Between October 18, 2018 and October 26, 2021, within the Four-Year Fraudulent Transfer Period, the Debtor made forty-six (46) transfers totaling $85,899.39 (the "Manhattan Beer Direct Transfers") to Defendant Manhattan Beer.  A chart reflecting the Manhattan Beer Direct Transfers is annexed hereto as **Exhibit W**.

1097.   The Debtor made the Manhattan Beer Direct Transfers within the four (4) year period prior to the Petition Date.

1098.   The Debtor's transfers of the Manhattan Beer Direct Transfers to Defendant Manhattan Beer were transfers of money, property or other value from the Debtor's funds held in the Debtor's bank account.

1099.   The Debtor's transfers of the Manhattan Beer Direct Transfers to Defendant Manhattan Beer constituted transfers of interests of the Debtor within the meaning of Section 101(54) of the Bankruptcy Code.

1100.   The Debtor's transfers of the Manhattan Beer Direct Transfers to Defendant Manhattan Beer were to or for the benefit of Defendant Manhattan Beer.

1101.   Upon information and belief, Defendant Manhattan Beer received a material direct or indirect benefit on account of the Manhattan Beer Direct Transfers.

1102.   Upon information and belief, the Debtor did not have any obligation to pay Defendant Manhattan Beer at the time of any of the Manhattan Beer Direct Transfers.

1103.   The Debtor intentionally concealed or obscured the Manhattan Beer Direct Transfers from the Debtor's creditors, third parties and others.

1104.   Upon information and belief, the Debtor's books and records do not contain any reference to the Manhattan Beer Direct Transfers.

1105.   The Debtor made the Manhattan Beer Direct Transfers without consideration, or significantly inadequate consideration, to the Debtor.

1106.   The Debtor made the Manhattan Beer Direct Transfers at a time when the Debtor knew it owed significant monies to NewBank and Key Food and that the Lugo Lawsuit was pending, among other debts and obligations that remain unpaid.

1107.   The Debtor made the Manhattan Beer Direct Transfers while the Debtor was insolvent or had unreasonably small capital.

1108.   The Manhattan Beer Direct Transfers were made by the Debtor, at the direction of Singh, with actual intention to hinder, delay and/or defraud the Debtor's creditors, and individuals and entities to which the Debtor was or would become obligated.

1109.   The Manhattan Beer Direct Transfers were made in furtherance of the Debtor's scheme to defraud lenders and other creditors from monies they continued to lend and/or invest in the Debtor, or credit they continued to extend to the Debtor.

1110.   Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Manhattan Beer avoiding the Manhattan Beer Direct Transfers in the total amount of $85,899.39 and directing that the subject of the Manhattan Beer Direct Transfers or their value be

returned to the Trustee, and Defendant Manhattan Beer be held liable for the return of the Manhattan Beer Direct Transfers as a direct or indirect beneficiary.

**SEVENTY-SIXTH CAUSE OF ACTION**
**Avoidance and Recovery of Constructive Fraudulent Transfer**
**(11 U.S.C. §§ 548(a)(1)(A), 550 and 551)**
**(Against Defendant Manhattan Beer)**

1111.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1110 of this Complaint as if fully set forth at length herein.

1112.    The Manhattan Beer Direct Transfers to Defendant Manhattan Beer constituted transfers of money, property, and value of the Debtor to Defendant Manhattan Beer.

1113.    Upon information and belief, Defendant Manhattan Beer received a material direct or indirect benefit on account of each of the Manhattan Beer Direct Transfers.

1114.    The Manhattan Beer Direct Transfers to Defendant Manhattan Beer were intentionally obscured by Singh and the Debtor from the Debtor's creditors.

1115.    Each of the Manhattan Beer Direct Transfers to Defendant Manhattan Beer was made without fair consideration and/or reasonable equivalent value to the Debtor.

1116.    At the time the Debtor made each of the Manhattan Beer Direct Transfers, the Debtor had incurred or was about to incur a liability which remains unpaid to this day including, but not limited to the claim(s) underlying the Lugo Lawsuit and the monies owed to NewBank and Key Food.

1117.    At the time it made each of the Manhattan Beer Direct Transfers, the Debtor: (i) was insolvent or became insolvent as a result of the Manhattan Beer Direct Transfers; (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; and/or (iii) intended

to incur, or believed that the Debtor would incur debts that would be beyond the Debtor's ability to pay as such debts matured.

1118.   Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Manhattan Beer avoiding the Manhattan Beer Direct Transfers and directing that the subject of the fraudulent transfers, the Manhattan Beer Direct Transfers to Defendant Manhattan Beer, or their value, be returned to the Trustee, and that Defendant Manhattan Beer be held liable for the return of the Manhattan Beer Direct Transfers as a direct or indirect beneficiary thereof.

**SEVENTY-SEVENTH CAUSE OF ACTION**
**Recovery of Subsequent Transfers**
**(11 U.S.C. §§ 550 and 551)**
**(Against Defendant Manhattan Beer)**

1119.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1118 of this Complaint as if fully set forth at length herein.

1120.   On the date of each of the transfers, the A & S Vegetables Direct Transfers were the property of the Debtor.

1121.   As set forth herein, each of the A & S Vegetables Direct Transfers to Defendant A & S Vegetables is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

1122.   Following A & S Vegetables Direct Transfers from the Debtor to Defendant A & S Vegetables, between March 1, 2019 and January 9, 2020, Defendant A & S Vegetables, the initial transferee of the A & S Vegetables Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made seven (7) transfers totaling $10,677.19 to Defendant Manhattan Beer (collectively, the "Manhattan Beer Subsequent Transfers"), as set forth on **Exhibit W**.

1123.   The Manhattan Beer Subsequent Transfers were made with Debtor funds and property that belonged to the Debtor.

1124.   The Manhattan Beer Subsequent Transfers were made directly or indirectly to, or for the benefit of, Defendant Manhattan Beer.

1125.   Upon information and belief, following each of the transfers from the Debtor to Defendant A & S Vegetables to Defendant Manhattan Beer, Defendant Manhattan Beer deposited the Manhattan Beer Subsequent Transfers into one or more of its bank accounts.

1126.   Upon information and belief, in exchange for each of the Manhattan Beer Subsequent Transfers, Defendant Manhattan Beer did not provide any value to the Debtor.

1127.   Defendant Manhattan Beer received the Manhattan Beer Subsequent Transfers, totaling $10,677.19, which are recoverable pursuant to section 550(a) of the Bankruptcy Code.

1128.   Defendant Manhattan Beer is the immediate or mediate transferee of the Manhattan Beer Subsequent Transfers.

1129.   Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Manhattan Beer, pursuant to section 550(a) and 551 of the Bankruptcy Code, recovering the Manhattan Beer Subsequent Transfers, or the value thereof, for the benefit of the Debtor's estate.

### SEVENTY-EIGHTH CAUSE OF ACTION
**Avoidance and Recovery of Intentional Fraudulent Transfers**
**(11 U.S.C. §§ 548(a)(1)(A), 550 and 551)**
**(Against Defendant Mr. Advance)**

1130.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1129 of this Complaint as if fully set forth at length herein.

1131.   Between January 10, 2022 and January 26, 2022, within the Two-Year Fraudulent Transfer Period, the Debtor made four (4) transfers totaling $28,565 (the "Mr. Advance Direct Transfers") to Defendant Mr. Advance.  A chart reflecting the Mr. Advance Direct Transfers is annexed hereto as **Exhibit X**.

1132.   The Debtor made the Mr. Advance Direct Transfers within the two (2) year period prior to the Petition Date.

1133.   The Debtor's transfers of the Mr. Advance Direct Transfers to Defendant Mr. Advance were transfers of money, property or other value from the Debtor's funds held in the Debtor's bank account.

1134.   The Debtor's transfers of the Mr. Advance Direct Transfers to Defendant Mr. Advance constituted transfers of interests of the Debtor within the meaning of Section 101(54) of the Bankruptcy Code.

1135.   The Debtor's transfers of the Mr. Advance Direct Transfers to Defendant Mr. Advance were to or for the benefit of Defendant Mr. Advance.

1136.   Upon information and belief, Defendant Mr. Advance received a material direct or indirect benefit on account of the Mr. Advance Direct Transfers.

1137.   Upon information and belief, the Debtor did not have any obligation to pay Defendant Mr. Advance at the time of any of the Mr. Advance Direct Transfers.

1138.   The Debtor intentionally concealed or obscured the Mr. Advance Direct Transfers from the Debtor's creditors, third parties and others.

1139.   Upon information and belief, the Debtor's books and records do not contain any reference to the Mr. Advance Direct Transfers.

1140.   The Debtor made the Mr. Advance Direct Transfers without consideration, or significantly inadequate consideration, to the Debtor.

1141.   The Debtor made the Mr. Advance Direct Transfers at a time when the Debtor knew it owed significant monies to NewBank and Key Food and that the Lugo Lawsuit was pending, among other debts and obligations that remain unpaid.

1142.   The Debtor made the Mr. Advance Direct Transfers while the Debtor was insolvent or had unreasonably small capital.

1143.   The Mr. Advance Direct Transfers were made by the Debtor, at the direction of Singh, with actual intention to hinder, delay and/or defraud the Debtor's creditors, and individuals and entities to which the Debtor was or would become obligated.

1144.   The Mr. Advance Direct Transfers were made in furtherance of the Debtor's scheme to defraud lenders and other creditors from monies they continued to lend and/or invest in the Debtor, or credit they continued to extend to the Debtor.

1145.   Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Mr. Advance avoiding the Mr. Advance Direct Transfers in the total amount of $28,565 and directing that the subject of the Mr. Advance Direct Transfers or their value be returned to the Trustee, and Defendant Mr. Advance be held liable for the return of the Mr. Advance Direct Transfers as a direct or indirect beneficiary.

### SEVENTY-NINTH CAUSE OF ACTION
**Avoidance and Recovery of Constructive Fraudulent Transfer**
**(11 U.S.C. §§ 548(a)(1)(A), 550 and 551)**
**(Against Defendant Mr. Advance)**

1146.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1145 of this Complaint as if fully set forth at length herein.

1147.   The Mr. Advance Direct Transfers to Defendant Mr. Advance constituted transfers of money, property, and value of the Debtor to Defendant Mr. Advance.

1148.   Upon information and belief, Defendant Mr. Advance received a material direct or indirect benefit on account of each of the Mr. Advance Direct Transfers.

1149.   The Mr. Advance Direct Transfers to Defendant Mr. Advance were intentionally obscured by Singh and the Debtor from the Debtor's creditors.

1150.   Each of the Mr. Advance Direct Transfers to Defendant Mr. Advance was made without fair consideration and/or reasonable equivalent value to the Debtor.

1151.   At the time the Debtor made each of the Mr. Advance Direct Transfers, the Debtor had incurred or was about to incur a liability which remains unpaid to this day including, but not limited to the claim(s) underlying the Lugo Lawsuit and the monies owed to NewBank and Key Food.

1152.   At the time it made each of the Mr. Advance Direct Transfers, the Debtor: (i) was insolvent or became insolvent as a result of the Mr. Advance Direct Transfers; (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; and/or (iii) intended to incur, or believed that the Debtor would incur debts that would be beyond the Debtor's ability to pay as such debts matured.

1153.   Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Mr. Advance avoiding the Mr. Advance Direct Transfers and directing that the subject of the fraudulent transfers, the Mr. Advance Direct Transfers to Defendant Mr. Advance, or their value, be returned to the Trustee, and that Defendant Mr. Advance be held liable for the return of the Mr. Advance Direct Transfers as a direct or indirect beneficiary thereof.

## EIGHTIETH CAUSE OF ACTION
**Avoidance and Recovery of Preferential Transfer**
**(11 U.S.C. §§ 547(b), 550)**
**(Against Defendant Mr. Advance)**

1154.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1153 of this Complaint as if fully set forth at length herein.

1155.   Between January 10, 2022 and January 26, 2022, within the Preference Period, the Debtor made four (4) transfers totaling $28,565 to Defendant Mr. Advance (the "Mr. Advance Preferential Transfers"), which are set forth on **Exhibit X**.

1156.   To the extent the Mr. Advance Direct Transfer to Defendant Mr. Advance does not constitute a fraudulent transfer, it is avoidable and recoverable because it was made on account of an antecedent debt owed by the Debtor.

1157.   The Mr. Advance Preferential Transfers were made to or for the benefit of Defendant Mr. Advance.

1158.   The Mr. Advance Preferential Transfers were made while the Debtor was insolvent or presumed to be insolvent.

1159.   The Mr. Advance Preferential Transfers were made within the ninety (90) days of the Petition Date.

1160.   As a result of the Mr. Advance Preferential Transfers, Defendant Mr. Advance received more than it would receive if (i) the Debtor's case was a case under chapter 7 of the Bankruptcy Code; (ii) the Mr. Advance Preferential Transfers had not been made; and (iii) Defendant Mr. Advance received payment on account of its claims, if any, against the Debtor to the extent provided under the Bankruptcy Code.

1161.   Based on the foregoing, the Trustee is entitled to an order and judgment against Defendant Mr. Advance as the transferee of the Mr. Advance Preferential Transfers avoiding the Mr. Advance Preferential Transfers and directing that the subject of the Mr. Advance Preferential Transfers or their value be returned to the Trustee, and that Defendant Mr. Advance be held liable for the return of the Mr. Advance Preferential Transfers as a direct and indirect beneficiary.

## EIGHTY-FIRST CAUSE OF ACTION
### Recovery of Subsequent Transfers
### (11 U.S.C. §§ 550 and 551)
### (Against Defendant Mr. Advance)

1162.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1161 of this Complaint as if fully set forth at length herein.

1163.   On the date of each of the transfers, the 3350 Kaur Farms Direct Transfers were the property of the Debtor.

1164.   As set forth herein, each of the 3350 Kaur Farms Direct Transfers to Defendant 3350 Kaur Farms is avoidable and recoverable under sections 547 and/or 548, 550 and 551 of the Bankruptcy Code.

1165.   Following the 3350 Kaur Farms Direct Transfers from the Debtor to Defendant 3350 Kaur Farms, between December 1, 2021 and December 14, 2021, Defendant 3350 Kaur Farms, the initial transferee of the 3350 Kaur Farms Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made eight (8) transfers totaling $48,511.64 to Defendant Mr. Advance (collectively, the "Mr. Advance Subsequent Transfers"), as set forth on **Exhibit X**.

1166.   The Mr. Advance Subsequent Transfers were made with Debtor funds and property that belonged to the Debtor.

1167.   The Mr. Advance Subsequent Transfers were made directly or indirectly to, or for the benefit of, Defendant Mr. Advance.

1168.   Upon information and belief, following each of the transfers from the Debtor to Defendant 3350 Kaur Farms to Defendant Mr. Advance, Defendant Mr. Advance deposited the Mr. Advance Subsequent Transfers into one or more of its bank accounts.

1169.   Upon information and belief, in exchange for each of the Mr. Advance Subsequent Transfers, Defendant Mr. Advance did not provide any value to the Debtor.

1170.  Defendant Mr. Advance received the Mr. Advance Subsequent Transfers, totaling

$48,511.64, which are recoverable pursuant to section 550(a) of the Bankruptcy Code.

1171.  Defendant Mr. Advance is the immediate or mediate transferee of the Mr. Advance

Subsequent Transfers.

1172.  Based upon the foregoing, the Trustee is entitled to an order and judgment against

Defendant Mr. Advance, pursuant to section 550(a) and 551 of the Bankruptcy Code, recovering

the Mr. Advance Subsequent Transfers, or the value thereof, for the benefit of the Debtor's estate.

**EIGHTY-SECOND CAUSE OF ACTION**
**Avoidance and Recovery of Intentional Fraudulent Transfers**
**(11 U.S.C. §§ 548(a)(1)(A), 550 and 551)**
**(Against Defendant Parkview Advance)**

1173.  Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1

through 1172 of this Complaint as if fully set forth at length herein.

1174.  Between January 25, 2022 and January 27, 2022, within the Two-Year Fraudulent

Transfer Period, the Debtor made two (2) transfers totaling $2,000 (the "Parkview Advance Direct

Transfers") to Defendant Parkview Advance.  A chart reflecting the Parkview Advance Direct

Transfers is annexed hereto as **Exhibit Y**.

1175.  The Debtor made the Parkview Advance Direct Transfers within the two (2) year

period prior to the Petition Date.

1176.  The Debtor's transfers of the Parkview Advance Direct Transfers to Defendant

Parkview Advance were transfers of money, property or other value from the Debtor's funds held

in the Debtor's bank account.

1177.  The Debtor's transfers of the Parkview Advance Direct Transfers to Defendant

Parkview Advance constituted transfers of interests of the Debtor within the meaning of Section

101(54) of the Bankruptcy Code.

1178.   The Debtor's transfers of the Parkview Advance Direct Transfers to Defendant Parkview Advance were to or for the benefit of Defendant Parkview Advance.

1179.   Upon information and belief, Defendant Parkview Advance received a material direct or indirect benefit on account of the Parkview Advance Direct Transfers.

1180.   Upon information and belief, the Debtor did not have any obligation to pay Defendant Parkview Advance at the time of any of the Parkview Advance Direct Transfers.

1181.   The Debtor intentionally concealed or obscured the Parkview Advance Direct Transfers from the Debtor's creditors, third parties and others.

1182.   Upon information and belief, the Debtor's books and records do not contain any reference to the Parkview Advance Direct Transfers.

1183.   The Debtor made the Parkview Advance Direct Transfers without consideration, or significantly inadequate consideration, to the Debtor.

1184.   The Debtor made the Parkview Advance Direct Transfers at a time when the Debtor knew it owed significant monies to NewBank and Key Food and that the Lugo Lawsuit was pending, among other debts and obligations that remain unpaid.

1185.   The Debtor made the Parkview Advance Direct Transfers while the Debtor was insolvent or had unreasonably small capital.

1186.   The Parkview Advance Direct Transfers were made by the Debtor, at the direction of Singh, with actual intention to hinder, delay and/or defraud the Debtor's creditors, and individuals and entities to which the Debtor was or would become obligated.

1187.   The Parkview Advance Direct Transfers were made in furtherance of the Debtor's scheme to defraud lenders and other creditors from monies they continued to lend and/or invest in the Debtor, or credit they continued to extend to the Debtor.

1188.   Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Parkview Advance avoiding the Parkview Advance Direct Transfers in the total amount of $2,000 and directing that the subject of the Parkview Advance Direct Transfers or their value be returned to the Trustee, and Defendant Parkview Advance be held liable for the return of the Parkview Advance Direct Transfers as a direct or indirect beneficiary.

**EIGHTY-THIRD CAUSE OF ACTION**
**Avoidance and Recovery of Constructive Fraudulent Transfer**
**(11 U.S.C. §§ 548(a)(1)(A), 550 and 551)**
**(Against Defendant Parkview Advance)**

1189.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1188 of this Complaint as if fully set forth at length herein.

1190.   The Parkview Advance Direct Transfers to Defendant Parkview Advance constituted transfers of money, property, and value of the Debtor to Defendant Parkview Advance.

1191.   Upon information and belief, Defendant Parkview Advance received a material direct or indirect benefit on account of each of the Parkview Advance Direct Transfers.

1192.   The Mr. Advance Direct Transfers to Defendant Parkview Advance were intentionally obscured by Singh and the Debtor from the Debtor's creditors.

1193.   Each of the Parkview Advance Direct Transfers to Defendant Parkview Advance was made without fair consideration and/or reasonable equivalent value to the Debtor.

1194.   At the time the Debtor made each of the Parkview Advance Direct Transfers, the Debtor had incurred or was about to incur a liability which remains unpaid to this day including, but not limited to the claim(s) underlying the Lugo Lawsuit and the monies owed to NewBank and Key Food.

1195.   At the time it made each of the Parkview Advance Direct Transfers, the Debtor: (i) was insolvent or became insolvent as a result of the Parkview Advance Direct Transfers; (ii) was

engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; and/or (iii) intended to incur, or believed that the Debtor would incur debts that would be beyond the Debtor's ability to pay as such debts matured.

1196.   Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Parkview Advance avoiding the Parkview Advance Direct Transfers and directing that the subject of the fraudulent transfers, the Parkview Advance Direct Transfers to Defendant Parkview Advance, or their value, be returned to the Trustee, and that Defendant Parkview Advance be held liable for the return of the Parkview Advance Direct Transfers as a direct or indirect beneficiary thereof.

### EIGHTY-FOURTH CAUSE OF ACTION
**Avoidance and Recovery of Preferential Transfer**
**(11 U.S.C. §§ 547(b), 550)**
**(Against Defendant Parkview Advance)**

1197.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1196 of this Complaint as if fully set forth at length herein.

1198.   Between January 25, 2022 and January 27, 2022, within the Preference Period, the Debtor made two (2) transfers totaling $2,000 to Defendant Parkview Advance (the "Parkview Advance Preferential Transfers"), as set forth on **Exhibit Y**.

1199.   To the extent the Parkview Advance Direct Transfer to Defendant Parkview Advance does not constitute a fraudulent transfer, it is avoidable and recoverable because it was made on account of an antecedent debt owed by the Debtor.

1200.   The Parkview Advance Preferential Transfers were made to or for the benefit of Defendant Parkview Advance.

1201.   The Parkview Advance Preferential Transfers were made while the Debtor was insolvent or presumed to be insolvent.

1202.   The Parkview Advance Preferential Transfers were made within the ninety (90) days of the Petition Date.

1203.   As a result of the Parkview Advance Preferential Transfers, Defendant Parkview Advance received more than it would receive if (i) the Debtor's case was a case under chapter 7 of the Bankruptcy Code; (ii) the Parkview Advance Preferential Transfers had not been made; and (iii) Defendant Parkview Advance received payment on account of its claims, if any, against the Debtor to the extent provided under the Bankruptcy Code.

1204.   Based on the foregoing, the Trustee is entitled to an order and judgment against Defendant Parkview Advance as the transferee of the Parkview Advance Preferential Transfers avoiding the Parkview Advance Preferential Transfers and directing that the subject of the Parkview Advance Preferential Transfers or their value be returned to the Trustee, and that Defendant Parkview Advance be held liable for the return of the Parkview Advance Preferential Transfers as a direct and indirect beneficiary.

### EIGHTY-FIFTH CAUSE OF ACTION
**Recovery of Subsequent Transfers**
**(11 U.S.C. §§ 550 and 551)**
**(Against Defendant Parkview Advance)**

1205.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1204 of this Complaint as if fully set forth at length herein.

1206.   On the date of each of the transfers, the OM Vegetable Direct Transfers were the property of the Debtor.

1207.   As set forth herein, each of the OM Vegetable Direct Transfers to Defendant OM Vegetable is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

1208.   Following the OM Vegetable Direct Transfers from the Debtor to Defendant OM Vegetable, between December 23, 2021 and January 4, 2022, Defendant OM Vegetable, the initial transferee of the OM Vegetable Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made eight (8) transfers totaling $77,142.80 to Defendant Parkview Advance (collectively, the "Parkview Advance Subsequent Transfers"), as set forth on **Exhibit Y**.

1209.   The Parkview Advance Subsequent Transfers were made with Debtor funds and property that belonged to the Debtor.

1210.   The Parkview Advance Subsequent Transfers were made directly or indirectly to, or for the benefit of, Defendant Parkview Advance.

1211.   Upon information and belief, following each of the transfers from the Debtor to Defendant OM Vegetable to Defendant Parkview Advance, Defendant Parkview Advance deposited the Parkview Advance Subsequent Transfers into one or more of its bank accounts.

1212.   Upon information and belief, in exchange for each of the Parkview Advance Subsequent Transfers, Defendant Parkview Advance did not provide any value to the Debtor.

1213.   Defendant Parkview Advance received the Parkview Advance Subsequent Transfers, totaling $77,142.80, which are recoverable pursuant to section 550(a) of the Bankruptcy Code.

1214.   Defendant Parkview Advance is the immediate or mediate transferee of the Parkview Advance Subsequent Transfers.

1215.   Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Parkview, pursuant to section 550(a) and 551 of the Bankruptcy Code, recovering the Parkview Advance Subsequent Transfers, or the value thereof, for the benefit of the Debtor's estate.

### EIGHTY-SIXTH CAUSE OF ACTION
**Avoidance and Recovery of Intentional Fraudulent Transfers**
**(11 U.S.C. §§ 548(a)(1)(A), 550 and 551)**
**(Against Defendant Produce Source)**

1216.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1215 of this Complaint as if fully set forth at length herein.

1217.   Between September 10, 2021 and October 13, 2021, within the Two-Year Fraudulent Transfer Period, the Debtor made two (8) transfers totaling $40,206.40 (the "Produce Source Direct Transfers") to Defendant Produce Source.  A chart reflecting the Produce Source Direct Transfers is annexed hereto as **Exhibit Z**.

1218.   The Debtor made the Produce Source Direct Transfers within the two (2) year period prior to the Petition Date.

1219.   The Debtor's transfers of the Produce Source Direct Transfers to Defendant Produce Source were transfers of money, property or other value from the Debtor's funds held in the Debtor's bank account.

1220.   The Debtor's transfers of the Produce Source Direct Transfers to Defendant Produce Source constituted transfers of interests of the Debtor within the meaning of Section 101(54) of the Bankruptcy Code.

1221.   The Debtor's transfers of the Produce Source Direct Transfers to Defendant Produce Source were to or for the benefit of Defendant Produce Source.

1222.   Upon information and belief, Defendant Produce Source received a material direct or indirect benefit on account of the Produce Source Direct Transfers.

1223.   Upon information and belief, the Debtor did not have any obligation to pay Defendant Produce Source at the time of any of the Produce Source Direct Transfers.

1224.   The Debtor intentionally concealed or obscured the Produce Source Direct Transfers from the Debtor's creditors, third parties and others.

1225.   Upon information and belief, the Debtor's books and records do not contain any reference to the Produce Source Direct Transfers.

1226.   The Debtor made the Produce Source Direct Transfers without consideration, or significantly inadequate consideration, to the Debtor.

1227.   The Debtor made the Produce Source Direct Transfers at a time when the Debtor knew it owed significant monies to NewBank and Key Food and that the Lugo Lawsuit was pending, among other debts and obligations that remain unpaid.

1228.   The Debtor made the Produce Source Direct Transfers while the Debtor was insolvent or had unreasonably small capital.

1229.   The Produce Source Direct Transfers were made by the Debtor, at the direction of Singh, with actual intention to hinder, delay and/or defraud the Debtor's creditors, and individuals and entities to which the Debtor was or would become obligated.

1230.   The Produce Source Direct Transfers were made in furtherance of the Debtor's scheme to defraud lenders and other creditors from monies they continued to lend and/or invest in the Debtor, or credit they continued to extend to the Debtor.

1231.   Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Produce Source avoiding the Produce Source Direct Transfers in the total amount of

$40,206.40 and directing that the subject of the Produce Source Direct Transfers or their value be returned to the Trustee, and Defendant Produce Source be held liable for the return of the Produce Source Direct Transfers as a direct or indirect beneficiary.

## EIGHTY-SEVENTH CAUSE OF ACTION
**Avoidance and Recovery of Constructive Fraudulent Transfer**
**(11 U.S.C. §§ 548(a)(1)(A), 550 and 551)**
**(Against Defendant Produce Source)**

1232.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1231 of this Complaint as if fully set forth at length herein.

1233.   The Produce Source Direct Transfers to Defendant Produce Source constituted transfers of money, property, and value of the Debtor to Defendant Produce Source.

1234.   Upon information and belief, Defendant Produce Source received a material direct or indirect benefit on account of each of the Produce Source Direct Transfers.

1235.   The Produce Source Direct Transfers to Defendant Produce Source were intentionally obscured by Singh and the Debtor from the Debtor's creditors.

1236.   Each of the Produce Source Direct Transfers to Defendant Produce Source was made without fair consideration and/or reasonable equivalent value to the Debtor.

1237.   At the time the Debtor made each of the Produce Source Direct Transfers, the Debtor had incurred or was about to incur a liability which remains unpaid to this day including, but not limited to the claim(s) underlying the Lugo Lawsuit and the monies owed to NewBank and Key Food.

1238.   At the time it made each of the Produce Source Direct Transfers, the Debtor: (i) was insolvent or became insolvent as a result of the Produce Source Direct Transfers; (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; and/or (iii) intended

to incur, or believed that the Debtor would incur debts that would be beyond the Debtor's ability to pay as such debts matured.

1239.   Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Produce Source avoiding the Produce Source Direct Transfers and directing that the subject of the fraudulent transfers, the Produce Source Direct Transfers to Defendant Produce Source, or their value, be returned to the Trustee, and that Defendant Produce Source be held liable for the return of the Produce Source Direct Transfers as a direct or indirect beneficiary thereof.

**EIGHTY-EIGHTH CAUSE OF ACTION**
**Recovery of Subsequent Transfers**
**(11 U.S.C. §§ 550 and 551)**
**(Against Defendant Produce Source)**

1240.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1239 of this Complaint as if fully set forth at length herein.

1241.   On the date of each of the transfers, the A & A Vegetables Direct Transfers were the property of the Debtor.

1242.   As set forth herein, each of the A & A Vegetables Direct Transfers to Defendant A & A Vegetables is avoidable and recoverable under sections 547 and/or 548, 550 and 551 of the Bankruptcy Code.

1243.   Following the A &A Vegetables Direct Transfers from the Debtor to Defendant A & A Vegetables, on or around October 18, 2021, Defendant A & A Vegetables, the initial transferee of the A & A Vegetables Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made one (1) transfer in the amount of $9,470 to Defendant Produce Source (the "Produce Source Subsequent Transfer"), as set forth on **Exhibit Z**.

1244.   The Produce Source Subsequent Transfer was made with Debtor funds and property that belonged to the Debtor.

1245.   The Produce Source Subsequent Transfer was made directly or indirectly to, or for the benefit of, Defendant Produce Source.

1246.   Upon information and belief, following each of the transfers from the Debtor to Defendant A & A Vegetable to Defendant Produce Source, Defendant Produce Source deposited the Produce Source Subsequent Transfer into one or more of its bank accounts.

1247.   Upon information and belief, in exchange for the Produce Source Subsequent Transfer, Defendant Produce Source did not provide any value to the Debtor.

1248.   Defendant Produce Source received the Produce Source Subsequent Transfer in the amount of $9,470, which is recoverable pursuant to section 550(a) of the Bankruptcy Code.

1249.   Defendant Produce Source is the immediate or mediate transferee of the Produce Source Subsequent Transfer.

1250.   Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Produce Source, pursuant to section 550(a) and 551 of the Bankruptcy Code, recovering the Produce Source Subsequent Transfer, or the value thereof, for the benefit of the Debtor's estate.

### EIGHTY-NINTH CAUSE OF ACTION
**Avoidance and Recovery of Intentional Fraudulent Transfers**
**(11 U.S.C. §§ 548(a)(1)(A), 550 and 551)**
**(Against Defendant R. Best Produce)**

1251.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1250 of this Complaint as if fully set forth at length herein.

1252.   Between September 8, 2021 and November 12, 2021, within the Two-Year Fraudulent Transfer Period, the Debtor made twenty-three (23) transfers totaling $96,574.75 (the "R. Best Produce Direct Transfers") to R. Best Produce.  A chart reflecting the R. Best Produce Direct Transfers is annexed hereto as **Exhibit AA**.

1253.   The Debtor made the R. Best Produce Direct Transfers within the two (2) year period prior to the Petition Date.

1254.   The Debtor's transfers of the R. Best Produce Direct Transfers to Defendant R. Best Produce were transfers of money, property or other value from the Debtor's funds held in the Debtor's bank account.

1255.   The Debtor's transfers of the R. Best Produce Direct Transfers to Defendant R. Best Produce constituted transfers of interests of the Debtor within the meaning of Section 101(54) of the Bankruptcy Code.

1256.   The Debtor's transfers of the R. Best Produce Direct Transfers to Defendant R. Best Produce were to or for the benefit of Defendant R. Best Produce.

1257.   Upon information and belief, Defendant R. Best Produce received a material direct or indirect benefit on account of the R. Best Produce Direct Transfers.

1258.   Upon information and belief, the Debtor did not have any obligation to pay Defendant R. Best Produce at the time of any of the R. Best Produce Direct Transfers.

1259.   The Debtor intentionally concealed or obscured the R. Best Produce Direct Transfers from the Debtor's creditors, third parties and others.

1260.   Upon information and belief, the Debtor's books and records do not contain any reference to the R. Best Produce Direct Transfers.

1261.   The Debtor made the R. Best Produce Direct Transfers without consideration, or significantly inadequate consideration, to the Debtor.

1262.   The Debtor made the R. Best Produce Direct Transfers at a time when the Debtor knew it owed significant monies to NewBank and Key Food and that the Lugo Lawsuit was pending, among other debts and obligations that remain unpaid.

1263.   The Debtor made the R. Best Produce Direct Transfers while the Debtor was insolvent or had unreasonably small capital.

1264.   The R. Best Produce Direct Transfers were made by the Debtor, at the direction of Singh, with actual intention to hinder, delay and/or defraud the Debtor's creditors, and individuals and entities to which the Debtor was or would become obligated.

1265.   The R. Best Produce Direct Transfers were made in furtherance of the Debtor's scheme to defraud lenders and other creditors from monies they continued to lend and/or invest in the Debtor, or credit they continued to extend to the Debtor.

1266.   Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant R. Best Produce avoiding the R. Best Produce Direct Transfers in the total amount of $96,574.75 and directing that the subject of the R. Best Produce Direct Transfers or their value be returned to the Trustee, and Defendant R. Best Produce be held liable for the return of the R. Best Produce Direct Transfers as a direct or indirect beneficiary.

### NINETIETH CAUSE OF ACTION
**Avoidance and Recovery of Constructive Fraudulent Transfer**
**(11 U.S.C. §§ 548(a)(1)(A), 550 and 551)**
**(Against Defendant R. Best Produce)**

1267.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1266 of this Complaint as if fully set forth at length herein.

1268.   The R. Best Produce Direct Transfers to Defendant R. Best Produce constituted transfers of money, property, and value of the Debtor to Defendant R. Best Produce.

1269.   Upon information and belief, Defendant R. Best Produce received a material direct or indirect benefit on account of each of the R. Best Produce Direct Transfers.

1270.   The R. Best Produce Direct Transfers to Defendant R. Best Produce were intentionally obscured by Singh and the Debtor from the Debtor's creditors.

1271.  Each of the R. Best Produce Direct Transfers to Defendant R. Best Produce was made without fair consideration and/or reasonable equivalent value to the Debtor.

1272.  At the time the Debtor made each of the R. Best Produce Direct Transfers, the Debtor had incurred or was about to incur a liability which remains unpaid to this day including, but not limited to the claim(s) underlying the Lugo Lawsuit and the monies owed to NewBank and Key Food.

1273.  At the time it made each of the R. Best Produce Direct Transfers, the Debtor: (i) was insolvent or became insolvent as a result of the R. Best Produce Direct Transfers; (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; and/or (iii) intended to incur, or believed that the Debtor would incur debts that would be beyond the Debtor's ability to pay as such debts matured.

1274.  Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant R. Best Produce avoiding the R. Best Produce Direct Transfers and directing that the subject of the fraudulent transfers, the R. Best Produce Direct Transfers to Defendant R. Best Produce, or their value, be returned to the Trustee, and that Defendant R. Best Produce be held liable for the return of the R. Best Produce Direct Transfers as a direct or indirect beneficiary thereof.

**NINETY-FIRST CAUSE OF ACTION**
**Recovery of Subsequent Transfers**
**(11 U.S.C. §§ 550 and 551)**
**(Against Defendant R. Best Produce)**

1275.  Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1274 of this Complaint as if fully set forth at length herein.

1276.   On the date of each of the transfers, the A & A Vegetables Direct Transfers were the property of the Debtor.

1277.   As set forth herein, each of the A & A Vegetables Direct Transfers to Defendant A & A Vegetables is avoidable and recoverable under sections 547 and/or 548, 550 and 551 of the Bankruptcy Code.

1278.   Following the A & A Vegetables Direct Transfers from the Debtor to Defendant A & A Vegetables, between October 15, 2021 and October 19, 2021, Defendant A & A Vegetables, the initial transferee of the A & A Vegetables Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made four (4) transfers totaling $19,538.80 to Defendant R. Best Produce.

1279.   On the date of each of the transfers, the A & S Vegetables Direct Transfers were the property of the Debtor.

1280.   As set forth herein, each of the A & S Vegetables Direct Transfers to Defendant A & S Vegetables is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

1281.   Following the A & S Vegetables Direct Transfers from the Debtor to Defendant A & S Vegetables, between October 25, 2021 and December 10, 2021, Defendant A & S Vegetables, the initial transferee of the A & S Vegetables Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made six (6) transfers totaling $75,669.45 to Defendant R. Best Produce.

1282.   On the date of each of the transfers, the OM Vegetable Direct Transfers were the property of the Debtor.

1283.   As set forth herein, each of the OM Vegetable Direct Transfers to Defendant OM Vegetable is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

1284.   Following the OM Vegetable Direct Transfers from the Debtor to Defendant OM Vegetable, between December 30, 2021 and January 4, 2022, Defendant OM Vegetable, the initial transferee of the OM Vegetable Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made four (4) transfers totaling $80,196.95 to Defendant R. Best Produce.

1285.   The transfers from the Debtor to Defendants A & A Vegetables, A & S Vegetables and OM Vegetable, which were subsequently transferred to Defendant R. Best Produce, shall collectively be referred to herein as the "R. Best Produce Subsequent Transfers", as set forth on **Exhibit AA**.

1286.   The R. Best Produce Subsequent Transfers were made with Debtor funds and property that belonged to the Debtor.

1287.   The R. Best Produce Subsequent Transfers were made directly or indirectly to, or for the benefit of, Defendant R. Best Produce.

1288.   Upon information and belief, following each of the transfers from the Debtor to Defendants A & A Vegetables, A & S Vegetables and OM Vegetable to Defendant R. Best Produce, Defendant R. Best Produce deposited the R. Best Produce Subsequent Transfers into one or more of its bank accounts.

1289.   Upon information and belief, in exchange for the R. Best Produce Subsequent Transfers, Defendant R. Best Produce did not provide any value to the Debtor.

1290.   Defendant R. Best Produce received the R. Best Produce Subsequent Transfers in the amount of $175,405.20, which is recoverable pursuant to section 550(a) of the Bankruptcy Code.

1291.   Defendant R. Best Produce is the immediate or mediate transferee of the R. Best Produce Subsequent Transfers.

1292.   Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant R. Best Produce, pursuant to section 550(a) and 551 of the Bankruptcy Code, recovering the R. Best Produce Subsequent Transfers, or the value thereof, for the benefit of the Debtor's estate.

**NINETY-SECOND CAUSE OF ACTION**
**Avoidance and Recovery of Intentional Fraudulent Transfers**
**(11 U.S.C. §§ 548(a)(1)(A), 550 and 551)**
**(Against Defendant S. Katzman Produce)**

1293.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1292 of this Complaint as if fully set forth at length herein.

1294.   Between July 30, 2019 and August 17, 2021, within the Four-Year Fraudulent Transfer Period, the Debtor made eight (8) transfers totaling $68,879.55 (the "S. Katzman Produce Direct Transfers") to Defendant S. Katzman Produce.  A chart reflecting the S. Katzman Produce Direct Transfers is annexed hereto as **Exhibit BB**.

1295.   The Debtor made the S. Katzman Produce Direct Transfers within the four (4) year period prior to the Petition Date.

1296.   The Debtor's transfers of the S. Katzman Produce Direct Transfers to Defendant S. Katzman Produce were transfers of money, property or other value from the Debtor's funds held in the Debtor's bank account.

1297.   The Debtor's transfers of the S. Katzman Produce Direct Transfers to Defendant S. Katzman Produce constituted transfers of interests of the Debtor within the meaning of Section 101(54) of the Bankruptcy Code.

1298.   The Debtor's transfers of the S. Katzman Produce Direct Transfers to Defendant S. Katzman Produce were to or for the benefit of Defendant S. Katzman Produce.

1299.   Upon information and belief, Defendant S. Katzman Produce received a material direct or indirect benefit on account of the S. Katzman Produce Direct Transfers.

1300.   Upon information and belief, the Debtor did not have any obligation to pay Defendant S. Katzman Produce at the time of any of the S. Katzman Produce Direct Transfers.

1301.   The Debtor intentionally concealed or obscured the S. Katzman Produce Direct Transfers from the Debtor's creditors, third parties and others.

1302.   Upon information and belief, the Debtor's books and records do not contain any reference to the S. Katzman Produce Direct Transfers.

1303.   The Debtor made the S. Katzman Produce Direct Transfers without consideration, or significantly inadequate consideration, to the Debtor.

1304.   The Debtor made the S. Katzman Produce Direct Transfers at a time when the Debtor knew it owed significant monies to NewBank and Key Food and that the Lugo Lawsuit was pending, among other debts and obligations that remain unpaid.

1305.   The Debtor made the S. Katzman Produce Direct Transfers while the Debtor was insolvent or had unreasonably small capital.

1306.   The S. Katzman Produce Direct Transfers were made by the Debtor, at the direction of Singh, with actual intention to hinder, delay and/or defraud the Debtor's creditors, and individuals and entities to which the Debtor was or would become obligated.

1307.   The S. Katzman Produce Direct Transfers were made in furtherance of the Debtor's scheme to defraud lenders and other creditors from monies they continued to lend and/or invest in the Debtor, or credit they continued to extend to the Debtor.

1308.   Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant S. Katzman Produce avoiding the S. Katzman Produce Direct Transfers in the total amount of $68,879.55 and directing that the subject of the S. Katzman Produce Direct Transfers or their value be returned to the Trustee, and Defendant S. Katzman Produce be held liable for the return of the S. Katzman Produce Direct Transfers as a direct or indirect beneficiary.

### NINETY-THIRD CAUSE OF ACTION
**Avoidance and Recovery of Constructive Fraudulent Transfer**
**(11 U.S.C. §§ 548(a)(1)(A), 550 and 551)**
**(Against Defendant S. Katzman Produce)**

1309.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1308 of this Complaint as if fully set forth at length herein.

1310.   The S. Katzman Produce Direct Transfers to Defendant S. Katzman Produce constituted transfers of money, property, and value of the Debtor to Defendant S. Katzman Produce.

1311.   Upon information and belief, Defendant S. Katzman Produce received a material direct or indirect benefit on account of each of the S. Katzman Produce Direct Transfers.

1312.   The S. Katzman Produce Direct Transfers to Defendant S. Katzman Produce were intentionally obscured by Singh and the Debtor from the Debtor's creditors.

1313.   Each of the S. Katzman Produce Direct Transfers to Defendant S. Katzman Produce was made without fair consideration and/or reasonable equivalent value to the Debtor.

1314.   At the time the Debtor made each of the S. Katzman Produce Direct Transfers, the Debtor had incurred or was about to incur a liability which remains unpaid to this day including,

but not limited to the claim(s) underlying the Lugo Lawsuit and the monies owed to NewBank and Key Food.

1315.   At the time it made each of the S. Katzman Produce Direct Transfers, the Debtor: (i) was insolvent or became insolvent as a result of the S. Katzman Produce Direct Transfers; (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; and/or (iii) intended to incur, or believed that the Debtor would incur debts that would be beyond the Debtor's ability to pay as such debts matured.

1316.   Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant S. Katzman Produce avoiding the S. Katzman Produce Direct Transfers and directing that the subject of the fraudulent transfers, the S. Katzman Produce Direct Transfers to Defendant S. Katzman Produce, or their value, be returned to the Trustee, and that Defendant S. Katzman Produce be held liable for the return of the S. Katzman Produce Direct Transfers as a direct or indirect beneficiary thereof.

### NINETY-FOURTH CAUSE OF ACTION
**Recovery of Subsequent Transfers**
**(11 U.S.C. §§ 550 and 551)**
**(Against Defendant S. Katzman Produce)**

1317.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1316 of this Complaint as if fully set forth at length herein.

1318.   On the date of each of the transfers, the A & S Vegetables Direct Transfers were the property of the Debtor.

1319.   As set forth herein, each of the A & S Vegetables Direct Transfers to Defendant A & S Vegetables is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

1320. Following the A & S Vegetables Direct Transfers from the Debtor to Defendant A & S Vegetables, between February 25, 2019 and April 30, 2019, Defendant A & S Vegetables, the initial transferee of the A & S Vegetables Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made eight (8) transfers totaling $38,329.73 to Defendant S. Katzman Produce (the "S. Katzman Produce Subsequent Transfers"), as set forth on **Exhibit BB**.

1321. The S. Katzman Produce Subsequent Transfers were made with Debtor funds and property that belonged to the Debtor.

1322. The S. Katzman Produce Subsequent Transfers was made directly or indirectly to, or for the benefit of, Defendant S. Katzman Produce.

1323. Upon information and belief, following each of the transfers from the Debtor to Defendant A & S Vegetables to Defendant S. Katzman Produce, Defendant S. Katzman Produce deposited the S. Katzman Produce Subsequent Transfers into one or more of its bank accounts.

1324. Upon information and belief, in exchange for the S. Katzman Produce Subsequent Transfers, Defendant S. Katzman Produce did not provide any value to the Debtor.

1325. Defendant S. Katzman Produce received the S. Katzman Produce Subsequent Transfers in the amount of $38,329.73, which is recoverable pursuant to section 550(a) of the Bankruptcy Code.

1326. Defendant S. Katzman Produce is the immediate or mediate transferee of the S. Katzman Produce Subsequent Transfers.

### NINETY-FIFTH CAUSE OF ACTION
**Avoidance and Recovery of Intentional Fraudulent Transfers**
**(11 U.S.C. §§ 548(a)(1)(A), 550 and 551)**
**(Against Defendant Mekkatti)**

1327. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1326 of this Complaint as if fully set forth at length herein.

1328.   On July 22, 2019, which falls within the Four-Year Fraudulent Transfer Period, the Debtor made one (1) transfer in the amount of $25,000 (the "Mekkatti Direct Transfer") to Defendant Mekkatti.  A chart reflecting the Mekkatti Direct Transfer is annexed hereto as **Exhibit CC**.

1329.   The Debtor made the Mekkatti Direct Transfer within the four (4) year period prior to the Petition Date.

1330.   The Debtor's transfer of the Mekkatti Direct Transfer to Defendant Mekkatti was a transfer of money, property or other value from the Debtor's funds held in the Debtor's bank account.

1331.   The Debtor's transfer of the Mekkatti Direct Transfer to Defendant Mekkatti constituted transfer of an interest of the Debtor within the meaning of Section 101(54) of the Bankruptcy Code.

1332.   The Debtor's transfer of the Mekkatti Direct Transfer to Defendant Mekkatti was to or for the benefit of Defendant Mekkatti.

1333.   Upon information and belief, Defendant Mekkatti received a material direct or indirect benefit on account of the Mekkatti Direct Transfer.

1334.   Upon information and belief, the Debtor did not have any obligation to pay Defendant Mekkatti at the time of the Mekkatti Direct Transfer.

1335.   The Debtor intentionally concealed or obscured the Mekkatti Direct Transfer from the Debtor's creditors, third parties and others.

1336.   Upon information and belief, the Debtor's books and records do not contain any reference to the Mekkatti Direct Transfer.

1337.  The Debtor made the Mekkatti Direct Transfer without consideration, or significantly inadequate consideration, to the Debtor.

1338.  The Debtor made the Mekkatti Direct Transfer at a time when the Debtor knew it owed significant monies to NewBank and Key Food and that the Lugo Lawsuit was pending, among other debts and obligations that remain unpaid.

1339.  The Debtor made the Mekkatti Direct Transfer while the Debtor was insolvent or had unreasonably small capital.

1340.  The Mekkatti Direct Transfer was made by the Debtor, at the direction of Singh, with actual intention to hinder, delay and/or defraud the Debtor's creditors, and individuals and entities to which the Debtor was or would become obligated.

1341.  The Mekkatti Direct Transfer was made in furtherance of the Debtor's scheme to defraud lenders and other creditors from monies they continued to lend and/or invest in the Debtor, or credit they continued to extend to the Debtor.

1342.  Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Mekkatti avoiding the Mekkatti Direct Transfer in the total amount of $25,000 and directing that the subject of the Mekkatti Direct Transfer or its value be returned to the Trustee, and Defendant Mekkatti be held liable for the return of the Mekkatti Direct Transfer as a direct or indirect beneficiary.

### NINETY-SIXTH CAUSE OF ACTION
**Avoidance and Recovery of Constructive Fraudulent Transfer**
**(11 U.S.C. §§ 548(a)(1)(A), 550 and 551)**
**(Against Defendant Mekkatti)**

1343.  Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1342 of this Complaint as if fully set forth at length herein.

1344.   The Mekkatti Direct Transfer to Defendant Mekkatti constituted transfers of money, property, and value of the Debtor to Defendant Mekkatti.

1345.   Upon information and belief, Defendant Mekkatti received a material direct or indirect benefit on account of the Mekkatti Direct Transfer.

1346.   The Mekkatti Direct Transfer to Defendant Mekkatti was intentionally obscured by Singh and the Debtor from the Debtor's creditors.

1347.   The Mekkatti Direct Transfer to Defendant Mekkatti was made without fair consideration and/or reasonable equivalent value to the Debtor.

1348.   At the time the Debtor made the Mekkatti Direct Transfer, the Debtor had incurred or was about to incur a liability which remains unpaid to this day including, but not limited to the claim(s) underlying the Lugo Lawsuit and the monies owed to NewBank and Key Food.

1349.   At the time it made the Mekkatti Direct Transfer, the Debtor: (i) was insolvent or became insolvent as a result of the Mekkatti Direct Transfer; (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; and/or (iii) intended to incur, or believed that the Debtor would incur debts that would be beyond the Debtor's ability to pay as such debts matured.

1350.   Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Mekkatti avoiding the Mekkatti Direct Transfer and directing that the subject of the fraudulent transfer, the Mekkatti Direct Transfer to Defendant Mekkatti, or its value, be returned to the Trustee, and that Defendant Mekkatti be held liable for the return of the Mekkatti Direct Transfer as a direct or indirect beneficiary thereof.

## NINETY-SEVENTH CAUSE OF ACTION
**Recovery of Subsequent Transfers**
**(11 U.S.C. §§ 550 and 551)**
**(Against Defendant Mekkatti)**

1351.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1350 of this Complaint as if fully set forth at length herein.

1352.   On the date of each of the transfers, the A & S Vegetables Direct Transfers were the property of the Debtor.

1353.   As set forth herein, each of the A & S Vegetables Direct Transfers to Defendant A & S Vegetables is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

1354.   Following the A & S Vegetables Direct Transfers from the Debtor to Defendant A & S Vegetables, between October 29, 2019 and February 3, 2020, Defendant A & S Vegetables, the initial transferee of the A & S Vegetables Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made two (2) transfers totaling $65,000 to Defendant Mekkatti (the "Mekkatti Subsequent Transfers"), as set forth on **Exhibit CC**.

1355.   The Mekkatti Subsequent Transfers were made with Debtor funds and property that belonged to the Debtor.

1356.   The Mekkatti Subsequent Transfers were made directly or indirectly to, or for the benefit of, Defendant Mekkatti.

1357.   Upon information and belief, following each of the transfers from the Debtor to Defendant A & S Vegetables to Defendant Mekkatti, Defendant Mekkatti deposited the Mekkatti Subsequent Transfers into one or more of its bank accounts.

1358.   Upon information and belief, in exchange for the Mekkatti Subsequent Transfers, Defendant Mekkatti did not provide any value to the Debtor.

1359. Defendant Mekkatti received the Mekkatti Subsequent Transfers in the amount of $65,000, which is recoverable pursuant to section 550(a) of the Bankruptcy Code.

1360. Defendant Mekkatti is the immediate or mediate transferee of the Mekkatti Subsequent Transfers.

**NINETY-EIGHTH CAUSE OF ACTION**
**Avoidance and Recovery of Intentional Fraudulent Transfers**
**(11 U.S.C. §§ 548(a)(1)(A), 550 and 551)**
**(Against Defendant Triboro)**

1361. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1360 of this Complaint as if fully set forth at length herein.

1362. Between August 16, 2021 and December 6, 2021, within the Two-Year Fraudulent Transfer Period, the Debtor made five (5) transfers totaling $19,908 (the "Triboro Direct Transfers") to Defendant Triboro. A chart reflecting the Triboro Direct Transfers is annexed hereto as **Exhibit DD**.

1363. The Debtor made the Triboro Direct Transfers within the two (2) year period prior to the Petition Date.

1364. The Debtor's transfers of the Triboro Direct Transfers to Defendant Triboro were transfers of money, property or other value from the Debtor's funds held in the Debtor's bank account.

1365. The Debtor's transfers of the Triboro Direct Transfers to Defendant Triboro constituted transfers of interests of the Debtor within the meaning of Section 101(54) of the Bankruptcy Code.

1366. The Debtor's transfers of the Triboro Direct Transfers to Defendant Triboro were to or for the benefit of Defendant Triboro.

1367.  Upon information and belief, Defendant Triboro received a material direct or indirect benefit on account of the Triboro Direct Transfers.

1368.  Upon information and belief, the Debtor did not have any obligation to pay Defendant Triboro e at the time of any of the Triboro Direct Transfers.

1369.  The Debtor intentionally concealed or obscured the Triboro Direct Transfers from the Debtor's creditors, third parties and others.

1370.  Upon information and belief, the Debtor's books and records do not contain any reference to the Triboro Direct Transfers.

1371.  The Debtor made the Triboro Direct Transfers without consideration, or significantly inadequate consideration, to the Debtor.

1372.  The Debtor made the Triboro Direct Transfers at a time when the Debtor knew it owed significant monies to NewBank and Key Food and that the Lugo Lawsuit was pending, among other debts and obligations that remain unpaid.

1373.  The Debtor made the Triboro Direct Transfers while the Debtor was insolvent or had unreasonably small capital.

1374.  The Triboro Direct Transfers were made by the Debtor, at the direction of Singh, with actual intention to hinder, delay and/or defraud the Debtor's creditors, and individuals and entities to which the Debtor was or would become obligated.

1375.  The Triboro Direct Transfers were made in furtherance of the Debtor's scheme to defraud lenders and other creditors from monies they continued to lend and/or invest in the Debtor, or credit they continued to extend to the Debtor.

1376.  Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Triboro avoiding the Triboro Direct Transfers in the total amount of $19,908 and

directing that the subject of the Triboro Direct Transfers or their value be returned to the Trustee, and Defendant Triboro be held liable for the return of the Triboro Direct Transfers as a direct or indirect beneficiary.

## NINETY-NINTH CAUSE OF ACTION
### Avoidance and Recovery of Constructive Fraudulent Transfer
### (11 U.S.C. §§ 548(a)(1)(A), 550 and 551)
### (Against Defendant Triboro)

1377.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1376 of this Complaint as if fully set forth at length herein.

1378.   The Triboro Direct Transfers to Defendant Triboro constituted transfers of money, property, and value of the Debtor to Defendant Triboro.

1379.   Upon information and belief, Defendant Triboro received a material direct or indirect benefit on account of each of the Triboro Direct Transfers.

1380.   The Triboro Direct Transfers to Defendant Triboro were intentionally obscured by Singh and the Debtor from the Debtor's creditors.

1381.   Each of the Triboro Direct Transfers to Defendant Triboro was made without fair consideration and/or reasonable equivalent value to the Debtor.

1382.   At the time the Debtor made each of the Triboro Direct Transfers, the Debtor had incurred or was about to incur a liability which remains unpaid to this day including, but not limited to the claim(s) underlying the Lugo Lawsuit and the monies owed to NewBank and Key Food.

1383.   At the time it made each of the Triboro Direct Transfers, the Debtor: (i) was insolvent or became insolvent as a result of the Mr. Advance Direct Transfers; (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; and/or (iii) intended to

incur, or believed that the Debtor would incur debts that would be beyond the Debtor's ability to pay as such debts matured.

1384.   Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Triboro avoiding the Triboro Direct Transfers and directing that the subject of the fraudulent transfers, the Triboro Direct Transfers to Defendant Triboro, or their value, be returned to the Trustee, and that Defendant Triboro be held liable for the return of the Triboro Direct Transfers as a direct or indirect beneficiary thereof.

**ONE HUNDREDTH CAUSE OF ACTION**
**Avoidance and Recovery of Preferential Transfer**
**(11 U.S.C. §§ 547(b), 550)**
**(Against Defendant Triboro)**

1385.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1384 of this Complaint as if fully set forth at length herein.

1386.   Between December 6, 2021 and December 30, 2021, within the Preference Period, the Debtor made four (4) transfers totaling $17,200 to Defendant Triboro (collectively, the "Triboro Preferential Transfers"), as set forth on **Exhibit DD**.

1387.   To the extent the Triboro Direct Transfers to Defendant Triboro do not constitute fraudulent transfers, they are avoidable and recoverable because they were made on account of an antecedent debt owed by the Debtor.

1388.   The Triboro Preferential Transfers were made to or for the benefit of Defendant Triboro.

1389.   The Triboro Preferential Transfers were made while the Debtor was insolvent or presumed to be insolvent.

1390.   The Triboro Preferential Transfers were made within the ninety (90) days of the Petition Date.

1391.   As a result of the Triboro Preferential Transfers, Defendant Triboro received more than it would receive if (i) the Debtor's case was a case under chapter 7 of the Bankruptcy Code; (ii) the Triboro Preferential Transfers had not been made; and (iii) Defendant Triboro received payment on account of its claims, if any, against the Debtor to the extent provided under the Bankruptcy Code.

1392.   Based on the foregoing, the Trustee is entitled to an order and judgment against Defendant Triboro as the transferee of the Triboro Preferential Transfers avoiding the Triboro Preferential Transfers and directing that the subject of the Triboro Preferential Transfers or their value be returned to the Trustee, and that Defendant Triboro be held liable for the return of the Triboro Preferential Transfers as a direct and indirect beneficiary.

<u>**ONE HUNDRED AND FIRST CAUSE OF ACTION**</u>
**Avoidance and Recovery of Unauthorized Post-Petition Transfer**
**(11 U.S.C. §§ 549, 550)**
**(Against Defendant Triboro)**

1393.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1392 of this Complaint as if fully set forth at length herein.

1394.   Between September 7, 2022 and December 30, 2022, six months to nearly one year after the Petition Date, the Debtor made one (1) transfer to Defendant Triboro in the amount of $598.46 (the "Triboro Post-Petition Transfer"), as set forth on **Exhibit DD**.

1395.   The Triboro Post-Petition Transfer constituted transfers of property of the Debtor.

1396.   The Triboro Post-Petition Transfer was not disclosed to the Bankruptcy Court, the United States Trustee, the Subchapter V Trustee or any of the Debtor's creditors.

1397.   The Triboro Post-Petition Transfer was not authorized by the Bankruptcy Court.

1398.   If effective, the Triboro Post-Petition Transfer resulted in the loss of value to the Debtor's bankruptcy estate of not less than $598.46.

1399.   Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Triboro, and/or any recipient of the Triboro Post-Petition Transfer avoiding the Triboro Post-Petition Transfer and directing that the subject of the Triboro Post-Petition Transfer or its value be returned to the Trustee and the Defendant Triboro be held jointly and several liable for the return of the Triboro Post-Petition Transfer as a direct or indirect beneficiary.

## ONE HUNDRED AND SECOND CAUSE OF ACTION
### Recovery of Subsequent Transfers
### (11 U.S.C. §§ 550 and 551)
### (Against Defendant Triboro)

1400.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1399 of this Complaint as if fully set forth at length herein.

1401.   On the date of each of the transfers, the A & A Vegetables Direct Transfers were the property of the Debtor.

1402.   As set forth herein, each of the A & A Vegetables Direct Transfers to Defendant A & A Vegetables is avoidable and recoverable under sections 547 and/or 548, 550 and 551 of the Bankruptcy Code.

1403.   Following the A & A Vegetables Direct Transfers from the Debtor to Defendant A & A Vegetables, between October 18, 2021 and October 22, 2021, Defendant A & A Vegetables, the initial transferee of the A & A Vegetables Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made three (3) transfers totaling $9,074.00 to Defendant Triboro.

1404.   On the date of each of the transfers, the A & S Vegetables Direct Transfers were the property of the Debtor.

1405.   As set forth herein, each of the A & S Vegetables Direct Transfers to Defendant A & S Vegetables is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

1406.   Following the A & S Vegetables Direct Transfers from the Debtor to Defendant A & S Vegetables, between February 27, 2019 and August 12, 2019, Defendant A & S Vegetables, the initial transferee of the A & S Vegetables Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made eight (8) transfers totaling $8,882.70 to Defendant Triboro.

1407.   On the date of each of the transfers, the OM Liquors Direct Transfers were the property of the Debtor.

1408.   As set forth herein, each of the OM Liquors Direct Transfers to Defendant OM Liquors is avoidable and recoverable under sections 547 and/or 548, 550 and 551 of the Bankruptcy Code.

1409.   Following the OM Liquors Direct Transfers from the Debtor to Defendant OM Liquors, between December 16, 2021 and December 23, 2021, Defendant OM Liquors, the initial transferee of the OM Liquors Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made three (3) transfers totaling $10,096 to Defendant Triboro.

1410.   The transfers from the Debtor to Defendants A & A Vegetables, A & S Vegetables and OM Liquors, which were subsequently transferred to Defendant Triboro, shall collectively be referred to herein as the "Triboro Subsequent Transfers", as set forth on **Exhibit DD**.

1411.   The Triboro Subsequent Transfers were made with Debtor funds and property that belonged to the Debtor.

1412.   The Triboro Subsequent Transfers were made directly or indirectly to, or for the benefit of, Defendant Triboro.

1413.   Upon information and belief, following each of the transfers from the Debtor to Defendants A & A Vegetables, A & S Vegetables and OM Liquors to Defendant Triboro,

Defendant Triboro deposited the Triboro Subsequent Transfers into one or more of its bank accounts.

1414.   Upon information and belief, in exchange for each of the Triboro Subsequent Transfers, Defendant Triboro did not provide any value to the Debtor.

1415.   Defendant Triboro received the Triboro Subsequent Transfers, totaling $28,052.70, which are recoverable pursuant to section 550(a) of the Bankruptcy Code.

1416.   Defendant Triboro is the immediate or mediate transferee of the Triboro Subsequent Transfers.

1417.   Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Triboro, pursuant to section 550(a) and 551 of the Bankruptcy Code, recovering the Triboro Subsequent Transfers, or the value thereof, for the benefit of the Debtor's estate.

### ONE HUNDRED AND THIRD CAUSE OF ACTION
**Avoidance and Recovery of Intentional Fraudulent Transfers**
**(11 U.S.C. §§ 548(a)(1)(A), 550 and 551)**
**(Against Defendant Two Brothers)**

1418.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1417 of this Complaint as if fully set forth at length herein.

1419.   Between June 14, 2019 and December 12, 2019, within the Four-Year Fraudulent Transfer Period, the Debtor made four (4) transfers totaling $12,055.29 (the "Two Brothers Direct Transfers") to Defendant Two Brothers.  A chart reflecting the Two Brothers Direct Transfers is annexed hereto as **Exhibit EE**.

1420.   The Debtor made the Two Brothers Direct Transfers within the four (4) year period prior to the Petition Date.

1421.   The Debtor's transfers of the Two Brothers Direct Transfers to Defendant Two Brothers were transfers of money, property or other value from the Debtor's funds held in the Debtor's bank account.

1422.   The Debtor's transfers of the Two Brothers Direct Transfers to Defendant Two Brothers constituted transfers of interests of the Debtor within the meaning of Section 101(54) of the Bankruptcy Code.

1423.   The Debtor's transfers of the Two Brothers Direct Transfers to Defendant Two Brothers were to, or for the benefit of, Defendant Two Brothers.

1424.   Upon information and belief, Defendant Two Brothers received a material direct or indirect benefit on account of the Two Brothers Direct Transfers.

1425.   Upon information and belief, the Debtor did not have any obligation to pay Defendant Two Brothers at the time of any of the Two Brothers Direct Transfers.

1426.   The Debtor intentionally concealed or obscured the Two Brothers Direct Transfers from the Debtor's creditors, third parties and others.

1427.   Upon information and belief, the Debtor's books and records do not contain any reference to the Two Brothers Direct Transfers.

1428.   The Debtor made the Two Brothers Direct Transfers without consideration, or significantly inadequate consideration, to the Debtor.

1429.   The Debtor made the Two Brothers Direct Transfers at a time when the Debtor knew it owed significant monies to NewBank and Key Food and that the Lugo Lawsuit was pending, among other debts and obligations that remain unpaid.

1430.   The Debtor made the Two Brothers Direct Transfers while the Debtor was insolvent or had unreasonably small capital.

1431.   The Two Brothers Direct Transfers were made by the Debtor, at the direction of Singh, with actual intention to hinder, delay and/or defraud the Debtor's creditors, and individuals and entities to which the Debtor was or would become obligated.

1432.   The Two Brothers Direct Transfers were made in furtherance of the Debtor's scheme to defraud lenders and other creditors from monies they continued to lend and/or invest in the Debtor, or credit they continued to extend to the Debtor.

1433.   Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Two Brothers avoiding the Two Brothers Direct Transfers in the total amount of $12,055.29 and directing that the subject of the Two Brothers Direct Transfers or their value be returned to the Trustee, and Defendant Two Brothers be held liable for the return of the Two Brothers Direct Transfers as a direct or indirect beneficiary.

**ONE HUNDRED AND FOURTH CAUSE OF ACTION**
**Avoidance and Recovery of Constructive Fraudulent Transfer**
**(11 U.S.C. §§ 548(a)(1)(A), 550 and 551)**
**(Against Defendant Two Brothers)**

1434.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1433 of this Complaint as if fully set forth at length herein.

1435.   The Two Brothers Direct Transfers to Defendant Two Brothers constituted transfers of money, property, and value of the Debtor to Defendant Two Brothers.

1436.   Upon information and belief, Defendant Two Brothers received a material direct or indirect benefit on account of each of the Two Brothers Direct Transfers.

1437.   The Two Brothers Direct Transfers to Defendant Two Brothers were intentionally obscured by Singh and the Debtor from the Debtor's creditors.

1438.   Each of the Two Brothers Direct Transfers to Defendant Two Brothers was made without fair consideration and/or reasonable equivalent value to the Debtor.

1439.   At the time the Debtor made each of the Two Brothers Direct Transfers, the Debtor had incurred or was about to incur a liability which remains unpaid to this day including, but not limited to the claim(s) underlying the Lugo Lawsuit and the monies owed to NewBank and Key Food.

1440.   At the time it made each of the Two Brothers Direct Transfers, the Debtor: (i) was insolvent or became insolvent as a result of the Two Brothers Direct Transfers; (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; and/or (iii) intended to incur, or believed that the Debtor would incur debts that would be beyond the Debtor's ability to pay as such debts matured.

1441.   Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Two Brothers avoiding the Two Brothers Direct Transfers and directing that the subject of the fraudulent transfers, the Two Brothers Direct Transfers to Defendant Two Brothers, or their value, be returned to the Trustee, and that Defendant Two Brothers be held liable for the return of the Two Brothers Direct Transfers as a direct or indirect beneficiary thereof.

## ONE HUNDRED AND FIFTH CAUSE OF ACTION
### Recovery of Subsequent Transfers
### (11 U.S.C. §§ 550 and 551)
### (Against Defendant Two Brothers)

1442.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1441 of this Complaint as if fully set forth at length herein.

1443.   On the date of each of the transfers, the A & S Vegetables Direct Transfers were the property of the Debtor.

1444.   As set forth herein, each of the A & S Vegetables Direct Transfers to Defendant A & S Vegetables is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

1445.   Following the A & S Vegetables Direct Transfers from the Debtor to Defendant A & S Vegetables, between October 29, 2018 and September 11, 2019, Defendant A & S Vegetables, the initial transferee of the A & S Vegetables Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made seventeen (17) transfers totaling $41,803.50 to Defendant Two Brothers (the "Two Brothers Subsequent Transfers"), as set forth on **Exhibit EE**.

1446.   The Two Brothers Subsequent Transfers were made with Debtor funds and property that belonged to the Debtor.

1447.   The Two Brothers Subsequent Transfers were made directly or indirectly to, or for the benefit of, Defendant Two Brothers.

1448.   Upon information and belief, following each of the transfers from the Debtor to Defendant Two Brothers to Defendant Two Brothers, Defendant Two Brothers deposited the Two Brothers Subsequent Transfers into one or more of its bank accounts.

1449.   Upon information and belief, in exchange for the Two Brothers Subsequent Transfers, Defendant Two Brothers did not provide any value to the Debtor.

1450.   Defendant Two Brothers received the Two Brothers Subsequent Transfers in the amount of $41,803.50, which is recoverable pursuant to section 550(a) of the Bankruptcy Code.

1451.   Defendant Two Brothers is the immediate or mediate transferee of the Two Brothers Subsequent Transfers.

## ONE HUNDRED AND SIXTH CAUSE OF ACTION
### Recovery of Subsequent Transfers
### (11 U.S.C. §§ 550 and 551)
### (Against Defendant 22 Capital)

1452.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1451 of this Complaint as if fully set forth at length herein.

1453.   On the date of each of the transfers, the OM Vegetable Direct Transfers were the property of the Debtor.

1454.   As set forth herein, each of the OM Vegetable Direct Transfers to Defendant OM Vegetable is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

1455.   Following the OM Vegetable Direct Transfers from the Debtor to Defendant OM Vegetable, between November 17, 2021 and January 4, 2022, Defendant OM Vegetable, the initial transferee of the OM Vegetable Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made sixteen (16) transfers totaling $173,627 to Defendant 22 Capital (collectively, the "22 Capital Subsequent Transfers"), as set forth on **Exhibit FF**.

1456.   The 22 Capital Subsequent Transfers were made with Debtor funds and property that belonged to the Debtor.

1457.   The 22 Capital Subsequent Transfers were made directly or indirectly to, or for the benefit of, Defendant 22 Capital.

1458.   Upon information and belief, following each of the transfers from the Debtor to Defendant OM Vegetable to Defendant 22 Capital, Defendant 22 Capital deposited the 22 Capital Subsequent Transfers into one or more of its bank accounts.

1459.   Upon information and belief, in exchange for each of the 22 Capital Subsequent Transfers, Defendant 22 Capital did not provide any value to the Debtor.

1460.   Defendant 22 Capital received the 22 Capital Subsequent Transfers, totaling $173,627, which are recoverable pursuant to section 550(a) of the Bankruptcy Code.

1461.   Defendant 22 Capital is the immediate or mediate transferee of the 22 Capital Subsequent Transfers.

1462.   Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant 22 Capital, pursuant to section 550(a) and 551 of the Bankruptcy Code, recovering the 22 Capital Subsequent Transfers, or the value thereof, for the benefit of the Debtor's estate.

### ONE HUNDRED AND SEVENTH CAUSE OF ACTION
**Recovery of Subsequent Transfers**
**(11 U.S.C. §§ 550 and 551)**
**(Against Defendant A & J Produce)**

1463.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1462 of this Complaint as if fully set forth at length herein.

1464.   On the date of each of the transfers, the A & S Vegetables Direct Transfers were the property of the Debtor.

1465.   As set forth herein, each of the A & S Vegetables Direct Transfers to Defendant A & S Vegetables is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

1466.   Following the A & S Vegetables Direct Transfers from the Debtor to Defendant A & S Vegetables, between February 5, 2020 and February 11, 2020, Defendant A & S Vegetables, the initial transferee of the A & S Vegetables Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made three (3) transfers totaling $30,000 to Defendant A & J Produce.

1467.   On the date of each of the transfers, the OM Vegetable Direct Transfers were the property of the Debtor.

1468.   As set forth herein, each of the OM Vegetable Direct Transfers to Defendant OM Vegetable is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

1469.   Following the OM Vegetable Direct Transfers from the Debtor to Defendant OM Vegetable, between March 3, 2021 and June 9, 2021, Defendant OM Vegetable, the initial transferee of the OM Vegetable Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made six (6) transfers totaling $85,509 to Defendant A & J Produce.

1470.   The transfers from the Debtor to Defendants A & S Vegetables and OM Vegetable, which were subsequently transferred to Defendant A & J Produce, shall collectively be referred to herein as the "A & J Produce Subsequent Transfers", as set forth on **Exhibit GG**.

1471.   The A & J Produce Subsequent Transfers were made with Debtor funds and property that belonged to the Debtor.

1472.   The A & J Produce Subsequent Transfers were made directly or indirectly to, or for the benefit of, Defendant A & J Produce.

1473.   Upon information and belief, following each of the transfers from the Debtor to Defendants A &S Vegetables and OM Vegetable to Defendant A & J Produce, Defendant A & J Produce deposited the A & J Produce Subsequent Transfers into one or more of its bank accounts.

1474.   Upon information and belief, in exchange for each of the A & J Produce Subsequent Transfers, Defendant A & J Produce did not provide any value to the Debtor.

1475.   Defendant A & J Produce received the A & J Produce Subsequent Transfers, totaling $115,509, which are recoverable pursuant to section 550(a) of the Bankruptcy Code.

1476.   Defendant A & J Produce is the immediate or mediate transferee of the A & J Produce Subsequent Transfers.

1477. Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant A & J Produce, pursuant to section 550(a) and 551 of the Bankruptcy Code, recovering the A & J Produce Subsequent Transfers, or the value thereof, for the benefit of the Debtor's estate.

## ONE HUNDRED AND EIGHTH CAUSE OF ACTION
### Recovery of Subsequent Transfers
### (11 U.S.C. §§ 550 and 551)
### (Against Defendant AMEX)

1478. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1477 of this Complaint as if fully set forth at length herein.

1479. On the date of each of the transfers, the A & S Vegetables Direct Transfers were the property of the Debtor.

1480. As set forth herein, each of the A & S Vegetables Direct Transfers to Defendant A & S Vegetables is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

1481. Following the A & S Vegetables Direct Transfers from the Debtor to Defendant A & S Vegetables, between February 21, 2019 and May 7, 2020, Defendant A & S Vegetables, the initial transferee of the A & S Vegetable Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made twenty-two (22) transfers totaling $195,780.16 to Defendant AMEX.

1482. On the date of each of the transfers, the OM Vegetable Direct Transfers were the property of the Debtor.

1483. As set forth herein, each of the OM Vegetable Direct Transfers to Defendant OM Vegetable is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

1484. Following the OM Vegetable Direct Transfers from the Debtor to Defendant OM Vegetable, on or around December 14, 2021, Defendant OM Vegetable, the initial transferee of

the OM Vegetable Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made one (1) transfer totaling $1,707.28 to Defendant AMEX.

1485.   The transfers from the Debtor to Defendants A & S Vegetables and OM Vegetable, which were subsequently transferred to Defendant AMEX, shall collectively be referred to herein as the "AMEX Subsequent Transfers", as set forth on **Exhibit HH**.

1486.   The AMEX Subsequent Transfers were made with Debtor funds and property that belonged to the Debtor.

1487.   The AMEX Subsequent Transfers were made directly or indirectly to, or for the benefit of, Defendant AMEX.

1488.   Upon information and belief, following each of the transfers from the Debtor to Defendants A &S Vegetables and OM Vegetable to Defendant AMEX, Defendant AMEX deposited the AMEX Subsequent Transfers into one or more of its bank accounts.

1489.   Upon information and belief, in exchange for each of the AMEX Subsequent Transfers, Defendant AMEX did not provide any value to the Debtor.

1490.   Defendant AMEX received the AMEX Subsequent Transfers, totaling $197,487.44, which are recoverable pursuant to section 550(a) of the Bankruptcy Code.

1491.   Defendant AMEX is the immediate or mediate transferee of the AMEX Subsequent Transfers.

1492.   Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant AMEX, pursuant to section 550(a) and 551 of the Bankruptcy Code, recovering the AMEX Subsequent Transfers, or the value thereof, for the benefit of the Debtor's estate.

## ONE HUNDRED AND NINTH CAUSE OF ACTION
**Recovery of Subsequent Transfers**
**(11 U.S.C. §§ 550 and 551)**
**(Against Defendant Bhavani)**

1493.  Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1492 of this Complaint as if fully set forth at length herein.

1494.  On the date of each of the transfers, the A & A Vegetables Direct Transfers were the property of the Debtor.

1495.  As set forth herein, each of the A & A Vegetables Direct Transfers to Defendant A & A Vegetables is avoidable and recoverable under sections 547 and/or 548, 550 and 551 of the Bankruptcy Code.

1496.  Following the A & A Vegetables Direct Transfers from the Debtor to Defendant A & A Vegetables, between October 18, 2021 and October 22, 2021, Defendant A & A Vegetables, the initial transferee of the A & A Vegetable Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made two (2) transfers totaling $5,600 to Defendant Bhavani.

1497.  On the date of each of the transfers, the A & S Vegetables Direct Transfers were the property of the Debtor.

1498.  As set forth herein, each of the A & S Vegetables Direct Transfers to Defendant A & S Vegetables is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

1499.  Following the A & S Vegetables Direct Transfers from the Debtor to Defendant A & S Vegetables, between October 29, 2018 and October 29, 2019, Defendant A & S Vegetables, the initial transferee of the A & S Vegetable Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made seventeen (17) transfers totaling $48,703.50 to Defendant Bhavani.

1500.   The transfers from the Debtor to Defendants A & A Vegetables and A & S Vegetables, which were subsequently transferred to Defendant Bhavani, shall collectively be referred to herein as the "Bhavani Subsequent Transfers", as set forth on **Exhibit II**.

1501.   The Bhavani Subsequent Transfers were made with Debtor funds and property that belonged to the Debtor.

1502.   The Bhavani Subsequent Transfers were made directly or indirectly to, or for the benefit of, Defendant Bhavani.

1503.   Upon information and belief, following each of the transfers from the Debtor to Defendants A & A Vegetables and A & S Vegetables to Defendant Bhavani, Defendant Bhavani deposited the Bhavani Subsequent Transfers into one or more of its bank accounts.

1504.   Upon information and belief, in exchange for each of the Bhavani Subsequent Transfers, Defendant Bhavani did not provide any value to the Debtor.

1505.   Defendant Bhavani received the Bhavani Subsequent Transfers, totaling $54,303.50, which are recoverable pursuant to section 550(a) of the Bankruptcy Code.

1506.   Defendant Bhavani is the immediate or mediate transferee of the Bhavani Subsequent Transfers.

1507.   Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Bhavani, pursuant to section 550(a) and 551 of the Bankruptcy Code, recovering the Bhavani Subsequent Transfers, or the value thereof, for the benefit of the Debtor's estate.

### ONE HUNDRED AND TENTH CAUSE OF ACTION
**Recovery of Subsequent Transfers**
**(11 U.S.C. §§ 550 and 551)**
**(Against Defendant Chetak)**

1508.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1507 of this Complaint as if fully set forth at length herein.

1509.   On the date of each of the transfers, the A & S Vegetables Direct Transfers were the property of the Debtor.

1510.   As set forth herein, each of the A & S Vegetables Direct Transfers to Defendant A & S Vegetables is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

1511.   Following the A & S Vegetables Direct Transfers from the Debtor to Defendant A & S Vegetables, between February 25, 2019 and May 6, 2020, Defendant A & S Vegetables, the initial transferee of the A & S Vegetable Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made fourteen (14) transfers totaling $136,391.65 to Defendant Chetak.

1512.   On the date of each of the transfers, the OM Vegetable Direct Transfers were the property of the Debtor.

1513.   As set forth herein, each of the OM Vegetable Direct Transfers to Defendant OM Vegetable is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

1514.   Following the OM Vegetable Direct Transfers from the Debtor to Defendant OM Vegetable, between March 5, 2021 and December 31, 2021, Defendant OM Vegetable, the initial transferee of the OM Vegetable Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made nine (9) transfers totaling $161,038.18 to Defendant Chetak.

1515.   The transfers from the Debtor to Defendants A & S Vegetables and OM Vegetable, which were subsequently transferred to Defendant Chetak, shall collectively be referred to herein as the "Chetak Subsequent Transfers", as set forth on **Exhibit JJ**.

1516.   The Chetak Subsequent Transfers were made with Debtor funds and property that belonged to the Debtor.

1517.   The Chetak Subsequent Transfers were made directly or indirectly to, or for the benefit of, Defendant Chetak.

1518.   Upon information and belief, following each of the transfers from the Debtor to Defendants A & S Vegetables and OM Vegetable to Defendant Chetak, Defendant Chetak deposited the Chetak Subsequent Transfers into one or more of its bank accounts.

1519.   Upon information and belief, in exchange for each of the Chetak Subsequent Transfers, Defendant Chetak did not provide any value to the Debtor.

1520.   Defendant Chetak received the Chetak Subsequent Transfers, totaling $297,429.83, which are recoverable pursuant to section 550(a) of the Bankruptcy Code.

1521.   Defendant Chetak is the immediate or mediate transferee of the Chetak Subsequent Transfers.

1522.   Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Chetak, pursuant to section 550(a) and 551 of the Bankruptcy Code, recovering the Chetak Subsequent Transfers, or the value thereof, for the benefit of the Debtor's estate.

## ONE HUNDRED AND ELEVENTH CAUSE OF ACTION
### Recovery of Subsequent Transfers
### (11 U.S.C. §§ 550 and 551)
### (Against Defendant Cobalt Funding)

1523.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1522 of this Complaint as if fully set forth at length herein.

1524.   On the date of each of the transfers, the OM Vegetable Direct Transfers were the property of the Debtor.

1525.   As set forth herein, each of the OM Vegetable Direct Transfers to Defendant OM Vegetable is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

1526.    Following the OM Vegetable Direct Transfers from the Debtor to Defendant OM Vegetable, on or around January 4, 2022, Defendant OM Vegetable, the initial transferee of the OM Vegetable Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made one (1) transfer in the amount of 70,000 to Defendant Cobalt Funding (the "Cobalt Funding Subsequent Transfers"), as set forth on **Exhibit KK**.

1527.    The Cobalt Funding Subsequent Transfers were made with Debtor funds and property that belonged to the Debtor.

1528.    The Cobalt Funding Subsequent Transfers were made directly or indirectly to, or for the benefit of, Defendant Cobalt Funding.

1529.    Upon information and belief, following each of the transfers from the Debtor to Defendants OM Vegetable to Defendant Cobalt Funding, Defendant Cobalt Funding deposited the Cobalt Funding Subsequent Transfers into one or more of its bank accounts.

1530.    Upon information and belief, in exchange for each of the Cobalt Funding Subsequent Transfers, Defendant Cobalt Funding did not provide any value to the Debtor.

1531.    Defendant Cobalt Funding received the Cobalt Funding Subsequent Transfers, totaling $70,000, which are recoverable pursuant to section 550(a) of the Bankruptcy Code.

1532.    Defendant Cobalt Funding is the immediate or mediate transferee of the House of Spices Subsequent Transfers.

1533.    Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Cobalt Funding, pursuant to section 550(a) and 551 of the Bankruptcy Code, recovering the Cobalt Funding Subsequent Transfers, or the value thereof, for the benefit of the Debtor's estate.

## ONE HUNDRED AND TWELFTH CAUSE OF ACTION
**Recovery of Subsequent Transfers**
**(11 U.S.C. §§ 550 and 551)**
**(Against Defendant House of Spices)**

1534.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1533 of this Complaint as if fully set forth at length herein.

1535.    On the date of each of the transfers, the A & A Vegetables Direct Transfers were the property of the Debtor.

1536.    As set forth herein, each of the A & A Vegetables Direct Transfers to Defendant A & A Vegetables is avoidable and recoverable under sections 547 and/or 548, 550 and 551 of the Bankruptcy Code.

1537.    Following the A & A Vegetables Direct Transfers from the Debtor to Defendant A & A Vegetables, on or around October 19, 2021, Defendant A & A Vegetables, the initial transferee of the A & A Vegetable Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made one (1) transfer in the amount of $20,000 to Defendant House of Spices.

1538.    On the date of each of the transfers, the A & S Vegetables Direct Transfers were the property of the Debtor.

1539.    As set forth herein, each of the A & S Vegetables Direct Transfers to Defendant A & S Vegetables is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

1540.    Following the A & S Vegetables Direct Transfers from the Debtor to Defendant A & S Vegetables, between July 12, 2019 and December 13, 2021, Defendant A & S Vegetables, the initial transferee of the A & S Vegetable Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made eleven (11) transfers totaling $45,274.25 to Defendant House of Spices.

1541.   On the date of each of the transfers, the OM Liquors Direct Transfers were the property of the Debtor.

1542.   As set forth herein, each of the OM Liquors Direct Transfers to Defendant OM Liquors is avoidable and recoverable under sections 547 and/or 548, 550 and 551 of the Bankruptcy Code.

1543.   Following the OM Liquors Direct Transfers from the Debtor to Defendant OM Liquors, on or around December 8, 2021, Defendant OM Liquors, the initial transferee of the OM Liquors Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made one (1) transfer in the amount of $4,895 to Defendant House of Spices.

1544.   On the date of each of the transfers, the OM Vegetable Direct Transfers were the property of the Debtor.

1545.   As set forth herein, each of the OM Vegetable Direct Transfers to Defendant OM Vegetable is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 – 279.

1546.   Following the OM Vegetable Direct Transfers from the Debtor to Defendant OM Vegetable, between March 16, 2021 and January 4, 2022, Defendant OM Vegetable, the initial transferee of the OM Vegetable Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made four (4) transfers totaling $41,000 to Defendant House of Spices.

1547.   The transfers from the Debtor to Defendants A & A Vegetables, A & S Vegetables, OM Liquors and OM Vegetable, which were subsequently transferred to Defendant House of Spices, shall collectively be referred to herein as the "House of Spices Subsequent Transfers", as set forth on **Exhibit LL**.

1548.   The House of Spices Subsequent Transfers were made with Debtor funds and property that belonged to the Debtor.

1549.   The House of Spices Subsequent Transfers were made directly or indirectly to, or for the benefit of, Defendant House of Spices.

1550.   Upon information and belief, following each of the transfers from the Debtor to Defendants A & A Vegetables, A & S Vegetables, OM Liquors and OM Vegetable to Defendant House of Spices, Defendant House of Spices deposited the House of Spices Subsequent Transfers into one or more of its bank accounts.

1551.   Upon information and belief, in exchange for each of the House of Spices Subsequent Transfers, Defendant House of Spices did not provide any value to the Debtor.

1552.   Defendant House of Spices received the House of Spices Subsequent Transfers, totaling $111,169.25, which are recoverable pursuant to section 550(a) of the Bankruptcy Code.

1553.   Defendant House of Spices is the immediate or mediate transferee of the House of Spices Subsequent Transfers.

1554.   Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant House of Spices, pursuant to section 550(a) and 551 of the Bankruptcy Code, recovering the House of Spices Subsequent Transfers, or the value thereof, for the benefit of the Debtor's estate.

**ONE HUNDRED AND THIRTEENTH CAUSE OF ACTION**
**Recovery of Subsequent Transfers**
**(11 U.S.C. §§ 550 and 551)**
**(Against Defendant Jalaram Produce)**

1555.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1554 of this Complaint as if fully set forth at length herein.

1556.   On the date of each of the transfers, the A & S Vegetables Direct Transfers were the property of the Debtor.

1557.   As set forth herein, each of the A & S Vegetables Direct Transfers to Defendant A & S Vegetables is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

1558.   Following the A & S Vegetables Direct Transfers from the Debtor to Defendant A & S Vegetables, between October 29, 2018 and May 7, 2020, Defendant A & S Vegetables, the initial transferee of the A & S Vegetable Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made twenty-six (26) transfers totaling $112,326.53 to Defendant Jalaram Produce (collectively, the "Jalaram Produce Subsequent Transfers"), as set forth on **Exhibit MM**.

1559.   The Jalaram Produce Subsequent Transfers were made with Debtor funds and property that belonged to the Debtor.

1560.   The Jalaram Produce Subsequent Transfers were made directly or indirectly to, or for the benefit of, Defendant Jalaram Produce.

1561.   Upon information and belief, following each of the transfers from the Debtor to Defendant A & S Vegetables to Defendant Jalaram Produce, Defendant Jalaram Produce deposited the Jalaram Produce Subsequent Transfers into one or more of its bank accounts.

1562.   Upon information and belief, in exchange for each of the Jalaram Produce Subsequent Transfers, Defendant Jalaram Produce did not provide any value to the Debtor.

1563.   Defendant Jalaram Produce received the Jalaram Produce Subsequent Transfers, totaling $112,326.53, which are recoverable pursuant to section 550(a) of the Bankruptcy Code.

1564.   Defendant Jalaram Produce is the immediate or mediate transferee of the Jalaram Produce Subsequent Transfers.

1565.   Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Jalaram Produce, pursuant to section 550(a) and 551 of the Bankruptcy Code, recovering the Jalaram Produce Subsequent Transfers, or the value thereof, for the benefit of the Debtor's estate.

**ONE HUNDRED AND FOURTEENTH CAUSE OF ACTION**
**Recovery of Subsequent Transfers**
**(11 U.S.C. §§ 550 and 551)**
**(Against Defendant Legacy Capital)**

1566.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1565 of this Complaint as if fully set forth at length herein.

1567.   On the date of each of the transfers, the OM Vegetable Direct Transfers were the property of the Debtor.

1568.   As set forth herein, each of the OM Vegetable Direct Transfers to Defendant OM Vegetable is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

1569.   Following the OM Vegetable Direct Transfers from the Debtor to Defendant OM Vegetable, between December 16, 2021 and January 4, 2022, Defendant OM Vegetable, the initial transferee of the OM Vegetable Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made eleven (11) transfers totaling $123,662 to Defendant Legacy Capital (collectively, the "Legacy Capital Subsequent Transfers"), as set forth on **Exhibit NN**.

1570.   The Legacy Capital Subsequent Transfers were made with Debtor funds and property that belonged to the Debtor.

1571.   The Legacy Capital Subsequent Transfers were made directly or indirectly to, or for the benefit of, Defendant Legacy Capital.

1572.   Upon information and belief, following each of the transfers from the Debtor to Defendant OM Vegetable to Defendant Legacy Capital, Defendant Legacy Capital deposited the Legacy Capital Subsequent Transfers into one or more of its bank accounts.

1573.   Upon information and belief, in exchange for each of the Legacy Capital Subsequent Transfers, Defendant Legacy Capital did not provide any value to the Debtor.

1574.   Defendant Legacy Capital received the Legacy Capital Subsequent Transfers, totaling $123,662, which are recoverable pursuant to section 550(a) of the Bankruptcy Code.

1575.   Defendant Legacy Capital is the immediate or mediate transferee of the Legacy Capital Subsequent Transfers.

1576.   Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Legacy Capital, pursuant to section 550(a) and 551 of the Bankruptcy Code, recovering the Legacy Capital Subsequent Transfers, or the value thereof, for the benefit of the Debtor's estate.

### ONE HUNDRED AND FIFTEENTH CAUSE OF ACTION
**Recovery of Subsequent Transfers**
**(11 U.S.C. §§ 550 and 551)**
**(Against Defendant LIPA)**

1577.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1576 of this Complaint as if fully set forth at length herein.

1578.   On the date of each of the transfers, the A & S Vegetables Direct Transfers were the property of the Debtor.

1579.   As set forth herein, each of the A & S Vegetables Direct Transfers to Defendant A & S Vegetables is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

1580.   Following the A & S Vegetables Direct Transfers from the Debtor to Defendant A & S Vegetables, between July30, 2019 and November 3, 2021, Defendant A & S Vegetables, the initial transferee of the A & S Vegetables Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made seventeen (17) transfers totaling $75,514.86 to Defendant LIPA.

1581.   On the date of each of the transfers, the Kaur Farms Direct Transfers were the property of the Debtor.

1582.   As set forth herein, each of the Kaur Farms Direct Transfers to Defendant Kaur Farms is avoidable and recoverable under sections 547 and/or 548, 550 and 551 of the Bankruptcy Code.

1583.   Following the Kaur Farms Direct Transfers from the Debtor to Defendant Kaur Farms, on or around November 3, 2021, Defendant Kaur Farms, the initial transferee of the Kaur Farms Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made one (1) transfer in the amount of $22,299 to Defendant LIPA.

1584.   The transfers from the Debtor to Defendants A & S Vegetables and Kaur Farms, which were subsequently transferred to Defendant LIPA, shall collectively be referred to herein as the "LIPA Subsequent Transfers"), as set forth on **Exhibit OO**.

1585.   The LIPA Subsequent Transfers were made with Debtor funds and property that belonged to the Debtor.

1586.   The LIPA Subsequent Transfers were made directly or indirectly to, or for the benefit of, Defendant LIPA.

1587.   Upon information and belief, following each of the transfers from the Debtor to Defendants A & S Vegetables and Kaur Farms to Defendant LIPA, Defendant LIPA deposited the LIPA Subsequent Transfers into one or more of its bank accounts.

1588.   Upon information and belief, in exchange for the LIPA Subsequent Transfers, Defendant LIPA did not provide any value to the Debtor.

1589.   Defendant LIPA received the LIPA Subsequent Transfers, totaling $97,813.86, which are recoverable pursuant to section 550(a) of the Bankruptcy Code.

1590.   Defendant LIPA MNK is the immediate or mediate transferee of the LIPA Subsequent Transfers.

1591.   Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant MNK, pursuant to section 550(a) and 551 of the Bankruptcy Code, recovering the MNK Subsequent Transfer, or the value thereof, for the benefit of the Debtor's estate.

**ONE HUNDRED AND SIXTEENTH CAUSE OF ACTION**
**Recovery of Subsequent Transfers**
**(11 U.S.C. §§ 550 and 551)**
**(Against Defendant MNK)**

1592.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1591 of this Complaint as if fully set forth at length herein.

1593.   On the date of each of the transfers, the A & S Vegetables Direct Transfers were the property of the Debtor.

1594.   As set forth herein, each of the A & S Vegetables Direct Transfers to Defendant A & S Vegetables is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

1595.   Following the A & S Vegetables Direct Transfers from the Debtor to Defendant A & S Vegetables, on or around December 7, 2021, Defendant A & S Vegetables, the initial transferee of the A & S Vegetables Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made one (1) transfer in the amount of $50,000 to Defendant MNK (the "MNK Subsequent Transfer"), as set forth on **Exhibit PP**.

1596.   The MNK Subsequent Transfer was made with Debtor funds and property that belonged to the Debtor.

1597.   The MNK Subsequent Transfer was made directly or indirectly to, or for the benefit of, Defendant MNK.

1598.   Upon information and belief, following each of the transfers from the Debtor to Defendant A & S Vegetables to Defendant MNK, Defendant MNK deposited the MNK Subsequent Transfer into one or more of its bank accounts.

1599.   Upon information and belief, in exchange for the MNK Subsequent Transfer, Defendant MNK did not provide any value to the Debtor.

1600.   Defendant MNK received the MNK Subsequent Transfer, totaling $50,000, which is recoverable pursuant to section 550(a) of the Bankruptcy Code.

1601.   Defendant MNK is the immediate or mediate transferee of the MNK Subsequent Transfer.

1602.   Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant MNK, pursuant to section 550(a) and 551 of the Bankruptcy Code, recovering the MNK Subsequent Transfer, or the value thereof, for the benefit of the Debtor's estate.

## ONE HUNDRED AND SEVENTEENTH CAUSE OF ACTION
### Recovery of Subsequent Transfers
### (11 U.S.C. §§ 550 and 551)
### (Against Defendant Staller Associates)

1603.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1602 of this Complaint as if fully set forth at length herein.

1604.   On the date of each of the transfers, the A & S Vegetables Direct Transfers were the property of the Debtor.

1605.   As set forth herein, each of the A & S Vegetables Direct Transfers to Defendant A & S Vegetables is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

1606.   Following the A & S Vegetables Direct Transfers from the Debtor to Defendant A & S Vegetables, between July 16, 2019 and February 18, 2020, Defendant A & S Vegetables, the initial transferee of the A & S Vegetables Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made nine (9) transfers totaling $226,901.13 to Defendant Staller Associates (the "Staller Associates Subsequent Transfers"), as set forth on **Exhibit QQ**.

1607.   The Staller Associates Subsequent Transfers were made with Debtor funds and property that belonged to the Debtor.

1608.   The Staller Associates Subsequent Transfers were made directly or indirectly to, or for the benefit of, Defendant Staller Associates.

1609.   Upon information and belief, following each of the transfers from the Debtor to Defendant A & S Vegetables to Defendant Staller Associates, Defendant Staller Associates deposited the Staller Associates Subsequent Transfers into one or more of its bank accounts.

1610.   Upon information and belief, in exchange for the Staller Associates Subsequent Transfers, Defendant Staller Associates did not provide any value to the Debtor.

1611.   Defendant Staller Associates received the Staller Associates Subsequent Transfers, totaling $226,901.13, which are recoverable pursuant to section 550(a) of the Bankruptcy Code.

1612.   Defendant Staller Associates is the immediate or mediate transferee of the Staller Associates Subsequent Transfers.

1613.   Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Staller Associates, pursuant to section 550(a) and 551 of the Bankruptcy Code,

recovering the Staller Associates Subsequent Transfers, or the value thereof, for the benefit of the Debtor's estate.

## ONE HUNDRED AND EIGHTEENTH CAUSE OF ACTION
### Recovery of Subsequent Transfers
### (11 U.S.C. §§ 550 and 551)
### (Against Defendant Thomas Weiss)

1614.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1613 of this Complaint as if fully set forth at length herein.

1615.   On the date of each of the transfers, the A & S Vegetables Direct Transfers were the property of the Debtor.

1616.   As set forth herein, each of the A & S Vegetables Direct Transfers to Defendant A & S Vegetables is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

1617.   Following the A & S Vegetables Direct Transfers from the Debtor to Defendant A & S Vegetables, on or around February 14, 2019, Defendant A & S Vegetables, the initial transferee of the A & S Vegetables Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made one (1) transfer totaling $50,000 to Defendant Thomas Weiss (the "Thomas Weiss Subsequent Transfer"), as set forth on **Exhibit RR**.

1618.   The Thomas Weiss Subsequent Transfer was made with Debtor funds and property that belonged to the Debtor.

1619.   The Thomas Weiss Subsequent Transfer was made directly or indirectly to, or for the benefit of, Defendant Thomas Weiss.

1620.   Upon information and belief, following each of the transfers from the Debtor to Defendant A & S Vegetables to Defendant Thomas Weiss, Defendant Thomas Weiss deposited the Thomas Weiss Subsequent Transfer into one or more of its bank accounts.

1621.   Upon information and belief, in exchange for the Thomas Weiss Subsequent Transfer, Defendant Thomas Weiss did not provide any value to the Debtor.

1622.   Defendant Thomas Weiss received the Thomas Weiss Subsequent Transfer, totaling $50,000, which is recoverable pursuant to section 550(a) of the Bankruptcy Code.

1623.   Defendant Thomas Weiss is the immediate or mediate transferee of the Thomas Weiss Subsequent Transfer.

1624.   Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Thomas Weiss, pursuant to section 550(a) and 551 of the Bankruptcy Code, recovering the Thomas Weiss Subsequent Transfer, or the value thereof, for the benefit of the Debtor's estate.

### ONE HUNDRED AND NINETEENTH CAUSE OF ACTION
**Recovery of Subsequent Transfers**
**(11 U.S.C. §§ 550 and 551)**
**(Against Defendant Trivedi Law)**

1625.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1624 of this Complaint as if fully set forth at length herein.

1626.   On the date of each of the transfers, the A & S Vegetables Direct Transfers were the property of the Debtor.

1627.   As set forth herein, each of the A & S Vegetables Direct Transfers to Defendant A & S Vegetables is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

1628.   Following the A & S Vegetables Direct Transfers from the Debtor to Defendant A & S Vegetables, between July 18, 2019 and October 21, 2019, Defendant A & S Vegetables, the initial transferee of the A & S Vegetable Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made four (4) transfers totaling $5,080 to Defendant Trivedi Law.

1629.   On the date of each of the transfers, the OM Vegetable Direct Transfers were the property of the Debtor.

1630.   As set forth herein, each of the OM Vegetable Direct Transfers to Defendant OM Vegetable is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

1631.   Following the OM Vegetable Direct Transfers from the Debtor to Defendant OM Vegetable, between December 29, 2021 and January 4, 2022, Defendant OM Vegetable, the initial transferee of the OM Vegetable Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made three (3) transfers totaling $242,900 to Defendant Trivedi Law.

1632.   The transfers from the Debtor to Defendants A & S Vegetables and OM Vegetable, which were subsequently transferred to Defendant Trivedi Law, shall collectively be referred to herein as the "Trivedi Law Subsequent Transfers", as set forth on **Exhibit SS**.

1633.   The Trivedi Law Subsequent Transfers were made with Debtor funds and property that belonged to the Debtor.

1634.   The Trivedi Law Subsequent Transfers were made directly or indirectly to, or for the benefit of, Defendant Trivedi Law.

1635.   Upon information and belief, following each of the transfers from the Debtor to Defendants A & S Vegetables and OM Vegetable to Defendant Trivedi Law, Defendant Trivedi Law deposited the Trivedi Law Subsequent Transfers into one or more of its bank accounts.

1636.   Upon information and belief, in exchange for each of the Trivedi Law Subsequent Transfers, Defendant Trivedi Law did not provide any value to the Debtor.

1637.   Defendant Trivedi Law received the Trivedi Law Subsequent Transfers, totaling $247,980, which are recoverable pursuant to section 550(a) of the Bankruptcy Code.

1638.   Defendant Trivedi Law is the immediate or mediate transferee of the Trivedi Law Subsequent Transfers.

1639.   Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Trivedi Law, pursuant to section 550(a) and 551 of the Bankruptcy Code, recovering the Trivedi Law Subsequent Transfers, or the value thereof, for the benefit of the Debtor's estate.

**ONE HUNDRED AND TWENTIETH CAUSE OF ACTION**
**Recovery of Subsequent Transfers**
**(11 U.S.C. §§ 550 and 551)**
**(Against Defendant Westminster)**

1640.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1639 of this Complaint as if fully set forth at length herein.

1641.   On the date of each of the transfers, the A & S Vegetables Direct Transfers were the property of the Debtor.

1642.   As set forth herein, each of the A & S Vegetables Direct Transfers to Defendant A & S Vegetables is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

1643.   Following the A & S Vegetables Direct Transfers from the Debtor to Defendant A & S Vegetables, between October 19, 2021 and December 28, 2021, Defendant A & S Vegetables, the initial transferee of the A & S Vegetables Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made twenty-two (22) transfers totaling $86,368.90 to Defendant Westminster (the "Westminster Subsequent Transfers"), as set forth on **Exhibit TT**.

1644.   The Westminster Subsequent Transfers were made with Debtor funds and property that belonged to the Debtor.

1645.   The Westminster Subsequent Transfers were made directly or indirectly to, or for the benefit of, Defendant Westminster.

1646.   Upon information and belief, following each of the transfers from the Debtor to Defendant A & S Vegetables to Defendant Westminster, Defendant Westminster deposited the Westminster Subsequent Transfers into one or more of its bank accounts.

1647.   Upon information and belief, in exchange for the Westminster Subsequent Transfers, Defendant Westminster s did not provide any value to the Debtor.

1648.   Defendant Westminster received the Westminster Subsequent Transfers, totaling $86,368.90, which are recoverable pursuant to section 550(a) of the Bankruptcy Code.

1649.   Defendant Westminster is the immediate or mediate transferee of the Westminster Subsequent Transfers.

1650.   Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Westminster, pursuant to section 550(a) and 551 of the Bankruptcy Code, recovering the Westminster Subsequent Transfers, or the value thereof, for the benefit of the Debtor's estate.

## ONE HUNDRED AND TWENTY-FIRST CAUSE OF ACTION
### Recovery of Subsequent Transfers
### (11 U.S.C. §§ 550 and 551)
### (Against Defendant Zwicker & Associates)

1651.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1650 of this Complaint as if fully set forth at length herein.

1652.   On the date of each of the transfers, the A & S Vegetables Direct Transfers were the property of the Debtor.

1653.   As set forth herein, each of the A & S Vegetables Direct Transfers to Defendant A & S Vegetables is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

1654.   Following the A & S Vegetables Direct Transfers from the Debtor to Defendant A & S Vegetables, between March 4, 2019 and March 12, 2019, Defendant A & S Vegetables, the

initial transferee of the A & S Vegetable Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made two (2) transfers totaling $11,428.18 to Defendant Zwicker & Associates.

1655.   On the date of each of the transfers, the OM Vegetable Direct Transfers were the property of the Debtor.

1656.   As set forth herein, each of the OM Vegetable Direct Transfers to Defendant OM Vegetable is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

1657.   Following the OM Vegetable Direct Transfers from the Debtor to Defendant OM Vegetable, between August 27, 2021 and December 29, 2021, Defendant OM Vegetable, the initial transferee of the OM Vegetable Direct Transfers, a Debtor Affiliate and Insider of the Debtor, subsequently made two (2) transfers totaling $55,230.50 to Defendant Zwicker & Associates.

1658.   The transfers from the Debtor to Defendants A & S Vegetables and OM Vegetable, which were subsequently transferred to Defendant Zwicker & Associates, shall collectively be referred to herein as the "Zwicker & Associates Subsequent Transfers", as set forth on **Exhibit UU**.

1659.   The Zwicker & Associates Subsequent Transfers were made with Debtor funds and property that belonged to the Debtor.

1660.   The Zwicker & Associates Subsequent Transfers were made directly or indirectly to, or for the benefit of, Defendant Zwicker & Associates.

1661.   Upon information and belief, following each of the transfers from the Debtor to Defendants A & S Vegetables and OM Vegetable to Defendant Zwicker & Associates, Defendant

Zwicker & Associates deposited the Zwicker & Associates Subsequent Transfers into one or more of its bank accounts.

1662.   Upon information and belief, the Debtor made the Zwicker & Associates Subsequent Transfers, by and through Defendants A & S Vegetables and OM Vegetable, to settle certain litigation claims Defendant Zwicker & Associates pursued on behalf of its client, AMEX, against each of Defendant A & S Vegetables and OM Vegetable.

1663.   Upon information and belief, in exchange for each of the Zwicker & Associates Subsequent Transfers, Defendant Zwicker & Associates did not provide any value to the Debtor.

1664.   Defendant Zwicker & Associates received the Zwicker & Associates Subsequent Transfers, totaling $66,658.68, which are recoverable pursuant to section 550(a) of the Bankruptcy Code.

1665.   Defendant Zwicker & Associates is the immediate or mediate transferee of the Zwicker & Associates Subsequent Transfers.

1666.   Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant Zwicker & Associates, pursuant to section 550(a) and 551 of the Bankruptcy Code, recovering the Zwicker & Associates Subsequent Transfers, or the value thereof, for the benefit of the Debtor's estate.

<u>ONE HUNDRED AND TWENTY-SECOND CAUSE OF ACTION</u>
**Recovery of Subsequent Transfers**
**(11 U.S.C. §§ 550 and 551)**
**(Against Defendant BCB Bank)**

1667.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1666 of this Complaint as if fully set forth at length herein.

1668.   On the date of each of the transfers, the A & S Vegetables Direct Transfers were the property of the Debtor.

1669.   As set forth herein, each of the A & S Vegetables Direct Transfers to Defendant A & S Vegetables is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

1670.   Between September 22, 2021 and December 30, 2021, the Debtor made twenty-six (26) transfers totaling $522,768.89 to Defendant A & S Vegetables, a Debtor Affiliate and Insider of the Debtor, by wire transfer into Defendant A & S Vegetables' bank account at BCB Bank (the "BCB Transfers Via A & S Vegetables").

1671.   Upon information and belief, the purpose of the BCB Transfers Via A & S Vegetables from the Debtor was to cover Defendant A & S Vegetables' overdraft charges owed to Defendant BCB Bank for insufficient funds in the A & S Vegetables BCB Account.

1672.   Immediately upon the Debtor's deposit of the BCB Transfers Via A & S Vegetables into Defendant A & S Vegetables' account, the monies were removed from the account and subsequently paid or immediately deducted by Defendant BCB Bank for the benefit of Defendant BCB Bank.

1673.   On the date of each of the BCB Transfers Via A & S Vegetables, the BCB Transfers Via A & S Vegetables were property of the Debtor.

1674.   At the time of each of the BCB Transfers Via A & S Vegetables, the Debtor did not have any obligation to pay Defendant BCB Bank.

1675.   Defendant BCB Bank is the ultimate beneficiary of the BCB Transfers Via A & S Vegetables, which was property of the Debtor, and retained the benefit of those transfers.

1676.   Upon information and belief, Defendant BCB Bank never returned the BCB Transfers Via A & S Vegetables to the Debtor.

1677.   On the date of each of the transfers, the Kaur Farms Direct Transfers were the property of the Debtor.

1678.   As set forth herein, each of the Kaur Farms Direct Transfers to Defendant Kaur Farms is avoidable and recoverable under sections 547 and/or 548, 550 and 551 of the Bankruptcy Code.

1679.   Between September 27, 2021 and December 15, 2021, the Debtor made five (5) transfers totaling $6,927.07 to Defendant Kaur Farms, a Debtor Affiliate and Insider of the Debtor, by wire transfer into Defendant Kaur Farms' bank account at BCB account (the "BCB Transfers Via Kaur Farms").

1680.   Upon information and belief, the purpose of the BCB Transfers Via Kaur Farms from the Debtor was to cover Defendant Kaur Farms' overdraft charges owed to Defendant BCB Bank for insufficient funds in the Kaur Farms BCB Account.

1681.   Immediately upon the Debtor's deposit of the BCB Transfers Via Kaur Farms into Defendant Kaur Farms' account, the monies were removed from the account and subsequently paid or immediately deducted by Defendant BCB Bank for the benefit of Defendant BCB Bank.

1682.   On the date of each of the BCB Transfers Via Kaur Farms, the BCB Transfers Via Kaur Farms were property of the Debtor.

1683.   At the time of each of the BCB Transfers Via Kaur Farms, the Debtor did not have any obligation to pay Defendant BCB Bank.

1684.   Defendant BCB Bank is the ultimate beneficiary of the BCB Transfers Via Kaur Farms, which was property of the Debtor, and retained the benefit of those transfers.

1685.   Upon information and belief, Defendant BCB Bank never returned the BCB Transfers Via Kaur Farms to the Debtor.

1686. On the date of each of the transfers, the Ameet Properties Direct Transfers were the property of the Debtor.

1687. As set forth herein, each of the Ameet Properties Direct Transfers to Defendant Ameet Properties is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

1688. Between November 24, 2021 and December 13, 2021, the Debtor made two (2) transfers totaling $65,884.04 to Defendant Ameet Properties, a Debtor Affiliate and Insider of the Debtor, by wire transfer into Defendant Ameet Properties' bank account at BCB account (the "BCB Transfers Via Ameet Properties").

1689. Upon information and belief, the purpose of the BCB Transfers Via Ameet Properties from the Debtor was to cover Defendant Ameet Properties' overdraft charges owed to Defendant BCB Bank for insufficient funds in the Ameet Properties BCB Account.

1690. Immediately upon the Debtor's deposit of the BCB Transfers Via Ameet Properties into Defendant Ameet Properties' account, the monies were removed from the account and subsequently paid or immediately deducted by Defendant BCB Bank for the benefit of Defendant BCB Bank.

1691. On the date of each of the BCB Transfers Via Ameet Properties, the BCB Transfers Via Ameet Properties were property of the Debtor.

1692. At the time of each of the BCB Transfers Via Ameet Properties, the Debtor did not have any obligation to pay Defendant BCB Bank.

1693. Defendant BCB Bank is the ultimate beneficiary of the BCB Transfers Via Ameet Properties, which was property of the Debtor, and retained the benefit of those transfers.

1694.   Upon information and belief, Defendant BCB Bank never returned the BCB Transfers Via Ameet Properties to the Debtor.

1695.   On the date of each of the transfers, the OM Liquors Direct Transfers were the property of the Debtor.

1696.   As set forth herein, each of the OM Liquors Direct Transfers to Defendant OM Liquors is avoidable and recoverable under sections 547 and/or 548, 550 and 551 of the Bankruptcy Code.

1697.   Between December 8, 2021 and December 10, 2021, the Debtor made three (3) transfers totaling $63,572.48 to Defendant OM Liquors, a Debtor Affiliate and Insider of the Debtor, by wire transfer into Defendant OM Liquors' bank account at BCB account (the "BCB Transfers Via OM Liquors"). A schedule showing the BCB Transfers Via A & S Vegetables, Kaur Farms, Ameet Properties and OM Liquors is annexed to this Complaint as **Exhibit VV**.

1698.   Upon information and belief, the purpose of the BCB Transfers Via OM Liquors from the Debtor was to cover Defendant OM Liquors' overdraft charges owed to Defendant BCB Bank for insufficient funds in the OM Liquors BCB Account.

1699.   Immediately upon the Debtor's deposit of the BCB Transfers Via OM Liquors into Defendant OM Liquors' account, the monies were removed from the account and subsequently paid or immediately deducted by Defendant BCB Bank for the benefit of Defendant BCB Bank.

1700.   On the date of each of the BCB Transfers Via OM Liquors, the BCB Transfers Via OM Liquors were property of the Debtor.

1701.   At the time of each of the BCB Transfers Via OM Liquors, the Debtor did not have any obligation to pay Defendant BCB Bank.

1702.   Defendant BCB Bank is the ultimate beneficiary of the BCB Transfers Via OM Liquors, which was property of the Debtor, and retained the benefit of those transfers.

1703.   Upon information and belief, Defendant BCB Bank never returned the BCB Transfers Via OM Liquors to the Debtor.

1704.   Therefore, each of the transfers from the Debtor to each of Defendants A & S Vegetables, Kaur Farms, Ameet Properties and OM Liquors, which was immediately taken by Defendant BCB Bank to cover the respective overdraft charges of the aforementioned Debtor Affiliates, rather than to benefit the Debtor, in the total amount of $659,152.48, is avoidable by the Trustee and recoverable from Defendant BCB Bank.

<u>**ONE HUNDRED AND TWENTY-THIRD CAUSE OF ACTION**</u>
**Recovery of Subsequent Transfers**
**(11 U.S.C. §§ 550 and 551)**
**(Against Defendant HAB Bank)**

1705.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1704 of this Complaint as if fully set forth at length herein.

1706.   On the date of each of the transfers, the A & S Vegetables Direct Transfers were the property of the Debtor.

1707.   As set forth herein, each of the A & S Vegetables Direct Transfers to Defendant A & S Vegetables is avoidable and recoverable under sections 544, 547 and/or 548, 550 and 551 of the Bankruptcy Code or DCL §§ 272 - 279.

1708.   Between October 20, 2018 and May 8, 2020, the Debtor made eighty-three (83) transfers totaling $3,205,478.26 to Defendant A & S Vegetables, a Debtor Affiliate and Insider of the Debtor, by wire transfer into Defendant A & S Vegetables' bank account at HAB Bank (the "<u>HAB Direct Transfers Via A & S Vegetables</u>").

1709.   Upon information and belief, the purpose of the HAB Direct Transfers Via A & S Vegetables from the Debtor were to cover Defendant A & S Vegetables' overdraft charges owed to Defendant HAB Bank for insufficient funds in the A & S Vegetables HAB Bank account.

1710.   Immediately upon the Debtor's deposit of the HAB Direct Transfers Via A & S Vegetables into Defendant A & S Vegetables' account, the monies were removed from the account and subsequently paid or immediately deducted by Defendant HAB Bank for the benefit of Defendant HAB Bank.

1711.   On the date of each of the HAB Direct Transfers Via A & S Vegetables, the HAB Direct Transfers Via A & S Vegetables were property of the Debtor.

1712.   At the time of each of the HAB Direct Transfers Via A & S Vegetables, the Debtor did not have any obligation to pay Defendant HAB Bank.

1713.   Defendant HAB Bank is the ultimate beneficiary of the HAB Direct Transfers Via A & S Vegetables, which was property of the Debtor, and retained the benefit of those transfers.

1714.   Upon information and belief, Defendant HAB Bank never returned the HAB Direct Transfers Via A & S Vegetables to the Debtor.

1715.   Between December 4, 2018 and March 6, 2020, the Debtor made sixty-four (64) transfers totaling $1,428,995.36 to Defendant A & S Vegetables, a Debtor Affiliate and Insider of the Debtor, by wire transfer into its account at Chase, which Defendant A & S Vegetable immediately transferred to Defendant A & S Vegetables' bank account at HAB Bank (the "HAB Indirect Transfers Via A & S Vegetables").  A schedule showing the HAB Direct Transfers Via A & S Vegetables and the HAB Indirect Transfers Via A & S Vegetables is annexed to this Complaint as **Exhibit WW.**

1716.   Upon information and belief, the purpose of the HAB Indirect Transfers Via A & S Vegetables from the Debtor was to cover Defendant A & S Vegetables' overdraft charges owed to Defendant HAB Bank for insufficient funds in the A & S Vegetables HAB Account.

1717.   Immediately upon the Debtor's deposit of the HAB Indirect Transfers Via A & S Vegetables into Defendant A & S Vegetables' account, the monies were removed from the account and subsequently paid or immediately deducted by Defendant HAB Bank for the benefit of Defendant HAB Bank.

1718.   On the date of each of the HAB Indirect Transfers Via A & S Vegetables, the HAB Indirect Transfers Via A & S Vegetables were property of the Debtor.

1719.   At the time of each of the HAB Indirect Transfers Via A & S Vegetables, the Debtor did not have any obligation to pay Defendant HAB Bank.

1720.   Defendant HAB Bank is the ultimate beneficiary of the HAB Indirect Transfers Via A & S Vegetables, which was property of the Debtor, and retained the benefit of those transfers.

1721.   Upon information and belief, Defendant HAB Bank never returned the HAB Indirect Transfers Via A & S Vegetables to the Debtor.

### ONE HUNDRED AND TWENTY-FOURTH CAUSE OF ACTION
**Recovery of Avoidable Transfers or Value Thereof From All Initial,
Immediate, Mediate or Subsequent Transferees
11 U.S.C. § 550(a)
(Against All Defendants Plus John and Jane Does Transferees)**

1722.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1721 of this Complaint as if fully set forth at length herein.

1723.   Upon avoidance of each of the Fraudulent Transfers, Subsequent Transfers, Post-Petition Transfers and Preferences from an initial transferee, as set forth herein or as may become known to the Trustee at a later date, the Trustee is entitled to recover for the benefit of the Debtor's

estate the property transferred, or the value thereof, from the initial transferee, the individual or entity for whose benefit such transfer was made, or any immediate, mediate or subsequent transferee of such initial transferee.

1724.   Based upon the foregoing, the Trustee is entitled to a judgment against each recipient or beneficiary of any of the Fraudulent Transfers, Subsequent Transfers, Post-Petition Transfers and Preferential Transfers of the Debtor's property, as set forth herein or as may become known to the Trustee at a later date, and any subsequently identified immediate, mediate or subsequent transferee of such initial transferee of the Fraudulent Transfers, Subsequent Transfers, Post-Petition Transfers and Preferential Transfers of the Debtor's property, for the full value of the applicable transfer.

<u>**ONE HUNDRED AND TWENTY-FIFTH CAUSE OF ACTION**</u>
**Unjust Enrichment**
**Common Law (New York Unless Otherwise Provided for)**
**(Against All Defendants)**

1725.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1724 of this Complaint as if fully set forth at length herein.

1726.   Each of the Transfers constituted a transfer of an interest of the Debtor in property within the meaning of Section 101(54) of the Bankruptcy Code.

1727.   Each of the Transfers was to or for the benefit of each of the Defendants named herein.

1728.   Each of the Defendants was enriched as a result of the Transfers.

1729.   The enrichment of each of the Defendants was at the expense of the Debtor, its estate and its creditors.

1730.   Each of the Defendants wrongfully secured a benefit from the Debtor by refusing to repay the Debtor the amounts of the Transfers they received, which the Debtor was not obligated to pay them.

1731.   At the time of the Transfers to each of the Defendants, the Debtor could not pay its debts as they became due.

1732.   It would be against equity and good conscience to permit any of the Defendants or recipients of the Transfers to retain the benefits of the monies paid to them by the Debtor without having provided any goods, products, materials, money and/or services to the Debtor in exchange therefor.

1733.   The Defendants' failure to replenish the Debtor's estate the amounts of the Transfers is contrary to the principles of fairness and good conscience.

1734.   Each of the Defendants would be unjustly enriched unless the Trustee is permitted to recover the monies comprising the Transfers for the benefit of the Debtor's estate and its creditors.

1735.   Based upon the foregoing, the Trustee is entitled to an order and judgment against each Defendant, on account of the monies comprising the Transfers, in the amount for which each of the Defendants was enriched, and directing the Defendants to return the Transfers or the value thereof, to the Trustee, together with prejudgment interest and attorneys' fees.

**ONE HUNDRED AND TWENTY-SIXTH CAUSE OF ACTION**
**Disallowance of All Claims**
**(11 U.S.C. §§ 502(d) and (j))**
**(Against All Defendants)**

1736.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 1735 of this Complaint as if fully set forth at length herein.

1737.    The Defendants are transferees of transfers avoidable under 11 U.S.C. §§ 544(b), 547, 548, 549, 550 and/or 551 and/or DCL §§ 272 - 279, which property is recoverable under section 550 of the Bankruptcy Code.

1738.    None of the Defendants have paid the amount of the Transfers, or turned over such property, for which Defendant is liable under Section 550 of the Bankruptcy Code.

1739.    One or more of the Defendants may have asserted one or more claims against the Debtor's estate.

1740.    Pursuant to Section 502(d) of the Bankruptcy Code, any and all claims of the Defendants and/or their assignees, against the Debtor's chapter 7 estate or the Plaintiff must be disallowed until such time as each Defendant or the Defendants pay to the Plaintiff an amount equal to the aggregate amount of the Transfers, plus interest thereon and costs.

1741.    Pursuant to Section 502(j) of the Bankruptcy Code, any and all claims of the Defendants, and/or their assignees, against the Debtor's chapter 7 estate or the Plaintiff previously allowed by the Debtor or by the Plaintiff, must be reconsidered and disallowed until such time as each Defendant or the Defendants pay to the Plaintiff an amount equal to the aggregate amount of the Transfers.

**WHEREFORE**, the Trustee respectfully requests that a judgment or judgments be entered against the Defendant(s) as follows:

i.    Avoiding the Preferential Transfers made by the Debtor to the Debtor Affiliates during the Insider Preference Period pursuant to Sections 547(b) and 550(a) of the Bankruptcy Code, plus interest from the date of demand at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action, including, without limitation, attorneys' fees;

ii.    Avoiding the intentional and constructive Fraudulent Transfers made by the Debtor to the Debtor Affiliates during the Two-Year Fraudulent Transfer Period and the Four-Year Fraudulent Transfer Period pursuant to Sections 544(b), 548 and 550(a) of the Bankruptcy Code and DCL §§ Sections 272 - 279, plus interest from the date of demand at the

maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action, including, without limitation, attorneys' fees;

iii.  Avoiding the Preferential Transfers made by the Debtor to the Schedule A Transferees during the Non-Insider Preference Period pursuant to Sections 547(b) and 550(a) of the Bankruptcy Code, plus interest from the date of demand at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action, including, without limitation, attorneys' fees;

iv.  Avoiding the intentional and constructive Fraudulent Transfers made by the Debtor to the Schedule A Transferees during the Two-Year Fraudulent Transfer Period and the Four-Year Fraudulent Transfer Period pursuant to Sections 544(b), 548 and 550(a) of the Bankruptcy Code and DCL §§ Sections 272 - 279, plus interest from the date of demand at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action, including, without limitation, attorneys' fees;

v.  Recovering the Transfers from the Subsequent Transferees, including the Debtor Affiliates, Schedule A Transferees, Schedule B Transferees and Schedule C Transferees pursuant to Sections 550(a) and 551 of the Bankruptcy Code plus interest from the date of demand at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action, including, without limitation, attorneys' fees;

vi.  Avoiding and directing the return of the Post-Petition Transfers made to one or more of the Defendants, including the Debtor Affiliates, Schedule A Transferees, Schedule B Transferees or Schedule C Transferred, pursuant to Sections 549 and 550 of the Bankruptcy Code, plus interest from the date of demand at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action, including, without limitation, attorneys' fees;

vii.  Judgment in favor of Plaintiff awarding damages against any of the Defendants, including John and Jane Does, for transfers received as the initial, immediate, mediate or subsequent transferee made by the Debtor, pursuant to Sections 550, 551 of the Bankruptcy Code, plus interest from the date of demand at the maximum legal rate and to the fullest extent allowable by applicable law, together with costs and expenses of this action, including, without limitation, attorneys' fees;

viii.  Judgment in favor of Plaintiff and against the Defendants for damages in an amount for which each of the Defendants was unjustly enriched by one or more the Transfers;

ix.  Judgment in favor of the Plaintiff and against the Defendants disallowing any claims held or filed by any of the Defendants against the Debtor or the Plaintiff until such Defendant returns the avoidable Transfer to Plaintiff pursuant to Sections 502(d) and (j) of the Bankruptcy Code; and

x.  Granting Plaintiff such other and further relief as this Court may deem just and proper.

Dated:   New York, New York
         February 16, 2024

                                **KLESTADT WINTERS JURELLER**
                                **SOUTHARD & STEVENS, LLP**

By:   */s/ Kathleen M. Aiello*
      Fred Stevens
      Brendan M. Scott
      Kathleen M. Aiello
      200 West 41st Street, 17th Floor
      New York, New York 10036-7203
      Tel: (212) 972-3000
      Fax: (212) 972-2245
      Email: fstevens@klestadt.com
              bscott@klestadt.com
              kaiello@klestadt.com

      *Special Litigation Counsel to Yann Geron,*
      *Chapter 7 Trustee of the Estate of Jar 259*
      *Food. Corp.*