GLEICH, FARKAS & EMOUNA LLP
36 South Station Plaza
Great Neck, New York 11021
Telephone: (516) 482-4436
Facsimile: (516) 482-8916
Lara P. Emouna, Esq.

*Attorneys for*
STALLER ASSOCIATES REALTY INC., as agent of SPA 77 H L.P., incorrectly named in the Adversary Complaint as "STALLER ASSOCIATES INC. a/k/a STALLER ASSOCIATES REALTY"

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
In re :

JAR 259 FOOD CORP., :

                     Debtor.
------------------------------------------------------------------X
YANN GERON, as Chapter 7 Trustee of
Jar 259 Food Corp.,

                     Plaintiff,

      -against-

101 KAUR FARMS INC., 3350 KAUR FARMS INC., 22 CAPITAL INC., 225 OAK LLC, A & A VEGETABLES, INC., A & J PRODUCE CORP., A & S VEGETABLES, INC. d/b/a FOOD UNIVERSE MARKETPLACE, ADVANCE FOOD INTERNATIONAL INC., AMEET PROPERTIES LLC, AMERICAN EXPRESS COMPANY, ARIKUPURATHU INC., AZIZ SLAUGHTER HOUSE LIVE STOCK INC., a/k/a SLAUGHTER HOUSE, BABCO FOODS INTERNATIONAL LLC, BCB BANCORP., INC., BEST FOODS NJ, INC., BHAVANI FRUIT & VEGETABLE, LLC, CHETAK NEW YORK LLC, COBALT FUNDING SOLUTIONS LLC, CONSOLIDATED EDISON COMPANY OF NEW YORK, INC. A/K/A

Chapter 7

Case No. 22-40304 (JMM)

Adv. Pro. No. 24-01031(JMM)

CONED, DELIGHT FOODS USA LLC, EVOLUTION MANAGEMENT CORP., FARMERS CHOICE LLC, HABIB AMERICAN BANK a/k/a HAB BANK, HOUSE OF SPICES (INDIA), INC., ITRIA VENTURE LLC, JALARAM PRODUCE, INC., JOHNS FAMILY FISH MARKET CORP., KAUR FARMS INC., LEGACY CAPITAL 26 LLC, LONG ISLAND POWER AUTHORITY, LOUIS MILELLA & SON INC., MANHATTAN BEER DISTRIBUTORS OF LONG ISLAND INC., MNK ENTERPRISES LLC, MR. ADVANCE LLC, OM VEGETABLE INC., OM LIQUORS INC., PARKVIEW ADVANCE LLC, PRODUCE SOURCE INTERNATIONAL LLC, R BEST PRODUCE INC. S. KATZMAN PRODUCE INC., STALLER ASSOCIATES INC. a/k/a STALLER ASSOCIATES REALTY, THE MEKKATTI GROUP LLC a/k/a MEKKATTI GRAPHICS, THOMAS WEISS & ASSOCIATES P.C., TRIBORO WHOLESALE INC., TRIVEDI LAW GROUP P.C., TWO BROTHERS FOR WHOLESALE CHICKEN INC., VLS FARMS INC., WESTMINSTER MEAT PACKING INC., ZWICKER & ASSOCIATES, P.C., AND JANE and JOHN DOES,

                                                            Defendants.
------------------------------------------------------------------------x

**OBJECTION OF STALLER ASSOCIATES REALTY INC., as agent of SPA 77 H L.P., incorrectly named in the Adversary Complaint as "STALLER ASSOCIATES INC. a/k/a STALLER ASSOCIATES REALTY" TO CHAPTER 7 TRUSTEE'S MOTION FOR AN ORDER ESTABLISHING STREAMLINED PROCEDURES GOVERNING CERTAIN ADVERSARY PROCEEDINGS AGAINST "INSIDERS", DIRECT AND SUBSEQUENT TRANSFEREES BROUGHT BY THE CHAPTER 7 TRUSTEE PURSUANT TO SECTIONS 502, 544, 547, 548, 549 550 AND 551 OF THE BANKRUPTCY CODE AND NEW YORK STATE LAW**

STALLER ASSOCIATES REALTY INC., as agent of SPA 77 H L.P.,

incorrectly named in the Adversary Complaint as "STALLER ASSOCIATES INC.

a/k/a STALLER ASSOCIATES REALTY" (herein referred to as "Staller"), by its

attorneys, GLEICH, FARKAS & EMOUNA LLP, hereby files this objection (the "Objection") to the Trustee's MOTION FOR AN ORDER ESTABLISHING STREAMLINED PROCEDURES GOVERNING CERTAIN ADVERSARY PROCEEDINGS AGAINST "INSIDERS", DIRECT AND SUBSEQUENT TRANSFEREES BROUGHT BY THE CHAPTER 7 TRUSTEE PURSUANT TO SECTIONS 502, 544, 547, 548, 549 550 AND 551 OF THE BANKRUPTCY CODE AND NEW YORK STATE LAW (the "Motion" or "Procedures Motion"), and in support of its Objection respectfully submits as follows:

## OBJECTION

1. Preliminary, we object to the Procedures Motion because it was not also filed in the respective adversary proceedings the proposed procedures seek to manage, and rather, was filed just in the main bankruptcy case. Establishing mandatory procedures in a sub-proceeding, where no notice was given on the docket of the application, fails to provide adequate notice to all the defendants in the adversary proceedings that they may be subject to such alternative procedures. Accordingly, the motion should be adjourned and re-noticed so that all the defendants in the respective adversary proceedings have an opportunity to see and oppose the Procedures Motion, not just the few that happened to find out about it.

### The Trustee Lacks Support for Procedures Order.

2. The Trustee supports its overbroad and exacting Procedures Motion by pointing to purportedly similar orders entered in other cases (dating 2015-2018), in other districts, from other states (Delaware and Illinois), and outside Circuits (Third Circuit and Seventh Circuit) in support. However, the Trustee fails to provide any factual background or parallels to those cited cases which would support such procedures being applicable in this case (like, number of adversary proceedings, types of cases, number of adversary defendants, types and the amounts of claims, etc.). Simply citing entry of other procedures orders is not enough to demonstrate that the subject proposed "procedures order" is warranted here in this case, in this Court, at this time.

### The Trustee's proposed "Procedures" and approach are all wrong for these cases.

3. The Trustee has exercised the effort to bring three different "Insider Avoidence Actions" as adversary proceedings, naming altogether sixty-two defendants: (1) Case No. 24-1029 versus 351 VS KAUR FARMS, INC., KULJIT KAUR and AMANDEEP SINGH, (2) Case No. 24-01030 versus ten defendants, and (3) Case No. 24-01031 versus approximately fifty defendants, presenting each Complaint separately, apparently according to the relevant factual background and applicable causes of action alleged against the respective defendants.

4.      However, in the Procedures Motion, the Trustee has not set forth the distinctions between the three "Insider Avoidence Actions" except to say that the defendants are purportedly either "Insiders of the Debtor as initial transferees," or "non-insider defendants as either initial transferees, subsequent transferees or both." (Motion, Preliminary Statement, p. 2) So the distinction between the three "Insider Avoidence Actions" is not readily apparent.

5.      In the "Insider Avoidence Action" in which our client, Staller, has been named (Docket 24-01031), there are three tiers, or classes, of defendants named by the Trustee. For example, see the following Schedules to the Adversary Complaint ((Docket 24-01031)): Schedule A (apparently being, "Debtor Affiliate Transferees" and "transferees having received transfers from both the Debtor and one or more [of] the Debtor Affiliates"), Schedule B ("transferees having received transfers from Debtor Affiliates, but which did not receive any direct transfers from the Debtor"), and Schedule C ("financial institution transferees having received the benefit of transfers made by the Debtor to the one or more of the Debtor Affiliates …") (see Docket No. 24-01031, ECF 1).

6.      Respecting our client specifically, the Trustee alleges "A&S Vegetables Inc." as a "1st Transferee" and Staller as a "1st Subsequent Transferee" of A & S Vegetables, Inc. (see Schedule B to Complaint at Docket 24-01031, p.13). The Trustee further alleges A & S Vegetables, Inc. is an "Debtor Affiliate

5

Transferee" (Complaint, p.3; also at Procedures Motion, at footnote 2) or "Insider" (see Motion, Schedule A, labeled "Insider Transferee Defendants") and sets forth over $3 million in transfers to A&S Vegetables Inc. (see Schedule C to the Adversary Complaint).

7. However, the Trustee's meticulous methodology loses its benefit, precision and value when all the adversary proceedings' defendants are thrown together into a single "Procedures Motion" and litigation timeline. Respectfully, the shot-gun approach is not the correct tactic here. The Trustee's current process, as further incorporated into the Procedures Motion, seeks to build a house of cards into thin air without any foundation.

8. Rather, the Trustee (and Court) should adopt a "top down" approach respecting proceeding against the defendants. Specifically, the cases should be litigated against the principals, insiders, insider-affiliates, initial transferees, succeeding transferees, and successive succeeding transferees, in that order. Specifically, the cases against the principals and insiders must be proven first (and the alleged transfers to them), before the Trustee has the sufficient factual and legal basis to proceed against the insider-affiliates, and then other defendants ("1st transferees / 2nd transferees") that are farther down the line. For example, in the case of our client, the Trustee should prove, and prevail against, the purported wrongful transfers to the identified "Debtor-Affiliate" A&S

Vegetables, Inc., before it can proceed to claim/collect against Staller as a purported transferee of A&S Vegetables Inc.

9. Moreover, to the extent the Trustee recovers against A&S Vegetables Inc., such recovery would need to be a credit or to otherwise reduce the claim against our client as a purported transferee of A & S Vegetables. The Trustee's present approach to the "Insider Avoidance Actions" (bringing the cases against every possible defendant/transferee) and proposed procedures (in the Motion) do not allow for this fair, necessary, and required process.

10. Case law provides in relevant part as follows, "[S]ection 550 makes clear that a trustee may only recover transfers from subsequent transferees if the initial transfer itself 'is avoided.' *See* 11 U.S.C. § 550(a)." [In re Direct Access Partners, LLC, 602 B.R. 495, 518 (Bankr. S.D.N.Y. 2019)](). Thus, as a matter of law, the Trustee must first prove the initial transfer "is avoided" before it can proceed against subsequent transferees. However, by proceeding against all the defendants/transferees simultaneously, the Trustee has not satisfied the prerequisite of Section 550(a) before moving on to obtaining relief pursuant to Section 550(a)(1) or (2).

11. Further, Section 550(d) specifically limits double-dipping and excess recoveries against transferees, stating, "The trustee is entitled to only a single satisfaction under subsection (a) of this section."

12.     Therefore, the manner in which the Trustee is proceeding in these adversary proceedings and the procedures the Trustee wants to implement in the Procedures Motion wholly ignore the statutory and other legal requirements.

13.     Indeed, the proceeding against our client, Staller, and other defendants set forth on Schedule C of the Motion (labeled "Non-Insider Subsequent Transferee Defendants—Receiving Only Subsequent Transfers), is actually premature (and should be presently dismissed – pursuant to a separate motion for which all rights are reserved).

14.     Accordingly, it would be more appropriate for the Trustee to regroup, and to pause the proceedings against all the non-initial (non-debtor affiliate) transferees, and then proceed against the subsequent groups after he has established and proven the cases against the initial transferees, and still has a shortfall.

The Trustee Lacks support for the proposed mandatory mediation.

15.     We object to "mandatory" mediation. The defendants should each have a choice whether to participate in mediation, or not.

16.     Strangely, the Trustee supports "compromise or settlement of litigation" and "minimizing" litigation, and yet wants to impose the hurdle of "mandatory mediation," which will only have the effect of increasing litigation and inhibiting "compromise or settlement."

17. Further, the mediation procedures proposed in the Motion favor the Trustee and are prejudicial to the defendants, who are playing "catch-up" now, after the Trustee has already done its research, obtained discovery from the Debtor and other sources, and lined up all its cases.

18. The Trustee makes it appear like the mediation process is simple, effortless and easy, but it is not so for the defendants who are being subject to much harsher rules than that provided in the Local Rule, and who have to bear much of the "burden" of the mediation, while the Trustee coasts through with his hand-chosen (severely limited number of) mediators for whom only the defendants must pay up-front. The "cost-efficiencies" may work comfortably for the Trustee, but not for the individual defendants who have been dragged into these adversary cases.

19. The Trustee supports its overbearing push for "non-binding, facilitative mediation" by saying, essentially, "everyone else is doing it, so we should too." Meanwhile, the Trustee only cites to cases in the Southern District Bankruptcy Court as examples, and none in this District. Also, the cited cases are from 2016-2019, already five or more years ago; no recent cases are cited. Further, the Trustee fails to draw factual or other parallels between those cited cases and the cases here in support, and to show that the procedures sought in this case are necessary and helpful. Without knowing the significant circumstances of those cases, and just knowing that three other cases in a different district happened to

enter procedures orders, sufficient support for entering such a broadly restrictive order is not demonstrated here.

20. Furthermore, the Trustee professes that in the Quebecor case (which order we were unable to locate - see footnote below), only about a quarter of the adversary proceedings were resolved by the mediators (94/350). Such a modest statistic does not reliably justify this strict and prohibitive "mandatory" process at great expense to the unwilling defendants like our client. Simply allowing the parties time to confer and negotiate between themselves would likely have a similar, or better, statistical outcome.

21. Additionally, in many cases the heavy and seemingly unlimited cost of the mediation will have the effect of impairing the possibility of "resolution" or settlement, by reducing any available "settlement funds" which would be paid for mediation instead of toward settlement, ultimately hurting the Trustee's total yield (not even including the Trustee's own costs for mediation which similarly cut into the net settlement yield).

22. The Trustee simply has failed to make a sufficient case for mandatory mediation in this case.

### The choice of the Mediator is too limited by the Trustee; the "mediator retainer" is not reasonably calculated; and the mediators' hourly rate should be capped.

23. Local Rule 9019-1 governing referral to mediation provides in relevant part as follows:

>    (a)    Assignment of a Matter to Mediation. The Court may direct any dispute arising in any case or proceeding (collectively, "Matter") to mediation sua sponte or upon the request of one or more party in interest. <u>The Court may determine which parties in interest shall participate in the mediation. If a Matter is assigned to mediation, the parties shall comply with all applicable pleading, discovery, and other deadlines and scheduling requirements.</u>
>
>    (b)    Appointment of a Mediator. The mediation participants shall select a mediator and at least one alternate from the Mediation Register of approved mediators kept by the Clerk within 7 days of the entry of the order assigning the matter to mediation. … [emphasis supplied]

24.    So, the Local Rule provides that the election of the mediator be by <u>both parties</u> from the Mediation Register of approved mediators. Here, the Trustee (who is himself on the Court's Mediation Register of mediators) has reduced the field of choice of mediators from over 50 to just three of his cohorts.

25.    The only justification the Trustee gives for limiting the panel to three is "because it is proportionate to the number of Insider Avoidance Actions and the number of Defendants named therein," without further explanation/support. This rationale is simply not convincing.

26.    Even in the cases cited by the Trustee, <u>In re Advance Watch Co. Ltd.</u>, Chapter 11 case No. 15-12690 (MG) (Bankr. S.D.N.Y. November 16, 2017, ECF No. 415) and <u>In re Sears Holding Corporation, et al.</u>, Chapter 11 Case No.

18-23538 (RDD) (Bankr. S.D.N.Y. Dec. 26, 2019, ECF No. 6282)., there were five and six Mediator choices on the respective lists.[1]

27. While the "creation of a specific mediator panel" with familiarity or knowledge of the case may "aid" the Trustee, the defendants would benefit from a larger pool to select from, and be more likely to avoid some of the over-familiarity or comradery that the Trustee will establish with the three (cohort) Mediators, while each defendant will have limited contact with their mediator.

28. Notably, the Trustee has not even explained why the three pre-selected Mediators set forth on Exhibit 2 to the Motion are particularly qualified for these cases more than any of the other mediators. Nor has the Trustee allowed the Court to select the mediator pool size and mediator participants. A "blind" selection of the mediators in a much larger mediator pool would appear to be more fair and less questionable.

29. Also, given that each mediator will be handling a more than one of these cases and that the Trustee's facts and background will be similar in most of the cases, the mediator's work will be relatively rote. Therefore, and in any event, a <u>maximum hourly rate</u> should be established by the Court for mediators in these cases. Without such a safeguard for the defendants, "<u>mandatory</u>" mediation is

---

[1] The Trustee's cite for *In re Quebecor World (USA) Inc., et al.*, Chapter 11 Case No. 08-10152-JMP (Bankr. S.D.N.Y. March 10, 2016, ECF No. 3935) was incorrect and we could not locate that order for review/analysis.

prejudicial to the defendants being forced to mediate (if the Court is inclined to order mandatory mediation).

30. Moreover, while the Trustee has seemingly limitless funds to pursue the claims against the defendants, the defendants are victims of the Debtors and their insiders, with limited funds, who are now being railroaded and re-victimized by the Trustee and the overbroad and prejudicial Procedures Motion. The Trustee's Motion does not consider that the expense of mediation may not be justified for every defendant in every adversary case, especially our client, who simply collected rent as the managing agent for a landlord of one of "Debtor's Affiliates" (per Motion, footnote 2). One size does not fit all sixty-two (defendants).

31. Even the proposed (but mandatory) maximum ten (10%) "mediation retainer" is grossly unmerited and has no rational basis relating to the actual anticipated mediation fees. The Motion states that, "The maximum amount that the Trustee seeks to recover from any Schedule B or Schedule C Transferees is $410,000." So, according to the Trustee's proposed Order, that $410,000 "transferee" has to pay $41,000 just to participate in mandatory mediation. In the case of our client, the "retainer" would be about $26,000.00, which is also an exorbitant sum to pay as a "retainer" for such facilitation/legal services.

32. Further, with the "streamlined" procedures, it would appear that the procedures for each case will be relatively similar, and therefore the retainer fees should be relatively similar, if not the same, and should be based on an anticipated/estimated share/hours, and not based upon the amount of the claim (if the Court is inclined to require mandatory mediation, and impose a mandatory "mediation retainer" requirement/procedure).

33. Moreover, the harsh rules put forth by the Trustee in the Motion would allow the Trustee to seek a <u>default judgment</u> upon a defendant's non-payment of the mandatory exorbitant "mediation retainer." Notably, the Trustee is not similarly obligated to pay a substantial "pay to play" entrance fee to participate in the <u>mandatory</u> mediation.

34. This proposed procedure is simply unfair and prejudicial to the defendants, and would appear to be an artful tool to bully defendants into settlement or to otherwise kowtow to the Trustee's demands. No, the "mediator retainer," should not be tied to the claim amount, which is a wholly irrelevant standard suggested in the Motion.

<u>The defendants' rights to discovery and the availability of the mediator's discretion should not be limited in mediation.</u>

35. The Trustee seeks to "stay" and limit discovery during the mandatory mediation process.

36. However, discovery is an important part of litigating any case and the defendants' hands should not be tied in mediation simply because the Trustee has already procured discovery from the Debtor and other sources, while the defendants are now finally entering the case. The defendants should be entitled to full discovery privileges if forced to proceed with mandatory mediation.

37. Thus, the Trustee cherry picks among the Local Rule's mediation provisions, requesting mediation pursuant to the Local Rules, but not caring to "comply with all applicable pleading, discovery, and other deadlines and scheduling requirements" as the Local Rule provides (cited above).

38. Furthermore, the Local Rule provides that the scheduling and the procedural aspects of the mediation to be within the discretion of the mediator. However, the Trustee's Motion seeks to strip the mediator of his/her authority and to dictate and impose the Trustee's timetable on the mediators and mediation process.

39. The defendants are prejudiced by these suggested severe modifications of the rights otherwise provided by the Rules.

40. The bottom line of this is that even if the Trustee were to modify its application to remedy some of the matters raised herein, even then, the Proposed Mandatory Mediation in this case is not warranted and prejudicial, and such request should be denied in its entirety.

<u>Settlement Procedures need to be expanded.</u>

41. While we are generally in agreement with streamlining the "Settlement Procedures," being the approval process for settlements, given the large number of the Trustee's claims that are near or just over $200,000.00 (including against our client), we propose redefining the "Small Settlement" amount that may be approved without a hearing to also include settlements at or above $175,000.00, instead of $100,000.00.

<u>Conclusion</u>

WHEREFORE, STALLER ASSOCIATES REALTY INC., as agent of SPA 77 H L.P., incorrectly named in the Adversary Complaint as "STALLER ASSOCIATES INC. a/k/a STALLER ASSOCIATES REALTY" respectfully requests that the Court deny the Trustee's Procedures Motion in its entirety, and grant such other and further relief as the Court deems just and proper.

Dated: Great Neck, New York
　　　　June 26, 2024

　　　　　　　　　　　　　　　　By: /s/ Lara P. Emouna
　　　　　　　　　　　　　　　　Lara P. Emouna, Esq.
　　　　　　　　　　　　　　　　GLEICH, FARKAS & EMOUNA LLP
　　　　　　　　　　　　　　　　Attorneys for STALLER ASSOCIATES
　　　　　　　　　　　　　　　　REALTY INC., as agent of SPA 77 H L.P.,
　　　　　　　　　　　　　　　　incorrectly named in the Adversary Complaint
　　　　　　　　　　　　　　　　as "STALLER ASSOCIATES INC. a/k/a
　　　　　　　　　　　　　　　　STALLER ASSOCIATES REALTY".
　　　　　　　　　　　　　　　　36 South Station Plaza
　　　　　　　　　　　　　　　　Great Neck, New York  11021
　　　　　　　　　　　　　　　　(516) 482-4436

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2024 a copy of the OBJECTION OF STALLER ASSOCIATES REALTY INC., as agent of SPA 77 H L.P., incorrectly named in the Adversary Complaint as "STALLER ASSOCIATES INC. a/k/a STALLER ASSOCIATES REALTY" TO CHAPTER 7 TRUSTEE'S MOTION FOR AN ORDER ESTABLISHING STREAMLINED PROCEDURES GOVERNING CERTAIN ADVERSARY PROCEEDINGS AGAINST "INSIDERS", DIRECT AND SUBSEQUENT TRANSFEREES BROUGHT BY THE CHAPTER 7 TRUSTEE PURSUANT TO SECTIONS 502, 544, 547, 548, 549 550 AND 551 OF THE BANKRUPTCY CODE AND NEW YORK STATE LAW was served via ECF upon all counsel of record.

Dated: June 26, 2024           By: /s/ Lara P. Emouna